# IN THE SUPERIOR COURT FOR THE STATE OF ALASKA

## THIRD JUDICIAL DISTRICT AT ANCHORAGE

RANDY WATKINS, ROBERT
PENLAND, CAMERON MURRAY,
RANDALL DENARDI, STAN DALTON,
KIP SPRAGUE, CHARLES YOUNG,
TERRENCE STOKAN and LEON RAY
FLEMING, JR.

                      Plaintiffs,

vs.

CTI ALASKA, INC., BP EXPLORATION
& OIL, INC.; and GEORGE HAUGEN,

                      Defendants.

Case No. 3AN 98-6037 CI

## MEMORANDUM IN SUPPORT OF
## MOTION FOR RECONSIDERATION

I.    **Introduction**

The Court, by findings and conclusions of law entered on the record, determined that Plaintiffs were non-exempt employees. See Exhibit A, Transcript of Findings and Conclusions of Law entered on the record, January 18, 2000. The Court also found that: "The day rate paid to the employees does not comply with any allowed method of payment to non-exempt employees." Id. Based on these findings and conclusions of the law, the Court determined to employ Greisen's Report and Analysis at B-3 (Exhibit GY) as the most accurate of the "three calculations presented to the court." Id.

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

1

001578

EXHIBIT B
PAGE 1 OF 6

Plaintiffs ask for reconsideration. Plaintiffs note that Greisen's calculation and report is legally flawed and plain error. Plaintiffs also note that more than three methods of calculation were presented to the court. Plaintiffs submit that the expert report of Jackie Briskey presented under direct testimony and full cross-examination at trial (Exhibit 139) establishes an appropriate and, more importantly, a legal formula for calculation of rate of pay and assessment of overtime compensation.

## II. Argument

### A. Methodology Followed By Greisen's Report Pursuant to 29 CFR 778.112(a) is Legally Flawed.

There is a reason defendants chose not to present direct testimony of Mr. Greisen in support of his report (Exhibit GY). The calculations of Greisen at B-3 of his report pursuant to 29 CFR 778.112 are plain error.

To see this point, one need only look at the straight time rate for each plaintiff as calculated by Greisen under B-3 of his Report for Denardi, Exhibit B, Murray, Exhibit C and Dalton, Exhibit D. For ease of the Court, the straight time rate shown by Greisen for each of these plaintiffs in his report has been highlighted in yellow.

For Denardi, the straight time rate calculated by Greisen's formula at B-3 varies from a low of $31.43 per hour to a high of $110.00 per hour. This fluctuation in hourly rate is solely dependent upon the fact that under the day rate form of compensation, the gross pay for any week in which there were fewer than 1 or 2 flat day rates or even just a half day flat rate creates a very high hourly rate. Conversely, for weeks when there were

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

001579

EXHIBIT 5
PAGE 2 OF 6

5, 6 or 7 flat day rates with more hours worked, Greisen's formula created a widely fluctuating but lower hourly rate. Thus, the more hours worked in any week under a flat day rate compensation scheme meant a lower hourly rate. See Exhibit B Denardi for the week of 9/8/96-9/13/96; he worked 98 hours for a low hourly straight time rate of $31.43. Conversely, for the time period 6/23/96-6/28/96 he worked fewer, or 53 hours, and the straight time hourly rate went up to $37.56.

The same fluctuation occurs for Cameron Murray, See Exhibit C. He had a straight time or hourly rate that fluctuated from a low of $22.00 an hour to a high of $35.33 an hour. For Plaintiff Dalton, his straight time or hourly rate fluctuated from a low of $10.92 an hour to $45.97 an hour. See Exhibit D.

From these examples, it is patently clear that the longer each of these employees worked in excess of 40 hours a week, the lower his hourly straight time or "regular rate" was. Under this formula employed by Greisen, an employer contemplating overtime work for his employees has a clear economic incentive to allocate overtime to as few employees as possible and create the lowest hourly rate, rather than dividing the extra work evenly but create a higher hourly rate. It was the decision for BPX and CTI to have employees work on the day rate and work them for 10, 12, 16 or even 20 hour days. Employer representatives admitted that this made economic sense.

Under Dresser Industry v. Alaska Department of Labor, 633 P.2d 998 (Alaska 1981) the Alaska Supreme Court construing a pay policy whereby employees received

3

001580

3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

EXHIBIT ___B___
PAGE _3_ OF _6_

less overtime compensation for extra hours worked contravened the underlying policy of federal law.

> ... the state argues that as the number of hours worked in a particular week increases, the "regular rate of pay" decreases, the resultant "overtime rate" decreases; and thus the effect of allowing the FWW is counterproductive to the stated purpose of the Act. . . . We are persuaded the state's position is correct.

Id. at 1005-1006. Similarly, the day rate used by Defendants and as calculated by Greisen means that defendants benefit from concentrating extra hours in one employee instead of spreading employment among new hires.

Moreover, Greisen's reduces the straight time rate for these employers $10.00 an hour or even $20.00 an hour. This straight time rate is significantly below the straight time rate that was paid to these same employees when they were "advanced" to the day rate system. This demonstrates that there is something very wrong with Greisen's formula.

Additionally, this Court in its findings and conclusions of law determined that the day rate system is an anathema to the Alaska Wage and Hour law. In advancing the Greisen report with no testimonial support, the defendants have led the Court into plain error. The methods of calculation that counsel for defendants asked expert Greisen to assume in calculating damages for plaintiffs in this action are simply wrong. The regulations on which Greisen has relied and was asked to rely by defendants apply to a day rate compensation not allowed in Alaska.

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

4

001581

EXHIBIT B
PAGE 4 OF 6

The Court in its findings found the day rate to be inappropriate. Moreover, the Court's approach to follow the analysis of 29 CFR 778.111(a) for "piecework" is equally flawed. Apart from the fact that this was not Greisen's basis for the B-3 calculation, there is no question that the facts in this case do not support and Defendants have not demonstrated that plaintiffs' day rate compensation was equivalent to or even similar to piecework. Under § 778.111, a pieceworker rate is for calculated on basis of compensation received for a set number of "units" of piecework completed. This regulation clearly addresses workers who are paid by the unit of work accomplished and has nothing at all to do with workers who are paid at a flat rate.

B.     Plaintiffs' Expert Jackie Briskey Report Provides Alternate and Legal Formulas for Calculation of Rates and Pay.

Conversely, Plaintiffs' expert Jackie Briskey calculated a "regular" rate from the day rate compensation that was a consistent and level "regular rate" for each of the alternative calculations provided to the Court. The formula was created by dividing the day rate paid to each plaintiff by 8 hours.

Under this straight time rate, an array of potential damages was calculated at time and one-half calculation, or by the "Piquniq" formula recommended by the Alaska Supreme Court or at an additional half time rate of compensation calculation. See Ex. 139, Plaintiffs' Trial Exhibit 2, 2D and 2E. All of these calculations are reasonable and based on whether the Court determines that compensation is due plaintiffs at time and one-half, half-time or the Piquniq formula.

LAW OFFICES OF
JERMAIN DUNNAGAN & OWENS
A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 90503
(907) 563-8844
FAX (907) 563-7322

001582

EXHIBIT   B
PAGE  5  OF 6

The findings of the Court noted that Greisen's B-3 formula is a reasonable calculation of overtime compensation that "does not minimize the calculation, nor does it include a penalty." See Exhibit A, Findings, p. 4-5. It should be noted that merely because the dollar amounts in the Briskey report are larger than the dollar amounts in the Greisen report, does not mean that the calculations of overtime compensation owed and arrived at by Ms. Briskey are penal. The Defendants chose the option of paying Plaintiffs under an illegal form of day rate compensation. As a result, Defendants assumed the risk that in the event that the day rate form of compensation were deemed inappropriate under Alaska law, the costs of additional compensation for overtime and liquidated damages plus interest would be large. The point is to encourage employers to comply voluntarily with the law. This is not penal, but the cost of ignoring the policies of overtime compensation to spread employment.

## III. Conclusion

Plaintiffs request a reconsideration and submit alternative finding and conclusion to adoption of B-3 of Greisen report.

DATED this _11__ day of February, 2000.

JERMAIN, DUNNAGAN & OWENS, P.C.
Attorneys for Plaintiffs

By: _____
Randall G. Simpson (AK Bar #7710166)

A PROFESSIONAL CORPORATION
3000 A STREET, SUITE 300
ANCHORAGE, ALASKA 99503
(907) 563-8844
FAX (907) 563-7322

6

001583

EXHIBIT _B_
PAGE _6_ OF _6_