Gregory L. Youngmun, Esq.
DeLISIO MORAN GERAGHTY & ZOBEL, P.C.
943 West 6th Avenue
Anchorage, Alaska 99501
(907) 279-9574

Attorneys for APC Natchiq, Inc.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| RONALD E. ZUBER, | ) |
|               Plaintiff, | ) |
| v. | ) Case No.: A03-0052 CV (RRB) |
| APC NATCHIQ, INC., | ) |
|               Defendant. | ) |

**AFFIDAVIT OF MARK C. NELSON**

STATE OF ALASKA         )
                        ) ss.
THIRD JUDICIAL DISTRICT )

Mark C. Nelson being first duly sworn upon oath, deposes and states as follows:

1. My name is Mark C. Nelson and I am employed with ASRC Energy Services, Operations and Maintenance Inc. as its President.

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

#72162 v2 - Affidavit of Mark Nelson re Statute of Limitations
Case No.: A03-0052 CV; Page 1 of 4

EXHIBIT B
PAGE 1 OF 4

2. I am the age of majority, competent to make this affidavit, and have personal knowledge of all facts set forth herein.

3. APC Natchiq, Inc. is the successor to Alaska Petroleum Contractors Inc. and is a subsidiary of ASRC Energy Services. In 1996 and 1997, I was employed with Alaska Petroleum Contractors Inc. ("APC") as Operations Manager.

4. In December 1996, after reading an article in Forbes Magazine regarding liability for unpaid overtime, I decided that certain APC positions should be re-evaluated to ensure that they were properly classified as exempt from overtime. I also questioned whether compensating employees on the basis of a day rate is appropriate. See Attachment 1. The day rate question was forwarded to Chris Boyle, Natchiq, Inc. Human Resource Director, who responded on April 4, 1997 that based on federal law and the opinion of the Alaska Department of Labor, exempt employees may be paid a day rate provided that certain conditions are satisfied. See Attachment 2.

5. In late 1996 and 1997 I performed an analysis of various positions, including the Safety Specialist position, to determine whether the position was correctly classified as exempt. My analysis included the following: telephone discussion with Randy Carr, Chief Labor Standards for the Alaska

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

#72162 v2 - Affidavit of Mark Nelson re Statute of Limitations
Case No.: A03-0052 CV; Page 2 of 4

EXHIBIT B
PAGE 2 OF 4

Department of Labor, to obtain general assistance in making determinations as to overtime exemptions (Attachment 3); review of regulations defining administrative, executive, professional, supervisors, and outside salesman (Attachment 4); review of charts to determine exempt status of employees (Attachment 5); and review of various articles regarding wage and salary compliance (Attachment 6).

6. My analysis of the Safety Specialist position also included, in addition to the analysis discussed in paragraph 5, a review of the Safety Specialist job description (Attachment 7); a discussion with Robert Cannon, who was employed at that time as APC's Senior Specialist, regarding the job duties performed by Safety Specialists; and an evaluation of whether the Safety Specialist position met the "administrative" and "professional" employee test. See Attachment 8. Based on the duties performed by Safety Specialists, which include accident investigations and reports, job hazard analyses, leading safety meetings, providing safety training, and drafting procedures, the fact that Safety Specialists have specialized training and knowledge, work independently on a day-to-day basis without direct supervision, are the "eyes and ears" of the company with regard to safety, and indeed, workers' lives depend upon determinations made by Safety Specialists, I concluded that

DeLisio Moran
Geraghty & Zobel, P.C.

943 West 6th Avenue
Anchorage, Alaska
99501-2033

(907) 279-9574

#72162 v2 - Affidavit of Mark Nelson re Statute of Limitations
Case No.: A03-0052 CV; Page 3 of 4

EXHIBIT  B
PAGE  3  OF  4

Safety Specialists are bona fide administrative or professional employees exempt from overtime.

7. In addition to the review of the information and documents discussed above regarding overtime compensation, at the time I made the determination that the Safety Specialist position is exempt from overtime in late 1996 and 1997, I had taken various in-house seminars which included wage and hour legal issues.

DATED this 1st day of August, 2003

_____
Mark C. Nelson

SUBSCRIBED AND SWORN to before me this 1st day of August, ~~July~~, 2003.

_____
Notary Public in and for Alaska
My Commission Expires: 12/25/05

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

#72162 v2 - Affidavit of Mark Nelson re Statute of Limitations
Case No.: A03-0052 CV; Page 4 of 4

EXHIBIT B
PAGE 4 OF 4

APC Interoffice



MEMORANDUM..............

DATE:     December 7, 1996

TO:       Anne Hippe / Toby Osborn

FROM:     Mark Nelson

SUBJECT:  A few compensation questions?

****************************************************************************

After reading the attached article from Forbes magazine last month regarding employee compensation I've been concerned over the way we have a few of our employees classified. I was going to call the Alaska department of labor for an opinion and still can, I just want to make sure all of our jobs are consistent so we have no exposures..........

In the Kuparuk field the majority of our foremen are non-exempt although the materials foremen are exempt on a day rate. Their title is materials supervisor but essentially perform a foreman's role reporting to a superintendent. The question comes up, what does "bona fide executive, administrative, or professional capacity" really mean? In this situation my research would indicate these supervisors should be non-exempt - would you concur? In addition, the article talks about paying a salaried employee in increments of no less than a week. We have many employees on a "day" rate and for the sake of payroll put 10 hours of work down each day on their timecards. I'm thinking we may want to get completely away from any mention of hours and only indicate a day worked. Plus would the legal opinion be that we work the majority of our employees on a two on two off cycle would constitute a "weekly" basis?

Take a look at the article and see if we should have any concerns and if you know who the attorney was who talked with our foreman regarding "charter delays." We may want to research this? (see attached)

Thanks for the help!





Lawyers claiming to represent professional salaried workers are trying to gouge employers for huge amounts of back overtime pay.

# The $20 billion target

By Susan Adams

REGISTERED NURSE JANET KLEIN consulted a lawyer after she was fired by Chicago's Rush-Presbyterian-St. Luke's Medical Center in 1990. Attorney Richard Tupper couldn't get Klein her job back, but he was able to convince the influential U.S. Court of Appeals for the Seventh Circuit that the hospital owed his client $8,000 in back pay and fines.

Never mind that Klein was a salaried professional who never put in for overtime. Lawyer Tupper was able to show that Rush-Presbyterian gave its nurses time off after they worked long hours. Moreover, the hospital had docked Klein's pay when she was late to work. These workplace practices were enough to convince the court that Klein was really more of an hourly worker than a salaried professional—and could thus collect back pay for any weeks she worked more than 40 hours.

Workplace law is becoming a very lucrative new area for plaintiff lawyers *(see story, p. 150)*, and cases demanding back overtime pay could swell the lawyers' coffers even more. The Employment Policy Foundation, a Washington, D.C. research outfit funded by companies, thinks employer liability in back-overtime cases could run as high as $20 billion in the private sector alone.

"It's a target of opportunity," says Edward Still, an employment plaintiff lawyer in Birmingham, Ala. "We can rip some money out of the hide of the employer."

Picking up on the 1993 Klein precedent, lawyers last year filed a class action suit against ARCO Alaska, the Anchorage-based subsidiary of Atlantic Richfield Co. ARCO Alaska had suspended a supervisor for a few days and docked his pay for sexually harassing a colleague. The trial lawyers figured this meant there was a policy in place that could subject *any* ARCO professional to short-term

154    Forbes ■ November 4, 1996



pay docking—and, therefore, that all of ARCO's salaried professionals were really just working-stiff hourlies who should have been paid for overtime. The suit, filed last year in Alaska state court (Alaska law tracks federal law in this area), claims ARCO Alaska owes at least two years of overtime pay—tens of millions of dollars—to *all* of the company's hundreds of professional employees. That includes accountants, engineers and other high-ranking managers.

"It's an 'I gotcha' case," steams Lloyd Loomis, senior corporate counsel for ARCO Alaska. "These people [the professionals] make oodles of money; nobody is expecting overtime. This is crazy." So far a judge has denied class action status, but the plaintiffs plan to reapply.

The Boeing Co., too, is facing a back-overtime class action filed on behalf of professional engineers and managers, some of whom make as much as $120,000 a year. Plaintiff lawyers say the potential liability could reach more than $40 million. A win could put around $15 million into the plaintiff lawyers' pockets. "It's completely and totally absurd," fumes Douglas Kight, counsel for Boeing. The U.S. District Court in Seattle agreed and dismissed the class action suit in April, but the Court of Appeals for the Ninth Circuit has agreed to hear the appeal.

The wellspring of these cases is a technical section of the 1938 Fair Labor Standards Act that was intended to protect low-wage workers from grueling overtime, and to force employers to hire more people. The law and accompanying regulations have not been substantially updated in 40 years. Plaintiff lawyers looking for new business opportunities have discovered that the law's many fine points and exceptions are fertile ground for lawsuits.

Under the Fair Labor Standards Act, employers must pay time-and-a-half overtime beyond 40 hours a week to all but "exempt" employees. Who's exempt? The law says anyone "employed in a bona fide executive, administrative or professional capacity." Exempt employees also must be paid on a "salary basis," which means a set salary paid in increments of no less than a week, regardless of the quantity or quality of the work. That's why docking of pay tripped up Rush-Presbyterian Medical Center and may foil ARCO Alaska and others.

The Supreme Court is about to take on a big chunk of the overtime controversy. In a little-noticed case on the docket this term, Auer v. Robbins, the Court will hear an appeal brought by a group of police sergeants in St. Louis who say they're owed overtime because they are subject to a disciplinary policy that would dock their pay for less than a pay period.

If the Court agrees with the plaintiffs that just having a short-term pay-docking policy on the books is enough to turn professional employees into hourly workers, the floodgates to these kinds of suits could really open up. ∎

> "It's a target of opportunity. We can rip some money out of the hide of the employer."

Note for Nelson*/Schick* NSK
_____

| | |
|---|---|
| From: | Buffington*/Doyle* NSK |
| Date: | Thu, Dec 5, 1996 10:50 AM |
| Subject: | Billing Time Audit |
| To: | Nelson*/Schick* NSK |
| Cc: | Dickerson*/Miles* NSK; Nelson*/White* NSK |

Charlie/Mark:

I have been auditing my Wells, whse, & shop time tickets from 12/1-12/5. All and all these groups do very well with their changeout time tickets. The below are two discrepancy areas that I have encountered:

1) People that are direct report to ARCO supervision have been told to start charging as ARCO does - as soon as the plan lands and to stop charging when the plane takes off. At this point, they have no idea they are doing anything incorrectly.

2) A foreman mentioned to me that during the "legal awareness" training he took, a discussion took place about time missed because of charter delays. Here was the result of that discussion....

- The attorney that was leading the seminar told the group that it was each individuals legal right to get his/her normal hours worked if he/she was delayed due to weather or mechanical failure in the Anchorage airport. The employee meets his/her responsibility by arriving at the airport on time and is due his/her fair wage because it was no fault of his/her own that he/she could not report for duty as normal.

If this is in fact true and ARCO will pay for it, this would certainly be a good morale raiser as I don't believe anyone has ever charged for this before. It would be like getting a new benny. (This was the foreman's idea, I take no credit, but tend to agree it would make people feel like that got something special)

The concern the foremen have expressed to me is consistency. They don't really remember this being discussed on a company wide basis to form the consistency between jobs. Shane

# NATCHIQ, INC.

| ALASKA PETROLEUM CONTRACTORS, INC. | ASRC PARSONS ENGINEERING, LLC | HOUSTON CONTRACTING COMPANY - ALASKA, LTD. |

To: Mark Nelson/Charlie Schick

From: Christopher B. Boyle

Date: April 4, 1997

Subject: **Exempt Employee - Payment of Day Rate**

In follow-up to your questions of the appropriateness of paying a day-rate to exempt employees, the following will provide guidance.

Alaska has no specific Wage & Hour law addressing the payment of a day-rate to exempt employees. Of course, the first step an employer must take is to <u>properly</u> classify an employee as exempt (not eligible for overtime) or non-exempt. I have previously provided some information on this subject and would recommend we again look at the foreman and similarly classified employees to ensure their status can stand up to the exemption test.

Concerning the payment of day-rates, Alaska has not adopted its own regulation defining "salary basis". However, federal regulations specifically allow paying exempt employees on a day-rate basis when a guarantee of work per week is given. 29 C.F.R. 541.118 (b).

The appropriateness of paying a day rate was raised in Alaska in 1989 at which time the Department (Wage & Hour) ruled that day-rate employees did not meet the salary requirements under state law. However, when challenged, the Department reversed itself and issued the following interpretive ruling in December, 1989:

> The Department "would indeed allow a daily rate providing the following procedures and conditions are true: An employer wishing to compensate an employee on a daily basis, who is otherwise exempt from provisions of the Wage & Hour Act, must communicate to that prospective employee their daily rate <u>and</u> the minimum amount guaranteed each week that any work is performed. In the absence of such documentation, the employer's intent may not be clear concerning the minimum weekly salary to be paid and that employee could become overtime eligible".

A Subsidiary of Arctic Slope Regional Corporation
6700 Arctic Spur Road • Anchorage, Alaska 99518-1550 • (907) 344-5757 • FAX: (907) 267-3190

APC0180

Attachment 2 to Exhibit B
Page 1 of 3

Page 2

In summary, we may pay exempt employees on a day-rate provided very specific conditions are satisfied. I understand from speaking with you that it is beneficial from a reimbursable stand point to pay on a day-rate. However, I would be concerned about the consistent application of the requirements and other practices, known or unknown, that may cause an employees pay to vary from week to week. This is seldom a concern when establishing and paying a straight monthly salary.

Another question you raised was whether a two on two off cycle would constitute a "weekly" basis. The answer is no. Under applicable federal and state regulations, a workweek is a fixed and regularly occurring period i.e., seven consecutive 24 hour periods. The work week may begin on any day of the week and need not coincide with a calendar week; an individual employee's workweek is the statutory or contract number of hours that are to be worked during that period; the workweek may not be artificially adjusted for the purpose of avoiding the payment of overtime, however, the workweek may be changed for any other purpose as allowed by the regulations.

A final question you referred to me was the issue of waiting time if the Charter breaks down or cannot fly due to weather. For non-exempt employees, there is no obligation to pay for "waiting" time. However, many employers will provide some compensation in recognition of the inconvenience and loss of income the employee incurs through no fault of their own. For exempt employees, if they are ready and able to work, but cannot travel to the work site through no fault of their own, no deductions from normal pay would be allowed.

**Recommendations**

The following are recommended actions relative to the day-rate issue:

1) Review all occupations where there may be questions concerning whether they are properly classified as exempt or non- exempt, i. e., foremen and other personnel whose actual job responsibilities and duties may not meet the overtime exemption test.

2) Consider a flat monthly salary for exempt employees.

3) If day-rate status is maintained, ensure the following:

   a) Employees are clearly advised, in writing, of their daily rate <u>and</u> the minimum guaranteed each week that any work is performed. Our current "Notice of Wage Payments" can be modified to address this requirement.

Page 3

    b) Ensure there are no inappropriate deductions from pay. In this context, it means there must be no deductions from pay unless the employee absents himself from work for a day or more for personal reasons, other than sickness or accident. **Deductions for a partial day worked are not permitted** unless the leave falls under the Family Medical Leave Act.

    c) Deductions may not be made for jury duty, attendance as a witness, or temporary military leave. Concerning, jury duty, the Department is unclear as to how long the employer can be expected to provide pay to an employee who is on jury duty for an extended period.

I know this information may be more than what you were looking for, but determining proper procedures under Federal and State Wage & Hours laws is very complex. In speaking with the Department, they are often unclear on many issues related to exempt status. It appears case law rulings are often contradictory resulting in the uncertain application of the regulations. Of course, this creates even more uncertainty for employers.

Let me know if I can help you review your current practices or if you need further information.

cc:    B. Cheek
       T. Osborn
       J. Cehula
       J. Laasch
       L. Gabrielson
       M. White/S. McKay
       D. Dieckmeyer
       D. Burrows

APC0182

# ALASKA PETROLEUM CONTRACTORS INC.
## General Contractors

June 25, 1997

Faxed to: 907-269-4992

Mr. Randy Carr
Director of Labor & Safety
State of Alaska
Anchorage, Alaska

Re:   Opinion Letter

Dear Mr. Carr:

Thank you for assisting me over the telephone in making a determination as to overtime exemptions for our staff. The discussion surrounding "supervisors" as being exempt from over time pay (premium pay) but yet have to be paid for all hours worked has been difficult to pull from the regulations.

Please respond in writing to give us a definition as to how it works and the cautions of classifying an employee as a supervisor.   We can easily find the classifications for administrative, professionals and executives but do not see a clear path for the supervisors.

Thank you for your help,

Sincerely,

Mark C. Nelson
Operations Manager

Pouch 340014
Prudhoe Bay, Alaska  99734
Fax: 907-659-7706

Attachment 3 to Exhibit B
Page 1 of 1

APC0202

A Subsidiary of Arctic Slope Regional Corporation
6700 Arctic Spur Road, Anchorage Alaska 99518-1550
P.O. Box 190747, Anchorage, AK 99519-0747, (907) 344-6400, Fax (907) 267-3190

