# PAYROLL LEGAL Alert

ALEXANDER HAMILTON·INSTITUTE INCORPORATED

## TAXES AND COMPLIANCE

### High Court Takes 'Payroll' Route for Title VII

You've always known "payroll" as an activity — whether you modem numbers to a service bureau or actually withhold taxes, cut paychecks, and file tax returns. But according to a U.S. Supreme Court decision, payroll is now a measurement as well — how you count employees to comply with Title VII of the Civil Rights Act of 1964. *Impact:* Your record-keeping burden may increase as Personnel taps Payroll for more detailed head counts. [Walters v. Metropolitan Educational Enterprises, Inc., U.S. S.Ct., No. 95-259 (1997).]

**Numbers game.** An employee sued for retaliatory discharge after she was fired for filing a sex discrimination charge against her employer. *Employer's defense:* The company didn't come under Title VII because it didn't meet the law's threshold: whether an employer has at least 15 employees on each working day in 20 or more weeks in the current or preceding year.

➲COUNTING METHODS: This employer used a Title VII counting method called the day-to-day method. This method counts all exempt employees, whether or not they're at work on any day. But it counts non-exempts only if they're actually at work or on paid leave. A competing counting method, the payroll method, counts all active employees on the payroll, regardless of their status or whether they're working on any given day.

**Payroll method: easiest and fairest.** Using the day-to-day method, a federal appeals court upheld the dismissal of the employee's case. The High Court reversed, ruling that the payroll method comes closest to Title VII's intent that all workers with an ongoing employment relationship be counted, even if they don't work on some days. *Court:* Under the payroll method, all one needs to know to count an employee for the 20-week test is whether he/she started or ended employment during that year and, if so, when.

➲BEYOND TITLE VII: This case covers Title VII. But other laws, including the Family and Medical Leave Act, the Age Discrimination in Employment Act, and the Americans with Disabilities Act, have similar counting requirements. And it's unlikely that the High Court would sanction a different counting method. *Result:* Only the smallest employers are now exempt from Title VII, and would be exempt from these other laws.❖

### Damage Control — IRS Rules Discrimination Awards Are Taxable

It's not bad enough that a discrimination claim against your company could make it liable for back pay and damages for emotional distress. Now you have to worry about handling it correctly from a tax standpoint, so you don't land in hot water with the IRS. And it hasn't always been easy knowing how the IRS would rule. *Confusion reigns:* While it had

## IN THIS ISSUE

High Court Takes 'Payroll' Route for Title VII...............................1
Damage Control — IRS Rules Discrimination Awards Are Taxable..................................................................................1
W-2s: In the News Again.................................................................2
It's March! Do You Know Where Your Corrected W-2s Are?..........3
If the Check's in the Mail, Don't Withhold...Yet.............................4
More Ex-Workers Join The Severance Pay Fray............................4

Flexing Your Pay Policy Won't Muscle Out Exempt Status...........5
When Clocks Spring Forward, Make Sure Employees Do Too.....5
Benefits Report Card: Employers Get Failing Grades...................5
Are You Experienced? Check These State Unemployment Rates...6
Auditing Your 401(k) Plan Makes Dollars and Sense.....................6
Employer's Business Tax Calendar for April, 1997.......................7
All-States Chart on '97 Experience Rates......................................8

Vol. 2 No. 5                                                                                          March 1997

Attachment 6 to Exhibit B       APC0172
Page 1 of 24

ruled in 1993 that these awards weren't taxable, it changed its mind nearly two years ago, and put the issue on hold. Further complicating the tax picture is last year's Small Business Job Protection Act (SBJPA), which changed the definition of tax-free damages. *Final words:* The IRS has settled the issue by ruling that both back pay and damages are taxable. [Rev. Rul. 96-65, IRB 1996-53.]

**Taxable, yes, but subject to withholding?** According to the ruling, back pay issued to satisfy an employee's claim that he/she was denied a promotion due to disparate treatment employment discrimination under Title VII is both taxable and subject to income tax withholding, FICA, and FUTA.

But whether damages for emotional distress arising from the same Title VII claim are subject to FICA and FUTA is a stickier issue. Under the SBJPA, damages are excludable from gross income only in cases of physical injury or sickness. And emotional distress alone isn't considered an injury. *Taxing result:* Damages for emotional distress alone (i.e., without damages for medical care resulting from the distress), are includable in an employee's gross income, but *aren't* subject to income tax withholding, FICA, and FUTA. *W-2 result:* These damages are shown only in Box 1 of the employee's W-2.

**Allocate properly.** The IRS told PAYLA that damages for emotional distress aren't subject to income tax withholding, FICA, and FUTA, *provided* the entire damage award or settlement is properly allocated between back pay and damages. The IRS, of course, reserves the right to reallocate awards which it deems unreasonable. *Beware:* Absolutely no authority defines "reasonable" in this context.

**Editor: Alice Gilman, Esq.**
**Production Manager: Christine M. Suler**
Payroll Legal Alert: Copyright © 1997 by Alexander Hamilton Institute, Inc., 70 Hilltop Road, Ramsey, NJ 07446. ISSN# 1085-7508. Printed in U.S.A. All rights reserved. No part may be reproduced in any form without the written permission of the publisher. To apply for permission, please contact the PAYLA Hotline at (201) 825-3377 Ext. 252. Permission will be granted on a case-by-case basis only.
This bulletin, which was specially prepared by the editors of the Alexander Hamilton Institute, is not designed to render legal advice or legal opinion. Such advice may only be given by a licensed, practicing attorney, and only when related to actual fact situations. The warning is particularly pertinent because of the nature of the topics covered herein; these cases are largely controlled by individual state law, and such matters should always be checked with the company's corporate counsel.
**For Order Information, Call Toll Free 1-800-879-2441.**

➲ **WHAT'S A PAYROLL PERSON TO DO?** First make the top brass in your company aware of this new IRS position, since it may influence how they handle these Title VII claims. And while you probably won't be involved in the litigation or settlement discussions, you *must* be involved in the allocation decision, since these awards have a definite impact on payroll.❖

## W-2s: *In the News Again*

It's never too early in the year for the IRS and the Social Security Administration (SSA) to issue W-2 news. With that in mind, here are the latest pronouncements you need to know from both agencies.

**1. Automatic extensions for final W-2s.** Last year, the IRS issued regulations for filing final W-2s if you go out of business. Under these regs, beginning this year, you must give employees their final W-2s when you file your final 941 form (forms are filed quarterly on April 30, July 31, October 31, and January 31). Final W-2s and a W-3 form must then be filed with the SSA one month after your final 941 is filed.

In requiring you to file final W-2s on this expedited basis, the IRS recognized that magnetic media filers would have a computer programming problem if forms were due before the year's mag media specifications were released. *Solution:* The regs provide for an automatic extension of time, so computers can be adjusted to the year's specs. The extension also applies to the time you have for giving employees their final W-2s.

The IRS has ruled that for mag media filers, the deadline for providing employees with forms under the automatic extension is October 31 of the year final forms are due. The SSA filing deadline is November 30. [Rev. Proc. 96-57, IRB 1996-53.]

➲ **FOURTH-QUARTER FINALS:** If you must provide expedited W-2s during the fourth calendar quarter of a year, follow the regular W-2 rules: Provide employees with their copies by January 31 of the next year and file with the SSA by the last business day of February.

**2. W-2s, W-4s, and 941s when a business is sold.** If you buy a business, you can save substantial FICA and FUTA dollars by using a special procedure which allows you, as the successor, to credit the

Case 3:03-cv-00174-RRB    Document 30-6    Filed 08/01/2006    Page 3 of 6

FICA and FUTA payments already made by the predecessor against your annual tax liability. The IRS has clarified this procedure to cover all contingencies and reporting responsibilities.

*Option #1.* A business is sold to a successor and both parties agree that the successor will perform all wage and tax reporting. If the predecessor goes out of business, it doesn't have to deal with W-2s for employees who continue to work for the successor. And these employees don't have to file new W-4s. But the predecessor must deal with W-2s on the expedited basis for employees who don't work for the successor. If only a portion of a business is sold, predecessors must provide W-2s to employees who don't work for the successor, and file them with the SSA, by the regular due dates.

*941s and W-3s.* Since the successor picks up the predecessor's withholding and reporting responsibilities, there will be a discrepancy between the amounts on the 941 form the predecessor files for the quarter of the acquisition and the totals on its W-3 form. There will be a corresponding discrepancy on the successor's 941 and W-3 forms.

Both parties must attach statements to their 941 forms explaining these discrepancies. Predecessors must include the successor's name, address, employer identification number; and a reference to Revenue Procedure 96-60. Successors must include the predecessor's name, address, employer identification number; and a reference to the same Revenue Procedure. These 941 forms can't be filed electronically.

*Option #2.* A business is sold to a successor, but the predecessor retains all reporting responsibilities, which include filing final W-2s and a final 941 form under the expedited procedure. If only a portion of a business is sold, the predecessor isn't required to file final forms. But W-2s must be provided to all employees (including employees who worked in the business which was sold) and filed with the SSA by the regular due dates. Employees who continue to work for the successor must file new W-4 forms, and the successor's W-2s and 941s reflect only the wages and taxes it pays. [Rev. Proc. 96-60, IRB 1996-53.]

**3. New W-2 codes.** Beginning with 1997 W-2s, three new codes apply for certain items which you must report in Box 13.
• Code R — Report your contributions to employees' medical savings accounts.
• Code S — Report employees' salary reduction contributions to your SIMPLE.

---

### It's March! Do You Know Where Your Corrected W-2s Are?

Congratulations! Year-end reporting is over. Well, not quite. Before you close the books on 1996, you must correct mistakes on the W-2s you just filed. Even if a service bureau handles your W-2s, it may not handle W-2 corrections. You can correct W-2s by following these tips.

✔ Corrections to W-2s are filed on Form W-2c, Statement of Corrected Income and Tax Amounts.

✔ W-2c forms are accompanied by Form W-3c, Transmittal of Corrected Income and Tax Statements. *Exception:* If you're only correcting employees' names, addresses, or Social Security numbers, you may send W-2c forms without a W-3c.

✔ You may file all W-2c forms on paper, even if your W-2s were filed on magnetic media.

✔ Don't correct federal income tax withheld (Box 2 on the W-2). *Example:* You mistakenly withheld on tax-free moving expenses. *Exception:* Correct Box 2 if the error is administrative (e.g., transposing numbers). If, due to a non-administrative error, employees were overwithheld, they'll get a larger refund; if they were underwithheld, they'll owe more tax.

✔ Do correct related errors in Boxes 1, 3, 4, 5, and 6 on the W-2, even if Box 2 isn't corrected.

✔ Provide W-2c forms to employees in the same manner that W-2s were supplied. Advise employees to compare the amounts on the W-2c to amounts on their 1040s. If the corrected amounts change their tax liability, they must file a Form 1040X, along with Copy B of the W-2c. If they haven't filed their 1040s, they must attach Copy B of the original W-2 and the W-2c to their forms.

✔ Make adjustments on your first-quarter 941 form, and attach a Form 941c, Supporting Statement To Correct Information.

---

• Code T — Report your payments under an adoption assistance plan. [Announcement 96-134, IRB 1996-53.]

**4. SSA to dump TIB-4.** Technical Information Bulletin 4 (TIB-4) contains the SSA's mag media specifications. But the SSA has seen the future of W-2 filing and it's electronic. To facilitate electronic filing, TIB-4 will be replaced with new Magnetic Media Reporting and Electronic Filing Specifica-

tions (MMREF-1), which consist of a single record format. It will be pilot tested in 1998. Mag media filers will then have several years to transition over to the new specs. [62 F.R. 1947, 1-14-97.]❖

## If the Check's in the Mail, Don't Withhold...Yet

Think that withholding income and FICA taxes from employees' pay only matters each actual payday? It's not always that cut-and-dried. Your duty to withhold kicks in when employees are actually or *constructively* paid. Constructive receipt means employees have unfettered control over their money. And the IRS has a long-standing rule on mailing checks: Checks sent through the mail never fit the constructive receipt category; they must be actually received. *Result:* Checks which are mailed may disrupt the timing of your year-end or quarter-end withholding and reporting.

Affirming this rule, the IRS concluded in a private letter ruling that an employee didn't have constructive receipt of two checks mailed by his employer in one year, but received in the next. [PLR 9651020.] *Warning:* PLRs are advice from the IRS to the requesting party. They may be used for informational purposes only; they may not be used or cited as precedent.

**A tangled web.** An employer agreed to settle an employee's discrimination claim. It electronically transferred his remaining pay, but mailed two checks representing the settlement and unused vacation pay. The checks were mailed at the end of one year, but weren't received by the employee until early the next year. On his W-2, the employer included his wages and the amounts of the checks. The IRS ruled that he didn't have constructive receipt of the two checks until the year they were actually received. *IRS:* The employer had sole control over the timing of the payment and didn't indicate to the employee that the checks were available to him in the previous year.

➲ **FIXING THE MESS:** Although the IRS didn't mention it, this is probably what this unlucky employer had to do. It reissued the checks, with taxes withheld at the new year's rates. It then backed the checks out of his W-2 and issued a W-2c. It would also have to issue a W-2 for the checks in the current year, even though that worker was no longer employed. If you want to avoid a similar mess, simply give employees the choice of picking up their checks. Once this option is on the table, employees have constructively received their pay, whether they pick the checks up or not.❖

## More Ex-Workers Join The Severance Pay Fray

Last July, PAYLA reported that about 750 ex-employees who received severance payments were suing the IRS for refunds of the income and FICA taxes which their former employer had withheld. These ex-employees have won an important early-round victory in their battle against the IRS. In a related move, more ex-employees of the same company filed refund suits in another federal court.

➲ **SMALL AMOUNTS, LARGE IMPACT:** The individual FICA refunds are small, averaging $1,500 per employee. But the larger impact should interest you. If these ex-employees eventually prevail, and you face a similar situation, you could save a bundle in FICA and FUTA taxes.

**David, meet Goliath.** These ex-employees asserted in their refund suit that their severance wasn't taxable because it was paid to settle potential physical injury claims, which the company anticipated before it made its severance offer. These injuries included insomnia, weight gain, headaches, hypertension, heart trouble, and other stress-related ailments. The IRS moved to dismiss the case. *IRS:* The company made the payments to persuade them to leave. There's no evidence suggesting that specific amounts were paid to encourage them to release personal injury claims.

"No evidence" was the problem, according to the federal trial court, which refused to dismiss the employees' case. *Court:* The company's intentions were ambiguous. The employees should be given the time to gather evidence and make their case. Judgment on whether to dismiss the case will come later. [Abbot v. U.S., No. 3:96CV510 TJM/DNH, D.C. N.N.Y. (1996).]

**Breaking up is hard to do.** Another refund suit filed on behalf of 2,139 more ex-employees of the same company is now pending in the Court of

**Payroll Legal Alert**　　　　　　　　　　　　　　　　　　　　　　　　　5

Federal Claims, which has nationwide jurisdiction. *Potential refund:* over $46 million. Although the tax issues are identical, the Court of Federal Claims isn't bound by the other trial court's decision. [Abrahamsen v. U.S., 1996.]

➲ **THE FALLOUT:** If you must handle a severance payment, your best bet is to withhold income and FICA taxes, and pay the employer's share of FICA and FUTA for now.❖

### WAGES AND HOURS

## Flexing Your Pay Policy Won't Muscle Out Exempt Status

Employees who are exempt from the Fair Labor Standards Act (FLSA) must be paid on a "salary basis." Generally, this means they must receive their full salaries in any week they perform any work. But the Department of Labor (DOL) has issued some opinion letters to employers which conclude that you can flex your exempt pay policy to accommodate some special situations.

**Overtime pay is OK.** The DOL says that you may pay exempts overtime without jeopardizing their exempt status. FLSA regs, noted the DOL, clearly state that exempt employees may receive pay in addition to their salaries. So exempts who log lots of overtime can be rewarded where it means the most — in the pocketbook. *Even better:* The DOL also says that you can pay exempts overtime on any basis. So you don't necessarily have to pay them time-and-a-half. Overtime may be at straight-time rates, a flat sum, or on another basis, including compensatory time off.

**Deductions from leave banks are OK, too.** Because of the salary test, you generally must continue to pay exempts their full salaries, even if your business is closed, provided they're ready, willing, and able to work. But even here, the DOL is willing to be reasonable. *DOL:* Deductions from exempts' leave banks for days when they're told not to show up for work because of budgetary constraints won't jeopardize their status if the deductions don't cut into their salaries.

---

### When Clocks Spring Forward, Make Sure Employees Do Too

At 2:00 a.m. on Sunday, April 6, 1997, daylight saving time goes back into effect. This means that graveyard-shift workers will actually work only seven hours. If you pay them for a standard eight-hour shift, don't include the extra hour's pay when calculating their regular rate to determine the overtime pay rate. The extra hour's pay also isn't included when calculating the number of hours worked.

---

➲ **COURTS REACT DIFFERENTLY:** Courts aren't bound by opinion letters. And some have denied employees' exempt status if they were paid overtime. *Proactive step:* If you don't want to take a chance in court, pay them a bonus instead. Other courts have ruled that exempts who have their leave banks docked, instead of their pay, are no longer exempt. *Option:* You can add the deducted days back into their banks, once the business is up and running again.❖

### UNEMPLOYMENT INSURANCE

## Benefits Report Card: Employers Get Failing Grades

Discipline policies are good. Not enforcing them consistently is bad. Disputing an employee's claim for unemployment benefits is good. Not presenting credible witnesses is bad. In these two cases, employers had the means to protect their accounts from unnecessary benefits charges, but lacked the will. You should learn from their mistakes.

**Case #1 — No to discipline, yes to benefits.** A long-term employee with an exemplary work record occasionally left work early, and worked at home. His time cards, however, didn't reflect this. *Worse:* His supervisor knew he did this and never disciplined him, even though company policy prohibited both actions. He was summarily fired after the company claimed he falsified his time cards. His application for benefits was initially denied on the basis that he was fired for misconduct.

The Rhode Island Supreme Court eventually ruled that he wasn't fired for misconduct, since he wasn't

### Are You Experienced? Check These State Unemployment Rates

By April 30, your first installment of state unemployment taxes is due. States base your tax rate on a taxable wage base and your experience rating. *Vigilance pays:* The fewer benefits charged to your account, the lower your tax rate will be. *Here's proof:* In Colorado, Kansas, Missouri, North Carolina, and Tennessee, employers with the best experience pay zero dollars. And that's money which can be put to more productive uses.

The FUTA wage base is $7,000, but many states have higher wage bases. Taxes also vary among states. The chart on Page 8 lists the states' wage bases and rate ranges for experience-rated employers. As PAYLA goes to press, some states haven't released their 1997 rates; they're marked "Not Available." PAYLA will post the rates from these latecomers on our website at http://www.ahipubs.com in "HR Talk" under the discussion titled "1997 Unemployment Rates."

⊃ **WHAT'S THE DIFFERENCE:** Compared to last year, 17 states fiddled with their wage bases — two down (which means you pay less tax, even if your rate is the same), and 15 up (which means you pay more). And six states are in such good shape they've lowered their minimum and maximum rates.

---

warned or disciplined for his actions. *Court:* Without warnings, he had no way to know that his actions could lead to discharge. *Result:* benefits granted. [Cardoza v. Dept. of Employment and Training, 669 A.2d 1165 (1996).]

**Case #2 — He said, she agreed.** An employee was fired for allegedly creating two disturbances, which disrupted other employees. The company disputed her claim for benefits, and presented three witnesses at the unemployment hearing. *Problem:* They didn't testify that the employee's outbursts disrupted the other employees. *Worse:* The employee presented witnesses who corroborated the statements of the three other witnesses. Based on the credibility of the witnesses, the unemployment commission granted her benefits.

A South Carolina appellate court overturned the commission's decision. But the state supreme court reversed and reinstated the benefits. *Court:* Assessing the credibility of witnesses at unemployment hearings is a job for the commission, not the appellate court. [Milliken & Co. v. Employment Security Comm., 468 S.E.2d 638 (1996).]

⊃ **GET AN "A" FOR EFFORT:** Dust off the employee handbook and make sure managers know the company's rules and enforce them. If you get to an unemployment hearing, make sure you know what your witnesses are going to say beforehand. ❖

---

**BENEFITS**

## Auditing Your 401(k) Plan Makes Dollars and Sense

If some employees who could participate in your 401(k) plan fell through the cracks, or others contributed too much, your 401(k) plan doesn't have to pay the ultimate price for these so-called operational errors. Instead of disqualification, the IRS has a new administrative policy, which allows plan administrators and plan sponsors to correct these violations without incurring penalties. The policy is called Administrative Policy Regarding Self-Correction, or APRSC, and is effective immediately.

**Eligibility to participate in APRSC.** The IRS's national office released the APRSC guidelines, but eligibility to participate is at the discretion of IRS district offices. The guidelines note that you can't participate if you fall into one of these categories.
• The plan correction requires an amendment, either to comply with law changes, or to accommodate demographic changes in your work force.
• The violation doesn't involve the exclusive benefit rules (i.e., misuse or diversion of plan assets).
• The IRS isn't auditing the plan.

**When to use APRSC.** The IRS says you can use the new guidelines to correct operational errors,

---

### For Additional Information...

If you have any questions or comments, please contact the PAYLA Hotline by phone at (201) 825-3377 Ext. 252, by fax (201) 825-8696, by mail to PAYLA c/o AHI, 70 Hilltop Road, Ramsey, NJ 07446, by e-mail at PAYLA@ahipubs.com, or visit our website at http://www.ahipubs.com.