Case 3:03-cv-00174-RRB    Document 30-11    Filed 08/01/2006    Page 1 of 10

JOHN GILBERT vs. APC NATCHIQ, INC.                    DEPOSITION OF CHRISTOPHER B. BOYLE
CASE NO.: 3:03-CV-00174-RRB                                                  JUNE 1, 2006

Page 1

```
 1           IN THE UNITED STATES DISTRICT COURT
 2              FOR THE DISTRICT OF ALASKA
 3   JOHN GILBERT,              )
                                )
 4        Plaintiff,            )
                                )
 5   vs.                        )
                                )
 6   APC NATCHIQ, INC.          )
                                )
 7        Defendants.           )  Case No. 3:03-CV-00174-RRB
                                )
 8
 9          DEPOSITION OF CHRISTOPHER B. BOYLE
                    June 1, 2006
10
11   APPEARANCES:
12        FOR THE PLAINTIFF:    MR. KENNETH L. COVELL
                                Attorney at Law
13                              712 Eighth Avenue
                                Fairbanks, Alaska 99701
14                              (907) 452-4377
15        FOR THE DEFENDANT:    MS. PATRICIA L. ZOBEL
                                DeLisio Moran Geraghty &
16                              Zobel
                                Attorneys at Law
17                              943 West Sixth Avenue
                                Anchorage, Alaska 99501
18                              (907) 279-9574
19        ALSO PRESENT:         MR. JOHN GILBERT
20                    * * * *
21
22
23
24
25
```

EXHIBIT C
PAGE 1 OF 10

JOHN GILBERT vs. APC NATCHIQ, INC.  
CASE NO.: 3:03-CV-00174-RRB

DEPOSITION OF CHRISTOPHER B. BOYLE  
JUNE 1, 2006

Page 54

```
 1   A    Yes, I'm not sure specifically if this memo generated
 2        the subsequent activity, but on or about that time
 3        frame there were several issues going on that were
 4        being reviewed.
 5   Q    Okay. All right. Let me hand you another one, a
 6        letter dated December 26, '96. Come on now.
 7             MS. ZOBEL: I believe you've already produced
 8   that.....
 9             MR. COVELL: Oh, that's that one.
10             MS. ZOBEL: .....Counsel, that's Exhibit 1.
11             MR. COVELL: Okay.
12             MS. ZOBEL: B-1.
13             MR. COVELL: Excellent. Thank you. All
14   right.
15             MS. ZOBEL: You don't have that, Mister.....
16   A    Oh.
17             MS. ZOBEL: .....Chris. B-1, please?
18             COURT REPORTER: I do not have B-1.
19             MR. COVELL: It's right here.
20   A    Isn't it? Yeah.
21             MS. ZOBEL: Oh, all right.
22             MR. COVELL: Okay.
23             MS. ZOBEL: I'm sorry.
24   Q    (By Mr. Covell) All right. So this B-1 letter is
25        from you, and if you look at that last sentence of the
```

Page 55

```
 1        first paragraph, it says, in addition, it's
 2        appropriate to review whether personnel currently paid
 3        as exempt are properly classified. It says that,
 4        right?
 5   A    Under number 1?
 6   Q    Right.....
 7   A    The first.....
 8   Q    .....right there.
 9             MS. ZOBEL: We have a different letter.
10   Q    Okay. December 26, '96.
11   A    Yes.
12             MS. ZOBEL: This isn't a December 26th, '96
13   letter.
14             MR. COVELL: I've got it here.
15   A    That's what I've got.
16             MR. COVELL: Okay. And what do you have?
17             MS. ZOBEL: The same thing. You gave it to
18   me.
19             MR. COVELL: Okay. All right.
20   Q    (By Mr. Covell) And looking at the last sentence of
21        the first full paragraph, can you read that for me?
22   A    The main issue is whether the day rate is an
23        appropriate form of payment under wage and hour laws.
24        In addition, it is appropriate to review -- it is
25        appropriate to review whether personnel currently paid
```

Page 56

```
 1        as exempt are properly classified.
 2   Q    Okay. So that was a direction to -- okay. Who are
 3        these folks at the top of the page there, to?
 4   A    Don Dieckmeyer, Scott Eliason, Dick Frederick, Lee
 5        Gabrielson, Jack Laasch -- just business unit heads.
 6   Q    Okay. Unit managers.....
 7   A    Yes.
 8   Q    .....generally speaking?
 9   A    Not -- not all out in the field though.
10   Q    Okay. But.....
11   A    Lead people.
12   Q    Okay. And then this is -- the -- I think this -- what
13        -- the letter is on a day rate issue, but you're
14        saying also, take a look at your people and see
15        whether they're exempt or non-exempt, right?
16   A    Yes.
17   Q    Okay. And then you say here are the attachments,
18        here's some guidelines to work with that we talked
19        about earlier?
20   A    Yes.
21   Q    Okay. And that's December 26th, which is the -- you
22        know, the end of -- the day after Christmas. You were
23        working?
24   A    I could have been, yes.
25   Q    All right. Did you get.....
```

Page 57

```
 1   A    Darn it. Maybe we can talk.
 2             MS. ZOBEL: Oh, Chris, you didn't say that.
 3   A    Yeah. Strike that.
 4             MS. ZOBEL: Yeah.
 5             MR. COVELL: I'll stipulate to that being
 6   stricken from the record.
 7   Q    (By Mr. Covell) Okay. So it's some weeks after that
 8        that Anne Hippe memo, which is B-4 [sic] I believe.
 9   A    Yes.
10   Q    Right. Okay. And then subsequent to that, April 4,
11        '97, we get another letter from you.
12             MR. COVELL: Will you mark that sequentially,
13   please, Madame Clerk.
14             COURT REPORTER: I'm sorry. You just referred
15   to something as B-4, this is B-4.
16             MR. COVELL: Okay. I stand corrected.
17             COURT REPORTER: We do not have a B-4.
18             MR. COVELL: Whatever the Anne Hippe letter of
19   December 7, '96.....
20             COURT REPORTER: That's B-3.
21             MR. COVELL: B-3.
22             COURT REPORTER: All right.
23             MR. COVELL: That's what I meant to say.
24             COURT REPORTER: Right now we're going to mark
25   B-4.
```

EXHIBIT C  
PAGE 2 OF 10

15 (Pages 54 to 57)

Case 3:03-cv-00174-RRB   Document 30-11   Filed 08/01/2006   Page 3 of 10

JOHN GILBERT vs. APC NATCHIQ, INC.                          DEPOSITION OF CHRISTOPHER B. BOYLE
CASE NO.: 3:03-CV-00174-RRB                                                    JUNE 1, 2006

Page 58

1    MR. COVELL: That's what we want.
2         (Deposition Exhibit 4 marked)
3    MS. ZOBEL: And this should also be marked as
4  a Z.....
5    MR. COVELL: Excellent.
6    MS. ZOBEL: .....APC 010.....
7    MR. COVELL: Yes.
8    MS. ZOBEL: .....80 -- 180.
9    MR. COVELL: Thank you. And do we have any
10 other ones here that should be Z's? I think we.....
11   MS. ZOBEL: I think Madam Clerk has put a Z on
12 every one of them so far.
13   MR. COVELL: Excellent.
14   COURT REPORTER: Yes.
15   MR. COVELL: Thank you.
16   MS. ZOBEL: You may want to put them on yours.
17   MR. COVELL: I want to, but I can't walk and
18 chew gum at the same time, so I'm not getting there. But
19 thank you.
20   MS. ZOBEL: You're welcome.
21 Q  (By Mr. Covell) Okay. All right. Mr. Boyle, looking
22    at B-4, this is continuing correspondence along the
23    vein of day rate and wage and hour classification, is
24    that right?
25 A  Yes.

Page 59

1  Q  Okay.
2  A  I'm not -- however, I'm not sure if it's connected
3     directly with the December 7th memo from Mark Nelson
4     to Anne Hippe, Toby Osborn.
5  Q  Okay. Is it either indirectly connected or at least
6     addressing as far as exemption goes the same subject
7     matter?
8  A  Well, it's addressing -- this -- the April 4th letter
9     is addressing specifically the appropriateness of day
10    rate.
11 Q  Okay. Well, I'm looking at the second paragraph.
12    Alaska has no specific wage -- okay, that's fine.
13    Thank you for helping me here. Looking at the second
14    paragraph, it says -- why don't you read that for us,
15    please?
16 A  Alaska has no specific wage and hour law addressing
17    the payment of a day rate to exempt employees. Of
18    course, the first step an employer must take is to
19    properly classify an employee as exempt, parenthesis,
20    not eligible for overtime, or non-exempt. I've
21    previously provided some information on this subject
22    and would recommend we again look at the foreman and
23    similarly classified employees to ensure their status
24    can stand up to the exemption test.
25 Q  Okay. Is it fair to say that that paragraph is a

Page 60

1     reiteration of the sentence in the April 4th letter
2     that says, I have previously -- hang on. We're in the
3     April 4th letter. In the perhaps B-1 exhibit, the
4     December 26, '96 letter, in addition, it is
5     appropriate to review whether personnel currently paid
6     as exempt are properly classified. Do you want me to
7     repeat it?
8  A  Yes, please.
9  Q  Okay. The second paragraph of the April 4 letter, is
10    it fair to characterize that as a follow up to the
11    December 26th letter at the last part of the first
12    paragraph that talks about whether people are properly
13    classified as exempt or non-exempt?
14 A  Again, I don't think there is a direction connection
15    between the December 26th letter and this April 4th
16    letter.
17 Q  Okay.
18 A  This -- the April 4th letter appears to be
19    specifically addressing foremen, and this is -- this
20    -- the December 26th letter seems to be addressing
21    just the general issue of exempt versus non-exempt.
22 Q  Okay. So December 26th is more general, and April 7
23    [sic] is more specific as to foreman?
24 A  Based on that paragraph that I read, yes.
25 Q  Okay. All right. Would -- is it reasonable to think

Page 61

1     a safety supervisor for purposes of analysis for
2     classification as exempt or non-exempt as a foreman?
3  A  I would disagree with that.
4  Q  Okay.
5  A  Based on the little knowledge I have of both those
6     positions and what they do.
7  Q  Okay.
8  A  They're entirely different functions.
9  Q  And what's the difference in the functions?
10 A  The foreman may be actual -- they could be working
11    foremen actually down -- down there working with the
12    -- with the crews, clearly a non-exempt position in my
13    opinion, versus a safety supervisor who, you know, may
14    have other duties.
15 Q  Okay. But a safety supervisor as well could be down
16    there working with the crews as well, right?
17 A  To perform functions? No.
18 Q  Couldn't be?
19 A  No.
20 Q  A safety supervisor couldn't be doing a.....
21 A  They're not going to be down there digging ditches,
22    they're not going to be down there hammering nails.
23 Q  And neither would a safety specialist, right?
24 A  I wouldn't think so.
25 Q  Okay. But a safety supervisor -- well, do you know if

EXHIBIT  C
PAGE  3  OF  10

16 (Pages 58 to 61)

# NATCHIQ, INC.

ALASKA PETROLEUM
CONTRACTORS, INC.

HOUSTON CONTRACTING
COMPANY - ALASKA, LTD.

To: D. Dieckmeyer, S. Eliason, D. Frederick, L. Gabrielson, J. Laasch, L. Shultz

From: Christopher B. Boyle

Date: December 26, 1996

Subject: Wage & Hour Day Rate Analysis

There have been recent concerns raised about our practice of paying certain personnel a day rate versus a straight monthly salary. The main issue is whether the day rate is an appropriate form of payment under wage and hour laws. In addition, it is appropriate to review whether personnel currently paid as exempt are properly classified.

To further this review, the Payroll Department has already requested listings of all personnel currently paid on a day rate. I also have the following requests:

1) Review all exempt (not subject to overtime) occupations to determine if they are properly classified as exempt. Provided as guidance is an attached document which provides functional definitions of exempt employees in administrative, executive, and professional positions. Please be critical in this review and provide a listing of any personnel who may not fit the criteria of exempt. We will then further review these personnel to ensure they are properly classified.

For purposes of this review, do not be concerned with contractual language at this time.

2) Please provide me with the requested information by **January 15, 1997**.

In the meantime, we will be determining whether the practice of paying a day rate is appropriate for our organization.

Please forward this request to whomever you delegate to address this request at your respective organizations.

Thank you for your assistance.

cc:  G. Cheek
     A. Hippe
     T. Osborn

EXHIBIT C
PAGE 4 OF 10

DATE June 1, 2006 EX. B-1
WITNESS Boyle
METRO COURT REPORTING
(907) 276-3876

A Subsidiary of Arctic Slope Regional Corporation
6700 Arctic Spur Road • Anchorage, Alaska 99518-1550 • (907) 344-5757 • FAX: (907) 267-3190

of that entity and not an independent contractor.[1] In fact, the Alaska Supreme Court recently held that a partner in a partnership was an employee for purposes of the Alaska Wage and Hour Act. <u>Bobick v. Stewart</u>, 843 P.2d 1232, 1236 (Alaska 1992).

9. **IMPROPERLY CLASSIFYING EMPLOYEES AS EXEMPT**

One of the most common and most expensive mistakes that employers make is to improperly label employees covered by the Alaska Wage and Hour Act as exempt. The Alaska Wage and Hour Act contains numerous exemptions for certain employees such as agricultural workers, employees of small mining operations or small newspapers, seamen or casual employees. AS 23.10.060(d). Additionally, numerous other employees are exempt from both overtime and minimum wage provisions of the Alaska Wage and Hour Act. Among the most important of these are exemptions for individuals employed in a bona fide executive, administrative or professional capacity or individuals employed as supervisors, outside salesmen or straight commission salesmen. AS 23.10.055(9). However, simply labeling an employee as exempt is not enough to avoid overtime liability. Rather, the employer must meet the test established by the Department of Labor.

The regulations define an administrative employee as an employee:

  1) whose primary duty consists of work directly related to management policies or supervising the general business operations of his employer;

  2) who customarily and regularly exercises discretion and independent judgment;

  3) who performs his work under only general supervision;

  4) who is paid on a salary or fee basis;

---

[1] Employers should be aware that the economic realities test is only used for wage and hour analysis. Other factors are used to evaluate independent contractor/employee relationships for purposes of tort liability, worker's compensation, unemployment insurance, the NLRA, Title VII or IRS tax liability.

8

EXHIBIT C
PAGE 5 OF 10
APC0184

5) who regularly and directly assists a proprietor or an exempt executive employee of the employer; and

6) who performed work along specialized or technical lines requiring special training, experience or knowledge, and does not devote more than 20%, or in the case of an employee of a retail or service establishment who earns at least two and one-half times the state minimum wage per hour for the first 40 hours of employment each week and who does not devote more than 40% of the employee's weekly hours to nonexempt activities.

8 AAC 15.910(a)(1).

An executive employee is defined as an employee:

1) whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized branch, department, or subdivision of the enterprise;

2) who customarily and regularly directs the work of two or more other employees;

3) who has authority to hire or fire or effect any other change of status of other employees or whose suggestions or recommendations regarding these kinds of changes are given particular weight;

4) who customarily and regularly exercises discretionary authority;

5) who does not devote more than 20%, or in the case of an employee of a retail or service establishment who earns at least two and one-half times the state minimum wage per hour for the first 40 hours of employment each week and who does not devote more than 40% of the

9

EXHIBIT C
PAGE 6 OF 10

APC0185

employee's weekly hours to activities which are not directly and closely related to administrative, executive or professional work.

8 AAC 15.910(a)(7).

A professional employee is defined as an employee

1) whose primary duty is

   a) to perform work requiring knowledge of or an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study, as distinguished from a general academic education or from an apprenticeship or from training in the performance of routine mental, manual, or physical processes, or

   b) to perform work that is original and creative in character in a recognized field of artistic endeavor (as opposed to work which can be produced by a person with general manual or intellectual ability and training), and the result of which depends primarily on the invention, imagination, or talent of the employee, or

   c) to teach, tutor, instruct or lecture in the activity of imparting knowledge and who is employed and engaged in this activity as a teacher certified or recognized as such in a school or other educational establishment or institution; and

2) whose work



**NATCHIQ, INC.**

ALASKA PETROLEUM CONTRACTORS, INC.

ASRC PARSONS ENGINEERING, LLC

HOUSTON CONTRACTING COMPANY - ALASKA, LTD.

To:       Mark Nelson/Charlie Schick

From:     Christopher B. Boyle

Date:     April 4, 1997

Subject:  Exempt Employee - Payment of Day Rate

In follow-up to your questions of the appropriateness of paying a day-rate to exempt employees, the following will provide guidance.

Alaska has no specific Wage & Hour law addressing the payment of a day-rate to exempt employees. Of course, the first step an employer must take is to <u>properly</u> classify an employee as exempt (not eligible for overtime) or non-exempt. I have previously provided some information on this subject and would recommend we again look at the foreman and similarly classified employees to ensure their status can stand up to the exemption test.

Concerning the payment of day-rates, Alaska has not adopted its own regulation defining "salary basis". However, federal regulations specifically allow paying exempt employees on a day-rate basis when a guarantee of work per week is given. 29 C. F. R. 541.118 (b).

The appropriateness of paying a day rate was raised in Alaska in 1989 at which time the Department (Wage & Hour) ruled that day-rate employees did not meet the salary requirements under state law. However, when challenged, the Department reversed itself and issued the following interpretive ruling in December, 1989:

> The Department "would indeed allow a daily rate providing the following procedures and conditions are true: An employer wishing to compensate an employee on a daily basis, who is otherwise exempt from provisions of the Wage & Hour Act, must communicate to that prospective employee their daily rate <u>and</u> the minimum amount guaranteed each week that any work is performed. In the absence of such documentation, the employer's intent may not be clear concerning the minimum weekly salary to be paid and that employee could become overtime eligible".

DATE June 1, 2006 EX. B-4
WITNESS Boyle
METRO COURT REPORTING
(907) 276-3876

A Subsidiary of Arctic Slope Regional Corporation
6700 Arctic Spur Road • Anchorage, Alaska 99518-1550 • (907) 344-5757 • FAX: (907) 267-3190

Z APC0180
EXHIBIT C
PAGE 8 OF 10

Page 2

In summary, we may pay exempt employees on a day-rate provided very specific conditions are satisfied. I understand from speaking with you that it is beneficial from a reimbursable stand point to pay on a day-rate. However, I would be concerned about the consistent application of the requirements and other practices, known or unknown, that may cause an employees pay to vary from week to week. This is seldom a concern when establishing and paying a straight monthly salary.

Another question you raised was whether a two on two off cycle would constitute a "weekly" basis. The answer is no. Under applicable federal and state regulations, a workweek is a fixed and regularly occurring period i.e., seven consecutive 24 hour periods. The work week may begin on any day of the week and need not coincide with a calendar week; an individual employee's workweek is the statutory or contract number of hours that are to be worked during that period; the workweek may not be artificially adjusted for the purpose of avoiding the payment of overtime, however, the workweek may be changed for any other purpose as allowed by the regulations.

A final question you referred to me was the issue of waiting time if the Charter breaks down or cannot fly due to weather. For non-exempt employees, there is no obligation to pay for "waiting" time. However, many employers will provide some compensation in recognition of the inconvenience and loss of income the employee incurs through no fault of their own. For exempt employees, if they are ready and able to work, but cannot travel to the work site through no fault of their own, no deductions from normal pay would be allowed.

Recommendations

The following are recommended actions relative to the day-rate issue:

1) Review all occupations where there may be questions concerning whether they are properly classified as exempt or non-exempt, i. e., foremen and other personnel whose actual job responsibilities and duties may not meet the overtime exemption test.

2) Consider a flat monthly salary for exempt employees.

3) If day-rate status is maintained, ensure the following:

   a) Employees are clearly advised, in writing, of their daily rate <u>and</u> the minimum guaranteed each week that any work is performed. Our current "Notice of Wage Payments" can be modified to address this requirement.

EXHIBIT __C__
PAGE _9_ OF _10_

APC0181

b) Ensure there are no inappropriate deductions from pay. In this context, it means there must be no deductions from pay unless the employee absents himself from work for a day or more for personal reasons, other than sickness or accident. **Deductions for a partial day worked are not permitted** unless the leave falls under the Family Medical Leave Act.

c) Deductions may not be made for jury duty, attendance as a witness, or temporary military leave. Concerning, jury duty, the Department is unclear as to how long the employer can be expected to provide pay to an employee who is on jury duty for an extended period.

I know this information may be more than what you were looking for, but determining proper procedures under Federal and State Wage & Hours laws is very complex. In speaking with the Department, they are often unclear on many issues related to exempt status. It appears case law rulings are often contradictory resulting in the uncertain application of the regulations. Of course, this creates even more uncertainty for employers.

Let me know if I can help you review your current practices or if you need further information.

cc: B. Cheek
T. Osborn
J. Cehula
J. Laasch
L. Gabrielson
M. White/S. McKay
D. Dieckmeyer
D. Burrows