Kenneth L. Covell
LAW OFFICE OF KENNETH L. COVELL
712 Eighth Avenue
Fairbanks, Alaska  99701
(907) 452-4377 telephone
(907) 451-7802 fax

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOHN GILBERT,                         ) | |
|                                       ) | |
|          Plaintiff,                   ) | |
|                                       ) | |
| vs.                                   ) | |
|                                       ) | |
| APC NATCHIQ, INC.                     ) | |
|                                       ) | |
|          Defendants.                  ) | |
| _____) | Case No. 3:03-CV-00174  (RRB) |

# MOTION FOR PARTIAL SUMMARY JUDGMENT ON THE

# ISSUE OF EXEMPTION

### INTRODUCTION

John Gilbert (Gilbert) was hired as a Safety Specialist by APC Natchiq, Inc, at the Kuparak Field on the North Slope of Alaska.  Gilbert was hired on January 30, 2001 to January 1, 2002 after which he was promoted to Safety Supervisor and worked for defendant through April 22, 2003.  Gilbert filed a lawsuit on June 20, 2003, making a

claim for overtime pursuant to the Alaska Wage and Hour Act (AWHA), the Fair Labor Standards Act (FLSA), and a contractual claim for unpaid overtime.

Under both Federal and State Wage and Hour law, an employee is presumed to be nonexempt (i.e. entitled to overtime). Under State Wage and Hour law, the employer must prove beyond a reasonable doubt that the employee is exempt.

The burden of proof upon the defendant employer is, proof beyond a reasonable doubt that the employee is exempt (i.e. not entitled to overtime). Additionally, under State law, even if the employee performs exempt duties, if he/she spends more than 20% of his/her time on nonexempt duties, then he is nonexempt.

The defendant employer here has produced either no; or paltry, evidence to indicate that Gilbert is exempt. This evidence, in no fashion, is sufficient to prove beyond a reasonable doubt that Gilbert was an exempt employee. Both additionally; and as part of the foregoing, defendant made no time analysis of Gilbert's day to day duties to see whether or not he was performing exempt duties 20% of the time.

The position of Safety Specialist, as a matter of law, is nonexempt (i.e. entitled to overtime).

A party could perform an independent analysis of the Safety Supervisor position to decide it's exempt status. Simplistically, perhaps the most efficient way to arrive at a conclusion that the Safety Supervisor is nonexempt (keeping in mind, at all times, that there is a burden of proof beyond a reasonable doubt on the employer to make the case for exemption), is to ask what duties of the Safety Supervisor might be different from the known exempt position of Safety Specialist?

In any event, there is no demonstration in the evidence developed in discovery to show even by a preponderance of evidence (much less clear and convincing evidence, much less proof beyond a reasonable doubt) that Gilbert, while working as a Safety Supervisor was exempt from the overtime requirements. The Court should enter an order, finding that, as a matter of law, Gilbert, while working as a Safety Supervisor was nonexempt.

## THE LAW

The Fair Labor Standards Act (FLSA) is a Federal act which ensures that employees receive time-and-a-half for overtime for hours worked over 40 hours per week. 29 USC § 207. The Alaska Wage & Hour Act (AWHA) is a state act which ensures that time-and-a-half wages are paid for overtime hours over 40 hours a week and/or eight hours a day. AS 23.10.060. The Alaska Wage & Hour Act can provide greater protection for employees than the Federal act. *Quinn v. ASEA*, 944 P.2d 468, 471 (Alaska 1997). Both acts provide exemptions from overtime for persons employed in "bona fide executive, administrative, or professional" positions. 29 USC § 213, AS 23.10.055(9). An employer who claims an exemption from the FLSA has the burden of showing that the exemption applies. *Donovan v. Nekton, Inc.*, 703 F.2d 1148, 1151 (9th Cir. 1983). The FLSA is to be liberally construed to apply to the furthest reaches consistent with Congressional direction. FLSA exemptions are to be narrowly construed against employers, and are to be withheld except as to persons plainly and unmistakably within their terms and spirit. *Klem v. County of Santa Clara*, 208 F.3d 1085, 1089 (9th Cir. 2000).

The purposes of the Alaska Wage & Hour Act are to compensate those who labored in excess of the statutory maximum number of hours, for the wear and tear of extra work, and to spread employment by inducing employers to shorten hours because of the pressure of extra cost. *Janes v. Otis Engineering Corp.*, 757 P.2d 50 (Alaska 1998). The burden is on the employer to prove an exemption. *Dayhoff v. Temsco Helicopters*, 848 P.2d 1367 (Alaska 1993). The burden of proof in the State case is proof beyond a reasonable doubt. *Fred Meyer v. Bailey*, 100 P.3d 881, 884 (Alaska 2004). Both the AWHA and the FLSA are to be liberally construed in favor of the employee. *Whitesides v. U-Haul*, 16 P.3d 729, 732 (Alaska 2001).

The Federal regulation applicable to this case, described as the "short test," defines an employee employed in a bona fide administrative capacity as an employee who

    a) is compensated on a salary basis at a rate of at least $250.00 per week, per week;

    b) whose primary duty consists of the performance of office or non-manual work directly related to management policies or general business operations of his employer or his employer's customers; and

    c) whose duties include work requiring the exercise of discretion and independent judgment.

29 CFR § 541.2.

Thus, APC Natchiq, Inc. must prove that Plaintiff Gilbert meets all of the requirements in this regulation before he can be held exempt from coverage under the FLSA as an exempt administrative employee.

The state regulation addressing administrative employees is 8 AAC 15.910(a)(1), which in pertinent part requires that

> (1) an "administrative employee" mean an employee
> (A) whose primary duty consists of work directly related to management policies or supervising the general business operation of the employer;
> (B) who customarily and regular exercises discretion and independent judgment;
> (C) who performs work only under general supervision;
> (D) who is paid on a salary or fee basis;
> (E) who regularly and directly assists the proprietor or an exempt executive employee of the employer; and
> (F) who performs work along specialized or technical lines requiring special training, experience or knowledge and does not devote more than 20 percent…. Of the employee's weekly hours to activities that are not described in this paragraph or (7) or (11) of this section [executive or professional employee duties].

8 AAC 15.910(a)(1).

The key parallel provisions of these tests are that an exempt employee's work must be directly related to management policies or the general business operations of his employer, and that the work requires the exercise of discretion and independent judgment. Plaintiff Gilbert's position as Safety Specialist meets neither of these two important tests.

## What Gilbert Did

Gilbert's duties are best described by his daily logs (submitted as Exhibit A). Additionally submitted by the employer is a job description (exhibit B). Gilbert did not see his job description prior to the filing of a lawsuit in this matter, which he generally agreed with the description as being at least partly descriptive of his job duties. Gilbert

states that his job as Safety Supervisor was essentially the same as a Safety Specialist, doing most of his job duties in the office. See Gilbert Deposition, Exhibit D, p.32 through 41, line 18, p.152 through 166; and Affidavit of Gilbert filed with this motion. Plaintiff's Interrogatory No. 1 asked for Defendant's explanation as to why Gilbert is exempt (see pages 1-4 of Defendant's Responses to Plaintiff's First Discovery requests, attached as exhibit C). Defendant answers conclusively referring to the Safety Supervisor position description amount to about six lines of text.[1]

29 CFR § 541.205 discusses the definition of "directly related to management policies or general business operations." This phrase describes those types of activities relating to the administrative operations of his business, as distinguished from production. 29 CFR § 541.205. Gilbert was, in fact, involved in production.

One of the significant field duties that Gilbert would perform dealt with confined space entry and hot work permits. As part of this process in doing confined space entry permits, he would "sniff" out vacuum truck. He would take a gauge, which could read various chemical gases and ensure that the levels of the gases were safe for entry. He would also ensure that other safety procedures were in place to ensure continued safe

---

[1] Plaintiff notes that these requests were answered after February 17, 2006, almost three years after termination of Gilbert's employment and nearly three years after filing the lawsuit. It seems, even at this late date, that defendant APC had no idea what category of exemption Gilbert fit into. Administrative? Professional? Executive?. Furthermore, even at this juncture, it is not clear to APC as to what purported exempt category he might be in. Indeed, Gilbert's deposition around the first of June 2006, defendant APC changed their position of saying that Gilbert was exempt under the administrative, professional, and executive exemptions to Gilbert being only exempt under the administrative exception, with a possible fall back position of Gilbert being a, "supervisory employee" under the State law. See Smith Deposition, Exhibit F, p.59 through p.61. Not only does this indicate that APC has no comprehensive idea of why Gilbert was exempt, but also further fuels Gilbert's motion to establish a lack of good faith and it's willful violation of the FLSA. Again, as a litigation strategy, "shot gunning" the exemption categories may make sense, but from the point of view of attempting to demonstrate good faith or lack of recklessness, it is clear evidence of conduct indicative of the defendant's attempt to evade the act(s).

entry. Sometimes employees entering the tanks would have to wear breathing apparatus, there would have to be other employees stationed outside in case of emergency, continuing ventilation may be necessary in order to keep the vessels below acceptable levels for entry. In doing this, Gilbert was assisting the production of the oil field.

> 29 CFR § 541.205(c)(1) …. [I]t is clear that bookkeepers, secretaries, and clerks of various kinds hold the run-of-the-mine positions in an ordinary business and are not performing work directly related to management policies or general business operations. On the other hand, a tax consultant employed either by an individual company or by a firm of consultants is ordinarily doing work of substantial importance to the management and the operation of the business.
> (2) …. A messenger boy who is entrusted with carrying large sums of money or securities cannot be said to be doing work of importance to the business, even though serious consequences may flow from his neglect. An employee operating very expensive equipment may cause serious loss to his employer by the improper performance of his duties. An inspector, such as, for example, an inspector an insurance company, may cause loss to his employer by the failure to perform his job properly. But such employees, obviously are not performing work of substantial importance to the management of the business that it can be said to be "directly related to management policies or general business operations" as that phrase is used in § 541.2.
> (3) Some firms employee persons whom they describe as "statisticians." If all such a person does, in effect, is to tabulate data, he is clearly not exempt. However, if such an employee makes analysis of data and draws conclusions which are important to the determination of, or which, in fact determine financial, merchandising, or other policy, clearly he is doing work directly related to management policies or general business operations. Similarly, a personnel employee may be a clerk at a hiring window of a plant, or he may be a man who

> determines or affects personnel employees affecting all the workers in the establishment. In the latter case, he is clearly doing work directly related to management policies and general business operations. These examples illustrate the two extremes. In each case, between these extreme types are the many employees whose work may be of substantial importance to management or operation of the business, depending on the particular facts. 29 CFR § 541.205(c)(1-3).

Gilbert in his job did not affect policy. As a safety specialist, Gilbert encouraged compliance with the safety rules. As a general rule, he did not write the safety rules, and he never authorized exceptions to them.

29 CFR § 541.205(b) provides that

> (B) The administrative operations of the business include the work performed by so-called white-collar employees engaged in "servicing" a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control… 29 CFR § 541.205(b).

Gilbert did little or none of these things.

### Primary Duty

The primary duty of an administrative employee is discussed under 29 CFR § 541.206, which incorporates by reference the primary duty definition for an executive under 29 CFR § 541.103. That section indicates that, generally, in order for a duty to be an employee's primary duty, the major part (or over 50%) of the employee's time is spent in the performance of managerial duties. While not completely definitive, this is a useful guideline. There may be other circumstances where an employee exercises his discretionary powers during the balance of the rest of his time, and therefore his

primary duty may be considered management. In this instance, Gilbert spent the primary amount of his time as a Safety Supervisor doing office Safety Specialist duties.

## Discretion and Independent Judgment

29 CFR § 541.207 discusses discretion and independent judgment.

> (a) … The term [discretion and independent judgment] as used in the regulations of subpart A of this part, more over, implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance….
> (b) The term must be applied in the light of all the facts involved in the particular employment situation in which the question arises. It has been most frequently misunderstood and misapplied by employers and employees in cases involving the following: (1) Confusion between the exercise of discretion and independent judgment, and the use of skill in applying techniques, procedures, or specific standards; and (2) misapplication of the term to employees making decisions relating to matters of little importance.
> (c) Distinguished from skills and procedures:
> (1) … An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices, is not exercising discretion and independent judgment within the meaning of § 541.2. This is true even if there is some leeway in reaching a conclusion as when an acceptable standard includes a range or tolerance above or below a specified standard.
> (2) A typical example of the application of skills and procedures is ordinary inspection work of various kinds. Inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures which may have been catalogued and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or

> experience. They may have some leeway in the performance of their work, but only within closely prescribed limits. Employees of this type may make recommendations on the basis of the information they develop in the course of their inspections (as for example, to accept or reject an insurance risk for a product manufactured to specifications), but these recommendations are based on the development of the facts as to whether there is conformity with the prescribed standards. In such cases, a decision to depart from the prescribed standards or the permitted tolerance is typically made by the inspector's supervisor. The inspector is engaged in exercising skill rather than discretion and independent judgment within the meaning of the regulations in Subpart A of this part. 29 CFR § 541.207(a), (b) and (c)(1) and (c)(2).

The regulation goes on to describe graders and checkers. The difference between an exempt employee and a non-exempt employee is that a grader or checker inspector will apply facts to a known standard. Potentially, an exempt employee would take the data compiled from these inspections, analyze it, and then perhaps make decisions that would change production and/or pricing.

Gilbert had no discretionary function of this nature. (See Affidavit of Gilbert, Exhibit G). If there was to be any deviation from a safety or any other procedure, it would be decided by someone further up the chain of command than Gilbert. Gilbert was as a Safety Supervisor who performed predominately Safety Specialist duties. It would also not be unreasonable or inaccurate to describe Gilbert as a Safety Inspector. *Zuber v. APC* 144 F.Appx. 657, 658 (9th Cir. 2005).

The appendix to part 541, of 29 CFR, at page 228; lists various occupations. Inspectors are addressed at 29 CFR § 541.108, 541.205, and 541.207, and safety *directors*

(emphasis added) are addressed at 541.201 and 541.205.  Sections 541.108(e) through (g) talk about examiners or checkers, who are part of a production operation rather than a part of a supervisory function.  Production was indeed Gilbert's job.  Section 541.207 discusses once again the issues of inspectors or graders or checkers under the heading of "Discretion and Independent Judgment."  Section 205 includes comments concerning both inspectors and safety directors.  See 29 CFR 541.205(c)(2) and (3) above.  Further in this regulation:

> (5) The test of "directly related to management policies or general business operations" is also met by many persons employed as advisory specialists and consultants to various kinds.  Credit managers, *safety directors*, claims agents and adjustors, wage rate analysts, tax experts, account executives of advertising agencies, customers, brokers, and stock exchange firms, promotion men, and many others.  29 CFR § 541.205(c)(5).  (Emphasis added.)

Here the regulation includes the safety director as an exempt employee. Gilbert was not a safety director.  He was a rank-and-file safety inspector.  The regulations indicate that a director is exempt, and an inspector is non-exempt.

The safety director is also mentioned in 29 CFR § 541.201(a)(2)(ii): "Typical examples of such employees are credit managers, purchasing agents, buyers, *safety directors*, personnel directors, and labor relations directors." (Emphasis added.)  Clearly, Gilbert's position is not of the same category as those mentioned in this regulation.  Perhaps Doug Smith, as the HSC Manager, might be closer to a position of HSC

director, (see organizational chart, Exhibit E), yet Gilbert never was in that role.[2]  These regulations clearly exclude Gilbert and his position as Safety Specialist/Safety Supervisor from the exemption under the FLSA.

The Secretary of Labor's interpretation of her own regulation[3] is entitled to deference and is controlling unless "plainly erroneous or inconsistent with regulation." *Bothell v. Phase Metrics*, 299 F.3d 1120, 1129 (9th Cir. 2002).  Citing also *Auer v. Robbins*, 519 U.S. 452, 461 (1997) and *Webster v. Public Sch. Employees of Wash., Inc.*, 247 F.3d 910, 912 (9th Cir. 2001).

*Dayhoff v. Temsco Helicopters Inc.* (Alaska 1993) discusses exemptions under the ASHA and FLSA:

> The AWHA is based upon the Fair Labor Standards Act and the Federal interpretations of the FLSA are relevant in interpreting the AWHA. *McGinnis v. Stevens*, 543 P.2d 1221, 1238-39 (Alaska 1975), appeal after remand, 570 P.2d 735 (Alaska 1977).  Under the Federal law, the employer has the burden to prove the exemption is applicable. *Reeves v. International Tel. & Tel. Corp.*, 357 F. Supp 295, 298 (WD La. 1973), Aff'd, 616 F.2d 1342 (Fifth Circuit 1980), cert denied, 449 U.S. 1077, 101 Supreme Court 857, 66 L.Ed. 2d 800 (1981)."  "Exemptions are to be narrowly construed against the employer." *Id.* At 297.  "If there is a reasonable doubt as to whether the employee meets the criteria for exemption, the employee should be ruled non-exempt." *Adam v. United States*, 26 Cl.Ct 782, 786 (Cl.Ct 1992).  All four elements must be met before an employee is found

---

[2] Even if the evidence is viewed in a light most favorable to the defendant, and that from time to time, Gilbert was called the HSC Manager, and the Court would rule that an HSC Manager is an HSC Director; Gilbert, whether anointed, with such title (of which there is no evidence), was not performing the duties of that position and defendant's have no substantive proof to that effect; and not to mention no proof beyond a reasonable doubt to that effect.  (See also Affidavit of Gilbert, Exhibit D).

[3] The Federal Department of Labor regulations are split into two categories, the general regulations (Subpart A) and the interpretive regulations (Subpart B).  See 29 CFR § 541 Table of Contents at page 178 in July 1, 2002 edition.

      exempt. *Id. Dayhoff v. Temsco Helicopters Inc.*, 848 P.2d 1367
      (Alaska 1993).

The primary duties test under Federal law is oftentimes used when the factors of state law are nearly identical and there is no authority interpreting state law. *Webster* 247 F.3d 917.

A long-standing Wage & Hour case that pertained to a position somewhat similar to Mr. Gilbert's job as a Safety Specialist dealt with a "field inspector" position evaluated in *O'Dell v. Alyeska Pipeline Service Company*, 856 F.2d 1142 (9th Cir. 1988). Gilbert would maintain that the position held by O'Dell was significantly more of a managerial type job than his position as Safety Specialist or Safety Supervisor. O'Dell's duties as a field inspector were described as follows:

> Alyeska field inspectors work without supervision at remote field locations along the pipeline. They maintain daily contact with their supervisors by telephone. When a field inspector determines that work fails to satisfy minimum standards set out in "control documents," he is to attempt to handle the discrepancy onsite by negotiation with the project supervisor. If a discrepancy cannot be resolved onsite, the filed [sic] inspector documents the problem and refers it to his supervisor or the Alyeska engineering department, making recommendations for waivers of specification if necessary. It is undisputed that field inspectors can reject work if it is deemed unacceptable. They can review and override the decisions of quality control inspectors employed by contractors. In 1982 and 1983 Alyeska field inspectors helped develop guidelines for inspection procedures. *O'Dell* at 1453.

O'Dell had the authority to override decisions of quality control inspectors and also make recommendations for waiver of specification. Those are the types of duties which would tend to lead one to believe an individual was exempt.

Gilbert v. APC Motion for partial SJ on Exemption                                        Page 13 of 15

In any event, in *O'Dell* the court found O'Dell to be exempt. However, in doing so the court ignored the applicable Department of Labor guideline regulations, citing *Hoyt v. General Insurance Co. of America*, 249 F.2d 589, 590 (9th Cir. 1957). *O'Dell* and *Hoyt* were both overruled in *Auer v. Robbins*, 419 U.S. 452, 461 (1997), as recognized in *Webster* at 914. All this clearly stated in *Bothell v. Phase Metrics*, 299 F.3d 1120, 1129 (9th Cir. 2002). Clearly, there is controlling authority to say that a field inspector position is a non-exempt position.

Controlling Ninth Circuit authority indicates that "field inspectors" are non-exempt employees. The field inspector in *O'Dell* has significantly more authority, and was more similar to a managerial employee, than Gilbert was in the instant case. Therefore, the controlling authority of *Auer*, *O'Dell*, and *Webster* require the court to find that Plaintiff Gilbert, as a safety specialist or "safety inspector,"[4] is a non-exempt employee.

## CONCLUSION

The burden of proof is on the defendant to show that Gilbert is beyond a reasonable doubt an exempt employee. There is a presumption that he is not exempt. The purported evidence of the defendant is paltry and clearly insufficient to prove beyond a reasonable doubt that Gilbert was an exempt employee as a Safety Supervisor. This is true in general, however especially and specifically if one looks at the 20% test,

---

[4] See Affidavit of Covell at ¶ 6.

there is absolutely no evidence, of any type, of hourly breakdown specific to Gilbert, and what he did to demonstrate an exemption.

Controlling 9th Cir. Authority, requires The Court to rule in plaintiff's favor in this regard. The *O'dell* case and associated cases show that a quality control inspector is a nonexempt position. Additionally, *Auer*, The Supreme Court authority says that *O'dell* was initially wrongly decided. The Courts are bound to follow the administrative regulation classifications found in the CFRs. The CFRs clearly define Safety Specialists as exempt (especially in light of *Zuber* decision) the regulations do classify Safety Directors as nonexempt. There is no evidence to show that Gilbert was a Safety Director. The controlling law, both through *O'dell* and the CFRs favor Gilbert. Especially when viewed in light of a substantial burden on the defendant and the proof beyond a reasonable doubt requirement of state law.

Respectfully submitted this 4th day of August, 2006 at Fairbanks, Alaska.

LAW OFFICES OF KENNETH L. COVELL
Attorney for John Gilbert

s/Kenneth L. Covell
712 8th Ave.
Fairbanks, AK 99701
Phone:  907.452.4377
Fax:  907.451.7802
E-mail:  kcovell@gci.net
Attorney Bar #:  8611103

**CERTIFICATE OF SERVICE**
This is to certify that a copy of the foregoing has been sent electronically to the following attorney(s):
**Patricia Zobel**
**DeLisio Moran Geraghty & Zobel**
**943 W. 6th Ave.**
**Anchorage, AK 99501**

Dated: 8/4/06
By:     /s/ Emily S. Ervin
       Emily S. Ervin for Kenneth L. Covell