IN THE U.S. DISTRICT COURT OF ALASKA
AT ANCHORAGE

RONALD E. ZUBER,

    Plaintiff,

vs.

APC NATCHIQ, INC.

    Defendants.

Case No. A03-0052CV (RRB)

FILED
SEP 1 8 2003
UNITED STATES DISTRICT COURT
DISTRICT OF ALASKA
By_____ Deputy

## PLAINTIFF'S OPPOSITION TO MOTION FOR PARTIAL SUMMARY JUDGMENT RE STATUTE OF LIMITATIONS AND CROSS MOTION FOR SUMMARY JUDGMENT ON THE ISSUE OF "WILLFULNESS" OF DEFENDANT APC NATCHIQ'S VIOLATION OF THE FAIR LABOR STANDARDS ACT AND THE LACK OF GOOD FAITH OF APC NATCHIQ'S VIOLATION UNDER BOTH FLSA AND THE AWHA

Plaintiff Zuber worked for Defendant APC Natchiq on the North Slope of Alaska from 1996 through January 2001 as a safety specialist. *See* Plaintiff's Motion for Summary Judgment on the issue of exempt/nonexempt status from overtime, for extensive discussion of Plaintiff's duties as a safety specialist.

Defendant has filed its motion for partial summary judgment regarding statute of limitations in anticipation that the court will find, as the law presumes, that plaintiff Zuber was entitled to time and a half for hours worked in excess of 40 hours a week under the Federal Labor Standard Act (FLSA) and in excess of 40 hours a week and/or 8 hours day under the Alaska Wage and Hour Act (AWHA).

There is generally a two year statute of limitations under the FLSA. However, 29 U.S.C. § 255 provides for a three year limitation if the defendant's actions in violating the Act were "willful." Initially, under the *Jiffy June* standard, *Coleman v. Jiffy June Farms, Inc.*, 458 F.2d 1139, 1142 (CA5 1971), *cert. denied* 409 U.S. 948, 34 L.Ed. 2d 219, 93 S. Ct. 292 (1972), all that was required

Page 1 - PLAINTIFF'S OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE STATUTE OF LIMITATIONS AND CROSS MOTION FOR SUMMARY JUDGMENT RE WILLFULNESS

LAW OFFICES OF
ENNETH L. COVELL
712 8TH AVENUE
FAIRBANKS, ALASKA 99701
PHONE (907) 452-4377

to show a "willful" violation was that the defendant knew that the FLSA existed and it governed overtime for its employees. *McLaughlin v. Richland Shoe*, 486 U.S. 128; 108 S. Ct. 1677; 100 L.Ed. 2d 115 (1998). The *Richland Shoe* decision amended the *Jiffy June* test to define a willful violation under 29 U.S.C. § 255.

Willful is a term of art, the determination of which is a mixed question of law and fact. *Alvarez v. IBP, Inc.*, 02-35042 (9th Cir. 2003) (Lois Law printout p. 11, Section VI). For the three year statute of limitations pursuant to 29 U.S.C. § 255 to obtain, an employer need not knowingly have violated the FLSA. The three year term can apply when an employer disregarded the very possibility that it was violating the statute. To prove a particular FLSA violation, the Supreme Court has generally required evidence of an employers knowing or reckless disregard for the very possibility of whether its conduct was prohibited by statute. *Id.*

Closely related to the question of willfulness, is whether or not the employer's conduct in failing to comply with the FLSA and Alaska Wage and Hour Act (AWHA) their actions were in "good faith". Under both the FLSA and the AWHA the employer may plead an affirmative defense to the liquidated damages sections of those acts, 29 U.S.C. § 260, AS 23.10.110(d). The burden of proof on the issue of willfulness is on the employee.

The burden of proof on the issue of good faith for damages in upon the defendant employer. To satisfy its burden the employer bears the "difficult" burden of proving both subjective good and objective reasonableness "with double damages being the norm, and single damages the exception" *Alvarez* citing to *Harmon v. S.R. Sec. Srv. Limited*. 172 F.3d 132, 141 (2d Cir. 1999) where the employers fails to carry that burden we have noted "liquated damages are mandatory". *Local 246 v. Cal. Edison*, 83 F.3d 292, 297 (9th Cir. 1996). The employer must take the necessary affirmative steps to ensure compliance.

Page 2 - OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE STATUTE OF LIMITATIONS AND CROSS MOTION FOR SUMMARY JUDGMENT RE WILLFULNESS

LAW OFFICES OF
NNETH L. COVELL
712 8TH AVENUE
BANKS, ALASKA 99701
HONE (907) 452-4377
FAX (907) 451-7802

Failure to inquire into Alaska law is not consistent with a claim of good faith. AS 23.10.110(g). Inquiry into Alaska law however does not necessarily meet the burden of proof to demonstrate good faith by clear and convincing evidence.

### DEFENDANT'S ACTIONS IN ASCERTAINING THE APPLICABILITY OF THE OVERTIME ACTS TO THE POSITION OF SAFETY SPECIALISTS

In discovery Plaintiff Zuber asked Defendant APC Natchiq what actions, if any, it took to investigate the overtime acts and insure compliance. In Defendant's First Supplemental Responses to Plaintiff's First Discovery Requests Answer to Interrogatory no. 4, they indicated their response. *See* Exhibit 4, pp. 1-3.

Additionally, when asked at his deposition, Mr. Nelson was asked:

Q   .... You spoke to Nancy Williams at ARCO about classification issues, you notified Anne Hippe and the CFO about your concern about these issues, you spoke to Mr. Carr on a number of conversations [sic] and based on – okay, okay. Spoke to Mr. Carr a number of times. Outside of those external resources, as it were – well, and you used the checklists. Outside of those resources did you use anything else to make your decision concerning the classification of safety specialists as exempt? If you recollect and I ....

A   I don't believe so.

Nelson Dep. Tab AA (hereinafter N.D.) at p. 36

The evidence necessary to decide the issues of willfulness and good faith can be brought to bear by examination of the depositions as submitted, the supporting exhibits, and affidavits, and also the motions and affidavits and their exhibits, filed concerning this issues.

The more expansive description of the actions of Mark Nelson and his interactions with Randy Carr follows:

Mark Nelson, who in 1996 was the manager of the Kaparuk Field came across an article in <u>Forbes</u> magazine indicating that employers were at risk for paying huge blocks of overtime. In response thereto Nelson made inquiry of ARCO concerning their treatment of certain positions as

LAW OFFICES OF
NNETH L. COVELL
712 8TH AVENUE
RBANKS, ALASKA 99701
HONE (907) 452-4377
FAX (907) 451-7802

Page 3 -  OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE STATUTE OF LIMITATIONS AND CROSS MOTION FOR SUMMARY JUDGMENT RE WILLFULNESS

exempt or nonexempt.[1] Ex. 4, pp. APC 0137-0138, Tab AA, N.D. at 16. Nelson notified the people in his financial department concerning his concern. N.D. at 17, lines 8-14. He also sought guidance from ARCO, a company that APC did significant business with and was also mentioned as a defendant in the Forbes article, concerning the issues of exemption from overtime. Tab AA, N.D. pp. 22, 23. ARCO's response was somewhat guarded and not very helpful to Nelson in his inquiry. Tab AA, N.D. p. 24, lines 5-23. Eventually Nelson obtained some "check lists" and explored the exempt/nonexempt status of a number of positions. Ex. 4, pp. APC 0148-0157. Besides being concerned about whether or not certain positions were exempt, Mr. Nelson was also concerned over whether or not certain supervisors, even though exempt were entitled to be paid straight time wages for all hours worked even though exempt. Tab AA, N.D., p. 19. In addition he was concerned about the issue of whether or not exempt employees could be paid at a day rate. See Chris Boyle letter to Mark Nelson, April 4, 1997. Ex. 4. APC 0180-0181.

Nelson also conferred with Randy Carr of the State Department of Labor Wage and Hour Division. There were two letters from Nelson to Carr and one letter from Carr to Nelson. Plaintiff Ex. 4, pp. 201-204. The correspondence, at least initially speak for

themselves and address the issues of exemption for position of "Materials Supervisor".

Mr. Carr responded with his letter of June 26, 1997 also notated as Wage and Hour Opinion Letter (WHOL) No. 122. It addresses the exempt status of the position called "Material Supervisor"

---

[1] Plaintiff notes that indeed the Forbes article seems to involve the salary basis test as opposed to the duties test, as to whether or not employees were exempt or nonexempt.

Page 4 - OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE STATUTE OF LIMITATIONS AND CROSS MOTION FOR SUMMARY JUDGMENT RE WILLFULNESS

LAW OFFICES OF
KENNETH L. COVELL
712 8TH AVENUE
FAIRBANKS, ALASKA 99701
PHONE (907) 452-4377
FAX (907) 451-7802

and also discusses payment of straight time wages for employees in a supervisory capacity, being paid for all hours worked.[2]

Mr. Nelson has testified that Mr. Carr told him that the position of safety supervisor was an exempt position, and he has in good faith relied on that opinion from 1996 through 2003 in classifying that position as exempt. Tab AA, N.D. at p. 19; p. 32, line 24 - p. 33, line 15. Mr. Nelson did not send a position description to Mr. Carr nor could he recollect at the time of his deposition what he told Mr. Carr the duties of the safety specialist were. *Id.* When initially asked about the duties of safety specialists at his deposition he responded that the safety specialist was the eyes and ears of management in the field. Tab AA, N.D. p. 7, lines 3-12.

### RANDY CARR'S DEPOSITION

Mr. Carr described at his deposition the Department of Labor, Wage and Hour opinion letters and the practice and policy of both the department and himself in giving opinions as to the exempt status of positions. Mr. Carr generally indicated that in order for an employer to safely rely upon an opinion of the department in defense to an action of the department for an enforcement of overtime, they would need to have a written formal Wage and Hour Opinion Letter (WHOL). He indicated that if individual asserted that they had a verbal telephone conversation with the department concerning exemption of a position that the department would still pursue them in an appropriate wage and hour action. Carr stated the reasons for this were that often time whether with malicious intent or not the people that contact him for opinions are not aware of what the actual job involves. He indicated that job descriptions while interesting and read by his department did not always reflect

---

[2] Plaintiff notes that even in Carr's letter of April 26, 1997, the complexity of the application of the wage and hour case law statutes and regulations was illustrated to Mr. Nelson wherein at page 2 of his letter he states,
> "The explanation as to why employees in a supervisory capacity must be paid for all hours worked is not found in the regulations. It must be pieced together from the statutes and court rulings. The U.S. Supreme Court has held that employees who are not exempt from minimum wage must be paid for all hours they are 'suffered or permitted' to work".

Such commentary ought to have put Mr. Nelson on notice that it was necessary for an in-depth and thorough review of any positions he was considering the classification as exempt or nonexempt.

Page 5 -  OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE STATUTE OF
LIMITATIONS AND CROSS MOTION FOR SUMMARY JUDGMENT RE WILLFULNESS

LAW OFFICES OF
KENNETH L. COVELL
712 8TH AVENUE
FAIRBANKS, ALASKA 99701
PHONE (907) 452-4377
FAX (907) 451-7802

the actual duties of what an employee did "on the ground". He further indicated that especially with the 20 and 40 percent time test for state wage and hour act questions it was absolutely essential to have a break down of both duties f the position and time spent in duties in order for the department to make any type of sensible determination about whether or not the employees are exempt or nonexempt. He further indicated that he would offer an opinion orally if asked about the exemption or nonexempt status of a position. However, it was his practice to always include language in these phone conversations that if you want a formal opinion, you need to get it in writing and other language to that effect. *See* Carr Dep. (hereinafter C.D.) *generally* Sept. 8, 2003, Tab BB

He also indicated that another reason why the opinions ought to be in writing was exactly what he perceived the issue to be. In the instant case to be that when you come back four, six or eight years later, peoples memories faded and exactly what may or may not have been said during the course of telephone conversation that many years ago is at best speculative.

For example, *see* C.D. at p. 16:

> Q   Okay. Now, the WHOL is a wage and hour opinion letter. Does the department give oral opinions as to whether or not an employee or position would be exempt or nonexempt?
>
> A   It is not our practice. That is not to say that someone in my office or even myself in discussing something that somebody might say, "well, you know that doesn't sound like its exempt" or "that sounds like my nonexempt – might be exempt." But the practice is if somebody wants to pursue that then they need to give us the facts in writing because we want to make sure that the fact they are presenting to us are on paper so that we can – we can point to the document six years later and say that these are facts upon which we based that opinion. And most of our opinions contain a caveat – I see this one doesn't but most of our opinions contain a caveat that this is in fact limited to this fact and this fact pattern and this position and shouldn't be appied to any other.
>
> Q   Okay, when you say this one, you are referring to WHOL 122.
>
> A   122, yes.[3]

---

[3] Plaintiff's notes that WHOL 122 pertains to the materials supervisor and not the safety specialist position.

Page 6 - OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE STATUTE OF LIMITATIONS AND CROSS MOTION FOR SUMMARY JUDGMENT RE WILLFULNESS

LAW OFFICES OF
KENNETH L. COVELL
712 8TH AVENUE
FAIRBANKS, ALASKA 99701
PHONE (907) 452-4377
FAX (907) 451-7802

Mr. Carr also noted that the checklist forms used by Mr. Nelson (N.D. Tab 4, pp. APC 150-151) (entitled "test for exemption") were not forms from his office and he had not seen them before; in part ascertaining this by observing that those checklists concerned federal standards. Tab BB, C.D. at 17, line 21 - p. 18, line 21. Carr further indicated that it would reasonable for an employer to rely upon a determination in paying an employee as exempt or nonexempt pursuant to a formal opinion letter (WHOL). Tab BB. C.D. p. 21, lines 12-17.

He further noted he had the opportunity to listen into a number of hearings concerning a good faith defense under state law, and that one of the concerns was that the use of the good faith defense may have been asserted as just a subjective opinion of the individual making the inquiry. Tab BB, C.D. p. 21, lines 18 - p. 22, line 11. When he was again asked whether there is such a thing as an opinion concerning exempt or nonexempt status. Tab BB, C.D. p. 23, lines 10 - p. 24, line 12. He concludes that response by saying an oral response is "nothing more than just theoretical."

On being questioned as to whether it would be reasonable for an employer to rely upon what might be called an oral opinion, Mr. Carr again expressed his concerned the need to have the entire opinion in writing in order to avoid misunderstanding. Tab BB, C.D. p. 24, line 24 - p. 26, line 10. He further indicated that in these conversations as "generally a part of our patter" that if you want a formal opinion this is how you go about getting it, and in other circumstances he frequently would refer people to legal counsel. Tab BB, C.D. p. 26, lines 10-22. In response to defendant's counsel's questions about "oral opinions" he finishes his response by saying "but if you want a formal opinion from the department you need to put it in writing and send it to Randy Carr". Tab BB, C.D. p. 35.

Other ways Carr has indicated an employer might indicate good faith would be to have an opinion letter from the U.S. Department of Labor. Tab BB, C.D. p. 38, lines 3-23. He further indicated that at the legislative testimony regarding adoption of a good faith defense by the state, that there was discussion that the U.S. Department of Labor procedures issued formal written opinion

LAW OFFICES OF
NNETH L. COVELL
712 8TH AVENUE
RBANKS, ALASKA 99701
IONE (907) 452-4377
FAX (907) 451-7802

Page 7 -   OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE STATUTE OF
           LIMITATIONS AND CROSS MOTION FOR SUMMARY JUDGMENT RE WILLFULNESS

letters; and that they would be an excellent method of establishing that the proper steps had been gone through to show that an employer was trying to do what was right. Tab BB, C.D. p. 39., lines 6-21. Carr further indicated that consulting an attorney would arguably be a good step to show good faith, although to his knowledge that was untested in the courts. Tab BB, C.D. p. 39, lines 22 – p. 40, line 1. His testimony concerning whether or not a "oral opinion" could be used as a defense is to a wage and hour action to recover unpaid overtime is found at Tab BB, C.D. p. 40, lines 6-21 and p. 42, lines 10-13. Carr also indicated that it was his practice to preface discussions with persons seeking information about exempt status, that it would be prudent to get a formal opinion letter and he indicated it was his practice both after the good faith defense was enacted. Tab BB, C.D. p. 45, line 25 - p. 46, line 19.

In relation to Mr. Carr's concerns about needing to have things in writing and the lack of specificity of a job description (*see* Tab BB, C.D. at pp. 5-11 and p.49, line 16 – p. 50, line 3).

When Mr. Carr was asked whether he considered it imprudent not to get a formal opinion, he answered:

> Yes, I do, I think an employer is at risk if they act upon the verbal advice without – without giving the department an opportunity to see all the facts and to provide something in writing that they can later produce as their guidance from the official source, i.e., the department.

Further questioning of Mr. Carr concerning the effect of an oral opinion on prosecution of the claim by the department revealed the following:

> Q     Okay. In response to some questions about oral opinions you indicated that you used and I believe you said your specialist used the phrase – if somebody gave you an opinion, you said, well, it sounds like it might be, and then exempt or nonexempt. Is my understanding of your testimony correct that you use that as a matter of routine in your conversation when you make an oral opinion?
>
> A     That and other statements to - to clarify that my oral opinion is only as good as the facts I'm given, and I don't know what the facts are because you've - they're being represented and they might – I might be misinterpreting them, I don't

LAW OFFICES OF
NNETH L. COVELL
712 8TH AVENUE
BANKS, ALASKA 99701
HONE (907) 452-4377
FAX (907) 451-7802

Page 8 – OPPOSITION TO MOTION FOR SUMMARY JUDGMENT RE STATUTE OF LIMITATIONS AND CROSS MOTION FOR SUMMARY JUDGMENT RE WILLFULNESS