APC Interoffice

MEMORANDUM.............



DATE:     December 7, 1996

TO:       Anne Hippe / Toby Osborn

FROM:     Mark Nelson

SUBJECT:  A few compensation questions?

*************************************************************************

After reading the attached article from Forbes magazine last month regarding employee compensation I've been concerned over the way we have a few of our employees classified. I was going to call the Alaska department of labor for an opinion and still can. I just want to make sure all of our jobs are consistent so we have no exposures..........

In the Kuparuk field the majority of our foremen are non-exempt although the materials foremen are exempt on a day rate. Their title is materials supervisor but essentially perform a foreman's role reporting to a superintendent. The question comes up, what does "bona fide executive, administrative, or professional capacity" really mean? In this situation my research would indicate these supervisors should be non-exempt - would you concur? In addition, the article talks about paying a salaried employee in increments of no less than a week. We have many employees on a "day" rate and for the sake of payroll put 10 hours of work down each day on their timecards. I'm thinking we may want to get completely away from any mention of hours and only indicate a day worked. Plus would the legal opinion be that we work the majority of our employees on a two on two off cycle would constitute a "weekly" basis?

Take a look at the article and see if we should have any concerns and if you know who the attorney was who talked with our foreman regarding "charter delays." We may want to research this? (see attached)

Thanks for the help!

MARK



Lawyers claiming to represent professional salaried workers are trying to gouge employers for huge amounts of back overtime pay.

# The $20 billion target

By Susan Adams

REGISTERED NURSE JANET KLEIN consulted a lawyer after she was fired by Chicago's Rush-Presbyterian-St. Luke's Medical Center in 1990. Attorney Richard Tupper couldn't get Klein her job back, but he was able to convince the influential U.S. Court of Appeals for the Seventh Circuit that the hospital owed his client $8,000 in back pay and fines.

Never mind that Klein was a salaried professional who never put in for overtime. Lawyer Tupper was able to show that Rush-Presbyterian gave nurses time off after they worked long hours. Moreover, the hospital had docked Klein's pay when she was late to work. These workplace practices were enough to convince the court that Klein was really more of an hourly worker than a salaried professional—and could thus collect back pay for any weeks she worked more than 40 hours.

Workplace law is becoming a very lucrative new area for plaintiff lawyers (see story, p. 150), and cases demanding back overtime pay could swell the lawyers' coffers even more. The Employment Policy Foundation, a Washington, D.C. research outfit funded by companies, thinks employer liability in back-overtime cases could run as high as $20 billion in the private sector alone.

"It's a target of opportunity," says Edward Still, an employment plaintiff lawyer in Birmingham, Ala. "We can rip some money out of the hide of the employer."

Picking up on the 1993 Klein precedent, lawyers last year filed a class action suit against ARCO Alaska, the Anchorage-based subsidiary of Atlantic Richfield Co. ARCO Alaska had suspended a supervisor for a few days and docked his pay for sexually harassing a colleague. The trial lawyers figured this meant there was a policy in place that could subject any ARCO professional to short-term



y docking—and, therefore, that all ARCO's salaried professionals were really just working-stiff hourlies who should have been paid for overtime. The suit, filed last year in Alaska state court (Alaska law tracks federal law in this area), claims ARCO Alaska owes at least two years of overtime pay—tens of millions of dollars—to *all* of the company's hundreds of professional employees. That includes accountants, engineers and other high-ranking managers.

"It's an 'I gotcha' case," steams Lloyd Loomis, senior corporate counsel for ARCO Alaska. "These people [the professionals] make oodles of money; nobody is expecting overtime. This is crazy." So far a judge has denied class action status, but the plaintiffs plan to reapply.

The Boeing Co., too, is facing a back-overtime class action filed on behalf of professional engineers and managers, some of whom make as much as $120,000 a year. Plaintiff lawyers say the potential liability could reach more than $40 million. A win could put around $15 million into the plaintiff lawyers' pockets. "It's completely and totally absurd," fumes Douglas Kight, counsel for Boeing. The U.S. District Court in Seattle agreed and dismissed the class action suit in April, but the Court of Appeals for the Ninth Circuit has agreed to hear the appeal.

The wellspring of these cases is a technical section of the 1938 Fair Labor Standards Act that was intended to protect low-wage workers from grueling overtime, and to force employers to hire more people. The law and accompanying regulations have not been substantially updated in 40 years. Plaintiff lawyers looking for new business opportunities have discovered that the law's many fine points and exceptions are fertile ground for lawsuits.

Under the Fair Labor Standards Act, employers must pay time-and-a-half overtime beyond 40 hours a week to all but "exempt" employees. Who's exempt? The law says anyone "employed in a bona fide executive, administrative or professional capacity." Exempt employees also must be paid on a "salary basis," which means a set salary paid in increments of no less than a week, regardless of the quantity or quality of the work. That's why docking of pay tripped up Rush-Presbyterian Medical Center and may foil ARCO Alaska and others.

The Supreme Court is about to take on a big chunk of the overtime controversy. In a little-noticed case on the docket this term, *Auer v. Robbins*, the Court will hear an appeal brought by a group of police sergeants in St. Louis who say they're owed overtime because they are subject to a disciplinary policy that would dock their pay for less than a pay period.

If the Court agrees with the plaintiffs that just having a short-term pay-docking policy on the books is enough to turn professional employees into hourly workers, the floodgates to these kinds of suits could really open up. ∎

> "It's a target of opportunity. We can rip some money out of the hide of the employer."

**Note for Nelson\*/Schick\* NSK**

From: Buffington\*/Doyle\* NSK

Date: Thu, Dec 5, 1996 10:50 AM

Subject: Billing Time Audit

To: Nelson\*/Schick\* NSK

Cc: Dickerson\*/Miles\* NSK; Nelson\*/White\* NSK

Charlie/Mark:

I have been auditing my Wells, whse, & shop time tickets from 12/1-12/5. All and all these groups do very well with their changeout time tickets. The below are two discrepancy areas that I have encountered:

1) People that are direct report to ARCO supervision have been told to start charging as ARCO does - as soon as the plan lands and to stop charging when the plane takes off. At this point, they have no idea they are doing anything incorrectly.

2) A foreman mentioned to me that during the "legal awareness" training he took, a discussion took place about time missed because of charter delays. Here was the result of that discussion....

- The attorney that was leading the seminar told the group that it was each individuals legal right to get his/her normal hours worked if he/she was delayed due to weather or mechanical failure in the Anchorage airport. The employee meets his/her responsibility by arriving at the airport on time and is due his/her fair wage because it was no fault of his/her own that he/she could not report for duty as normal.

If this is in fact true and ARCO will pay for it, this would certainly be a good morale raiser as I don't believe anyone has ever charged for this before. It would be like getting a new benny. (This was the foreman's idea, I take no credit, but tend to agree it would make people feel like that got something special)

The concern the foremen have expressed to me is consistency. They don't really remember this being discussed on a company wide basis to form the consistency between jobs. Shane

# NATCHIQ, INC.

ALASKA PETROLEUM
CONTRACTORS, INC.

ASRC PARSONS
ENGINEERING, LLC

HOUSTON CONTRACTING
COMPANY - ALASKA, LTD.

To: Mark Nelson/Charlie Schick

From: Christopher B. Boyle

Date: April 4, 1997

Subject: **Exempt Employee - Payment of Day Rate**

In follow-up to your questions of the appropriateness of paying a day-rate to exempt employees, the following will provide guidance.

Alaska has no specific Wage & Hour law addressing the payment of a day-rate to exempt employees. Of course, the first step an employer must take is to properly classify an employee as exempt (not eligible for overtime) or non-exempt. I have previously provided some information on this subject and would recommend we again look at the foreman and similarly classified employees to ensure their status can stand up to the exemption test.

Concerning the payment of day-rates, Alaska has not adopted its own regulation defining "salary basis". However, federal regulations specifically allow paying exempt employees on a day-rate basis when a guarantee of work per week is given. 29 C.F.R. 541.118 (b).

The appropriateness of paying a day rate was raised in Alaska in 1989 at which time the Department (Wage & Hour) ruled that day-rate employees did not meet the salary requirements under state law. However, when challenged, the Department reversed itself and issued the following interpretive ruling in December, 1989:

> The Department "would indeed allow a daily rate providing the following procedures and conditions are true: An employer wishing to compensate an employee on a daily basis, who is otherwise exempt from provisions of the Wage & Hour Act, must communicate to that prospective employee their daily rate and the minimum amount guaranteed each week that any work is performed. In the absence of such documentation, the employer's intent may not be clear concerning the minimum weekly salary to be paid and that employee could become overtime eligible".

A Subsidiary of Arctic Slope Regional Corporation
6700 Arctic Spur Road • Anchorage, Alaska 99518-1550 • (907) 344-5727 • FAX: (907) 267-3190

APC0180