Page 2

In summary, we may pay exempt employees on a day-rate provided very specific conditions are satisfied. I understand from speaking with you that it is beneficial from a reimbursable stand point to pay on a day-rate. However, I would be concerned about the consistent application of the requirements and other practices, known or unknown, that may cause an employees pay to vary from week to week. This is seldom a concern when establishing and paying a straight monthly salary.

Another question you raised was whether a two on two off cycle would constitute a "weekly" basis. The answer is no. Under applicable federal and state regulations, a workweek is a fixed and regularly occurring period i.e., seven consecutive 24 hour periods. The work week may begin on any day of the week and need not coincide with a calendar week; an individual employee's workweek is the statutory or contract number of hours that are to be worked during that period; the workweek may not be artificially adjusted for the purpose of avoiding the payment of overtime, however, the workweek may be changed for any other purpose as allowed by the regulations.

A final question you referred to me was the issue of waiting time if the Charter breaks down or cannot fly due to weather. For non-exempt employees, there is no obligation to pay for "waiting" time. However, many employers will provide some compensation in recognition of the inconvenience and loss of income the employee incurs through no fault of their own. For exempt employees, if they are ready and able to work, but cannot travel to the work site through no fault of their own, no deductions from normal pay would be allowed.

**Recommendations**

The following are recommended actions relative to the day-rate issue:

1) Review all occupations where there may be questions concerning whether they are properly classified as exempt or non- exempt, i. e., foremen and other personnel whose actual job responsibilities and duties may not meet the overtime exemption test.

2) Consider a flat monthly salary for exempt employees.

3) If day-rate status is maintained, ensure the following:

   a) Employees are clearly advised, in writing, of their daily rate and the minimum guaranteed each week that any work is performed. Our current "Notice of Wage Payments" can be modified to address this requirement.

Page 3

    b) Ensure there are no inappropriate deductions from pay. In this context, it means there must be no deductions from pay unless the employee absents himself from work for a day or more for personal reasons, other than sickness or accident. **Deductions for a partial day worked are not permitted** unless the leave falls under the Family Medical Leave Act.

    c) Deductions may not be made for jury duty, attendance as a witness, or temporary military leave. Concerning, jury duty, the Department is unclear as to how long the employer can be expected to provide pay to an employee who is on jury duty for an extended period.

I know this information may be more than what you were looking for, but determining proper procedures under Federal and State Wage & Hours laws is very complex. In speaking with the Department, they are often unclear on many issues related to exempt status. It appears case law rulings are often contradictory resulting in the uncertain application of the regulations. Of course, this creates even more uncertainty for employers.

Let me know if I can help you review your current practices or if you need further information.

cc:    B. Cheek
       T. Osborn
       J. Cehula
       J. Laasch
       L. Gabrielson
       M. White/S. McKay
       D. Dieckmeyer
       D. Burrows



# ALASKA PETROLEUM CONTRACTORS INC.
## General Contractors

June 25, 1997

Faxed to: 907-269-4992

Mr. Randy Carr
Director of Labor & Safety
State of Alaska
Anchorage, Alaska

Re:    Opinion Letter

Dear Mr. Carr:

Thank you for assisting me over the telephone in making a determination as to overtime exemptions for our staff.   The discussion surrounding "supervisors" as being exempt from over time pay (premium pay) but yet have to be paid for all hours worked has been difficult to pull from the regulations.

Please respond in writing to give us a definition as to how it works and the cautions of classifying an employee as a supervisor.     We can easily find the classifications for administrative, professionals and executives but do not see a clear path for the supervisors.

Thank you for your help,

Sincerely,

Mark C. Nelson
Operations Manager

Pouch 340014
Prudhoe Bay, Alaska  99734
Fax: 907-659-7706

APC0202




# NATCHIQ, INC.

ALASKA PETROLEUM
CONTRACTORS. INC.

HOUSTON CONTRACTING
COMPANY - ALASKA, LTD.

To:        D. Dieckmeyer, S. Eliason, D. Frederick, L. Gabrielson, J. Laasch, L. Shultz

From:      Christopher B. Boyle    *CBBoyle*

Date:      December 26, 1996

Subject:   Wage & Hour Day Rate Analysis

There have been recent concerns raised about our practice of paying certain personnel a day rate versus a straight monthly salary. The main issue is whether the day rate is an appropriate form of payment under wage and hour laws. In addition, it is appropriate to review whether personnel currently paid as exempt are properly classified.

To further this review, the Payroll Department has already requested listings of all personnel currently paid on a day rate. I also have the following requests:

1) Review all exempt (not subject to overtime) occupations to determine if they are properly classified as exempt. Provided as guidance is an attached document which provides functional definitions of exempt employees in administrative, executive, and professional positions. Please be critical in this review and provide a listing of any personnel who may not fit the criteria of exempt. We will then further review these personnel to ensure they are properly classified.

For purposes of this review, do not be concerned with contractual language at this time.

2) Please provide me with the requested information by **January 15, 1997.**

In the meantime, we will be determining whether the practice of paying a day rate is appropriate for our organization.

Please forward this request to whomever you delegate to address this request at your respective organizations.

Thank you for your assistance.

cc:    S. Cheek
       A. Hippe
       T. Osborn

A Subsidiary of Arctic Slope Regional Corporation
6700 Arctic Spur Road • Anchorage, Alaska 99518-1550 • (907) 344-5757 • FAX: (907) 287-5190

APC0183

of that entity and not an independent contractor.[1] In fact, the Alaska Supreme Court recently held that a partner in a partnership was an employee for purposes of the Alaska Wage and Hour Act. Bobick v. Stewart, 843 P.2d 1232, 1236 (Alaska 1992).

## 9.   IMPROPERLY CLASSIFYING EMPLOYEES AS EXEMPT

One of the most common and most expensive mistakes that employers make is to improperly label employees covered by the Alaska Wage and Hour Act as exempt. The Alaska Wage and Hour Act contains numerous exemptions for certain employees such as agricultural workers, employees of small mining operations or small newspapers, seamen or casual employees. AS 23.10.060(d). Additionally, numerous other employees are exempt from both overtime and minimum wage provisions of the Alaska Wage and Hour Act. Among the most important of these are exemptions for individuals employed in a bona fide executive, administrative or professional capacity or individuals employed as supervisors, outside salesmen or straight commission salesmen. AS 23.10.055(9). However, simply labeling an employee as exempt is not enough to avoid overtime liability. Rather, the employer must meet the test established by the Department of Labor.

The regulations define an administrative employee as an employee:

> 1)  whose primary duty consists of work directly related to management policies or supervising the general business operations of his employer;
>
> 2)  who customarily and regularly exercises discretion and independent judgment;
>
> 3)  who performs his work under only general supervision;
>
> 4)  who is paid on a salary or fee basis;

---

[1] Employers should be aware that the economic realities test is only used for wage and hour analysis. Other factors are used to evaluate independent contractor/employee relationships for purposes of tort liability, worker's compensation, unemployment insurance, the NLRA, Title VII or IRS tax liability.

8

5) who regularly and directly assists a proprietor or an exempt executive employee of the employer; and

6) who performed work along specialized or technical lines requiring special training, experience or knowledge and does not devote more than 20%, or in the case of an employee of a retail or service establishment who earns at least two and one-half times the state minimum wage per hour for the first 40 hours of employment each week and who does not devote more than 40% of the employee's weekly hours to nonexempt activities.

B AAC 15.910(a)(1).

An executive employee is defined as an employee:

1) whose primary duty consists of the management of the enterprise in which the employee is employed or of a customarily recognized branch, department, or subdivision of the enterprise;

2) who customarily and regularly directs the work of two or more other employees;

3) who has authority to hire or fire or effect any other change of status of other employees or whose suggestions or recommendations regarding these kinds of changes are given particular weight;

4) who customarily and regularly exercises discretionary authority;

5) who does not devote more than 20%, or in the case of an employee of a retail or service establishment who earns at least two and one-half times the state minimum wage per hour for the first 40 hours of employment each week and who does not devote more than 40% of the

9