# Employees in Outside Sales

Use this chart to determine if an outside sales employee meets criteria for exemption from FLSA overtime requirements. *(Summarized from 29 Code of Federal Regulations, Part 541, as amended in 1991.)*

**Must answer yes in both items:**

1. Is customarily and regularly away from the employer's place of business, engaged in making sales or obtaining orders or contracts;

**AND**

2. The amount of time spent on activities not related to (1) is not more than 20% of hours worked by nonexempt employees of the same employer.

| No → | **Not Exempt** |

| Yes → | **Exempt** |

APC0168

# nployees in Computer Systems Analysis ...nd Programming Work

Use this chart to determine if computer systems analysis, computer programmers, software engineers, and other similarly skilled employees meet criteria for exemption from FLSA overtime requirements. (Summarized from 29 Code of Federal Regulations, Part 541, as amended in 1992.)

---

*(Must answer yes to both items below.)*

1. Regular rate of pay exceeds 6½ times the minimum wage and is paid on an hourly basis;

   **or**

   Regular rate of pay is $155 or more per week and is paid on a salaried basis.

   **AND**

2. Primary duties consist of one or more of the following:

   a) Application of systems analysis techniques and procedures, including consulting with users, to determine hardware and software functional specifications;

   **or**

   b) Design of computer systems based on and related to user specifications;

   **or**

   c) Creation or modification of computer programs based on and related to system design specifications;

   **or**

   d) Creation or modification of computer programs related to machine operating systems;

   **or**

   e) A combination of the above duties, provided that the same level of skills is required.

---

APC0169

### *Descriptions Now!* Program and User Manual
Copyright (c) 1995 by KnowledgePoint
All Rights Reserved    Printed in U.S.A.    Part No. 201-2001

The product is licensed to the original purchaser of the product for use only on the terms set forth in the KnowledgePoint Software License Agreement. Copying, selling, or using the product contrary to the terms of the KnowledgePoint Software License Agreement may be a violation of the law. All parts of the *Descriptions Now!* documentation are copyrighted and all rights reserved. This documentation may not be copied, photocopied, or reproduced in whole or in part without prior consent, in writing, from KnowledgePoint.

KnowledgePoint makes no representations or warranties with respect to the merchantability or fitness of this program or documentation for any particular purpose. All disclaimers and limitations in the KnowledgePoint Software License Agreement apply.

This product is designed to provide accurate and authoritative information regarding its subject matter. It is sold with the understanding that the publisher is not engaged in rendering legal or other professional service. If legal advice or other expert assistance is required, the services of a competent professional person should be sought.

Microsoft and Windows are registered trademarks of Microsoft Corporation.

**Money-back guarantee:** If for any reason you are not satisfied with this KnowledgePoint product, you may receive a refund of the purchase price (not including shipping and handling). Simply return the product postage pre-paid within 60 days from the date of original purchase with proof of purchase to the place you purchased it. The product must be in good condition with the original packaging.

---

### ACKNOWLEDGMENTS

|  |  |
|---|---|
| *Program design* | Jerry Howard, Diane Pratt, Michael Troy |
| *Programming* | Jim Sillars, Larry Weber, Paul Taggart, & Jerry Howard |
| *Human resources advice* | Diane Pratt, Richard Franklin |
| *Product management* | Jeannine Cook |
| *User manual & program help* | Rudy Lacoe |
| *User manual composition* | Illumination Graphics |
| *Tutorial* | Promotional Technologies Group |
| *Cover design* | Artworks Advertising & Design |
| *Legal review* | Michael J. Lotito & Jamerson C. Allen, Attorneys-at-Law *Jackson, Lewis, Schnitzler & Krupman* offices located throughout the United States |

*We welcome your ideas, suggestions, and comments.*
**KnowledgePoint**    1129 Industrial Ave., Petaluma, CA 94952-1141
(707) 762-0333    FAX (707) 762-0802

APC0170



# PAYROLL LEGAL *Alert*

## ALEXANDER HAMILTON·INSTITUTE INCORPORATED

**TAXES AND COMPLIANCE**

## *High Court Takes 'Payroll' Route for Title VII*

You've always known "payroll" as an activity — whether you modem numbers to a service bureau or actually withhold taxes, cut paychecks, and file tax returns. But according to a U.S. Supreme Court decision, payroll is now a measurement as well — how you count employees to comply with Title VII of the Civil Rights Act of 1964. *Impact:* Your record-keeping burden may increase as Personnel taps Payroll for more detailed head counts. [Walters v. Metropolitan Educational Enterprises, Inc., U.S. S.Ct., No. 95-259 (1997).]

**Numbers game.** An employee sued for retaliatory discharge after she was fired for filing a sex discrimination charge against her employer. *Employer's defense:* The company didn't come under Title VII because it didn't meet the law's threshold: whether an employer has at least 15 employees on each working day in 20 or more weeks in the current or preceding year.

**◌ COUNTING METHODS:** This employer used a Title VII counting method called the day-to-day method. This method counts all exempt employees, whether or not they're at work on any day. But it counts non-exempts only if they're actually at work or on paid leave. A competing counting method, the payroll method, counts all active employees on the payroll, regardless of their status or whether they're working on any given day.

**Payroll method: easiest and fairest.** Using the day-to-day method, a federal appeals court upheld the dismissal of the employee's case. The High Court reversed, ruling that the payroll method comes closest to Title VII's intent that all workers with an ongoing employment relationship be counted, even if they don't work on some days. *Court:* Under the payroll method, all one needs to know to count an employee for the 20-week test is whether he/she started or ended employment during that year and, if so, when.

**◌ BEYOND TITLE VII:** This case covers Title VII. But other laws, including the Family and Medical Leave Act, the Age Discrimination in Employment Act, and the Americans with Disabilities Act, have similar counting requirements. And it's unlikely that the High Court would sanction a different counting method. *Result:* Only the smallest employers are now exempt from Title VII, and would be exempt from these other laws.❖

## *Damage Control — IRS Rules Discrimination Awards Are Taxable*

It's not bad enough that a discrimination claim against your company could make it liable for back pay and damages for emotional distress. Now you have to worry about handling it correctly from a tax standpoint, so you don't land in hot water with the IRS. And it hasn't always been easy knowing how the IRS would rule. *Confusion reigns:* While it had

**IN THIS ISSUE**

| | |
|---|---|
| High Court Takes 'Payroll' Route for Title VII | 1 |
| Damage Control — IRS Rules Discrimination Awards Are Taxable | 1 |
| W-2s: In the News Again | 2 |
| It's March! Do You Know Where Your Corrected W-2s Are? | 3 |
| If the Check's in the Mail, Don't Withhold...Yet | 4 |
| More Ex-Workers Join The Severance Pay Fray | 4 |
| Flexing Your Pay Policy Won't Muscle Out Exempt Status | 5 |
| When Clocks Spring Forward, Make Sure Employees Do Too | 5 |
| Benefits Report Card: Employers Get Failing Grades | 5 |
| Are You Experienced? Check These State Unemployment Rates | 6 |
| Auditing Your 401(k) Plan Makes Dollars and Sense | 6 |
| Employer's Business Tax Calendar for April, 1997 | 7 |
| All-States Chart on '97 Experience Rates | 8 |

uled in 1993 that these awards weren't taxable, it changed its mind nearly two years ago, and put the issue on hold. Further complicating the tax picture is last year's Small Business Job Protection Act (SBJPA), which changed the definition of tax-free damages. *Final words:* The IRS has settled the issue by ruling that both back pay and damages are taxable. [Rev. Rul. 96-65, IRB 1996-53.]

**Taxable, yes, but subject to withholding?** According to the ruling, back pay issued to satisfy an employee's claim that he/she was denied a promotion due to disparate treatment employment discrimination under Title VII is both taxable and subject to income tax withholding, FICA, and FUTA.

But whether damages for emotional distress arising from the same Title VII claim are subject to FICA and FUTA is a stickier issue. Under the SBJPA, damages are excludable from gross income only in cases of physical injury or sickness. And emotional distress alone isn't considered an injury. *Taxing result:* Damages for emotional distress alone (i.e., without damages for medical care resulting from the distress), are includable in an employee's gross income, but *aren't* subject to income tax withholding, FICA, and FUTA. *W-2 result:* These damages are shown only in Box 1 of the employee's W-2.

**Allocate properly.** The IRS told PAYLA that damages for emotional distress aren't subject to income tax withholding, FICA, and FUTA, *provided* the entire damage award or settlement is properly allocated between back pay and damages. The IRS, of course, reserves the right to reallocate awards which it deems unreasonable. *Beware:* Absolutely no authority defines "reasonable" in this context.

**Editor: Alice Gilman, Esq.**
**Production Manager: Christine M. Suler**
Payroll Legal Alert. Copyright ©1997 by Alexander Hamilton Institute, Inc., 70 Hilltop Road, Ramsey, NJ 07446. ISSN 1085-7508. Printed in U.S.A. All rights reserved. No part may be reproduced in any form without the written permission of the publisher. To apply for permission, please contact the PAYLA hotline at (201)825-3377 Ext. 252. Permission will be granted on a case-by-case basis only.

This bulletin, which was specially prepared by the editors of the Alexander Hamilton Institute, is not designed to render legal advice or legal opinions. Such advice may only be given by a licensed, practicing attorney, and only when related to actual fact situations. This warning is particularly pertinent because of the nature of the topics covered. Since these cases are largely controlled by individual state law, and such matters should always be checked with the company's corporate counsel. For Order Information, Call Toll Free 1-800-879-2441.

⇨ **WHAT'S A PAYROLL PERSON TO DO?** First make the top brass in your company aware of this new IRS position, since it may influence how they handle these Title VII claims. And while you probably won't be involved in the litigation or settlement discussions, you *must* be involved in the allocation decision, since these awards have a definite impact on payroll. ❖

## W-2s: In the News Again

It's never too early in the year for the IRS and the Social Security Administration (SSA) to issue W-2 news. With that in mind, here are the latest pronouncements you need to know from both agencies.

1. **Automatic extensions for final W-2s.** Last year, the IRS issued regulations for filing final W-2s if you go out of business. Under these regs, beginning this year, you must give employees their final W-2s when you file your final 941 form (forms are filed quarterly on April 30, July 31, October 31, and January 31). Final W-2s and a W-3 form must then be filed with the SSA one month after your final 941 is filed.

In requiring you to file final W-2s on this expedited basis, the IRS recognized that magnetic media filers would have a computer programming problem if forms were due before the year's mag media specifications were released. *Solution:* The regs provide for an automatic extension of time, so computers can be adjusted to the year's specs. The extension also applies to the time you have for giving employees their final W-2s.

The IRS has ruled that for mag media filers, the deadline for providing employees with forms under the automatic extension is October 31 of the year final forms are due. The SSA filing deadline is November 30. [Rev. Proc. 96-57, IRB 1996-53.]

⇨ **FOURTH-QUARTER FINALS:** If you must provide expedited W-2s during the fourth calendar quarter of a year, follow the regular W-2 rules: Provide employees with their copies by January 31 of the next year and file with the SSA by the last business day of February.

2. **W-2s, W-4s, and 941s when a business is sold.** If you buy a business, you can save substantial FICA and FUTA dollars by using a special procedure which allows you, as the successor, to credit the

*Payroll Legal Alert*                                                            **3**

FICA and FUTA payments already made by the predecessor against your annual tax liability. The IRS has clarified this procedure to cover all contingencies and reporting responsibilities.

*Option #1.* A business is sold to a successor and both parties agree that the successor will perform all wage and tax reporting. If the predecessor goes out of business, it doesn't have to deal with W-2s for employees who continue to work for the successor. And these employees don't have to file new W-4s. But the predecessor must deal with W-2s on the expedited basis for employees who don't work for the successor. If only a portion of a business is sold, predecessors must provide W-2s to employees who don't work for the successor, and file them with the SSA, by the regular due dates.

*941s and W-3s.* Since the successor picks up the predecessor's withholding and reporting responsibilities, there will be a discrepancy between the amounts on the 941 form the predecessor files for the quarter of the acquisition and the totals on its W-3 form. There will be a corresponding discrepancy on the successor's 941 and W-3 forms.

Both parties must attach statements to their 941 forms explaining these discrepancies. Predecessors must include the successor's name, address, employer identification number, and a reference to Revenue Procedure 96-60. Successors must include the predecessor's name, address, employer identification number, and a reference to the same Revenue Procedure. These 941 forms can't be filed electronically.

*Option #2.* A business is sold to a successor, but the predecessor retains all reporting responsibilities, which include filing final W-2s and a final 941 form under the expedited procedure. If only a portion of a business is sold, the predecessor isn't required to file final forms. But W-2s must be provided to all employees (including employees who worked in the business which was sold) and filed with the SSA by the regular due dates. Employees who continue to work for the successor must file new W-4 forms, and the successor's W-2s and 941s reflect only the wages and taxes it pays. [Rev. Proc. 96-60, IRB 1996-53.]

**3. New W-2 codes.** Beginning with 1997 W-2s, three new codes apply for certain items which you must report in Box 13.

• Code R — Report your contributions to employees' medical savings accounts.

• Code S — Report employees' salary reduction contributions to your SIMPLE.

---

### It's March! Do You Know Where Your Corrected W-2s Are?

Congratulations! Year-end reporting is over. Well, not quite. Before you close the books on 1996, you must correct mistakes on the W-2s you just filed. Even if a service bureau handles your W-2s, it may not handle W-2 corrections. You can correct W-2s by following these tips.

✔ Corrections to W-2s are filed on Form W-2c, Statement of Corrected Income and Tax Amounts.

✔ W-2c forms are accompanied by Form W-3c, Transmittal of Corrected Income and Tax Statements. *Exception:* If you're only correcting employees' names, addresses, or Social Security numbers, you may send W-2c forms without a W-3c.

✔ You may file all W-2c forms on paper, even if your W-2s were filed on magnetic media.

✔ Don't correct federal income tax withheld (Box 2 on the W-2). *Example:* You mistakenly withheld on tax-free moving expenses. *Exception:* Correct Box 2 if the error is administrative (e.g., transposing numbers). If, due to a non-administrative error, employees were overwithheld, they'll get a larger refund; if they were underwithheld, they'll owe more tax.

✔ Do correct related errors in Boxes 1, 3, 4, 5, and 6 on the W-2, even if Box 2 isn't corrected.

✔ Provide W-2c forms to employees in the same manner that W-2s were supplied. Advise employees to compare the amounts on the W-2c to amounts on their 1040s. If the corrected amounts change their tax liability, they must file a Form 1040X, along with Copy B of the W-2c. If they haven't filed their 1040s, they must attach Copy B of the original W-2 and the W-2c to their forms.

✔ Make adjustments on your first-quarter 941 form, and attach a Form 941c, Supporting Statement To Correct Information.

---

• Code T — Report your payments under an adoption assistance plan. [Announcement 96-134, IRB 1996-53.]

**4. SSA to dump TIB-4.** Technical Information Bulletin 4 (TIB-4) contains the SSA's mag media specifications. But the SSA has seen the future of W-2 filing and it's electronic. To facilitate electronic filing, TIB-4 will be replaced with new Magnetic Media Reporting and Electronic Filing Specifica-

APC0174