## Professional Employees

Use this chart to determine if a professional employee meets compensation and duties criteria for exemption from FLSA overtime requirements. (Summarized from 29 Code of Federal Regulations, Part 541, as amended in 1991.)

Handwritten notes:
- HAS STATEMENT — EXEMPT — WORK IN TOWN & OTHER LOCATIONS
- WHAT ABOUT ROV/OMM — MAT SUPV. & OPER — APC HANDS — JB

**Compensation**

Salary of $250 or more per week? → No → Salary of $170 or more per week? → No → Not Exempt
                                                              → Yes → (to General Test)
Yes ↓

**Short Test** (Must answer yes to all of these.)

a) Primary duty requires the consistent exercise of discretion and judgement while performing work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study;

or

b) Primary duty requires the consistent exercise of discretion and judgement while teaching, tutoring, instructing, or lecturing as a teacher, employed by a school system or educational establishment or institution;

or

c) Primary duty is work requiring invention, imagination, or talent in a recognized field of artistic endeavor.

Yes → Exempt
No → Not Exempt

**Duties**

**General Test** (Must answer yes to all numbered items.)

1. a) Primary duty is work requiring knowledge of an advanced type in a field of science or learning customarily acquired by a prolonged course of specialized intellectual instruction and study;

   or

   b) Primary duty is work that is original and creative in character in a recognized field of artistic endeavor, the result depends primarily on the invention, imagination, or talent of the employee;

   or

   c) Primary duty is teaching, tutoring, instructing, or lecturing as a teacher, employed by a school system or educational establishment or institution;

AND

2. Primary duty requires the consistent exercise of discretion and judgement;

AND

3. Primary duty is work that is predominantly intellectual and varied in character and the output produced or result accomplished cannot be standardized in relation to a given period of time;

AND

4. Not more than 20% of the time is devoted to activities which are not an essential part of and necessarily incident to the work described in (1) through (3).

Yes → Exempt
No → Not Exempt

*Minimum salary requirement does not apply to an employee licensed to practice law or medicine, who is actually practicing in the field; OR who his or her academic degree in medicine and is in an internship or resident program; OR who is employed as a teacher as defined in (1c).

APC0167

## Employees in Outside Sales

Use this chart to determine if an outside sales employee meets criteria for exemption from FLSA overtime requirements. *(Summarized from 29 Code of Federal Regulations, Part 541, as amended in 1991.)*



Must answer yes to both items.

1. Is customarily and regularly away from the employer's place of business, engaged in making sales or obtaining orders or contracts;

AND

2. The amount of time spent on activities not related to (1) is not more than 20% of hours worked by nonexempt employees of the same employer.

- No → Not Exempt
- Yes → Exempt

E.6  *Exempt/Nonexempt Classifications*

APC0168

## Employees in Computer Systems Analysis and Programming Work

Use this chart to determine if computer systems analysis, computer programmers, software engineers, and other similarly skilled employees meet criteria for exemption from FLSA overtime requirements. (Summarized from 29 Code of Federal Regulations, Part 541, as amended in 1992.)

---

(After answer yes to both items below.)

1. Regular rate of pay exceeds 6½ times the minimum wage and is paid on an hourly basis;

   or

   Regular rate of pay is $155 or more per week and is paid on a salaried basis.

   AND

2. Primary duties consist of one or more of the following:

   a) Application of systems analysis techniques and procedures, including consulting with users, to determine hardware and software functional specifications;

   or

   b) Design of computer systems based on and related to user specifications;

   or

   c) Creation or modification of computer programs based on and related to system design specifications;

   or

   d) Creation or modification of computer programs related to machine operating systems;

   or

   e) A combination of the above duties, provided that the same level of skills is required.

---



*Descriptions Now!* **Program and User Manual**
Copyright (c) 1995 by KnowledgePoint
All Rights Reserved    Printed in U.S.A.    Part No. 201-2001

The product is licensed to the original purchaser of the product for use only on the terms set forth in the KnowledgePoint Software License Agreement. Copying, selling, or using the product contrary to the terms of the KnowledgePoint Software License Agreement may be a violation of the law. All parts of the *Descriptions Now!* documentation are copyrighted and all rights reserved. This documentation may not be copied, photocopied, or reproduced in whole or in part without prior consent, in writing, from KnowledgePoint.

KnowledgePoint makes no representations or warranties with respect to the merchantability or fitness of this program or documentation for any particular purpose. All disclaimers and limitations in the KnowledgePoint Software License Agreement apply.

This product is designed to provide accurate and authoritative information regarding its subject matter. It is sold with the understanding that the publisher is not engaged in rendering legal or other professional service. If legal advice or other expert assistance is required, the services of a competent professional person should be sought.

Microsoft and Windows are registered trademarks of Microsoft Corporation.

**Money-back guarantee:** If for any reason you are not satisfied with this KnowledgePoint product, you may receive a refund of the purchase price (not including shipping and handling). Simply return the product postage pre-paid within 60 days from the date of original purchase with proof of purchase to the place you purchased it. The product must be in good condition with the original packaging.

## ACKNOWLEDGMENTS

| | |
|---|---|
| *Program design* | Jerry Howard, Diane Pratt, Michael Troy |
| *Programming* | Jim Sillars, Larry Weber, Paul Taggart, & Jerry Howard |
| *Human resources advice* | Diane Pratt, Richard Franklin |
| *Product management* | Jeannine Cook |
| *User manual & program help* | Rudy Lacoe |
| *User manual composition* | Illumination Graphics |
| *Tutorial* | Promotional Technologies Group |
| *Cover design* | Artworks Advertising & Design |
| *Legal review* | Michael J. Lotito & Jamerson C. Allen, Attorneys-at-Law
Jackson, Lewis, Schnitzler & Krupman
offices located throughout the United States |

We welcome your ideas, suggestions, and comments.
**KnowledgePoint**   1129 Industrial Ave., Petaluma, CA 94952-1141
(707) 762-0333   FAX (707) 762-0802

APC0170



# PAYROLL LEGAL Alert

ALEXANDER HAMILTON-INSTITUTE INCORPORATED

**TAXES AND COMPLIANCE**

## High Court Takes 'Payroll' Route for Title VII

You've always known "payroll" as an activity — whether you modem numbers to a service bureau or actually withhold taxes, cut paychecks, and file tax returns. But according to a U.S. Supreme Court decision, payroll is now a measurement as well — how you count employees to comply with Title VII of the Civil Rights Act of 1964. *Impact:* Your recordkeeping burden may increase as Personnel taps Payroll for more detailed head counts. [Walters v. Metropolitan Educational Enterprises, Inc., U.S. S.Ct., No. 95-259 (1997).]

**Numbers game.** An employee sued for retaliatory discharge after she was fired for filing a sex discrimination charge against her employer. *Employer's defense:* The company didn't come under Title VII because it didn't meet the law's threshold: whether an employer has at least 15 employees on each working day in 20 or more weeks in the current or preceding year.

⊃ **COUNTING METHODS:** This employer used a Title VII counting method called the day-to-day method. This method counts all exempt employees, whether or not they're at work on any day. But it counts non-exempts only if they're actually at work or on paid leave. A competing counting method, the payroll method, counts all active employees on the payroll, regardless of their status or whether they're working on any given day.

**Payroll method: easiest and fairest.** Using the day-to-day method, a federal appeals court upheld the dismissal of the employee's case. The High Court reversed, ruling that the payroll method comes closest to Title VII's intent that all workers with an ongoing employment relationship be counted, even if they don't work on some days. *Court:* Under the payroll method, all one needs to know to count an employee for the 20-week test is whether he/she started or ended employment during that year and, if so, when.

⊃ **BEYOND TITLE VII:** This case covers Title VII. But other laws, including the Family and Medical Leave Act, the Age Discrimination in Employment Act, and the Americans with Disabilities Act, have similar counting requirements. And it's unlikely that the High Court would sanction a different counting method. *Result:* Only the smallest employers are now exempt from Title VII, and would be exempt from these other laws. ✦

## Damage Control — IRS Rules Discrimination Awards Are Taxable

It's not bad enough that a discrimination claim against your company could make it liable for back pay and damages for emotional distress. Now you have to worry about handling it correctly from a tax standpoint, so you don't land in hot water with the IRS. And it hasn't always been easy knowing how the IRS would rule. *Confusion reigns:* While it had

**IN THIS ISSUE**

High Court Takes 'Payroll' Route for Title VII............................1
Damage Control — IRS Rules Discrimination Awards Are Taxable............................................................1
W-2s: In the News Again..................................................2
It's March! Do You Know Where Your Corrected W-2s Are?........3
If the Check's in the Mail, Don't Withhold...Yet.....................4
More Ex-Workers Join The Severance Pay Fray.......................4

Flexing Your Pay Policy Won't Muscle Out Exempt Status.........5
When Clocks Spring Forward, Make Sure Employees Do Too....5
Benefits Report Card: Employers Get Failing Grades...............5
Are You Experienced? Check These State Unemployment Rates..6
Auditing Your 401(k) Plan Makes Dollars and Sense................6
Employer's Business Tax Calendar for April, 1997...................7
All-States Chart on '97 Experience Rates...............................8

APC0172

...ed in 1993 that these awards weren't taxable, it changed its mind nearly two years ago, and put the issue on hold. Further complicating the tax picture is last year's Small Business Job Protection Act (SBJPA), which changed the definition of tax-free damages. *Final words:* The IRS has settled the issue by ruling that both back pay and damages are taxable. [Rev. Rul. 96-65, IRB 1996-53.]

**Taxable, yes, but subject to withholding?** According to the ruling, back pay issued to satisfy an employee's claim that he/she was denied a promotion due to disparate treatment employment discrimination under Title VII is both taxable and subject to income tax withholding, FICA, and FUTA.

But whether damages for emotional distress arising from the same Title VII claim are subject to FICA and FUTA is a stickier issue. Under the SBJPA, damages are excludable from gross income only in cases of physical injury or sickness. And emotional distress alone isn't considered an injury. *Taxing result:* Damages for emotional distress alone (i.e., without damages for medical care resulting from the distress), are includable in an employee's gross income, but *aren't* subject to income tax withholding, FICA, and FUTA. *W-2 result:* These damages are shown only in Box 1 of the employee's W-2.

**Allocate properly.** The IRS told PAYLA that damages for emotional distress aren't subject to income tax withholding, FICA, and FUTA, *provided* the entire damage award or settlement is properly allocated between back pay and damages. The IRS, of course, reserves the right to reallocate awards which it deems unreasonable. *Beware:* Absolutely no authority defines "reasonable" in this context.

Editor: Alice Gilman, Esq.
Production Manager: Christine M. Suler
Payroll Legal Alert: Copyright ©1997 by Alexander Hamilton Institute, Inc., 70 Hilltop Road, Ramsey, NJ 07446. ISSN# 1085-7508. Printed in U.S.A. All rights reserved. No part may be reproduced in any form without the written permission of the publisher. To apply for permission, please contact the PAYLA Hotline at (201) 825-3377 Ext. 252. Permission will be granted on a case-by-case basis only.
This bulletin, which was specially prepared by the editors of the Alexander Hamilton Institute, is not designed to render legal advice or legal opinion. Such advice may only be given by a licensed practicing attorney, and only when related to actual fact situations. The warning is particularly pertinent because of the nature of the topics covered herein; these cases are largely controlled by individual state law, and such matters should always be checked with the company's corporate counsel.
For Order Information, Call Toll Free 1-800-879-2441

➮ **WHAT'S A PAYROLL PERSON TO DO?** First make the top brass in your company aware of this new IRS position, since it may influence how they handle these Title VII claims. And while you probably won't be involved in the litigation or settlement discussions, you *must* be involved in the allocation decision, since these awards have a definite impact on payroll. ❖

## W-2s: In the News Again

It's never too early in the year for the IRS and the Social Security Administration (SSA) to issue W-2 news. With that in mind, here are the latest pronouncements you need to know from both agencies.

**1. Automatic extensions for final W-2s.** Last year, the IRS issued regulations for filing final W-2s if you go out of business. Under these regs, beginning this year, you must give employees their final W-2s when you file your final 941 form (forms are filed quarterly on April 30, July 31, October 31, and January 31). Final W-2s and a W-3 form must then be filed with the SSA one month after your final 941 is filed.

In requiring you to file final W-2s on this expedited basis, the IRS recognized that magnetic media filers would have a computer programming problem if forms were due before the year's mag media specifications were released. *Solution:* The regs provide for an automatic extension of time, so computers can be adjusted to the year's specs. The extension also applies to the time you have for giving employees their final W-2s.

The IRS has ruled that for mag media filers, the deadline for providing employees with forms under the automatic extension is October 31 of the year final forms are due. The SSA filing deadline is November 30. [Rev. Proc. 96-57, IRB 1996-53.]

➮ **FOURTH-QUARTER FINALS:** If you must provide expedited W-2s during the fourth calendar quarter of a year, follow the regular W-2 rules: Provide employees with their copies by January 31 of the next year and file with the SSA by the last business day of February.

**2. W-2s, W-4s, and 941s when a business is sold.** If you buy a business, you can save substantial FICA and FUTA dollars by using a special procedure which allows you, as the successor, to credit the