...ich are violations that occur only because the plan's terms weren't followed.

*Examples.* Eligible employees were inadvertently excluded from participating; the plan had to make a top-heavy contribution but didn't; or employees' pre-tax deferrals exceeded the IRS limit.

*Added responsibility:* You must also establish and follow formal or informal procedures which are reasonably designed to promote compliance. Don't, though, rely on plan documents alone as evidence of procedures. *Proactive step:* Use a check sheet to track allocations, with indications of whether an employee was a key employee for purposes of the top-heavy rules.

*Audit now.* APRSC gives you a big break by allowing you to correct all violations for all plan years. You should audit your 401(k) plan at least annually, since corrections must be made by the end of the plan year following the plan year in which the violations occurred. *Goal of corrections:* to make participants and beneficiaries whole.

*Example.* Metrix Co. established a 401(k) plan in 1986. In 1995, while self-auditing the plan's operation for the 1994 plan year, Beth, the plan administrator, discovered that despite the existing practices and procedures, the top-heavy rules were violated. She also uncovered other violations.

• Harry and Jennifer were eligible to participate, but were excluded from participation.

• Brian, David, and Lydia's pre-tax contributions exceeded the annual limit.

During the 1995 plan year, Beth took immediate corrective action by making contributions on Harry's and Jennifer's behalf. She distributed the excess deferrals to Brian, David, and Lydia. And she made a top-heavy minimum contribution to all participants who were entitled to such contributions. Each corrective contribution and distribution was credited with earnings at a rate of interest which made employees whole. Beth's self-correcting actions satisfy APRSC's requirements. ❖

---

### Employer's Business Tax Calendar for April, 1997

➲ **NOTE:** Saturdays, Sundays, and federal legal holidays are taken into account to determine due dates. A state legal holiday delays a due date for a federal tax deposit *only* if the IRS office where you're required to file is located in that state. Under the federal deposit rules, you're allowed a deposit shortfall of the greater of $100 or 2% of your tax liability.

Semiweekly and monthly deposits are for the deposits of FICA and withheld income taxes due on wages paid during the time periods indicated.

| | |
|---|---|
| April 2 | Semiweekly deposit for wages paid on March 26, 27, and 28. |
| April 4 | Semiweekly deposit for wages paid on March 29, 30, 31, and April 1. |
| April 9 | Semiweekly deposit for wages paid on April 2, 3, and 4. |
| April 10 | Employees who work for tips. If employees received $20 or more in tips during March, they should report them to you on Form 4070. |
| April 11 | Semiweekly deposit for wages paid on April 5, 6, 7, and 8. |
| April 15 | Monthly deposit for wages paid in March, if the semiweekly deposit rule didn't apply. |
| | **Partnerships.** File a 1996 Form 1065 and provide each partner with a copy of Schedule K-1. If you want an automatic 3-month extension, file Form 8736. Then file Form 1065 by July 15. If you need an additional 3-month extension, file Form 8800. |
| | **Corporations.** Deposit the first installment of estimated income tax for 1997. A worksheet, Form 1120-W, is available to help you make an estimate of your tax for the year. |
| April 16 | Semiweekly deposit for wages paid on April 9, 10, and 11. |
| April 18 | Semiweekly deposit for wages paid on April 12, 13, 14, and 15. |
| April 23 | Semiweekly deposit for wages paid on April 16, 17, and 18. |
| April 25 | Semiweekly deposit for wages paid on April 19, 20, 21, and 22. |
| April 30 | Semiweekly deposit for wages paid on April 23, 24, and 25. |
| | **All employers.** File Form 941 for the first quarter of 1997. Deposit any undeposited tax. If the total is less than $500 and not a shortfall, you can pay it with the return. If you deposited the tax for the quarter in full and on time, you have until May 12 to file the return. Deposit any FUTA tax owed through March, if more than $100. |

### All-States Chart on '97 Experience Rates

| State | Taxable Wage Base | Contribution Rate Range | State | Taxable Wage Base | Contribution Rate Range |
|---|---|---|---|---|---|
| Ala. | $8,000 | 0.2% - 5.4% | Mont. | $16,000 | Not Available |
| Alaska | $24,200 | .1% - 5.4% | Neb. | $7,000 | 0.1% - 5.4% |
| Ariz. | $7,000 | 0.1% - 5.4% | Nev. | $17,200 | 0.25% - 5.4% |
| Ark. | $9,000 | Not Available | N.H. | $8,000 | Not Available |
| Calif. | $7,000 | 1.1% - 5.4% | N.J. | $18,600 | 0.5% - 5.8% |
| Colo. | $10,000 | 0% - 5.4% | N.M. | $14,200 | Not Available |
| Conn. | $12,000 | 2.0% - 6.9% | N.Y. | $7,000 | Not Available |
| Del. | $8,500 | Not Available | N.C. | $12,100 | 0% - 5.7% |
| D.C. | $10,000 | Not Available | N.D. | $14,200 | 0.1% - 5.4% |
| Fla. | $7,000 | 0.11% - 5.4% | Ohio | $9,000 | 0.1% - 6.5% |
| Ga. | $8,500 | 0.05% - 6.75% | Okla. | $11,100 | Not Available |
| Haw. | $26,000 | 0.2% - 5.4% | Ore. | $20,000 | 1.0% - 5.4% |
| Ida. | $22,800 | 0.5% - 5.4% | Penn. | $8,000 | 1.5% - 9.2% |
| Ill. | $9,000 | Not Available | R.I. | $17,600 | 2.3% - 8.4% |
| Ind. | $7,000 | Not Available | S.C. | $7,000 | 1.3% - 5.4% |
| Iowa | $15,200 | 0.05% - 7.05% | S.D. | $7,000 | Not Available |
| Kan. | $8,000 | 0% - 6.0% | Tenn. | $7,000 | 0% - 10% |
| Ky. | $8,000 | Not Available | Tex. | $9,000 | Not Available |
| La. | $7,700 | 0.3% - 6.01% | Utah | $17,800 | 0.2% - 9% |
| Me. | $7,000 | 1.9% - 7.0% | Vt. | $8,000 | 0.6% - 5.9% |
| Md. | $8,500 | Not Available | Va. | $8,000 | 0.1% - 6.2% |
| Mass. | $10,800 | Not Available | Wash. | $21,300 | 0.06% - 5.4% |
| Mich. | $9,500 | 0.04% - 13% | W.V. | $8,000 | Not Available |
| Minn. | $16,300 | 0.2% - 9.1% | Wis. | $10,500 | 0.02% - 9.75% |
| Miss. | $7,000 | Not Available | Wyo. | $12,200 | 0.3% - 8.8% |
| Mo. | $8,000 | 0% - 7.8% | | | |

# NATCHIQ, INC.

| ALASKA PETROLEUM CONTRACTORS, INC. | ASRC PARSONS ENGINEERING, LLC | HOUSTON CONTRACTING COMPANY - ALASKA, LTD. |
|---|---|---|

To: Mark Nelson/Charlie Schick

From: Christopher B. Boyle

Date: April 4, 1997

Subject: **Exempt Employee - Payment of Day Rate**

In follow-up to your questions of the appropriateness of paying a day-rate to exempt employees, the following will provide guidance.

Alaska has no specific Wage & Hour law addressing the payment of a day-rate to exempt employees. Of course, the first step an employer must take is to <u>properly</u> classify an employee as exempt (not eligible for overtime) or non-exempt. I have previously provided some information on this subject and would recommend we again look at the foreman and similarly classified employees to ensure their status can stand up to the exemption test.

Concerning the payment of day-rates, Alaska has not adopted its own regulation defining "salary basis". However, federal regulations specifically allow paying exempt employees on a day-rate basis when a guarantee of work per week is given. 29 C. F. R. 541.118 (b).

The appropriateness of paying a day rate was raised in Alaska in 1989 at which time the Department (Wage & Hour) ruled that day-rate employees did not meet the salary requirements under state law. However, when challenged, the Department reversed itself and issued the following interpretive ruling in December, 1989:

> The Department "would indeed allow a daily rate providing the following procedures and conditions are true: An employer wishing to compensate an employee on a daily basis, who is otherwise exempt from provisions of the Wage & Hour Act, must communicate to that prospective employee their daily rate <u>and</u> the minimum amount guaranteed each week that any work is performed. In the absence of such documentation, the employer's intent may not be clear concerning the minimum weekly salary to be paid and that employee could become overtime eligible".

A Subsidiary of Arctic Slope Regional Corporation
6700 Arctic Spur Road • Anchorage, Alaska 99518-1550 • (907) 344-5757 • FAX: (907) 267-3190

APC0180

Page 2

In summary, we may pay exempt employees on a day-rate provided very specific conditions are satisfied. I understand from speaking with you that it is beneficial from a reimbursable stand point to pay on a day-rate. However, I would be concerned about the consistent application of the requirements and other practices, known or unknown, that may cause an employees pay to vary from week to week. This is seldom a concern when establishing and paying a straight monthly salary.

Another question you raised was whether a two on two off cycle would constitute a "weekly" basis. The answer is no. Under applicable federal and state regulations, a workweek is a fixed and regularly occurring period i.e., seven consecutive 24 hour periods. The work week may begin on any day of the week and need not coincide with a calendar week; an individual employee's workweek is the statutory or contract number of hours that are to be worked during that period; the workweek may not be artificially adjusted for the purpose of avoiding the payment of overtime, however, the workweek may be changed for any other purpose as allowed by the regulations.

A final question you referred to me was the issue of waiting time if the Charter breaks down or cannot fly due to weather. For non-exempt employees, there is no obligation to pay for "waiting" time. However, many employers will provide some compensation in recognition of the inconvenience and loss of income the employee incurs through no fault of their own. For exempt employees, if they are ready and able to work, but cannot travel to the work site through no fault of their own, no deductions from normal pay would be allowed.

**Recommendations**

The following are recommended actions relative to the day-rate issue:

1) Review all occupations where there may be questions concerning whether they are properly classified as exempt or non- exempt, i. e., foremen and other personnel whose actual job responsibilities and duties may not meet the overtime exemption test.

2) Consider a flat monthly salary for exempt employees.

3) If day-rate status is maintained, ensure the following:

   a) Employees are clearly advised, in writing, of their daily rate <u>and</u> the minimum guaranteed each week that any work is performed. Our current "Notice of Wage Payments" can be modified to address this requirement.

Page 3

    b) Ensure there are no inappropriate deductions from pay. In this context, it means there must be no deductions from pay unless the employee absents himself from work for a day or more for personal reasons, other than sickness or accident. **Deductions for a partial day worked are not permitted** unless the leave falls under the Family Medical Leave Act.

    c) Deductions may not be made for jury duty, attendance as a witness, or temporary military leave. Concerning jury duty, the Department is unclear as to how long the employer can be expected to provide pay to an employee who is on jury duty for an extended period.

I know this information may be more than what you were looking for, but determining proper procedures under Federal and State Wage & Hours laws is very complex. In speaking with the Department, they are often unclear on many issues related to exempt status. It appears case law rulings are often contradictory resulting in the uncertain application of the regulations. Of course, this creates even more uncertainty for employers.

Let me know if I can help you review your current practices or if you need further information.

cc:    B. Cheek
        T. Osborn
        J. Cehula
        J. Laasch
        L. Gabrielson
        M. White/S. McKay
        D. Dieckmeyer
        D. Burrows

schick 7406

# NATCHIQ, INC.

ALASKA PETROLEUM
CONTRACTORS, INC.

HOUSTON CONTRACTING
COMPANY - ALASKA, LTD.

To:        D. Dieckmeyer, S. Eliason, D. Frederick, L. Gabrielson, J. Laasch, L. Shultz

From:      Christopher B. Boyle

Date:      December 26, 1996

Subject:   Wage & Hour Day Rate Analysis

There have been recent concerns raised about our practice of paying certain personnel a day rate versus a straight monthly salary. The main issue is whether the day rate is an appropriate form of payment under wage and hour laws. In addition, it is appropriate to review whether personnel currently paid as exempt are properly classified.

To further this review, the Payroll Department has already requested listings of all personnel currently paid on a day rate. I also have the following requests:

1) Review all exempt (not subject to overtime) occupations to determine if they are properly classified as exempt. Provided as guidance is an attached document which provides functional definitions of exempt employees in administrative, executive, and professional positions. Please be critical in this review and provide a listing of any personnel who may not fit the criteria of exempt. We will then further review these personnel to ensure they are properly classified.

For purposes of this review, do not be concerned with contractual language at this time.

2) Please provide me with the requested information by **January 15, 1997**.

In the meantime, we will be determining whether the practice of paying a day rate is appropriate for our organization.

Please forward this request to whomever you delegate to address this request at your respective organizations.

Thank you for your assistance.

cc:    G. Cheek
       A. Hippe
       T. Osborn

A Subsidiary of Arctic Slope Regional Corporation
8700 Arctic Spur Road • Anchorage, Alaska 99516-1550 • (907) 344-3757 • FAX: (907) 267-3190

APC0183