others whose work is greatly facilitated by or depends upon sophisticated computer programs such as CAD/CAM, but who are not in computer systems analysis and programming occupations.

Employers should note that computer professionals may be paid on a salary or on an hourly basis. If the employees are paid on an hourly basis, hourly pay must be at least 6 1/2 times the minimum wage.

11.  ILLEGAL DEDUCTIONS II

Both federal and state laws require that exempt salaried employees be paid on a bona fide salary basis in order to maintain exempt status. Under federal law, a salaried employee must receive "a predetermined amount constituting all or part of his [or her] compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 CFR § 541.118(a).

   A.  Compensatory Time

       1.  Private Employers.

Overtime pay earned should be actually paid. Allowing "comp time" (paid time off work) in lieu of overtime pay (money) is illegal in Alaska. Employers who have a "comp time" policy which defers payment for overtime and allows it to accumulate to a future unspecified date, to be taken as paid time off, are risking overtime pay liability. "Comp time" is not a legal substitute for overtime pay (money).

The FLSA has no provision for "comp time." An employer must pay for overtime compensation as it is earned. Employers may not credit an employee with compensatory time, even at time and one-half overtime rates for overtime earned but allowed to be taken at some later date after the end of the pay period in which the overtime was earned.

       2.  Public Employers.

The Ninth Circuit recently ruled that the "salary basis" test is invalid as it applied to the public sector. Service Employ. Union Local 102 v. San Diego, 35 F.3d 483 (9th Cir. 1994). The rationale being that public employers are constrained by pay systems based on public accountability, "governmental employees should not be paid for time not worked due to the need to be accountable to the taxpayers for expenditures of public funds." Accordingly, public employees,

APC0190

others whose work is greatly facilitated by or depends upon sophisticated computer programs such as CAD/CAM, but who are not in computer systems analysis and programming occupations.

Employers should note that computer professionals may be paid on a salary or on an hourly basis. If the employees are paid on an hourly basis, hourly pay must be at least 6 1/2 times the minimum wage.

11. ILLEGAL DEDUCTIONS II

Both federal and state laws require that exempt salaried employees be paid on a bona fide salary basis in order to maintain exempt status. Under federal law, a salaried employee must receive "a predetermined amount constituting all or part of his [or her] compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed." 29 CFR § 541.118(a).

A. Compensatory Time

1. Private Employers.

Overtime pay earned should be actually paid. Allowing "comp time" (paid time off work) in lieu of overtime pay (money) is illegal in Alaska. Employers who have a "comp time" policy which defers payment for overtime and allows it to accumulate to a future unspecified date, to be taken as paid time off, are risking overtime pay liability. "Comp time" is not a legal substitute for overtime pay (money).

The FLSA has no provision for "comp time." An employer must pay for overtime compensation as it is earned. Employers may not credit an employee with compensatory time, even at time and one-half overtime rates for overtime earned but allowed to be taken at some later date after the end of the pay period in which the overtime was earned.

2. Public Employers.

The Ninth Circuit recently ruled that the "salary basis" test is invalid as it applied to the public sector. Service Employ. Union Local 102 v. San Diego, 35 F.3d 483 (9th Cir. 1994). The rationale being that public employers are constrained by pay systems based on public accountability, "governmental employees should not be paid for time not worked due to the need to be accountable to the taxpayers for expenditures of public funds." Accordingly, public employees,

14

SAMPLE ISSUE

# Quinlan Bulletin on Wages and Salary Compliance

Vol. 2, No. 4   April 10, 1997

## IN THIS ISSUE:

- **Equal Pay**
  — Employer 'accidentally' bumps male worker's position to higher level ............ page 2

- **Severance Pay**
  — Employer claims early-retirement payments count as 'wages' ............ page 3

- **Vacation Pay**
  — Employee says vacation pay should count for current year's average weekly wage ............ page 4

- **Commissions**
  — Real estate broker finds tenant for an insolvent partnership ............ page 4

- **Overtime Exemptions — State Employees**
  — Federal court refuses to hear state employees' FLSA claim ............ page 5

- **Salary Schedules**
  — Officers claim city misrepresented starting salary ............ page 6

- **Premium Pay**
  — City claims union 'disguised' proposals as mandatory bargaining subjects ............ page 7

## IN FUTURE ISSUES:

EQUAL PAY — Woman says three male managers were paid more than she.


NORTHEAST Publishing Group

APC0192

*Equal Pay*

# Employer 'accidentally' bumps male worker's position to higher level

*Citation: Timmer v. Michigan Department of Commerce, Sixth Circuit U.S. Court of Appeals, Docket No. 95-1706 (Michigan) 1997*

Timmer worked for the Michigan Department of Commerce as a "Department Specialist VII." Her job, as a liquor-liability analyst, was to review and approve forms and rates submitted by insurance companies.

Esser also worked as a Department Specialist VII. He reviewed life insurance and credit-card rates. In 1989, the department decided life insurance policies were more complex than other policies (like the ones Timmer reviewed) and reclassified Esser's position as Department Specialist VIII, one step higher than Timmer's. Esser got a raise.

Timmer applied to have her position reclassified as an VIII, too. After reviewing her's and Esser's jobs, the department decided it had made a mistake in changing Esser's position; it had been "overly optimistic" and should never have made it an VIII at all. The department notified the Department of Civil Service.

The civil service agreed Esser's position was over-classified, and "restricted" it under its restriction policy: The department would continue to pay Esser at the higher level and give him raises accordingly, but the next person to move into the position would be a level VII.

Under the Equal Pay Act, an employer was not allowed to reduce the pay of any employee for purposes of complying with the Act.

Timmer sued the department under the federal Equal Pay Act. She said that despite the fact her's and Esser's positions were substantially the same, the department paid Esser, a man, more. She also claimed the department continued to violate the Act through its restriction policy, even though it knew about the misclassification. She asked for judgment without a trial.

The Act prohibited employers from paying differently men and women who had substantially the same jobs. However, employers did not violate the Act if they proved the pay disparity resulted from a seniority system, a merit system, a system that measured earnings by production quantity or quality, or any other factor other than gender.

The department asked for judgment without a trial. It admitted Esser's and Timmer's jobs were substantially the same, and that Esser was paid more. However, it said, the pay disparity resulted from an inadvertent

> **Action plan:**
> • If you realize you may be violating the Equal Pay Act by paying different salaries for the same job, be careful how you fix the situation. The Act prohibits lowering the salary of the higher-paid employee as a remedy for an equal-pay violation. Raise the other worker's salary — the costs will be far less than any legal fees you may have to spend later on.

(see Accidental Promotion, next page)

Publisher: E. Michael Quinlan, Esq.    Managing Editor: Stephanie Federico
Legal Editors: Carol Johnson Perkins, Esq., Michael R. Jung, Esq., Joanne Belasco, Esq.
Editors: Elin Dugan, Jennifer Kavanaugh    Editorial Assistants: Heather Murray, Anil Adyanthaya, Esq., Konstantine Kyros, Esq.
Contributors: W.B. McDiarmid, Esq., David Braithwaite, Esq., Ann Marie Stoica, Michael C. Hagerman

The entire content of this newsletter is copyrighted by the publisher and may not be copied without prior permission. Contact Copyright Clearance Center (508) 750-8400 for permission to photo-copy for internal use. Contact publisher for other reprint requests. The publisher is not engaged in rendering legal or other professional advice, and assumes no responsibility for the statements and opinions advanced by any of its writers or contributing editors. Case law and statutes change without notice from time to time and are often specific to one jurisdiction only. The information herein is not intended to be, nor should it be considered, a substitute for legal or other professional advice rendered by a competent attorney or other professional. If you have any questions about the application of issues raised herein to your particular situation, seek the vice of a competent attorney or other professional.

This bulletin is available on microfilm from University Microfilms International, Ann Arbor, MI

**NORTHEAST** Publishing Group    Marine Industrial Park, P.O. Box 1659 Boston, MA 02205-1659    ISSN 1086-6817    Copyright © 1997
(617) 542-0048 Fax: (617) 345-9646 e-mail: quinlanp@quinlan.com    Annual subscription rate: $99 plus s&h.

Case 3:03-cv-00174-RRB   Document 56-2   Filed 08/11/2006   Page 5 of 6

## Accidental Promotion

(continued from page 2)

misapplication of the job classification system, which was gender-neutral. It also said that continuing the disparity under its restriction policy didn't violate the Act because the initial misclassification fell under the merit-system exception and was not based on gender.

The court granted the department judgment without a trial. Timmer appealed. She said the department couldn't say it made a mistake or use its restriction policy to defend itself against her claim.

DECISION: Affirmed.

The department was entitled to judgment without a trial because the pay disparity was not based on gender.

Although the department admitted it should not be paying Timmer and Esser differently, it didn't violate the Act. The department's saying it made a mistake was enough to prove the pay disparity was not based on gender — it was an accident. As the court said, "[A]s long as such errors are sex-neutral, they are not violations of the Act." Timmer presented no evidence the mistake was based on sex.

As soon as the department realized its mistake, it took steps to remedy the situation under its restriction policy. The restriction policy was gender-neutral, so the department didn't violate the Act by using it to keep Esser at his higher pay level.

see also: *Brennan v. Owensboro-Daviess County Hospital*, 523 F.2d 1013 (1975).

*Severance Pay*

## Employer claims early-retirement payments count as 'wages'

Citation: *Commonwealth of Virginia/Department of Transportation v. Swiney*, 477 S.E.2d 777 (Virginia) 1996

For 19 years, Swiney worked for the Virginia Department of Transportation. He was injured at work and filed for workers' comp benefits. The Workers' Compensation Commission found the injury was compensable and awarded benefits.

Swiney's employer then offered "early separation" under the state Workforce Transition Act. Swiney, at age 55, would get $5,000 up front, plus $18,554, which would be paid weekly in the amount of $515.38. Swiney agreed to resign.

Later, the commission issued a further award for temporary total disability resulting from Swiney's earlier injury. The amount was based on Swiney's former average weekly wage.

The employer asked for a hearing to contest the award. It claimed Swiney already was receiving wages as part of the early separation offer, so he could not also receive added workers' comp payments.

The commission found the early separation payments were not "wages" for purposes of the Workers' Compensation Act. It denied the employer's request for a hearing.

The employer appealed.

DECISION: Affirmed.

The early separation payments were not "wages," so the commission properly issued the second workers' comp award.

Virginia's Supreme Court had adopted a definition of "wages" as "a compensation given to a hired person for his or her service." *Black's Law Dictionary* stated wages were "compensation of employees based on time worked or output of production." In contrast, Swiney's early separation payments were not paid for work or services, but as an inducement *not* to work for the employer.

see also: *Roanoke Belt Inc. v. Mroczkowski*, 455 S.E.2d 267 (1995).

(see Retirement Payments, next page)

**Action plan:**
• Don't assume *any* payments you make to an employee (e.g., death benefits, workers' comp) are considered "wages" that will allow you to reduce his or her salary or retirement plan. Payments are considered wages only when made in return for "time worked or output of production."

APC0194

## Retirement Payments

(continued from page 3)

*Editor's note:* The employer pointed to another case (see citation above) to support its arguments against Swiney. In that case, unemployment benefits were deemed "income" for purposes of death-benefits ineligibility. Income, however, was not the same as wages, so the case did not help the employer's argument.

*Vacation Pay*

## Employee says vacation pay should count for current year's average weekly wage

Citation: *Corning Inc. v. Workmen's Compensation Appeal Board (Bryner),* 684 A.2d 244 (Pennsylvania) 1996

In June 1992, an employee of Corning Inc. injured his back and neck while working, and sought workers' compensation benefits. Corning determined for the employee's workers' comp claim that his average weekly wage was $1,032.65. The employee disagreed and appealed to a workers' comp judge, claiming Corning incorrectly calculated his wages.

In addition to his hourly wage, the employee received an annual, lump-sum vacation payment of $3,667.96. Corning paid the vacation money to its employees during the first half of the year when the employee took any vacation time, regardless of the duration. The amount of vacation pay was based on the employee's previous year's earnings.

The employee argued the vacation pay he received in the first half of 1992 should count toward the calculation of his average weekly wage for 1992. With that vacation pay included, the employee's average weekly wage would be $1,270.53. In calculating the employee's average weekly wage, Corning had prorated the vacation pay over 1991, which resulted in a lower average weekly wage.

The judge agreed with Corning, finding the vacation pay should be prorated over 1991. The employee appealed to the Workmen's Compensation Appeal Board. The board reversed and ruled the employee's 1992 vacation pay should have been included when calculating his 1992 average weekly wage. Corning appealed.

**DECISION: Reversed.**

Corning based each employee's vacation pay on his or her previous year's earnings. Therefore, when calculating the employee's average weekly wage for 1992, the vacation pay the employee received in 1992 had to be prorated over 1991. The employee's average weekly wage was $1,032.65.

see also: *Eljer Industries v. Workmen's Compensation Appeal Board (Johnson),* 670 A.2d 203 (1996).

**Action plan:**
- If you pay employees lump-sum benefits, like vacation pay, be clear about how those benefits are applied. Do they count toward the previous year's work, or toward next year's? The answer could influence salary calculations and benefit payments.

*Commissions*

## Real estate broker finds tenant for an insolvent partnership

Citation: *Schenck v. HJI Associates,* 685 A.2d 481 (New Jersey) 1996

HJI Associates was a partnership with one asset: some vacant land. The property's market value dropped to below $800,000 while the mortgage balance grew to $1.8 million. HJI's bank began foreclosure proceedings.

(see Broker, next page)