

ALASKA PETROLEUM CONTRACTORS INC.
*General Contractors*

June 25, 1997

Faxed to: 907-269-4992

Mr. Randy Carr
Director of Labor & Safety
State of Alaska
Anchorage, Alaska

Re:    Opinion Letter

Dear Mr. Carr:

Thank you for assisting me over the telephone in making a determination as to overtime exemptions for our staff. The discussion surrounding "supervisors" as being exempt from over time pay (premium pay) but yet have to be paid for all hours worked has been difficult to pull from the regulations.

Please respond in writing to give us a definition as to how it works and the cautions of classifying an employee as a supervisor. We can easily find the classifications for administrative, professionals and executives but do not see a clear path for the supervisors.

Thank you for your help,

Sincerely,

Mark C. Nelson
Operations Manager

Pouch 340014
Prudhoe Bay, Alaska 99734
Fax: 907-659-7706

APC0202

A Subsidiary of Arctic Slope Regional Corporation


# STATE OF ALASKA

**DEPARTMENT OF LABOR**
**WAGE AND HOUR ADMINISTRATION**
**LABOR STANDARDS & SAFETY DIVISION**

*TONY KNOWLES,*
*GOVERNOR*

3301 Eagle Street, Suite 301
P.O. Box 107021
Anchorage, Alaska 99510-7021
Phone: (907) 269-4900
Fax: (907) 269-4915

June 26, 1997
Dictated: 6/25/97

Mark C. Nelson
Operations Manager
Alaska Petroleum Contractors Inc.
P. O. Box 190747
6700 Arctic Spur Road
Anchorage, AK 99519-0747

WHOL #122

Dear Mr. Nelson:

I have reviewed the information you have submitted documenting the duties of your *Materials Supervisors*. I appears that they are employed in a supervisory capacity as defined in 8 AAC 15.910 (14), which states:

> . . . those primary duties performed by an employee who is employed solely for the purpose of regularly assigning and directing the activities of other employees; and is responsible for results of the work performed and; who does not perform duties regularly performed by the employees supervised, except for brief periods of time not to exceed 20 percent of the hours worked in the workweek; for the purpose of AS 23.10.060, "supervisory capacity" does not apply to an employee required by the employer to perform those activities on an intermittent or substitute basis during the course of employment.

As such, they are exempt from overtime under AS 23.10.060, which states in pertinent part:

> **Payment for overtime.** (a) An employer who employs employees engaged in commerce or other business, or in the production of goods or materials in the state may not employ an employee for a workweek longer than 40 hours or for more than eight hours a day. **This section does not apply to the employment of a person acting in a supervisory capacity.** [Emphasis added]
>
> (b) If an employer finds it necessary to employ an employee in excess of 40 hours a week or eight hours a day, compensation for the overtime at the rate of one and one-half times the regular rate of pay shall be paid.

APC0203

Mark C. Nelson                          -2-                    June 26, 1997

The more common exemptions for Administrative, Executive or Professional employees are found in AS 23.10.055. This exemption applies to both minimum wage and overtime. Since those types of employees are not entitled to a minimum wage, their salaries are considered compensation for any and all hours they may work.

The explanation as to why employees in a supervisory capacity must be paid for all hours worked is not found in the regulations. It must be pieced together from the statutes and court rulings. The U.S. Supreme Court has held that employees who are not exempt from minimum wage must be paid for all hours they are "suffered or permitted" to work.

Exempt administrative employees, for example, are paid for all hours worked, but are not guaranteed any minimum hourly rate. Employees working in a supervisory capacity must also be paid for all hours worked. The hiring agreement and pay practices for supervisors establish a contractual hourly straight-time rate of pay for the *Materials Supervisors*. They are statutorily and/or contractually entitled to be paid that rate for all hours worked, without any overtime premium, pursuant to the exemption stated in AS 23.10.060.

I hope this information is helpful. If you have any further questions, do not hesitate to contact our office.

                                        Sincerely,

                                        D. R. (Randy) Carr
                                        Chief
                                        Labor Standards

JRC:cah
apc

APC0204

# Alaska EMPLOYMENT Law Letter

A monthly newsletter designed exclusively for Alaska employers
Thomas M. Daniel, Katherine C. Tank, Helena L. Hall, Editors

Vol. 2, No. 12
December 1997

## WAGE AND HOUR

## Ninth Circuit approves overtime pay for exempt employees

*In the last few years, employers have been confronted with various rulings that underline how carefully they must administer pay practices to avoid jeopardizing the overtime exemption applicable to salaried professional, administrative, and technical employees.*

*In a recent decision that will be reassuring to many employers, the United States Court of Appeals for the Ninth Circuit (which includes Alaska) has clarified that employees who are exempt from overtime requirements under the Fair Labor Standards Act (FLSA) may be paid hourly overtime pay in addition to a fixed salary without destroying their exempt status. The court rejected as "dictum" (non-binding) language from an earlier case, Abshire v. County of Kern, 908 F.2d 483 (9th Cir. 1990), that had previously cast doubt on the practice of paying hourly overtime compensation to exempt employees.*

### Facts of the case

Five current and former Boeing employees claimed that they were entitled to full one and one-half time overtime compensation for all hours worked in excess of 40 in a workweek. The employees included professional engineers and managers who were paid a fixed salary and also received overtime pay in some, but not all, circumstances when they worked over 40 hours in a week. The overtime pay rate was not one and one-half times the straight time rate, but rather their straight time rate plus $6.50 per hour.

In order for employees to be deemed exempt from overtime under the FLSA, they must satisfy both a "duties test" and a "salary basis test." Because the employees were professionals and managers, there was never a question that their work duties met the requirements for exemption. The employees argued, however, that the hourly overtime compensation paid to them by Boeing in certain circumstances violated the salary basis test and rendered them nonexempt employees. Nonexempt employees would be entitled to time and one-half for all hours worked in excess of 40 hours per week.

A Department of Labor (DOL) regulation provides that "a salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides a salary is not inconsistent with the salary basis of payment." 29 C.F.R. § 541.118(b) In a series of opinion letters, the DOL has interpreted this regulation to mean that hourly overtime compensation does not violate the salary basis test and, accordingly, does not destroy exempt status.

### Court's decision

The court deferred to the DOL's interpretation of 29 C.F.R. § 541.118(b) in holding that hourly overtime pay does not violate the salary basis test or convert an otherwise exempt employee into a nonexempt employee. The court also observed that "[t]he plain language of the regulation . . . supports the Secretary [of Labor]'s conclusion that overtime compensation, by itself, does not spoil exempt status."

## In this issue

- Ninth Circuit approves overtime pay for exempt employees — 1
- Officers not entitled to overtime for off-duty physical training — 2
- Employer may enforce neutral application guidelines — 3
- Court expands liability for derogatory remarks — 4
- Court expands liability for derogatory remarks even further — 4
- FMLA advisory opinions — 5
- What's an employer to do? — 7

The employees also brought a claim under the Washington Minimum Wage Act (MWA). In response to a [Wa]shington Court of Appeals decision, the Washington Legislature amended the MWA in 1995 to make clear that hourly overtime pay did not destroy exempt status. The legislation specifically applied the amendment to all lawsuits filed on or after February 1, 1995.

The Boeing employees had filed their suit after February 1, 1995, and thus the only question under state law was whether the Legislature had exceeded its authority in amending the MWA. The court held that the Washington Legislature had not violated the constitutional rights of the employees by amending the MWA. Hence, the amendment was valid and extinguished the employees' claims under the MWA. *Boykin v. Boeing Co.*, ___ F.3d ___, 1997 U.S. App. LEXIS 22,277 (9th Cir. Oct. 23, 1997).

## Tips for employers

There is not a similar statutory provision under the Alaska Wage and Hour Act (AWHA) with regard to paying exempt employees overtime pay. However, because the AWHA is based on the FLSA, Alaska courts look to federal case law in interpreting the AWHA. Therefore, an Alaska court may follow this case in construing the AWHA.

Nevertheless, there are many common misunderstand[ing]s about the validity of certain pay practices for exempt employees (e.g., treatment of partial day/partial week absences, informal systems of "comp time"). You should obtain good advice before establishing pay practices for exempt employees that vary from standard payment of salary.

## WAGE AND HOUR

# Officers not entitled to overtime for off-duty physical training

*Is off-duty physical fitness training conducted by police officers in order to maintain physical fitness standards required by their employer "work" such that the employer is required to pay them overtime for the time spent so engaged? The federal Fair Labor Standards Act (FLSA) requires covered employees to work no more than 40 hours per week without receiving one and one-half times their regular rate of pay for the overtime hours.*

The key question, then, is what counts as "work." Although the question may seem simple, it can become complex when the activity is not performance of traditional on-the-job tasks, but is related to, or required for, performance of the job.

## [F]acts of the case

The United States Court of Appeals for the Eleventh Circuit attempted to answer this question with respect to the off-duty physical fitness training performed by members of Florida's Metro-Dade Police Department's Special Response Team (SRT). The SRT is a specialized unit of the police department whose officers are highly trained in the use of special weapons, equipment, and techniques designed to minimize the risk of harm to officers and civilians in situations involving barricaded subjects, snipers, hostages, and high-risk search and arrest warrants.

Because SRT call-outs often require extreme physical exertion, involve serious risk to human life, and can last as long as 24 hours, the SRT's standard operating procedures provide that "good physical fitness is recognized as a vital and necessary quality for individuals assigned to SRT."

Prospective SRT personnel must pass a physical fitness examination, after which they undergo rigorous cardiovascular and strength training in the SRT training school. Once they are members of the SRT, individuals are monitored to ensure that they are physically capable of performing SRT functions; individuals who fail fitness exams are subject to reassignment outside the SRT.

SRT officers rotate between two weeks on primary status, during which they train in SRT tactics and respond to calls for SRT assistance, and two weeks on warrant status, in which they serve felony arrest warrants on high-risk individuals. When on primary status, SRT officers are allotted two hours of on-duty physical fitness training each day, which they use for long-distance runs, weight training, and calisthenics.

Prior to 1990, SRT members also were permitted to train twice a week while on duty during the warrant cycle. Since 1990, however, the SRT has not allotted any on-duty physical training time for officers on warrant status.

## District court decision

Several current and former SRT officers filed a lawsuit in federal court, claiming that they were entitled under the FLSA to overtime pay for off-duty hours spent performing physical fitness training. The district court concluded that the off-duty training was compensable work after the jury made the following factual determinations:

(1) The off-duty physical training or exercise is required or controlled by their employer.

(2) The off-duty physical training or exercise is performed predominantly for the benefit of the employer.

(3) The off-duty physical training is an integral and indispensable part of their principal activities as SRT officers.

## Judicial and statutory guidance on what equals 'work'

The Eleventh Circuit reviewed and reversed the district court's conclusion. The court first observed that because Congress did not define "work" or "employment" in the FLSA, it has been left to the courts to determine which employment-related activities are compensable. The court then reviewed the guidelines that have emerged from court opinions.

Generally, courts have construed work to mean all activities "controlled or required by the employer and pursued necessarily and primarily for the benefit of his employer and his business." Whether an off-duty activity is conducted predominantly for the benefit of the employer depends on the degree to which an employee's freedom is undermined by the work-related activity. One court said that "[i]t is clear that an employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA."

The Eleventh Circuit also pointed out that the Portal-to-Portal Act provides that employers are not liable under the FLSA for activities that are "preliminary to or postliminary to" the principal activities the employee is employed to perform. As a result, activities performed before or after a shift are compensable work only if they "are an integral and indispensable part of the principal activities for which covered workmen are employed."

### Department of Labor's viewpoint

After reviewing these judicial guidelines, the Eleventh Circuit looked to regulations issued by the Department of Labor (DOL) with respect to employment-related training activities. These regulations provide that training programs need not be counted as work if:

1) attendance is outside the employee's regular working hours;
(2) the employee does not perform productive work during the program;
(3) attendance is voluntary; and
(4) the program is not directly related to the employee's job.

The court also discussed an opinion letter issued by the former DOL wage and hour administrator in which she applied these regulations to a similar case and concluded that officers' off-duty training was not compensable work because it was not required for, or directly related to, the officers' jobs.

### Off-duty training is not work

Applying these factors to the SRT training situation, the court concluded that the off-duty time spent by the SRT officers maintaining physical fitness standards mandated by their job is not compensable work under the FLSA. First, the off-duty training was conducted outside of regular work hours. Second, the officers did not perform any productive work (e.g., responding to life-threatening situations) while they were exercising. Third, the off-duty training was voluntary. The court reasoned that the supervisors required only that the officers pass fitness exams; the officers were given the freedom to select their off-duty activities and to train at any location, at any time, and for any duration.

Finally, the court concluded that the officers' off-duty training was not directly related to their SRT employment. Although they were required to maintain a certain level of fitness, they were not required to develop a skill unique to the SRT job. Also, the training provided benefits to the individual officers that extended beyond their employment position. *Dade County v. Alvarez*, 1997 U.S. App. LEXIS 28604 (11th Cir. Oct. 16, 1997).

### Practical advice

The case of the SRT officers demonstrates that a fact-specific analysis is required to determine whether off-duty activities performed by employees should be considered "work," for which you must compensate them. If the nature of a particular job is such that employees engage in off-duty training (whether physical or another type of training) in order to perform job duties, you should carefully consider the guidelines developed by the courts and DOL to determine whether you are required to pay employees for that training time.

> The officers did not perform any productive work (e.g., responding to life-threatening situations) while they were exercising.

## LABOR RELATIONS

# Employer may enforce neutral application guidelines

During 1996, we reported on cases involving an employer's duty not to discriminate against union organizers, or "salts," who are applying for jobs to attempt to organize from within. A recent case from the U.S. Court of Appeals for the District of Columbia indicates that if you reject such applicants based on neutral guidelines, uniformly applied, you will not be liable for anti-"salt" discrimination. The decision is likely to be given weight because it was authored by Chief D.C. Circuit Judge Harry T. Edwards, an acknowledged expert in issues of labor law.

### Facts

The case involved the court's review of an order by the National Labor Relations Board (NLRB) that an employer had violated the National Labor Relations Act by failing to consider the applications of individuals who had written "union organizer" on the forms they submitted. The court declined to enforce the NLRB order, finding that there was no substantial evidence that the employer's reason for rejecting the applications was anti-union sentiment.

The employer had written application guidelines on file with the state employment office. Under the guidelines, applicants were to fill in applications in ink on special application forms at the state employment offices. Applicants were instructed to refrain from adding extraneous notations such as "vet," "boy scout," or "union organizer."

ARC0207