## Wage and Hour Division, Labor

r production or
supervision or
ir productivity
purpose of rec-
ns or other
handling their
inces and dis-
necessary; plan-
ining the tech-
oportioning the
ars; determining
, supplies, ma-
ssed or merchan-
ocked and sold;
d distribution of
ise and supplies;
y of the men and

r.

whether an em-
at as his primary
n all the facts in
amount of time
ice of the mana-
*i g* in deter-
, is the
...pro.ee. In the
be taken as a
tat primary duty
:, or over 50 per-
's time. Thus, an
over 50 percent of
ment would have
imary duty. Time
the sole test, and
ae employee does
ent of his time in
might neverthe-
it as his primary
inent factors sup-
n. Some of these
the relative im-
agerial duties as
types of duties.
rich the employee
y powers, his rel-
supervision, and
een his salary and
employees for the
ork performed by
example, in some
divisions of an es-
oyee has broad re-
- to those of the
of the establish-
spends more than
e in production or
aged such work

he supervises other employees, directs
the work of warehouse and delivery
men, approves advertising, orders mer-
chandise, handles customer com-
plaints, authorizes payment of bills, or
performs other management duties as
the day-to-day operations require. He
will be considered to have management
as his primary duty. In the data proc-
essing field an employee who directs
the day-to-day activities of a single
group of programers and who performs
the more complex or responsible jobs
in programing will be considered to
have management as his primary duty.

§ 541.104  Department or subdivision.

(a) In order to qualify under § 541.1,
the employee's managerial duties must
be performed with respect to the enter-
prise in which he is employed or a cus-
tomarily recognized department or
subdivision thereof. The phrase "a cus-
tomarily recognized department or
subdivision" is intended to distinguish
between a mere collection of men as-
signed from time to time to a specific
job or series of jobs and a unit with
permanent status and function. In
order properly to classify an individual
as an executive he must be more than
merely a supervisor of two or more em-
ployees; nor is it sufficient that he
merely participates in the manage-
ment of the unit. He must be in charge
of and have as his primary duty the
management of a recognized unit
which has a continuing function.

(b) In the vast majority of cases
there is no difficulty in determining
whether an individual is in charge of a
customarily recognized department or
subdivision of a department. For exam-
ple, it is clear that where an enterprise
comprises more than one establish-
ment, the employee in charge of each
establishment may be considered in
charge of a subdivision of the enter-
prise. Questions arise principally in
cases involving supervisors who work
outside the employer's establishment,
move from place to place, or have dif-
ferent subordinates at different times.

(c) In such instances, in determining
whether the employee is in charge of a
recognized unit with a continuing func-
tion, it is the division's position that
the unit supervised need not be phys-
ically within the employer's establish-

ment and may move from place to
place, and that continuity of the same
subordinate personnel is not absolutely
essential to the existence of a recog-
nized unit with a continuing function.
although in the ordinary case a fixed
location and continuity of personnel
are both helpful in establishing the ex-
istence of such a unit. The following
examples will illustrate these points.

(d) The projects on which an indi-
vidual is in charge of a certain type of
construction work is employed may
occur at different locations, and he
may even hire most of his workforce at
these locations. The mere fact that he
moves his location would not inval-
idate his exemption if there are other
factors which show that he is actually
in charge of a recognized unit with a
continuing function in the organiza-
tion.

(e) Nor will an otherwise exempt em-
ployee lose the exemption merely be-
cause he draws the men under his su-
pervision from a pool. If other factors
are present which indicate that he is in
charge of a recognized unit with a con-
tinuing function. For instance, if this
employee is in charge of the unit which
has the continuing responsibility for
making all installations for his em-
ployer, or all installations in a par-
ticular city or a designated portion of
a city, he would be in charge of a de-
partment or subdivision despite the
fact that he draws his subordinates
from a pool of available men.

(f) It cannot be said, however, that a
supervisor drawn from a pool of super-
visors who supervises employees as-
signed to him from a pool and who is
assigned a job or series of jobs from
day to day or week to week has the sta-
tus of an executive. Such an employee
is not in charge of a recognized unit
with a continuing function.

§ 541.105  Two or more other employ-
ees.

(a) An employee will qualify as an
"executive" under § 541.1 only if he cus-
tomarily and regularly supervises the
least two full-time employees or the
equivalent. For example, if the "exec-
utive" supervises one full-time and two
part-time employees of whom one
works morning and one, afternoons; or
four part-time employees, two of whom

185

work mornings and two afternoons. this requirement would be met.

(b) The employees supervised must be employed in the department which the "executive" is managing.

(c) It has been the experience of the divisions that a supervisor of a few as two employees usually performs nonexempt work in excess of the general 20-percent tolerance provided in § 541.1.

(d) In a large machine shop there may be a machine-shop supervisor and two assistant machine-shop supervisors. Assuming that they meet all the other qualifications § 541.1 and particularly that they are not working foremen, they should certainly qualify for the exemption. A small department in a plant or in an office is usually supervised by one person. Any attempt to classify one of the other workers in the department as an executive merely by giving him an honorific title such as assistant supervisor will almost inevitably fail as there will not be sufficient true supervisory or other managerial work to keep two persons occupied. On the other hand, it is incorrect to assume that in a large department, such as a large shoe department in a retail store which has separate sections for men's, women's, and children's shoes, for example, the supervision cannot be distributed among two or three employees, conceivably among more. In such instances, assuming that the other tests are met, especially the one concerning the performance of nonexempt work, each such employee "customarily and regularly directs the work of two or more other employees therein."

(e) An employee who merely assists the manager or buyer of a particular department and supervises two or more employees only in the actual manager's or buyer's absence, however, does not meet this requirement. For example, where a single unsegregated department, such as a women's sportswear department or a men's shirt department in a retail store, is managed by a buyer, with the assistance of one or more assistant buyers, only one employee, the buyer, can be considered an executive, even though the assistant buyers at times exercise some managerial and supervisory responsibilities. A shared responsibility for the super-

vision of the same two or more employees in the same department does not satisfy the requirement that the employee "customarily and regularly directs the work of two or more employees therein."

§ 541.106 Authority to hire or fire.

Section 541.1 requires that an exempt executive employee have the authority to hire or fire other employees or that his suggestions and recommendations as to hiring or firing and as to advancement and promotion or any other change of status of the employees who he supervises will be given particular weight. Thus, no employee, whether high or low in the hierarchy of management, can be considered as employed in a bona fide executive capacity unless he is directly concerned either with the hiring or the firing and other change of status of the employees under his supervision, whether by direct action or by recommendation to those to who the hiring and firing functions are delegated.

§ 541.107 Discretionary powers.

(a) Section 541.1(d) requires that an exempt executive employee customarily and regularly exercise discretionary powers. A person whose work is so completely routinized that he has no discretion does not qualify for exemption.

(b) The phrase "customarily and regularly" signifies a frequency which must be greater than occasional but which, of course, may be less than constant. The requirement will be met by the employee who normally and recurrently is called upon to exercise and does exercise discretionary powers in the day-to-day performance of his duties. The requirement is not met by the occasional exercise of discretionary powers.

§ 541.108 Work directly and closely related.

(a) This phrase brings within the category of exempt work not only the actual management of the department and the supervision of the employees therein, but also activities which are closely associated with the performance of the duties involved in such managerial and supervisory functions

or responsibilities. The supe employees and the manage department include a grea rectly and closely related t are different from the work by subordinates and are con formed by supervisors becau helpful in supervising the en contribute to the smooth of the department for whi responsible. Frequently su work is of a kind which i ments that are organized di which are larger and have cialization of function, m formed by a nonexempt emp especially for that purpose will serve to make clear t to be given the phrase "d closely related".

(b) Keeping basic records time, for example, is freq formed by a timekeeper er that purpose. In such cases clearly not exempt in natu establishments which are enough to employ a timek which the timekeeping been decentralized, the s each department keeps th records of his own subor these instances, as indicate timekeeping is directly re function of managing the p partment and supervising ees. However, the preparat roll by a supervisor, even the employees under his cannot be considered to work, since the preparati roll does not aid in the s the employees or the ma the department. Similarly by a supervisor of produc records of his own subord in supervision or control empt work, while the ma production records of en under his direction woul empt work.

(c) Another example of may be directly and clos the performance of manag is the distribution of mer chandise and supplies. control of the flow of mer chandise and supplies in is ordinarily a responsi managerial employee i:

Wage and Hour Division, Labor §541.108

or responsibilities. The supervision of employees and the management of a department include a great many directly and closely related tasks which are different from the work performed by subordinates and are commonly performed by supervisors because they are helpful in supervising the employees or contribute to the smooth functioning of the department for which they are responsible. Frequently such exempt work is of a kind which in establishments that are organized differently or which are larger and had have greater specialization of function, may be performed by a nonexempt employee hired especially for that purpose. Illustration will serve to make clear the meaning to be given the phrase "directly and closely related".

(b) Keeping basic records of working time, for example, is frequently performed by a timekeeper employed for that purpose. In such cases the work is clearly not exempt in nature. In other establishments which are not large enough to employ a timekeeper, or in which the timekeeping function has been decentralized, the supervisor of each department keeps the basic time records of his own subordinates. In these instances, as indicated above, the timekeeping is directly related to the function of managing the particular department and supervising its employees. However, the preparation of a payroll by a supervisor, even though the payroll is that of the employees under his supervision, cannot be considered to be exempt work, since the preparation of a payroll does not aid in the supervision of the employees or the management of the department. Similarly, the keeping by a supervisor of production or sales records of his own subordinates for use in supervision or control would be exempt work, while the maintenance of production records of employees not under his direction would not be exempt work.

(c) Another example of work which may be directly and closely related to the performance of management duties is the distribution of materials or merchandise and supplies. Maintaining control of the flow of materials or merchandise and supplies in a department is ordinarily a responsibility of the managerial employee in charge. In

many nonmercantile establishments the actual distribution of materials is performed by nonexempt employees under the supervisor's direction. In other establishments it is not uncommon to leave the actual distribution of materials and supplies in the hands of the supervisor. In such cases it is exempt work since it is directly and closely related to the managerial responsibility of maintaining the flow of materials. In a large retail establishment, however, where the replenishing of stocks of merchandise on the sales floor is customarily assigned to a nonexempt employee, the performance of such work by the manager or buyer of the department is nonexempt. The amount of time the manager or buyer spends in such work must be offset against the statutory tolerance for nonexempt work. The supervision and control of a flow of merchandise to the sales floor, of course, is directly and closely related to the managerial responsibility of the manager or buyer.

(d) Setup work is another illustration of work which may be exempt under certain circumstances if performed by a supervisor. The nature of setup work is typically performed by the same employees who perform the "production" work; that is, the employee who operates the machine also "sets it up" or adjusts it for the particular job at hand. Such setup work is part of the production operation and is not exempt, in other instances the setting up of the work is a highly skilled operation which the ordinary production worker or machine tender typically does not perform. In some plants, particularly large ones, such setup work may be performed by employees whose duties are not supervisory in nature. In other plants, however, particularly small plants, such work is a regular duty of the executive and is directly and closely related to his responsibility for the work performance of his subordinates and for the adequacy of the final product. Under such circumstances it is exempt work. In the data processing field the work of a supervisor when he performs the more complex or more responsible work in a program utilizing several computer

137

programers or computer operators would be exempt activity.

(e) Similarly, a supervisor who spot checks and examines the work of his subordinates to determine whether they are performing their duties properly, and whether the product is satisfactory, is performing work which is directly and closely related to his managerial and supervisory functions. However, this kind of examining and checking must be distinguished from the kind which is normally performed by an "examiner," "checker," or "inspector," and which is really a production operation rather than a part of the supervisory function. Likewise, a department manager or buyer in a retail or service establishment who goes about the sales floor observing the work of sales personnel under his supervision to determine the effectiveness of their sales techniques, checking on the quality of customer service being given, or observing customer preferences and reactions to the lines, styles, types, colors, and quality of the merchandise offered, is performing work which is directly and closely related to his managerial and supervisory functions. His actual participation, except for supervisory training or demonstration purposes, in such activities as making sales to customers, replenishing stocks of merchandise or restocking the sales floor, removing merchandise from fitting rooms and returning to stock or shelves, however, is not. The amount of time a manager or buyer spends in the performance of such activities must be included in computing the percentage limitation on nonexempt work.

(f) Watching machines is another duty which may be exempt when performed by a supervisor under proper circumstances. Obviously the mere watching of machines in operation cannot be considered exempt work where, as in certain industries in which the machinery is largely automatic, it is an ordinary production function. Thus, an employee who watches machines for the purpose of seeing that they operate properly or for the purpose of making repairs or adjustments is performing nonexempt work. On the other hand, a supervisor who watches the operation of the machinery in his department in

the sense that he "keeps an eye out for trouble" is performing work which is directly and closely related to his managerial responsibilities. Making an occasional adjustment in the machinery under such circumstances is also exempt work.

(g) A word of caution is necessary in connection with these illustrations. The recordkeeping, material distributing, setup work, machine watching and adjusting, and inspecting, examining, observing and checking referred to in the examples of exempt work are presumably the kind which are supervisory and managerial functions rather than merely "production" work. Frequently it is difficult to distinguish the managerial type from the type which is a production operation. In deciding such difficult cases it should be borne in mind that it is one of the objectives of §541.1 to exclude from the definition foremen who hold "dual" or combination jobs. (See discussion of working foremen in §541.115.) Thus, if work of this kind takes up a large part of the employee's time it would be evidence that management of the department is not the primary duty of the employee, that such work is a production operation rather than a function directly and closely related to the supervisory or managerial duties, and that the employee is in reality a combination foreman-"setup" man, foreman-machine adjuster (or mechanic), or foreman-examiner, floorman-salesperson, etc., rather than a bona fide executive.

§ 541.109   Emergencies.

(a) Under certain occasional emergency conditions, work which is normally performed by nonexempt employees and is nonexempt in nature will be directly and closely related to the performance of the exempt functions of management and supervision and will therefore be exempt work. In effect, this means that a bona fide executive who performs work of a normally nonexempt nature on rare occasions because of the existence of a real emergency will not, because of the performance of such emergency work, lose the exemption. Bona fide executives include among their responsibilities the

safety of the employees u: pervision, the preservatio: tion of the merchandise, other property of the d: subdivision in their char: age due to unforeseen c: and the prevention o breakdown in productio service operations. Conse: conditions beyond contro threaten the safety of th or a cessation of operatio: damage to the employe: any manual or other o exempt work performe: u prevent such results is : empt work and is not inc puting the percentage : nonexempt work.

(b) The rule in paragra: section is not applicable nonexempt work arising rences which are not bey: for which the employer c: provide in the normal cc ness.

(c) A few illustrations : in distinguishing routir formed as a result of rea. of the kind for which no practically be made by in advance of their occur: tine work which is not egory. It is obvious that intenders who pitches i: plosion and digs out the: trapped in the mine is su: executive during that w other hand, the manager establishment who person the cleaning operations garments because he fea: the fabrics if he allows n: to handle them is nc "emergency" work of ir can be considered exemp manager of a departmen store performing exempt personally waits on a sp: tient customer because loss of the sale or the cu: will if he allows a salesp: him. The performance work by executives dur: taking, during other pe: workload, or the handli: ders are the kinds of ac: the percentage tolerance to cover. For example,

Case 3:03-cv-00174-RRB    Document 57    Filed 08/11/2006    Page 5 of 7

| |

"keeps an eye out for
ming work which is
y related to his man-
ities. Making an oc-
nt in the machinery
nstances is also ex-

ution is necessary in
these illustrations.
y, material distrib-
. machine watching
d inspecting, exam-
ad checking referred
of exempt work are
nd which are super-
rial functions rather
fuction" work. Fre-
ilt to distinguish the
om the type which is
ration. In deciding
s it should be borne
one of the objectives
a from the definition
"dual" or combina-
scussion of working
5.: Thus, if work of
a is a part of the
s w    be evidence
partment is
.-y u. the employee.
a production oper-
a function directly
i to the supervisory
es, and that the em-
a combination fore-
. foreman-machine
nio'. or foreman-ex-
.-salesperson.   etc..
fide executive.

cies.

n occasional emer-
work which is nor-
by nonexempt em-
nexempt in nature
i closely related to
f the exempt func-
nt and supervision
be exempt work. In
that a bona fide ex-
ms work of a nor-
ature on rare occa-
existence of a real
because of the per-
nergency work, lose
a fide executives in-
responsibilities the

safety of the employees under their su-
pervision, the preservation and protec-
tion of the merchandise, machinery or
other property of the department or
subdivision in their charge from dam-
age due to unforeseen circumstances,
and the prevention of widespread
breakdown in production, sales, or
service operations. Consequently, when
conditions beyond control arise which
threaten the safety of the employees,
or a cessation of operations, or serious
damage to the employer's property,
any manual or other normally non-
exempt work performed in an effort to
prevent such results is considered ex-
empt work and is not included in com-
puting the percentage limitation on
nonexempt work.

(b) The rule in paragraph (a) of this
section is not applicable, however, to
nonexempt work arising out of occur-
rences which are not beyond control or
for which the employer can reasonably
provide in the normal course of busi-
ness.

(c) A few illustrations may be helpful
in distinguishing routine work per-
formed as a result of real emergencies
of the kind for which no provision can
practicably be made by the employer
in advance of their occurrence and rou-
tine work which is not in this cat-
egory. It is obvious that a mine super-
intendent who pitches in after an ex-
plosion and digs out the men who are
trapped in the mine is still a bona fide
executive during that week. On the
other hand, the manager of a cleaning
establishment who personally performs
the cleaning operations on expensive
garments because he fears damage to
the fabrics if he allows his subordinates
to handle them is not performing
"emergency" work of the kind which
can be considered exempt. Nor is the
manager of a department in a retail
store performing exempt work when he
personally waits on a special or impa-
tient customer because he fears the
loss of the sale or the customer's good-
will if he allows a salesperson to serve
him. The performance of nonexempt
work by executives during inventory-
taking, during other periods of heavy
workload, or the handling of rush or-
ders are the kinds of activities which
the percentage tolerances are intended
to cover. For example, pitching in on

the production line in a canning plant
during seasonal operations is not ex-
empt "emergency" work even if the ob-
jective is to keep the food from spoil-
ing. Similarly, pitching in behind the
sales counter in a retail store during
special sales or during Christmas or
Easter or other peak sales periods is
not "emergency" work, even if the ob-
jective is to improve customer service
and the store's sales record. Mainte-
nance work is not emergency work
even if performed at night or during
weekends. Relieving subordinates dur-
ing rest or vacation periods cannot be
considered in the nature of "emer-
gency" work since the need for replace-
ments can be anticipated. Whether re-
placing the subordinate at the work-
bench, or production line, or sales
counter during the first day or partial
day of an illness would be considered
exempt emergency work would depend
upon the circumstances in the par-
ticular case. Such factors as the size of
the establishment and of the execu-
tive's department, the nature of the in-
dustry, the consequences that would
flow from the failure to replace the fill-
ing employee immediately, and the fea-
sibility of filling the employee's place
promptly would all have to be weighed.

(d) All the regular cleaning up
around machinery, even when nec-
essary to prevent fire or explosion, is
not "emergency" work. However, the
removal by an executive of dirt or ob-
structions constituting a hazard to life
or property need not be included in
computing the percentage limitation if
it is not reasonably practicable for
anyone but the supervisor to perform
the work and it is the kind of "emer-
gency" which has not been recurring.
The occasional performance of repair
work in case of a breakdown of machin-
ery, or the collapse of a display rack,
or damage to or exceptional disarray of
merchandise caused by accident or a
customer's carelessness may be consid-
ered exempt work if the breakdown is
one which the employer cannot reason-
ably anticipate. However, recurring
breakdowns or disarrays requiring fre-
quent attention, such as that of an old
belt or machine which breaks down re-
peatedly or merchandise displays con-
stantly requiring re-sorting or
straightening, are the kind for which

**§ 541.110**

provision could reasonably be made and repair of which must be considered as nonexempt.

**§ 541.110  Occasional tasks.**

(a) In addition to the type of work which by its very nature is readily identifiable as being directly and closely related to the performance of the supervisory and management duties, there is another type of work which may be considered directly and closely related to the performance of these duties. In many establishments the proper management of a department requires the performance of a variety of occasional, infrequently recurring tasks which cannot practicably be performed by the production workers and are usually performed by the executive. These small tasks when viewed separately without regard to their relationship to the executive's overall functions might appear to constitute nonexempt work. In reality they are the means of properly carrying out the employee's management functions and responsibilities in connection with men, materials, and production. The particular tasks are not specifically assigned to the "executive" but are performed by him in his discretion.

(b) It might be possible for the executive to take one of his subordinates away from his usual tasks, instruct and direct him in the work to be done, and wait for him to finish it. It would certainly not be practicable, however, to manage a department in this fashion. With respect to such occasional and relatively inconsequential tasks, it is the practice in industry generally for the executive to perform them rather than to delegate them to other persons. When any one of these tasks is done frequently, however, it takes on the character of a regular production function which could be performed by a nonexempt employee and must be counted as nonexempt work. In determining whether such work is directly and closely related to the performance of the management duties, consideration should be given to whether it is: (1) The same as the work performed by any of the subordinates of the executive; or (2) a specifically assigned task of the executive employees; or (3) practicably delegable to nonexempt em-

ployees in the establishment; or (4) repetitive and frequently recurring.

**§ 541.111  Nonexempt work generally.**

(a) As indicated in § 541.101 the term "nonexempt work," as used in this subpart, includes all work other than that described in § 541.1 (a) through (d) and the activities directly and closely related to such work.

(b) Nonexempt work is easily identifiable where, as in the usual case, it consists of work of the same nature as that performed by the nonexempt subordinates of the "executive." It is more difficult to identify in cases where supervisory employees spend a significant amount of time in activities not performed by any of their subordinates and not consisting of actual supervision and management. In such cases careful analysis of the employee's duties with reference to the phrase "directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section" will usually be necessary in arriving at a determination.

**§ 541.112  Percentage limitations on nonexempt work.**

(a) An employee will not qualify for exemption as an executive if he devotes more than 20 percent, or in the case of an employee of a retail or service establishment if he devotes as much as 40 percent, of his hours worked in the workweek to nonexempt work. This test is applied on a workweek basis and the percentage of time spent on nonexempt work is computed on the time worked by the employee.

(b)(1) The maximum allowance of 20 percent for nonexempt work applies unless the establishment by which the employee is employed qualifies for the higher allowance as a retail or service establishment within the meaning of the Act. Such an establishment must be a distinct physical place of business, open to the general public, which is engaged on the premises in making sales of goods or services to which the concept of retail selling or servicing applies. As defined in section 13(a)(2) of the Act, such an establishment must make at least 75 percent of its annual

dollar volume of sales of good ices from sales that are both s sale and recognized as retail i ticular industry. Types of ments which may meet these clude stores selling consumer the public; hotels; motels; re some types of amusement reational establishments (but offering wagering or gambli ties); hospitals, or institu marily engaged in the care o the aged, the mentally ill, or residing on the premises, if o general public; public parking parking garages; auto repa gasoline service stations (but stops); funeral homes; cemet Further explanation and ill of the establishments inclu term "retail or service estab as used in the Act may be fou 779 of this chapter.

(2) Public and private eleme secondary schools and insti higher education are, as a ru tail or service establishment they are not engaged in sale or services to which the reta applies. Under section 13(a) the Act prior to the 1966 am it was possible for private physically or mentally hand gifted children to qualify a service establishments if th statutory tests, because t types of services provided to dents were considered by C be of a kind that may be re retail. Such schools, unless of their operations has cha continue to qualify as reta establishments and, if the utilize the greater toleran exempt work provided for and administrative employe or service establishments un 13(a)(1) of the Act.

(3) The legislative history makes it plain that an est engaged in laundering, clea pairing clothing or fabrics a tail or service establishmen Act was amended in 1949. C cluded such establishment exemption under section cause of the lack of a retail the services sold by such ments, and provided a sepa

Case 3:03-cv-00174-RRB   Document 57   Filed 08/11/2006   Page 7 of 7

§ 541.113

dollar volume of sales of goods or services from sales that are both not for resale and recognized as retail in the particular industry. Types of establishments which may meet these tests include stores selling consumer goods to the public; hotels; motels; restaurants; some types of amusement or recreational establishments (but not those offering wagering or gambling facilities); hospitals, or institutions primarily engaged in the care of the sick, the aged, the mentally ill, or defective residing on the premises, if open to the general public; public parking lots and parking garages; auto repair shops; gasoline service stations (but not truck stops); funeral homes; cemeteries; etc. Further explanation and illustrations of the establishments included in the term "retail or service establishment" as used in the Act may be found in part 779 of this chapter.

(2) Public and private elementary and secondary schools and institutions of higher education are, as a rule, not retail or service establishments, because they are not engaged in sales of goods or services to which the retail concept applies. Under section 13(a)(2)(iii) of the Act prior to the 1966 amendments, it was possible for private schools for physically or mentally handicapped or gifted children to qualify as retail or service establishments if they met the statutory tests, because the special types of services provided by Congress to be of a kind that may be recognized as retail. Such schools, unless the nature of their operations has changed, may continue to qualify as retail or service establishments and, if they do, may utilize the greater tolerance for non-exempt work provided for executive and administrative employees of retail or service establishments under section 13(a)(1) of the Act.

(3) The legislative history of the Act makes it plain that an establishment engaged in laundering, cleaning, or repairing clothing or fabrics is not a retail or service establishment. When the Act was amended in 1949, Congress excluded such establishments from the exemption under section 13(a)(2) because of the lack of a retail concept in the services sold by such establishments, and provided a separate exemption for them which did not depend on status as a retailer. Again in 1966, when this exemption was repealed, Congress made it plain by exclusionary language that the exemption for retail or service establishments was not to be applied to laundries or dry cleaners.

(c) There are two special exceptions to the percentage limitations of paragraph (a) of this section:

(1) That relating to the employee in "sole charge" of an independent or branch establishment; and

(2) That relating to an employee owning a 20-percent interest in the enterprise in which he is employed. These except the employee only from the percentage limitations on nonexempt work. They do not except the employee from any of the other requirements of § 541.1. Thus, while the percentage limitations on nonexempt work are not applicable, it is clear that an employee would not qualify for the exemption if he performs so much nonexempt work that he could no longer meet the requirement of § 541.1(a) that his primary duty must consist of the management of the enterprise in which he is employed or of a customarily recognized department or subdivision thereof.

§ 541.113 Sole-charge exception.

(a) An exception from the percentage limitations on nonexempt work is provided in § 541.1(e) for "an employee who is in sole charge of an independent establishment or a physically separated branch establishment * * *". Such an employee is considered to be employed in a bona fide executive capacity even though he exceeds the applicable percentage limitation on nonexempt work.

(b) The term "independent establishment" must be given full weight. The establishment must have a fixed location and must be geographically separated from other company property. The management of operations within one among several buildings located on a single or adjoining tracts of company property does not qualify for the exemption under this heading. In the case of a branch, there must be a true and complete physical separation from the main office.

(c)(1) A determination as to the status as "an independent establishment"

191

(Edition)

r (4) re-
g.

erally.

the term
this sub-
han that
(d) and
osely re-

y identi-
case. It
acure is
empt sub-
is more
where su-
signifi-
ities not
ordinates
al super-
ach cases
yee's du-
rase "di-
the per-
ribed in
thi-
y

ions ou

qualify for
e devotes
te case of
service es-
uch as 40
d in the
ork. This
basis and
s on non-
the time

uce of 20
k applies
which the
ies for the
or service
eaning of
ient must
f business.
ich is en-
king sales
the con-
vicing ap-
13(a)(2) or
ient must
its annual