or a physically separated branch establishment" of any part of the business operations on the premises of a retail or other establishment, however, must be made on the basis of the physical and economic facts in the particular situation. (See 29 CFR 779.225, 779.305, 779.306.) A leased department cannot be considered to be a separate establishment where, for example, it and the retail store in which it is located operate under a common trade name and the store may determine, or have the power to determine, the leased department's space location, the type of merchandise it will sell its pricing policy, its hours of operation and some or all of its hiring, firing, and other personnel policies, and matters such as advertising, adjustment, and credit operations, insurance and taxes, are handled on a unified basis by the store.

(2) A leased department may qualify as a separate establishment, however, where, among other things, the facts show that the lessee maintains a separate entrance and operates under a separate name, with its own separate employees and records, and in other respects conducts his business independently of the lessor's. In such a case the leased department would enjoy the same status as a physically separated branch store.

(d) Since the employee must be in "sole charge, only one person in any establishment can qualify as an executive under this exception, and then only if he is the top person in charge at that location. (It is possible for other persons in the same establishment to qualify for exemption as executive employees, but not under the exception from the nonexempt work limitation.) Thus, it would not be applicable to an employee who is in charge of a branch establishment but whose superior makes his office on the premises. An example is a district manager who has overall supervisory functions in relation to a number of branch offices, but makes his office at one of the branches. The branch manager at the branch where the district manager's office is located is not in "sole charge" of the establishment and does not come within the exception. This does not mean that the "sole-charge" status of an employee will be considered lost because of an occasional visit to the branch office of the superior of the person in charge, or, in the case of an independent establishment by the visit for a short period on 1 or 2 days a week of the proprietor or principal corporate officer of the establishment. In these situations the sole-charge status of the employee in question will appear from the facts as to his functions, particularly in the intervals between visits. If, during these intervals, the decisions normally made by an executive in charge of a branch or an independent establishment are reserved for the superior, the employee is not in sole charge. If such decisions are not reserved for the superior, the sole-charge status will not be lost merely because of the superior's visits.

(e) In order to qualify for the exception the employee must ordinarily be in charge of all the company activities at the location where he is employed. If he is in charge of only a portion of the company's activities at his location, then he cannot be said to be in sole charge of an independent establishment or a physically separated branch establishment. In exceptional cases the divisions have found that an executive employee may be in sole charge of all activities at a branch office except that one independent function which is not integrated with those managed by the executive is also performed at the branch. This one function is not important to the activities managed by the executive and constitutes only an insignificant portion of the employer's activities at that branch. A typical example of this type of situation is one in which "desk space" in a warehouse otherwise devoted to the storage and shipment of parts is assigned a salesman who reports to the sales manager or other company official located at the home office. Normally only one employee (at most two or three, but in any event an insignificant number when compared with the total number of persons employed at the branch) is engaged in the nonintegrated function for which the executive whose sole-charge status is in question is not responsible. Under such circumstances the employee does not lose his "sole-charge" status merely because of the desk-space assignment.





**§ 541.114 Exception for ow percent interest.**

(a) An exception from the limitations on nonexempt vided in § 541.1(e) for an em owns at least a 20-percent the enterprise in which ployed". This provision re special status of a shareho terprise who is actively e management.

(b) The exception is ava employee owning a bona fi equity in the enterprise in employed regardless of business is a corporate or organization.

**§ 541.115 Working foremen**

(a) The primary purpose sionary language placing on the amount of nonexem distinguish between the bo utive and the "working "working" supervisor w performs "production" w work which is unrelated motely related to his su tivities. (The term "work is used in this subpart in dicated in the text and construed to mean only forms work similar to th by his subordinates.)

(b) One type of workin working supervisor mo found in industry works subordinates. Such emp times known as strawbose group leaders perform th work as that performed b dinates, and also carry o functions. Clearly, the same nature as that per employees' subordinate counted as nonexempt w amount of such work per stantial the exemption ("Substantial," as used means more than 20 per cussion of the 20-percent nonexempt work in § 54 man in a dress shop, fo operates a sewing mach the product is performi exempt work. However, be confused with the sewing machine by a struct his subordinates

### § 541.114 Exception for owners of 20-percent interest.

(a) An exception from the percentage limitations on nonexempt work is provided in § 541.1(e) for an employee "who owns at least a 20-percent interest in the enterprise in which he is employed". This provision recognizes the special status of a shareholder of an enterprise who is actively engaged in its management.

(b) The exception is available to an employee owning a bona fide 20-percent equity in the enterprise in which he is employed regardless of whether the business is a corporate or other type of organization.

### § 541.115 Working foremen.

(a) The primary purpose of the exclusionary language placing a limitation on the amount of nonexempt work is to distinguish between the bona fide executive and the "working" foreman or "working" supervisor who regularly performs "production" work or other work which is unrelated or only remotely related to his supervisory activities. (The term "working" foreman is used in this subpart in the sense indicated in the text and should not be construed to mean only one who performs work similar to that performed by his subordinates.)

(b) One type of working foreman or working supervisor most commonly found in industry works alongside his subordinates. Such employees, sometimes known as strawbosses, or gang or group leaders perform the same kind of work as that performed by their subordinates, and also carry on supervisory functions. Clearly, the work of the same nature as that performed by the employees' subordinates must be counted as nonexempt work and if the amount of such work performed is substantial the exemption does not apply. ("Substantial," as used in this section, means more than 20 percent. See discussion of the 20-percent limitation on nonexempt work in § 541.112.) A foreman in a dress shop, for example, who operates a sewing machine to produce the product is performing clearly nonexempt work. However, this should not be confused with the operation of a sewing machine by a foreman to instruct his subordinates in the making of a new product, such as a garment, before it goes into production.

(c) Another type of working foreman or working supervisor who cannot be classed as a bona fide executive is one who spends a substantial amount of time in work which, although not performed by his own subordinates, consists of ordinary production work or other routine, recurrent, repetitive tasks which are a regular part of his duties. Such an employee is in effect holding a dual job. He may be, for example, a combination foreman-production worker, supervisor-clerk, or foreman combined with some other skilled or unskilled occupation. His nonsupervisory duties in such instances are unrelated to anything he must do to supervise the employees under him or to manage the department. They are in many instances mere "fill-in" tasks performed because the job does not involve sufficient executive duties to occupy an employee's full time. In other instances the nonsupervisory, nonmanagerial duties may be the principal ones and the supervisory or managerial duties are subordinate and are assigned to the particular employee because it is more convenient to rest the responsibility for the first line of supervision in the hands of the person who performs these other duties. Typical of employees in dual jobs which may involve a substantial amount of nonexempt work are:

(1) Foremen or supervisors who also perform one or more of the "production" or "operating" functions, though no other employees in the plant perform such work. An example of this kind of employee is the foreman in a millinery or garment plant who is also the cutter, or the foreman in a garment factory who operates a multiple-needle machine not requiring a full-time operator;

(2) Foremen or supervisors who have as a regular part of their duties the adjustment, repair, or maintenance of machinery or equipment. Examples in this category are the foreman-fixer in the hosiery industry who devotes a considerable amount of time to making adjustments and repairs to the machines of his subordinates, or the planer-mill foreman who is also the

"machine man" who repairs the machines and grinds the knives;

(3) Foremen or supervisors who perform clerical work other than the maintenance of the time and production records of their subordinates; for example, the foreman of the shipping room who makes out the bills of lading and other shipping records, the warehouse foreman who also acts as inventory clerk, the head shipper who also has charge of a finished goods stock room, assisting in placing goods on shelves and keeping perpetual inventory records, or the office manager, head bookkeeper, or chief clerk who performs routine bookkeeping. There is no doubt that the head bookkeeper, for example, who spends a substantial amount of his time keeping books of the same general nature as those kept by the other bookkeepers, even though his books are confidential in nature or cover different transactions from the books maintained by the under bookkeepers, is not primarily an executive employee and should not be so considered.

### § 541.116 Trainees, executive.

The exemption is applicable to an employee employed in a bona fide executive capacity and does not include employees training to become executives and not actually performing the duties of an executive.

### § 541.117 Amount of salary required.

(a) Except as otherwise noted in paragraph (b) of this section, compensation on a salary basis at a rate of not less than $155 per week, exclusive of board, lodging, or other facilities, is required for exemption as an executive. The $155 a week may be translated into equivalent amounts for periods longer than 1 week. The requirement will be met if the employee is compensated biweekly on a salary basis of $310, semimonthly on a salary basis of $335.84 or monthly on a salary basis of $671.67. However, the shortest period of payment which will meet the requirement of payment "on a salary basis" is a week.

(b) In Puerto Rico, the Virgin Islands, and American Samoa, the salary test for exemption as an "executive" is $130 per week for other than an employee of the Federal Government.

(c) The payment of the required salary must be exclusive of board, lodging, or other facilities; that is, free and clear. On the other hand, the regulations in subpart A of this part do not prohibit the sale of such facilities to executives on a cash basis if they are negotiated in the same manner as similar transactions with other persons.

(d) The validity of including a salary requirement in the regulations in subpart A of this part has been sustained in a number of appellate court decisions. See, for example, *Walling* v. *Yeakley*, 140 F. (2d) 830 (C.A. 10); *Helliwell* v. *Haberman*, 140 F. (2d) 833 (C.A. 2); and *Walling* v. *Morris*, 155 F. (2d) 832 (C.A. 6) (reversed on another point in 332 U.S. 442); *Wirtz* v. *Mississippi Publishers*, 364 F. (2d) 603 (C.A. 5); *Craig* v. *Far West Engineering Co.*, 265 F. (2d) 251 (C.A. 9) cert. den. 361 U.S. 816; *Hofer* v. *Federal Cartridge Corp.*, 71 F. Supp. 243 (D.C. Minn.).

[38 FR 11390, May 7, 1973, as amended at 40 FR 7092, Feb. 19, 1975]

EFFECTIVE DATE NOTE: Paragraphs (a) and (b) in § 541.117 were revised at 46 FR 3014, Jan. 13, 1981. In accordance with the President's Memorandum of January 29, 1981 (46 FR 11227, Feb. 6, 1981), the effective date was postponed indefinitely at 46 FR 11972, Feb. 12, 1981.

The text of paragraphs (a) and (b) set forth above remains in effect pending further action by the issuing agency. The text of the postponed regulation appears below.

§ 541.117 **Amount of salary required.**

(a) Except as otherwise noted in paragraph (b) of this section, compensation on a salary basis at a rate of not less than $225 per week beginning February 13, 1981 and $250 per week beginning February 13, 1983, exclusive of board, lodging, or other facilities, is required for exemption as an executive. The $225 a week or $250 a week may be translated into equivalent amounts for periods longer than 1 week. For example, based on $250 a week, the requirement will be met if the employee is compensated biweekly on a salary basis of $500, semimonthly on a salary basis of $541.67 or monthly on a salary basis of $1083.33. However, the shortest period of payment which will meet the requirement of payment "on a salary basis" is a week.

(b) In Puerto Rico, the Virgin Islands, and American Samoa, the salary test for exemption as an "executive" is $180 per week beginning February 13, 1981 and $200 per week





beginning February 13, 1983 for othe employee of the Federal Goverment.

* * * *

### § 541.118 Salary basis.

(a) An employee will be consi be paid "on a salary basis" wi meaning of the regulations if employment agreement he r receives each pay period on a or less frequent basis, a predet amount constituting all or pa compensation, which amount subject to reduction because ations in the quality or quantit work performed. Subject to th tions provided below, the e must receive his full salary week in which he performs ar without regard to the number or hours worked. This policy subject to the general rule that ployee need not be paid for ar week in which he performs no

(1) An employee will not be ered to be "on a salary basis" tions from his predetermine pensation are made for absence sioned by the employer or by t ating requirements of the busin cordingly, if the employee is willing, and able to work, de may not be made for time when not available.

(2) Deductions may be mac ever, when the employee absen self from work for a day or m personal reasons, other than or accident. Thus, if an employ sent for a day or longer to han sonal affairs, his salaried sta not be affected if deductions a from his salary for such absence

(3) Deductions may also be m absences of a day or more occ by sickness or disability (inclu dustrial accidents) if the dedu made in accordance with a bo plan, policy or practice of pr compensation for loss of salar sioned by both sickness and dis Thus, if the employer's particul policy or practice provides co tion for such absences, deducti absences of a day or longer bec sickness or disability may be m fore an employee has qualifie such plan, policy or practice. a

r other than an em- eral Government.

t of the required sal- usive of board, lodg- ities; that is, free and her hand, the regula- A of this part do not of such facilities to cash basis if they are same manner as simi- with other persons.

r of including a salary he regulations in sub- rt has been sustained appellate court deci- example, *Walling* v. (2d) 830 (C.A. 10); *rman*, 140 F. (2d) 833 *lling* v. *Morris*, 155 F. (reversed on another S. 442); *Wirtz* v. *Mis-* , 364 F. (2d) 603 (C.A. *est Engineering Co.*, 265 9) cert. den. 361 U.S. *eral Cartridge Corp.*, 71 M ).

as amended at 40

NOTE: Paragraphs (a) and revised at 46 FR 3014, Jan. ance with the President's January 29, 1981 (46 FR ), the effective date was ely at 46 FR 11972, Feb. 12,

raphs (a) and (b) set forth effect pending further ac- agency. The text of the on appears below.

**of salary required.**

erwise noted in paragraph compensation on a salary not less than $225 per week y 13, 1981 and $250 per week ry 13, 1983, exclusive of other facilities, is required an executive. The $225 a ek may be translated into s for periods longer than 1 , based on $250 a week, the be met if the employee is ekly on a salary basis of $541.67 on a salary basis of $1083.33. How- period of payment which irement of payment "on a week.

co, the Virgin Islands, and the salary test for exemp- tive" is $180 per week be- 13, 1981 and $200 per week



beginning February 13, 1983 for other than an employee of the Federal Government.

* * * * *

**§ 541.118 Salary basis.**

(a) An employee will be considered to be paid "on a salary basis" within the meaning of the regulations if under his employment agreement he regularly receives each pay period on a weekly, or less frequent basis, a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed. Subject to the exceptions provided below, the employee must receive his full salary for any week in which he performs any work without regard to the number of days or hours worked. This policy is also subject to the general rule that an employee need not be paid for any workweek in which he performs no work.

(1) An employee will not be considered to be "on a salary basis" if deductions from his predetermined compensation are made for absences occasioned by the employer or by the operating requirements of the business. Accordingly, if the employee is ready, willing, and able to work, deductions may not be made for time when work is not available.

(2) Deductions may be made, however, when the employee absents himself from work for a day or more for personal reasons, other than sickness or accident. Thus, if an employee is absent for a day or longer to handle personal affairs, his salaried status will not be affected if deductions are made from his salary for such absences.

(3) Deductions may also be made for absences of a day or more occasioned by sickness or disability (including industrial accidents) if the deduction is made in accordance with a bona fide plan, policy or practice of providing compensation for loss of salary occasioned by both sickness and disability. Thus, if the employer's particular plan, policy or practice provides compensation for such absences, deductions for absences of a day or longer because of sickness or disability may be made before an employee has qualified under such plan, policy or practice, and after he has exhausted his leave allowance thereunder. It is not required that the employee be paid any portion of his salary for such days or days for which he receives compensation for leave under such plan, policy or practice. Similarly, if the employer operates under a State sickness and disability insurance law, or a private sickness and disability insurance plan, deductions may be made for absences of a working day or longer if benefits are provided in accordance with the particular law or plan. In the case of an industrial accident, the "salary basis" requirement will be met if the employee is compensated for loss of salary in accordance with the applicable compensation law or the plan adopted by the employer, provided the employer also has some plan, policy or practice of providing compensation for sickness and disability other than that relating to industrial accidents.

(4) Deductions may not be made for absences of an employee caused by jury duty, attendance as a witness, or temporary military leave. The employer may, however, offset any amounts received by an employee as jury or witness fees or military pay for a particular week against the salary due for that particular week without loss of the exemption.

(5) Penalties imposed in good faith for infractions of safety rules of major significance will not affect the employee's salaried status. Safety rules of major significance include only those relating to the prevention of serious danger to the plant, or other employees, such as rules prohibiting smoking in explosive plants, oil refineries, and coal mines.

(6) The effect of making a deduction which is not permitted under these interpretations will depend upon the facts in the particular case. Where deductions are generally made when there is no work available, it indicates that there was no intention to pay the employee on a salary basis. In such a case the exemption would not be applicable to him during the entire period when such deductions were being made. On the other hand, where a deduction not permitted by these interpretations is inadvertent, or is made for reasons other than lack of work, the exemption

will not be considered to have been lost if the employer reimburses the employee for such deductions and promises to comply in the future.

(b) *Minimum guarantee plus extras.* It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment. The requirement will be met, for example, by a branch manager who receives a salary of $155 or more a week and in addition, a commission of 1 percent of the branch sales. The requirement will also be met by a branch manager who receives a percentage of the sales or profits of the branch, if the employment arrangement also includes a guarantee of at least the minimum weekly salary (or the equivalent for a monthly or other period) required by the regulations. Another type of situation in which the requirement will be met is that of an employee paid on a daily or shift basis, if the employment arrangement includes a provision that the employee will receive not less than the amount specified in the regulations in any week in which the employee performs any work. Such arrangements are subject to the exceptions in paragraph (a) of this section. The test of payment on a salary basis will not be met, however, if the salary is divided into two parts for the purpose of circumventing the requirement of payment "on a salary basis". For example, a salary of $200 in each week in which any work is performed, and an additional $50 which is made subject to deductions which are not permitted under paragraph (a) of this section.

(c) *Initial and terminal weeks.* Failure to pay the full salary in the initial or terminal week of employment is not considered inconsistent with the salary basis of payment. In such weeks the payment of a proportionate part of the employee's salary for the time actually worked will meet the requirement. However, this should not be construed to mean that an employee is on a salary basis within the meaning of the regulations if he is employed occasionally for a few days and is paid a proportionate part of the weekly salary when so employed. Moreover, even payment of the full weekly salary under such circumstances would not meet the requirement, since casual or occasional employment for a few days at a time is inconsistent with employment on a salary basis within the meaning of the regulations.

[38 FR 11390, May 7, 1973, as amended at 40 FR 7092, Feb. 19, 1975]

EFFECTIVE DATE NOTE: Paragraph (b) in §541.118 was revised at 46 FR 3014, Jan. 13, 1981. In accordance with the President's Memorandum of January 29, 1981 (46 FR 11227, Feb. 6, 1981), the effective date was postponed indefinitely at 46 FR 11972, Feb. 12, 1981.

The text of paragraph (b) set forth above remains in effect pending further action by the issuing agency. The text of the postponed regulation appears below.

**§541.118 Salary basis.**

* * * * *

(b) *Minimum guarantee plus extras.* It should be noted that the salary may consist of a predetermined amount constituting all or part of the employee's compensation. In other words, additional compensation besides the salary is not inconsistent with the salary basis of payment. The requirement will be met, for example, by a branch manager who receives a salary of $250 or more a week and in addition, a commission of 1 percent of the branch sales. The requirement will also be met by a branch manager who receives a percentage of the sales or profits of the branch, if the employment arrangement also includes a guarantee of at least the minimum weekly salary (or the equivalent for a monthly or other period) required by the regulations. Another type of situation in which the requirement will be met is that of an employee paid on a daily or shift basis, if the employment arrangement includes a provision that the employee will receive not less than the amount specified in the regulations in any week in which the employee performs any work. Such arrangements are subject to the exceptions in paragraph (a) of this section. The test of payment on a salary basis will not be met, however, if the salary is divided into two parts for the purpose of circumventing the requirement of payment "on a salary basis". For example, a salary of $300 in each week in which any work is performed, and an additional $55 which is made subject to deductions which are not permitted under paragraph (a) of this section.

* * * * *





**§ 541.119 Special proviso for hi**
**ried executives.**

(a) Except as otherwise n
paragraph (b) of this section
contains an upset or high sala
viso for managerial employees
compensated on a salary basis a
of not less than $250 per week e
of board, lodging, or other fa
Such a highly paid employee is
to meet all the requirements i
graphs (a) through (f) of §541.
employee's primary duty con
the management of the enter
which employed or of a cust
recognized department or sub
thereof and includes the custom
regular direction of the work o
more other employees therein
employee qualifies for exemptio
this proviso, it is not necessary
that employee's qualifications i
under paragraphs (a) through
§ 541.1 of this part.

(b) In Puerto Rico, the Vi
lands, and American Samoa the
of § 541.1(f) applies to those ma
employees (other than emplo
the Federal Government) who
on a salary basis at a rate of
than $200 per week.

(c) Mechanics, carpenters, l
operators, or craftsmen of oth
are not exempt under the pro
matter how highly paid they m

[40 FR 7093, Feb. 19, 1975]

EFFECTIVE DATE NOTE: Section 54
revised at 46 FR 3014, Jan. 13, 1981. I
ance with the President's Memora
January 29, 1981 (46 FR 11227, Feb.
the effective date was postponed in
at 46 FR 11972, Feb. 12, 1981.

The text of §541.119 set forth above
in effect pending further action
issuing agency. The text of the p
regulation appears below.

**§ 541.119 Special proviso for high**
**executives.**

(a) Except as otherwise noted in p
(b) of this section, §541.1 contains a
high salary proviso for manageria
ees who are compensated on a salar
a rate of not less than $320 per we
ning February 13, 1981 and $345 per
ginning February 13, 1983 exclusive
lodging, or other facilities. Such
paid employee is deemed to meet a
quirements in paragraphs (a) throu
§ 541.1 if the employee's primary d
sists of the management of the ent

**§ 541.119 Special proviso for high salaried executives.**

(a) Except as otherwise noted in paragraph (b) of this section, § 541.1 contains an upset or high salary proviso for managerial employees who are compensated on a salary basis at a rate of not less than $250 per week exclusive of board, lodging, or other facilities. Such a highly paid employee is deemed to meet all the requirements in paragraphs (a) through (f) of § 541.1 if the employee's primary duty consists of the management of the enterprise in which employed or of a customarily recognized department or subdivision thereof and includes the customary and regular direction of the work of two or more other employees therein. If an employee qualifies for exemption under this proviso, it is not necessary to test that employee's qualifications in detail under paragraphs (a) through (f) of § 541.1 of this part.

(b) In Puerto Rico, the Virgin Islands, and American Samoa the proviso of § 541.1(f) applies to those managerial employees (other than employees of the Federal Government) who are paid on a salary basis at a rate of not less than $200 per week.

(c) Mechanics, carpenters, linotype operators, or craftsmen of other kinds are not exempt under the proviso no matter how highly paid they might be.

[40 FR 7093, Feb. 19, 1975]

EFFECTIVE DATE NOTE: Section 541.119 was revised at 46 FR 3015, Jan. 13, 1981. In accordance with the President's Memorandum of January 29, 1981 (46 FR 11227, Feb. 6, 1981), the effective date was postponed indefinitely at 46 FR 11972, Feb. 12, 1981.

The text of § 541.119 set forth above remains in effect pending further action by the issuing agency. The text of the postponed regulation appears below.

**§ 541.119 Special proviso for high salaried executives.**

(a) Except as otherwise noted in paragraph (b) of this section, § 541.1 contains an upset or high salary proviso for managerial employees who are compensated on a salary basis at a rate of not less than $320 per week beginning February 13, 1981 and $345 per week beginning February 13, 1983 exclusive of board, lodging, or other facilities. Such a highly paid employee is deemed to meet all the requirements in paragraphs (a) through (f) of § 541.1 if the employee's primary duty consists of the management of the enterprise in which employed or of a customarily recognized department or subdivision thereof and includes the customary and regular direction of the work of two or more other employees therein. If an employee qualifies for exemption under this proviso, it is not necessary to test that employee's qualifications in detail under paragraphs (a) through (f) of § 541.1 of this part.

(b) In Puerto Rico, the Virgin Islands, and American Samoa the proviso of § 541.1(f) applies to those managerial employees (other than employees of the Federal Government) who are paid on a salary basis at a rate of not less than $260 per week beginning February 13, 1981 and $285 per week beginning February 13, 1983.

(c) Mechanics, carpenters, linotype operators, or craftsmen of other kinds are not exempt under the proviso no matter how highly paid they might be.

EMPLOYEE EMPLOYED IN A BONA FIDE ADMINISTRATIVE CAPACITY

**§ 541.201 Types of administrative employees.**

(a) Three types of employees are described in § 541.2(c) who, if they meet the other tests in § 541.2, qualify for exemption as "administrative" employees.

(1) *Executive and administrative assistants.* The first type is the assistant to a proprietor or to an executive or administrative employee. In modern industrial practice there has been a steady and increasing use of persons who assist an executive in the performance of his duties without themselves having executive authority. Typical titles of persons in this group are executive assistant to the president, confidential assistant, executive secretary, assistant to the general manager, administrative assistant and, in retail or service establishments, assistant manager and assistant buyer. Generally speaking, such assistants are found in large establishments where the official assisted has duties of such scope and which require so much attention that the work of personal scrutiny, correspondence, and interviews must be delegated.

(2) *Staff employees.* (i) Employees included in the second alternative in the definition are those who can be described as staff rather than line employees, or as functional rather than departmental heads. They include

among others employees who act as advisory specialists to the management. Typical examples of such advisory specialists are tax experts, insurance experts, sales research experts, wage-rate analysts, investment consultants, foreign exchange consultants, and statisticians.

(ii) Also included are persons who are in charge of a so-called functional department, which may frequently be a one-man department. Typical examples of such employees are credit managers, purchasing agents, buyers, safety directors, personnel directors, and labor relations directors.

(3) *Those who perform special assignments.* (i) The third group consists of persons who perform special assignments. Among them are to be found a number of persons whose work is performed away from the employer's place of business. Typical titles of such persons are lease buyers, field representatives of utility companies, location managers of motion picture companies, and district gaugers for oil companies. It should be particularly noted that this is a field which is rife with honorific titles that do not adequately portray the nature of the employee's duties. The field representative of a utility company, for example, may be a "glorified serviceman."

(ii) This classification also includes employees whose special assignments are performed entirely or partly inside their employer's place of business. Examples are special organization planners, customers' brokers in stock exchange firms, so-called account executives in advertising firms and contact or promotion men of various types.

(b) *Job titles insufficient as yardsticks.* (1) The employees for whom exemption is sought under the term "administrative" have extremely diverse functions and a wide variety of titles. A title alone is of little or no assistance in determining the true importance of an employee to the employer or his exempt or nonexempt status under the regulations in subpart A of this part. Titles can be had cheaply and are of no determinative value. Thus, while there are supervisors of production control (whose decisions affect the welfare of large numbers of employees) who qualify for exemption under section 13(a)(1), it is not hard to call a rate setter (whose functions are limited to timing certain operations and jotting down times on a standardized form) a "methods engineer" or a "production-control supervisor."

(2) Many more examples could be cited to show that titles are insufficient as yardsticks. As has been indicated previously, the exempt or nonexempt status of any particular employee must be determined on the basis of whether his duties, responsibilities, and salary meet all the requirements of the appropriate section of the regulations in subpart A of this part.

(c) Individuals engaged in the overall academic administration of an elementary or secondary school system include the superintendent or other head of the system and those of his assistants whose duties are primarily concerned with administration of such matters as curriculum, quality and methods of instructing, measuring and testing the learning potential and achievement of students, establishing and maintaining academic and grading standards, and other aspects of the teaching program. In individual school establishments those engaged in overall academic administration include the principal and the vice principals who are responsible for the operation of the school. Other employees engaged in academic administration are such department heads as the heads of the mathematics department, the English department, the foreign language department, the manual crafts department, and the like. Institutions of higher education have similar organizational structure, although in many cases somewhat more complex.

**§ 541.202 Categories of work.**

(a) The work generally performed by employees who perform administrative tasks may be classified into the following general categories for purposes of the definition: (This classification is without regard to whether the work is manual or nonmanual. The problem of manual work as it affects the exemption of administrative employees is discussed in § 541.203.) (1) The work specifically described in paragraphs (a), (b), and (c) of § 541.2; (2) routine work which is directly and closely related to





the performance of the wor
described in paragraphs (a), (
of § 541.2; and (3) routine wor
not related or is only remote
to the administrative duties
in this subpart the phrase
work" means work which do
quire the exercise of discr
independent judgment. It is
essarily restricted to work w
petitive in nature.)

(b) The work in categor
which is specifically describe
as requiring the exercise of
and independent judgment.
exempt in nature.

(c) Category 2 consists of w
if separated from the work in
1 would appear to be routine
fairly low level, and which
itself require the exercise of
and independent judgment.
has a direct and close relat
the performance of the more
duties. The directness and cl
the relationship may vary
upon the nature of the job an
and organization of the esta
in which the work is perform
"directly and closely related"
cludes routine work which n
arises out of the administrati
and the routine work witho
the employee's more import
cannot be performed properl
includes a variety of routi
which may not be essential to
er performance of the more
duties but which are functio
lated to them directly and c
this latter category are
which an administrative empl
reasonably be expected to pe
connection with carrying ou
ministrative functions includi
which either facilitate or arise
tally from the performance
functions and are commonly p
in connection with them.

(d) These "directly and clo
lated" duties are distinguisha
the last group, category 3. The
are remotely related or compl
related to the more importan
The work in this last category
exempt and must not exceed th
cent limitation for nonexem
(up to 40 percent or service e
ment) if the exemption is to ap