the performance of the work which is described in paragraphs (a), (b), and (c) of § 541.2; and (3) routine work which is not related or is only remotely related to the administrative duties. (As used in this subpart the phrase "routine work" means work which does not require the exercise of discretion and independent judgment. It is not necessarily restricted to work which is repetitive in nature.)

(b) The work in category 1, that which is specifically described in § 541.2 as requiring the exercise of discretion and independent judgment, is clearly exempt in nature.

(c) Category 2 consists of work which if separated from the work in category 1 would appear to be routine, or on a fairly low level, and which does not itself require the exercise of discretion and independent judgment, but which has a direct and close relationship to the performance of the more important duties. The directness and closeness of the relationship may vary depending upon the nature of the job and the size and organization of the establishment in which the work is performed. This "directly and closely related" work includes routine work which necessarily arises out of the administrative duties, and the routine work without which the employee's more important work cannot be performed properly. It also includes a variety of routine tasks which may not be essential to the proper performance of the more important duties but which are functionally related to them directly and closely. In this latter category are activities which an administrative employee may reasonably be expected to perform in connection with carrying out his administrative functions including duties which either facilitate or arise incidentally from the performance of such functions and are commonly performed in connection with them.

(d) These "directly and closely related" duties are distinguishable from the last group, category 3, those which are remotely related or completely unrelated to the more important tasks. The work in this last category is nonexempt and must not exceed the 20-percent limitation for nonexempt work (up to 40 percent or service establishment) if the exemption is to apply.

(e) Work performed by employees in the capacity of "academic administrative" personnel is a category of administrative work limited to a class of employees engaged in academic administration as contrasted with the general usable of "administrative" in the act. The term "academic administrative" denotes administration relating to the academic operations and functions in a school rather than to administration along the lines of general business operations. Academic administrative personnel are performing operations directly in the field of education. Jobs relating to areas outside the educational field are not within the definition of academic administration. Examples of jobs in school systems, and educational establishments and institutions, which are outside the term academic administration are jobs relating to building management and maintenance, jobs relating to the health of the students and academic staff such as social workers, psychologist, lunch room manager, or dietitian. Employees in such work which is not considered academic administration may qualify for exemption under other provisions of § 541.2 or under other sections of the regulations in subpart A of this part provided the requirements for such exemptions are met.

### § 541.203 Nonmanual work.

(a) The requirement that the work performed by an exempt administrative employee must be office work or nonmanual work restricts the exemption to "white-collar" employees who meet the tests. If the work performed is "office" work it is immaterial whether it is manual or nonmanual in nature. This is consistent with the intent to include within the term "administrative" only employees who are basically white-collar employees since the accepted usage of the term "white-collar" includes all office workers. Persons employed in the routine operation of office machines are engaged in office work within the meaning of § 541.2 (although they would not qualify as administrative employees since they do not meet the other requirements of § 541.2).

(b) Section 541.2 does not completely prohibit the performance of manual

work by an "administrative" employee. The performance by an otherwise exempt administrative employee of some manual work which is directly and closely related to the work requiring the exercise of discretion and independent judgment is not inconsistent with the principle that the exemption is limited to "white-collar" employees. However, if the employee performs so much manual work (other than office work) that he cannot be said to be basically a "white-collar" employee he does not qualify for exemption as a bona fide administrative employee, even if the manual work he performs is directly and closely related to the work requiring the exercise of discretion and independent judgment. Thus, it is obvious that employees who spend most of their time in using tools, instruments, machinery, or other equipment, or in performing repetitive operations with their hands, no matter how much skill is required, would not be bona fide administrative employees within the meaning of §541.2. An office employee, on the other hand, is a "white-collar" worker, and would not lose the exemption on the grounds that he is not primarily engaged in "nonmanual" work, although he would lose the exemption if he failed to meet any of the other requirements.

**§ 541.205 Directly related to management policies or general business operations.**

(a) The phrase "directly related to management policies or general business operations of his employer or his employer's customers" describes those types of activities relating to the administrative operations of a business as distinguished from "production" or, in a retail or service establishment, "sales" work. In addition to describing the types of activities, the phrase limits the exemption to persons who perform work of substantial importance to the management or operation of the business of his employer or his employer's customers.

(b) The administrative operations of the business include the work performed by so-called white-collar employees engaged in "servicing" a business as, for example, advising the management, planning, negotiating, representing the company, purchasing, promoting sales, and business research and control. An employee performing such work is engaged in activities relating to the administrative operations of the business notwithstanding that he is employed as an administrative assistant to an executive in the production department of the business.

(c) As used to describe work of substantial importance to the management or operation of the business, the phrase "directly related to management policies or general business operations" is not limited to persons who participate in the formulation of management policies or in the operation of the business as a whole. Employees whose work is "directly related" to management policies or to general business operations include those work affects policy or whose responsibility it is to execute or carry it out. The phrase also includes a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business.

(1) It is not possible to lay down specific rules that will indicate the precise point at which work becomes of substantial importance to the management or operation of a business. It should be clear that the cashier of a bank performs work at a responsible level and may therefore be said to be performing work directly related to management policies or general business operations. On the other hand, the bank teller does not. Likewise it is clear that bookkeepers, secretaries, and clerks of various kinds hold the run-of-the-mine positions in any ordinary business and are not performing work directly related to management policies or general business operations. On the other hand, a tax consultant employed either by an individual company or by a firm of consultants is ordinarily doing work of substantial importance to the management or operation of a business.

(2) An employee performing routine clerical duties obviously is not performing work of substantial importance to the management or operation

of the business even th ercise some measure o judgment as to the man performs his clerical senger boy who is ent rying large sums of mo cannot be said to be do portance to the busine serious consequences his neglect. An emp very expensive equipm serious loss to his emp proper performance o inspector, such as, for spector for an insuranc cause loss to his empl ure to perform his jo such employees, obviou forming work of such portance to the manag ation of the business th to be "directly related policies or general ations" as that phrase

(3) Some firms emplo they describe as "stati such a person does, in ulate data, he is clear However, if such an e analyses of data and dr which are important to tion of, or which, in fac nancial, merchandising icy, clearly he is doin related to management eral business operation personnel employee ma hiring window of a plan a man who determines sonnel policies affectin ers in the establishmen case, he is clearly doin related to management eral business operation ples illustrate the tw each case, between thes there are many employ may be of substantial the management or op business, depending ticular facts.

(4) Another example whose work may be im welfare of the business particular article or s industrial plant or monly called assistant or service establishmen work is of substantial

of the business even though he may exercise some measure of discretion and judgment as to the manner in which he performs his clerical tasks. A messenger boy who is entrusted with carrying large sums of money or securities cannot be said to be doing work of importance to the business even though serious consequences may flow from his neglect. An employee operating very expensive equipment may cause serious loss to his employer by the improper performance of his duties. An inspector, such as, for example, an inspector for an insurance company, may cause loss to his employer by the failure to perform his job properly. But such employees, obviously, are not performing work of such substantial importance to the management or operation of the business that it can be said to be "directly related to management policies or general business operations" as that phrase is used in §541.2.

(3) Some firms employ persons whom they describe as "statisticians." If all such a person does, in effect, is to tabulate data, he is clearly not exempt. However, if such an employee makes analyses of data and draws conclusions which are important to the determination of, or which, in fact, determine financial, merchandising, or other policy, clearly he is doing work directly related to management policies or general business operations. Similarly, a personnel employee may be a clerk at a hiring window of a plant, or he may be a man who determines or effects personnel policies affecting all the workers in the establishment. In the latter case, he is clearly doing work directly related to management policies or general business operations. These examples illustrate the two extremes. In each case, between these extreme types there are many employees whose work may be of substantial importance to the management or operation of the business, depending upon the particular facts.

(4) Another example of an employee whose work may be important to the welfare of the business is a buyer of a particular article or equipment in an industrial plant or personnel commonly called assistant buyers in retail or service establishments. Where such work is of substantial importance to the management or operation of the business, even though it may be limited to purchasing for a particular department of the business, it is directly related to management policies or general business operations.

(5) The test of "directly related to management policies or general business operations" is also met by many persons employed as advisory specialists and consultants of various kinds, credit managers, safety directors, claim agents and adjusters, wage-rate analysts, tax experts, account executives of advertising agencies, customers' brokers in stock exchange firms, promotion men, and many others.

(6) It should be noted in this connection that an employer's volume of activities may make it necessary to employ a number of employees in some of these categories. The fact that there are a number of other employees of the same employer carrying out assignments of the same relative importance or performing identical work does not affect the determination of whether they meet this test so long as the work of each such employee is of substantial importance to the management or operation of the business.

(7) In the data processing field some firms employ persons described as systems analysts and computer programers. If such employees are concerned with the planning, scheduling, and coordination of activities which are required to develop systems for processing data to obtain solutions to complex business, scientific, or engineering problems of his employer or his employer's customers, he is clearly doing work directly related to management policies or general business operations.

(d) Under §541.2 the "management policies or general business operations" may be those of the employer or the employer's customers. For example, many bona fide administrative employees perform important functions as advisers and consultants but are employed by a concern engaged in furnishing such services for a fee. Typical instances are tax experts, labor relations consultants, financial consultants, systems analysts, or resident buyers. Such employees, if they meet

the other requirements of §541.2. qualify for exemption regardless of whether the management policies or general business operations to which their work is directly related are those of their employer's clients or customers or those of their employer.

### §541.206 Primary duty.

(a) The definition of "administrative" exempts only employees who are primarily engaged in the responsible work which is characteristic of employment in a bona fide administrative capacity. Thus, the employee must have as his primary duty office or nonmanual work directly related to management policies or general business operations of his employer or his employer's customers, or, in the case of "academic administrative personnel," the employee must have as his primary duty work that is directly related to academic administration or general academic operations of the school in whose operations he is employed.

(b) In determining whether an employee's exempt work meets the "primary duty" requirement, the principles explained in §541.103 in the discussion of "primary duty" under the definition of "executive" are applicable.

### §541.207 Discretion and independent judgment.

(a) In general, the exercise of discretion and independent judgment involves the comparison and the evaluation of possible courses of conduct and acting or making a decision after the various possibilities have been considered. The term as used in the regulations in subpart A of this part, moreover, implies that the person has the authority or power to make an independent choice, free from immediate direction or supervision and with respect to matters of significance. (Without actually attempting to define the term, the courts have given it this meaning in applying it in particular cases. See, for example, *Walling* v. *Sterling Ice Co.*, 69 F. Supp. 655, reversed on other grounds, 165 F. (2d) 265 (CCA 10). See also *Connell* v. *Delaware Aircraft Industries*, 55 Atl. (2d) 637.)

(b) The term must be applied in the light of all the facts involved in the particular employment situation in which the question arises. It has been most frequently misunderstood and misapplied by employers and employees in cases involving the following: (1) Confusion between the exercise of discretion and independent judgment, and the use of skill in applying techniques, procedures, or specific standards; and (2) misapplication of the term to employees making decisions relating to matters of little consequence.

(c) Distinguished from skills and procedures:

(1) Perhaps the most frequent cause of misapplication of the term "discretion and independent judgment" is the failure to distinguish it from the use of skill in various respects. An employee who merely applies his knowledge in following prescribed procedures or determining which procedure to follow, or who determines whether specified standards are met or whether an object falls into one or another of a number of definite grades, classes, or other categories, with or without the use of testing or measuring devices, is not exercising discretion and independent judgment within the meaning of §541.2. This is true even if there is some leeway in reaching a conclusion, as when an acceptable standard includes a range or a tolerance above or below a specific standard.

(2) A typical example of the application of skills and procedures is ordinary inspection work of various kinds. Inspectors normally perform specialized work along standardized lines involving well-established techniques and procedures which may have been cataloged and described in manuals or other sources. Such inspectors rely on techniques and skills acquired by special training or experience. They may have some leeway in the performance of their work but only within closely prescribed limits. Employees of this type may make recommendations on the basis of the information they develop in the course of their inspections (as for example, to accept or reject an insurance risk or a product manufactured to specifications), but these recommendations are based on the development of the facts as to whether there is conformity with the prescribed standards. In such cases a decision to

depart from the prescribed st the permitted tolerance is made by the inspector's sup inspector is engaged in exerc rather than discretion and in judgment within the meani regulations in Subpart A of t

(3) A related group of empl ally called examiners or gr form similar work involving parison of products with standards which are freque loged. Often, after continued to the written standards, o experience, the employee acq ficient knowledge so that re written standards is unneces substitution of the employee for the manual of standards convert the character of the formed to work requiring th of discretion and independ ment as required by the regu subpart A of this part. The that the employee uses his k and experience does not chan cision, i.e., that the produc does not conform with the es standard, into a real decision nificant matter.

(4) For example, certain "gr lumber turn over each "stic both sides, after which a cra is made to indicate the grad lumber grades are well establ the employee's familiarity w stems from his experience and Skill rather than discretion pendent judgment is exercise ing the lumber. This does essarily mean, however, that ployees who grade lumber commodities are not exercisi tion and independent judgme ing of commodities for which no recognized or established may require the exercise of d and independent judgment templated by the regulations part A of this part. In add those situations in which an exempt buyer does grading, th even though routine work, ma sidered exempt if it is dire closely related to the exempt

(5) Another type of situati skill in the application of te and procedures is sometimes with discretion and independ

depart from the prescribed standards or the permitted tolerance is typically made by the inspector's superior. The inspector is engaged in exercising skill rather than discretion and independent judgment within the meaning of the regulations in Subpart A of this part.

(3) A related group of employees usually called examiners or graders perform similar work involving the comparison of products with established standards which are frequently cataloged. Often, after continued reference to the written standards, or through experience, the employee acquires sufficient knowledge so that reference to written standards is unnecessary. The substitution of the employee's memory for the manual of standards does not convert the character of the work performed to work requiring the exercise of discretion and independent judgment as required by the regulations in subpart A of this part. The mere fact that the employee uses his knowledge and experience does not change his decision, *i.e.*, that the product does or does not conform with the established standard, into a real decision in a significant matter.

(4) For example, certain "graders" of lumber turn over each "stick" to see both sides, after which a crayon mark is made to indicate the grade. These lumber grades are well established and the employee's familiarity with them stems from his experience and training. Skill rather than discretion and independent judgment is exercised in grading the lumber. This does not necessarily mean, however, that all employees who grade lumber or other commodities are not exercising discretion and independent judgment. Grading of commodities for which there are no recognized or established standards may require the exercise of discretion and independent judgment as contemplated by the regulations in subpart A of this part. In addition, in those situations in which an otherwise exempt buyer does grading, the grading even though routine work, may be considered exempt if it is directly and closely related to the exempt buying.

(5) Another type of situation where skill in the application of techniques and procedures is sometimes confused with discretion and independent judgment is the "screening" of applicants by a personnel clerk. Typically such an employee will interview applicants and obtain from them data regarding their qualifications and fitness for employment. These data may be entered on a form specially prepared for the purpose. The "screening" operation consists of rejecting all applicants who do not meet standards for the particular job or for employment by the company. The standards are usually set by the employee's superior or other company officials, and the decision to hire from the group of applicants who do meet the standards is similarly made by other company officials. It seems clear that such a personnel clerk does not exercise discretion and independent judgment as required by the regulations in subpart A of this part. On the other hand an exempt personnel manager will often perform similar functions; that is, he will interview applicants to obtain the necessary data and eliminate applicants who are not qualified. The personnel manager will then hire one of the qualified applicants. Thus, when the interviewing and screening are performed by the personnel manager who does the hiring they constitute exempt work, even though routine, because this work is directly and closely related to the employee's exempt functions.

(6) Similarly, comparison shopping performed by an employee of a retail store who merely reports to the buyer his findings as to the prices at which a competitor's store is offering merchandise of the same or comparable quality does not involve the exercise of discretion and judgment as required in the regulations. Discretion and judgment are exercised, however, by the buyer who evaluates the assistants' reports and on the basis of their findings directs that certain items be re-priced. When performed by the buyer who actually makes the decisions which affect the buying or pricing policies of the department he manages, the comparison shopping, although in itself a comparatively routine operation, is directly and closely related to his managerial responsibility.

(7) In the data processing field a systems analyst is exercising discretion

and independent judgment when he develops methods to process, for example, accounting, inventory, sales, and other business information by using electronic computers. He also exercises discretion and independent judgment when he determines the exact nature of the data processing problem, and structures the problem in a logical manner so that a system to solve the problem and obtain the desired results can be developed. Whether a computer programer is exercising discretion and independent judgment depends on the facts in each particular case. Every problem processed in a computer first must be carefully analyzed so that exact and logical steps for its solution can be worked out. When this preliminary work is done by a computer programer he is exercising discretion and independent judgment. A computer programer would also be using discretion and independent judgment when he determines exactly what information must be used to prepare the necessary documents and by ascertaining the exact form in which the information is to be presented. Examples of work not requiring the level of discretion and judgment contemplated by the regulations are highly technical and mechanical operations such as the preparation of a flow chart or diagram showing the order in which the computer must perform each operation, the preparation of instructions to the console operator who runs the computer or the actual running of the computer by the programmer, and the debugging of a program. It is clear that the duties of data processing employees such as tape librarians, keypunch operators, computer operators, junior programers and programer trainees are so closely supervised as to preclude the use of the required discretion and independent judgment.

(d) *Decisions in significant matters.* (1) The second type of situation in which some difficulty with this phrase has been experienced relates to the level or importance of the matters with respect to which the employee may make decisions. In one sense almost every employee is required to use some discretion and independent judgment. Thus, it is frequently left to a truckdriver to decide which route to follow in going from one place to another; the shipping clerk is normally permitted to decide the method of packing and the mode of shipment of small orders; and the bookkeeper may usually decide whether he will post first to one ledger rather than another. Yet it is obvious that these decisions do not constitute the exercise of discretion and independent judgment of the level contemplated by the regulations in subpart A of this part. The divisions have consistently taken the position that decisions of this nature concerning relatively unimportant matters are not those intended by the regulations in subpart A of this part, but that the discretion and independent judgment exercised must be real and substantial, that is, they must be exercised with respect to matters of consequence. This interpretation has also been followed by courts in decisions involving the application of the regulations in this part, to particular cases.

(2) It is not possible to state a general rule which will distinguish in each of the many thousands of possible factual situations between the making of real decisions in significant matters and the making of choices involving matters of little or no consequence. It should be clear, however, that the term "discretion and independent judgment," within the meaning of the regulations in subpart A of this part, does not apply to the kinds of decisions normally made by clerical and similar types of employees. The term does apply to the kinds of decisions normally made by persons who formulate or participate in the formulation of policy within their spheres of responsibility or who exercise authority within a wide range to commit their employer in substantial respects financially or otherwise. The regulations in subpart A of this part, however, do not require the exercise of discretion and independent judgment at so high a level. The regulations in subpart A of this part also contemplate the kind of discretion and independent judgment exercised by an administrative assistant to an executive, who without specific instructions or prescribed procedures, arranges interviews and meetings, and handles callers and meetings himself

where the executive's personal attention is not required. It includes the kind of discretion and independent judgment exercised by a customer's man in a brokerage house in deciding what recommendations to make to a customer for the purchase of securities. It may include the kind of discretion and judgment exercised by buyers, certain wholesale salesmen, representatives, and other contact persons who are given reasonable latitude in carrying on negotiation on behalf of their employers.

(e) *Final decisions not necessary.* (1) The term "discretion and independent judgment" as used in the regulations in subpart A of this part does not necessarily imply that the decisions made by the employee must have a finality that goes with unlimited authority and a complete absence of review. The decisions made as a result of the exercise of discretion and independent judgment may consist of recommendations for action rather than the actual taking of action. The fact that an employee's decision may be subject to review and that upon occasion the decisions are revised or reversed after review does not mean that the employee is not exercising discretion and independent judgment within the meaning of the regulations in subpart A of this part. For example, the assistant to the president of a large corporation may regularly reply to correspondence addressed to the president. Typically, such an assistant will submit the more important replies to the president for review before they are sent out. Upon occasion, after review, the president may alter or discard the prepared reply and direct that another be sent instead. This action by the president would not, however, destroy the exempt character of the assistant's function, and does not mean that he does not exercise discretion and independent judgment in answering correspondence and in deciding which replies may be sent out without review by the president.

(2) The policies formulated by the credit manager of a large corporation may be subject to review by higher company officials who may approve or disapprove these policies. The management consultant who has made a study of the operations of a business and who has drawn a proposed change in organization, may have the plan reviewed or revised by his superiors before it is submitted to the client. The purchasing agent may be required to consult with top management officials before making a purchase commitment for raw materials in excess of the contemplated plant needs for a stated period, say 6 months. These employees exercise discretion and independent judgment within the meaning of the regulations despite the fact that their decisions or recommendations are reviewed at a higher level.

(f) *Distinguished from loss through neglect.* A distinction must also be made between the exercise of discretion and independent judgment with respect to matters of consequence and the cases where serious consequences may result from the negligence of an employee, the failure to follow instruction or procedures, the improper application of skills, or the choice of the wrong techniques. The operator of a very intricate piece of machinery, for example, may cause a complete stoppage of production or a breakdown of his very expensive machine merely by pressing the wrong button. A bank teller who is engaged in receipt and disbursement of money at a teller's window and in related routine bookkeeping duties may, by crediting the wrong account with a deposit, cause his employer to suffer a large financial loss. An inspector charged with responsibility for loading oil onto a ship may, by not applying correct techniques fail to notice the presence of foreign ingredients in the tank with resulting contamination of the cargo and serious loss to his employer. In these cases, the work of the employee does not require the exercise of discretion and independent judgment within the meaning of the regulations in subpart A of this part.

(g) *Customarily and regularly.* The work of an exempt administrative employee must require the exercise of discretion and independent judgment customarily and regularly. The phrase "customarily and regularly" signifies a frequency which must be greater than occasional but which, of course, may be less than constant. The requirement will be met by the employee who normally and recurrently is called upon to