LAW OFFICES OF
**KENNETH L. COVELL**
712 8TH AVENUE
FAIRBANKS, ALASKA 99701

KENNETH L. COVELL

PHONE (907) 452-4377
FAX (907) 451-7802

RECEIVED

MAY 0 4 2006

DeLISIO MORAN
GERAGHTY & ZOBEL, P.C.

May 2, 2006

Patricia L. Zobel
Delisio Moran Geraghty & Zobel
943 W. 6th Avenue
Anchorage, Alaska  99501

Re:   *Gilbert v. APC Natchiq, Inc.*
      *Demand for Payment, Safety Specialist Position*
      *Pursuant to AS23.10.060 and 8 AAC 15.100*

Dear Ms. Zobel:

John Gilbert hereby demands that APC Natchiq, Inc., pursuant to AS 23.05.140, AS 23.10.060 and 8 AAC 15.100, pay all overtime and wages due him, in the amount of $36,516.80, for his employment as Safety Specialist, from June 20, 2001 through December 31, 2001. (The $36,516.80 number is arrived at by taking the $44,166.80 from the top line of the two-year audit and subtracting a credit of $7,650.00 for monies paid towards overtime.)

The days and hours worked is detailed in Monte Jordan's Report, which was previously provided to Defendant by Plaintiff at Bates Nos. 0146-0155.  (Another copy of Monte Jordan's Report is enclosed, as well as the two-year audit detailing hours worked and monies owed.)  Payment may be made to Plaintiff, care of counsel, at his place of business.

If you have any questions, please do not hesitate to contact me.

Sincerely,

LAW OFFICES OF KENNETH L. COVELL

By: _____
    Kenneth L. Covell

KLC:syd

Enclosure

SENT TO CLIENT
_Rick Owen (-mail)_
_5/5/06 SJA w/encl._

# CALCULATION OF OVERTIME WAGES OWED JOHN GILBERT

## RE:

## GILBERT v. APC NATCHIQ, Case No.: A03-0017 CV

Prepared by: Monte L. Jordan
March 5, 2006

0146

March 5, 2006

Kenneth L. Covell
Law Office of Kenneth L. Covell
712 8th Avenue
Fairbanks, Alaska 99701

Re: GILBERT v. APC NATCHIQ, CASE NO.: A03-0017 CV

Dear Mr. Covell:

This report is in response to your request to provide calculations for overtime wages owed in compliance with Alaska State labor statutes and regulations, specifically Alaska Statute (AS) 23.10.060 and 8 Alaska Administrative Code (AAC) 15.100 (a)(1)(2), other state labor laws and sections of the Code of Federal Regulations (CFR) as noted in the following report.

Please note, that the agreed hourly rate during the preparation of this report is $100.

Preceding my recent retirement from the State of Alaska, I was employed with the Alaska Department of Labor and Workforce Development, Labor Standards & Safety Division, Wage and Hour Administration for over 26 years in the Fairbanks office. During that time (1978 rough July 2004) I worked as a Wage and Hour Technician, Wage & Hour Investigator I and supervising Investigator, which involved the performance of hundreds of wage audits. The majority of the audits I performed were overtime audits. In addition to auditing employee time records my duties included the determination of whether an individual(s) met any of the exemptions from the payment of overtime such as found under 8 AAC 15.910 (1) "administrative employee", 8 AAC 15.910 (7) "executive employee" and 8 AAC 15.910(11) "professional employee".

This report is based on my review of the records and information provided by John Gilbert along with records and information maintained and provided by APC Natchiq. A detailed explanation of the audits follow, however the total overtime wages and liquidated damages owed as a result of these audits for the period of 1/31/01 through 4/07/03 is:

**$277,036.10**

This report was based on the information provided to date. Therefore, I reserve the right to amend, modify, or supplement this report based upon the receipt of new or additional information.

Sincerely,

Monte L. Jordan
MJ Resources

0147

Attachments

GILBERT v. APC NATCHIQ
Case No.: A03-0017 CV
p. 3

## I. METHOD OF CALCULATION – STATE STAUTES/REGULATIONS

The method of calculation used for the period 6/20/01 through 4/07/03 was based on Alaska Statute 23.10.060 (a)(b)(c) which in essence requires an employer "who employs employees engaged in commerce or other business, or in the production of goods or materials" to pay the employee(s) one and one half (1.5) times the employee's regular rate of pay if the employee works more than eight (8) hours in a day or forty (40) hours in a week.

This method was chosen based on findings in <u>Ronald E. Zuper v APC Natchiq, Inc</u>, 4FA-02-2272CI, that work performed by a "safety specialist" as employed by APC Natchiq would not be exempt from AS 23.10.060. John Gilbert was hired on 1/30/01 in the capacity of a safety specialist and maintained this position until January 1, 2003 when he was promoted to "safety supervisor". That Mr. Gilbert's work was not exempt was further supported by conversations with him regarding the nature of his actual duties performed during the audit period of 6/20/01 through 1/2/02. APC Natchiq (herein referred to as APC) records for John Gilbert and his statements confirm that Gilbert was paid a daily wage, which was increased during his employment from his original hiring daily wage of $350 to his daily wage at the termination of his employment of $475.

John Gilbert was not paid an hourly wage nor was he paid overtime wages when he worked more than eight hours (8) in a day or 40 hours in a week. Further, APC did not keep accurate daily or weekly records of the hours worked as required by AS 23.05.080, AS 23.10.100 and Code of Federal Regulations (CFR) 516.2. Instead, APC records reflected a total of the days worked except for a few documents such as certain "Employee Information Records" that reported Gilbert's day rate and "Standard Work Week Hours" of 70 when his daily rate was recorded. It appears from APC's method of recording number of workdays and paying Gilbert the daily wage for each day, regardless of hours worked, for each pay period that he was receiving a daily salary.

The basis for computing overtime under Alaska state law is set out in 8 AAC 15.100, Payment for Overtime (a), which states in part, "An employee's regular rate is the basis for computing overtime. The regular rate is an hourly rate figured on a weekly basis. The employee need not actually be hired at an hourly rate. The employee may be paid by piece-rate, salary, commission, or any other basis agreeable to the employer and employee. However, the applicable compensation basis must be converted to an hourly rate when determining the regular rate for computing overtime compensation." Under (1) of this regulation, information that must be provided in the employment contract is set out as follows:

(1) The employment contract must set out the specific number of straight time and overtime hours the employee is expected to work each day and each week. The contract must establish a regular straight time hourly rate of pay and the appropriate overtime rate with respect to the salary to be paid and the number of hours to be worked. Changes to the pay schedule of a salaried employee must conform to the provisions of AS 23.05.160.

0148

GILBERT v. APC NATCHIQ
Case No.: A03-0017 CV
P. 4

APC did not provide John Gilbert with an employment contract that meets the requirements of 8 AAC 15.100(a)(1). As noted above the APC wage information he received noted his daily rate and a workweek of 70 hours. As a result it was necessary to look to 8 AAC 15.100(a)(2) to determine the correct method of calculating John Gilbert's overtime compensation which states under (2):

> (2) If a contract fails to establish a fixed number of daily and weekly hours that the salary is intended to compensate, or if the actual hours of work deviate from the hours specified in the contract, the salary will be considered to be compensation for an eight hour workday and 40-hour workweek, and overtime will be computed on that basis.

As noted, APC's contract failed to establish a fixed number of daily hours, and in fact the number of actual hours worked by Gilbert deviated not only from the 70 hours noted in his "Standard Work Week Hours" but on the actual hours he worked daily and weekly. Therefore the method of calculation is clearly laid out under 8 AAC 15.100 (a)(1)(2).

## II. BASIS FOR THE OVERTIME CALCULATION

The hours used for the audit were taken from John Gilbert's personal records that he maintained on a daily basis during his period of employment with APC. John Gilbert stated that it has been his practice for some 20 years to maintain his own work record. The record he maintained during his tenure with APC generally reflects comments or notes about his workday and or the beginning and ending times of his workday. Most often these entries included a total number of hours in his workday.

Although John Gilbert's initial employment began on 1/30/01 the audits attached to this report are for two major periods. The first is for the period of John Gilbert's employment during the two years prior to the filing date of the complaint on 6/20/03. The dates of this period are 6/20/01 through 1/2/02. Subsequently this audit is broken into two time periods because John Gilbert received two rates of pay one for a daily rate of $425 for 6/20/01 through 1/2/02 and an increase to $475 along with a position change on 1/3/02 through 4/07/03.

According to an APC "Employee Information Record" signed and dated by John Gilbert on 1/4/02 his title became Safety Supervisor effective 1/3/2002. Based on the statements of John Gilbert, his new position included some supervisory duties and paperwork but he also continued to spend well in excess of 50% of his time in training and performing inspections much like the foreman of a crew. The amount of time spent in non-exempt duties fails to meet either the state test of 20% or the Fair Labor Standards Act (FLSA) test of primary duty that is sometimes expressed as 50%. Additionally, Gilbert's assertion and APC records verify that he continued to be paid on a daily salary with no additional compensation for overtime. Further, please note that at the time of preparing this report, specific information about John Gilbert's position as "Safety Supervisor" (such as actual work performed, or the percent of his time spent at his various

0149

GILBERT v. APC NATCHIQ
No.: A03-0017 CV
Page 5

duties) was not available from APC.

At the top of APC's Safety organizational chart for 2001 is the position of "Senior Safety Supervisor" that was held by Ron Kirk. In 2002 this position no longer exists. Instead the top position on the chart is "Safety Manager" with the position of "Safety Supervisor" directly underneath. The organizational chart reflected that this position was filled by John Gilbert and Ron Kirk. This would seem to indicate that the Safety Supervisor position when filled by John Gilbert carried less authority not only in title but also in the fact that the person(s) filling the position answered to someone else.

### III. AUDIT EXPLANATION 6/20/01 - 4/07/03

As explained in some detail above, the audit (attached) of overtime compensation is based on the calculation method laid out in 8 AAC 15.100 (a)(1)(2) using the personal daily records maintained by John Gilbert (as the best available time records). In most cases when APC's record of the days Gilbert worked was available and compared to the dates he recorded there was agreement, with a few exceptions. Overtime wages were computed under state law and are based on actual hours worked rather than hours that may be paid for (as in the example of holiday pay, payment for various types of leave, and other kinds of pay such as travel, severance, etc.).

In order to be as accurate as possible, every effort was made, utilizing the available records to discern the actual hours worked. John Gilbert agreed that his regular daily schedule was a 12 hour shift with a half hour meal period. Therefore, 11.5 hours was used in computing his workday except when otherwise noted in Mr. Gilbert's records or on "change out" days. "Change out" days were days when he would travel to and from the worksite. Typically, Gilbert stated he would begin work at his normal work time in the morning and work until approximately 2:00 PM on the day of his departure resulting in about 7.5 to 8.5 hours of work. Gilbert generally performed less hours of work (approximately 3.5 hours) on the day he returned to the worksite depending on the time his flight arrived.

APC paid John Gilbert a daily salary he received these wages for days that he worked both straight time and overtime hours and for days that would be calculated as all overtime hours. Because of this practice, APC was given credit for the wages or a portion thereof that Gilbert received for these days towards the overtime earned. On page 20 of the audit for this period is a table reflecting how the credit was determined. On page 1 of the audit the credit amount is reflected in red and the total compensation of $117,630.47 for year one and two (6/20/01-4/07/03) due Gilbert includes an adjustment for this credit.

Lacking information to the contrary the workweek was set up as beginning on Monday and ending on Sunday. Please note that the first workweek of the audit for 6/20/01 through 4/07/03 begins on 6/18/01, however, John Gilbert received a daily wage increase from $375 to $425 on 6/20/01. Therefore, the 9 hours of overtime reflected from 6/18/01 through 6/19/01 were not

GILBERT v. APC NATCHIQ
Case No.: A03-0017 CV
e 6

included in the total OT hours calculated in this period. Information provided on page one of this audit reveals the dates and the daily wage paid during the period:

### 6/20/01–1/2/02

$425 Daily Wage divided by 8 hours = $53.13 Hourly Rate/Overtime Rate = $79.69.

Total OT Hours = 554.25 x $79.69 OT Rate = $44,166.80 OT Wages
18 days @ $425 Daily Wage = $ 7,650.00 OT Credit

Adjusted OT Owed for this period = **$36,516.80**

### 1/03/02–4/07/03

$475 Daily Wage divided by 8 hours = $59.38 Hourly Rate/Overtime Rate = $89.06

Total OT Hours = 1124.25 x $89.06 OT Rate = $100,128.52 OT Wages
47 days credit based on $475 = $ 19,014.84 Credit (see audit)

Adjusted OT Owed for this period = **$81,113.67**

## IV. AUDIT RESULTS FOR PERIOD 6/20/01 – 4/07/03

Based on the results of the attached audit, the Total Overtime Wages owed to John Gilbert for the period of 6/20/01 through 4/07/03 is:

**$117,630.47**

## V. COMPUTATION OF AUDIT UNDER FEDERAL CFRs 1/31/01-6/19/01

Generally overtime violations under federal and state law fall under a two-year statute of limitations, as is the case for state law. However, this period was audited because federal law will also allow a "look back" period of a third year for overtime wages under a finding of "willful" violation of the FLSA.

An audit was performed under both state and federal law of hours worked by John Gilbert for the period of 1/31/01 through 6/19/01. The first audit for this period is based on the method of calculation for overtime used under CFR 778.113(a), salaried employees. This federal regulation applies to an employee who is paid on a weekly salary basis. The regular rate is arrived at by

GILBERT v. APC NATCHIQ
Case No.: A03-0017 CV
ge 7

dividing the salary by the number of hours that the salary is intended to compensate. The regular rate is then multiplied times 1.5 to determine the overtime rate. Hours worked in excess of 40 in the week are multiplied times the overtime rate to arrive at the overtime wages due.

APC "Employee Information Record" under the heading "Standard Work Week Hours" consistently reflect John Gilbert's workweek at 70 hours. With the exception of weeks that John Gilbert traveled to and from the slope, his workweek was seven days. It appears that his daily wage was intended to be based on a seven (7) day workweek for a total of 70 hours per week. This audit is based on a weekly salary arrived at by multiplying the appropriate daily rate for the period times seven (7) days.

## AUDIT OVERVIEW – 1/31/01-6/19/01

John Gilbert received two daily rates of pay during the period from 1/31/01 through 6/19/01. These rates were used when applicable to determine the weekly salary earned for the period. During the period 1/31/01 through 4/15/01 his daily rate was $350 and he worked 51 days in the period. For the following period, 4/16/01-6/19/01 his daily rate was $375 and he worked 36 days in the period.

### 1/31/01 – 4/15/01

$350 Daily Rate times 7 days = $2,450.00 divided by 70 hours = $35.00 regular rate
$35.00 Regular Rate multiplied by 1.5 = 52.50 OT Rate
$52.50 OT Rate multiplied times 264 OT Hours = $13,860.00 OT Wages
$35.00 ST Rate multiplied times 348 ST Hours = $12,180.00 ST Wages
Total Wages Earned = $26,040.00
Total Wages Paid = $17,850.00

**Overtime Wages Earned = $8,190.00**

### 4/16/01-6/19/01

$375 Daily Rate multiplied times 7 days = $2,625.00 divided by 70 hours = $37.50 regular rate
$37.50 Regular Rate multiplied by 1.5 = $56.25 OT Rate
$56.25 OT Rate multiplied times 178.5 OT Hours = $10,040.63 OT Wages
$37.50 ST Rate multiplied times 258.5 ST Hours = $9,693.75 ST Wages
Total Wages Earned = $19,734.38
Total Wages Paid = $13,500.00

**Overtime Wages Earned = $6,234.38**

The total overtime wages owed John Gilbert based on the results of the audit under CFR 778.113(a) for the period 1/31/01 through 6/19/01 is:

**$14,424.38**

GILBERT v. APC NATCHIQ
No.: A03-0017 CV
Page 8

## VII. COMPUTATION OF AUDIT UNDER STATE LAW 1/31/01-6/19/01

An audit was also conducted on this period under the requirements of Alaska State law based on the information that this was a contract claim. Because John Gilbert received two rates of pay from 1/31/01 through 6/19/01 these rates were used when applicable to arrive at the regular rate and overtime rate. As previously explained, the hours recorded in John Gilbert's personal records were used to determine the number of daily and weekly hours worked. Actual hours worked on travel days were also used. Credit was not given for the full daily rate paid toward wages on those days. Wages credited toward overtime was based on the number of days worked in excess of five multiplied times the daily rate for each period. Pursuant to state law under AS 23.10.060 and 8 AAC 15.100 as described on page 3 and page 4 above, the straight time rate was determined by dividing the applicable daily rate by eight (8) hours and this rate was multiplied by 1.5 to arrive at the overtime rate.

### AUDIT OVERVIEW – 1/31/01-6/19/01

1/31/01 – 4/15/01

$350 daily rate divided by 8 hours = $43.75 regular rate times 1.5 = $65.83 overtime rate.
$65.83 OT Rate times 288.5 OT Hours = $18,932.81 OT Wages
10 Days @ $350 Daily Rate = $ 3,500.00 OT Wage Credit

**Overtime Wages Earned = $ 15,432.81**

4/16/01 – 6/19/01

$375 daily rated divided by 8 hours = $46.88 regular rate times 1.5 = $70.31 overtime rate.
$70.31 OT Rate times 201.5 OT Hours = $14,167.97 OT Wages
6 Days @ $375 Daily Rate = $ 2,250.00 OT Wage Credit

**Overtime Wages Earned = $11,917.97**

## VIII. AUDIT RESULTS FOR PERIOD 1/31/01 – 6/19/01 UNDER STATE LAW

Total overtime wages based on the results of the audit under AS 23.10.068 AAC 15.100(a)(1)(2) for the period 1/31/01 – 6/19/01 John Gilbert is owed:

**$27,350.78**

0153

## IX. CONCLUSION FOR PERIOD - 1/31/01-6/19/01

As early as 1996 APC based on queries from their own personnel was made aware that there could be problems with the payment of day rate to employees and the exempt status of these employees. Additionally, APC continued to violate federal and state record keeping requirements even after John Gilbert made inquiries about how his records were maintained.

After a review of the federal regulations and various methods of calculation used, the most appropriate for this period is under 19 CFR 778.113, Salaried employees - - general. John Gilbert was paid a daily wage/salary with no compensation for overtime worked. Based on APC's records the weekly hours were set at 70 even though his weekly hours varied in actuality

In conclusion, it is my opinion that John Gilbert is owed total overtime wages for the period 1/31/01 through 6/19/01 based on CFR 778.113 in the amount of:

$14,424.38

## X. LIQUIDATED DAMAGES UNDER STATE LAW

The audit included above for the period of 6/20/01 through 4/07/03 was performed according to AS 23.10.060 and 8 AAC 15.100 (a)(1)(2) and therefore statutory liquidated damages under AS23.10.110 in an amount equal to the unpaid overtime are appropriate unless APC can show by clear and convincing evidence that it acted in good faith. However, APC did not maintain accurate records of the daily and weekly hours worked by John Gilbert as required under Alaska Statutes as required by AS 23.05.080 and AS 23.10.100. When their records reported daily hours the number of hours reflected was 10 and references to work week hours were stated on APC's "Employee Information Record" as 70 even though John Gilbert was regularly scheduled to work a 12-hour shift. This falsification of daily and weekly hours continued throughout the term of John Gilbert's employment even though John Gilbert stated that he asked about this discrepancy numerous times but was given no explanation. On 3/29/01, John Gilbert recorded in his daily records that he asked his supervisor, Ron Kirk why they were being paid for 10 hour workdays but they received no overtime wages. Gilbert noted that he received no answer to his inquiry.

Further, APC's internal memos dated 12/7/96 from Mark Nelson to Anne Hippe and Toby Osborn; memo dated 12/26/96 from Christopher B. Boyle; and memo dated 4/4/97 from Christopher B. Boyle to Mark Nelson/Charlie Schick indicate concerns about paying exempt employees a day rate and whether exempt employees were properly classified as exempt. Boyle recommends both in the 1996 and 1997 memos that exempt occupations be reviewed. The only example of such a review available to date is a letter to Randy Carr, Director of Labor & Safety, State of Alaska from Mark C. Nelson, Operations Manager for APC requesting a determination

GILBERT v. APC NATCHIQ
Case No.: A03-0017 CV
p. 10

of the "Materials Supervisor" position regarding whether the employee was exempt. The apparent failure by APC to conduct an extensive review of exempt positions further supports a lack of good faith. Taken together, APC demonstrated a repeated failure to act with due diligence.

## XI. REPORT CONCLUSION

As explained above in this report my opinion is based on conversations with John Gilbert, records available from APC and John Gilbert, and audits conducted under Alaska Statutes/ Alaska Administrative Code and the Code of Federal Regulations.

Since Gilbert also filed a contract claim he has the option to elect between overtime damages pursuant to the state rate contract claim or the federal rate FLSA overtime claim for year three (1/31/01 through 6/19/01). As a result, the total reflected below for year three is based on the contract claim (state law) for overtime and liquidated damages under federal law for that same period. Therefore, APC owes John Gilbert total overtime wages and liquidated damages for year three and for year one and two as follows:

**1/31/01 – 6/19/01  (Year Three)**

$27,350.78   Overtime Wages/State Rate
$14,424.38   Liquidated Damages/Federal Rule

$41,775.16   **Total Owed**

**6/20/01 – 4/07/03 (Year One/Two)**

$117,630.47   Overtime Wages
$117,630.47   Liquidated Damages

$235,260.94   **Total Owed**

**Total Overtime Wages and Liquidated Damages owed to John Gilbert for all years (1/31/01 through 4/07/03) is:**

$277,036.10

00155