Kenneth L. Covell
LAW OFFICE OF KENNETH L. COVELL
712 Eighth Avenue
Fairbanks, Alaska  99701
(907) 452-4377 telephone
(907) 451-7802 fax
e-mail:  kcovell@gci.net

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOHN GILBERT, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>APC NATCHIQ, INC. )<br>)<br>Defendant. )<br>_____ ) | <br><br><br><br><br><br><br><br>Case No. 3:03-CV-00174 RRB |

**REPLY TO OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMARRY JUDGMENT RE: LIQUIDATED DAMAGES, filed at Docket No. 52 AND RE: DETERMINATION OF WILLFULNESS, filed at Docket No. 74**

**OPPOSITION TO DEFENDANT'S MOTION FOR PARTIAL SUMARRY JUDGMENT RE: LIQUIDATED DAMAGES, filed at Docket No. 34**

In his consolidated motion, Plaintiff, John Gilbert (Gilbert), requests partial summary judgment that he is entitled to liquidated damages on any unpaid overtime award in this case as required by 29 U.S.C. § 216(b) and AS 23.10.110(d). Gilbert also moved for partial summary judgment that Defendant, APC Natchiq, Inc. (APC) acted willfully for purposes of applying the FLSA federal 3 year statute of limitations provisions. 29 USC §255(a).

APC opposes Gilbert's willfulness motion by claiming that Gilbert has not shown that APC acted knowingly or with reckless disregard of APC's obligations. APC filed a separate motion for partial summary judgment addressing the liquidated damages issue. This pleading will reply to APC's opposition to Gilbert's motion re: liquidated damages and willfulness and oppose APC's motion re: liquidated damages.

## Summary Judgment Standard

In a motion for summary judgment all reasonable doubt as to the existence of a genuine issue of fact should be resolved against the moving party. *Hector v. Wiens*, 533 F.2d 429, 432 (9th Cir. 1976). The inferences drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Valandingham v. Bojorquez*, 866 F.2d 1135, 1137 (9th Cir. 1989). Where different ultimate inferences may be drawn, summary judgment is inappropriate. *Sankovich v. Insurance Co. of North America*, 638 F.2d 136, 140 (9th Cir. 1981).

## Introduction Re: Liquidated Damages

An award of liquidated damages is the rule and denial the exception. APC claims it should not have to pay liquidated damages because it acted in subjective good faith and its interpretation of the law was objectively reasonable.  APC bears an elevated burden of proof of facts and application of the law. To avoid liquidated damages after a violation of the FLSA or the AWHA, APC must show, by the applicable quantum of proof, that the act or omission-giving rise to the violation is in good faith and that it had reasonable grounds for believing that its act or omission was not a violation of the applicable statute. The statutory requirement of good faith and reasonable grounds is a test with both subjective and objective components. To satisfy the subjective good faith component, the employer must show that it had an honest intention of ascertaining what the FLSA required and to act in accordance with it. . *Bratt v. County of Los Angeles*, 912 F.2d 1066, 1072 (9th Cir. 1990). The question of "honest intention" is an

inquiry that is essentially factual. *Id.*[1] The "liquidated damages" issue should be determined for Gilbert or tried.

Most importantly, the employer must have objectively reasonable grounds for believing that its conduct complies with the Act. *Bratt,* 912 F.2d at 1072. Determining the objective reasonableness of the employer's belief involves applying the proper interpretation of the FLSA, and supporting regulations, to uncontested facts, or facts found by the jury, which is a legal determination. *Bratt,* 912 F.2d at 1071  If the court concludes that the employer's interpretation of the law was incorrect, but that its belief in its own interpretation was not objectively unreasonable, then the Court may, in its discretion, withhold or reduce the required liquidated damages award.

## Burden Of Proof

APC is held to an elevated burden of proof which applies to the summary judgment analysis. In *Anderson v. Liberty Lobby*, 477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986) the U.S. Supreme Court considered the summary judgment issues of materiality and genuineness and concluded that the substantive law determines which facts are material. Once it is determined that a material fact is present, this Court must decide whether that material fact is "genuine." The "genuine issue" summary judgment standard is very close to the "reasonable jury" directed verdict standard. Summary Judgment is inappropriate if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Id.*  "Just as the convincing clarity requirement is relevant in ruling on a motion for directed verdict, it is relevant in ruling on a motion for summary judgment." *Id.* "Thus, in ruling on a motion for

---

[1]  A finding of willfulness precludes a finding of good faith; however, absent a finding of willfulness, good faith involves a separate inquiry. *Chao,* 346 F.3d at 920  Because this case is on track for trial to determine the "willfulness" issue, making a "good faith" finding would be premature.  However, making a finding that APC has not met its elevated burden to establish "good faith" should be done now if possible.

summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Id.*

To avoid summary judgment, APC must provide evidence sufficient to convince this Court that no reasonable jury could find it has failed to proved good faith and that it had reasonable grounds to believe no violation of the FLSA and AWHA occurred, by either "plain and substantial evidence" [Federal - *Brock v. Shirk*, 833 F.2d 1326 (9th Cir. 1987)] or "clear and convincing evidence" [Alaska – as 23.10.110(D)].

Liquidated damages are mandatory. Liquidated damages become discretionary if, and only if, APC shows by either "plain and substantial" or "clear and convincing" evidence that the violation of the FLSA was in subjective good faith and that APC had reasonable grounds for believing that no violation took place. *Bratt,* 912 F.2d at 1071; *Local 246 Utility Workers Union v. Southern California Edison Co.,* 83 F.3d 292, 297-98 (9th Cir. 1996).

## Summary Judgment Proofs Summary

APC cannot obtain summary adjudication of this issue. If this Court decides that no reasonable jury could find that APC has proved good faith and reasonable grounds by "clear and convincing" or "plain and substantial" evidence, then Gilbert prevails. The best APC can do is convince this Court that it has presented genuine material contrary evidence that a reasonable jury might so find, and the case goes to jury.[2]

## Legal Requirements

Federal and Alaska law required any employer who fails to pay overtime to pay liquidated damages." 29 U.S.C. § 216(b) and AS 23.10.110(d). Entitlement to liquidated damages is presumed. Liquidated damages are the rule and denial the exception. *Alvarez,* 339 F.3d at 910. Only if the

employer shows by the applicable quantum of proof (satisfaction of the court by "plain and substantial evidence" for the FLSA or by "clear and convincing evidence" for the AWHA) that the act or omission giving rise to such action was in good faith *and* that it had reasonable grounds for believing that its act or omission was not a violation of the applicable statute, may this court, in its sound discretion, deny or reduce the liquidated damages award. Good faith requires a subjective determination and reasonableness requires both subjective and objective determinations.  Both may require a jury determination.

### Federal And State Law Require APC To Meet An Elevated Burden Of Proof To Avoid Summary Adjudication Of The Liquidated Damages Issue

Alaska Statute 23.10.110(d) gives discretion to the court to decline to award liquidated damages if the defendant shows *by clear and convincing evidence* that the defendant acted in good faith  *Fred Meyer of Alaska, Inc. v. Bailey*, 100 P.3d 881, 887 (Alaska 2004) In Alaska "clear and convincing" evidence is "that amount of evidence which produces . . . a firm belief or conviction about the existence of a fact to be proved."  *In re Johnstone*, 2 P.3d 1226, 1235 (Alaska 2000) Clear and convincing evidence is greater than a preponderance, but less than proof beyond a reasonable doubt. *Buster v. Gale*, 866 P.2d 837, 844 (Alaska 1994).

29 USC §260 provides this same discretion upon an identical showing. *Bratt,* 912 F.2d at 1071, quoting from *Equal Employment Opportunity Commission v. First Citizens Bank*, 758 F.2d 397, 403 (9th Cir. 1985)  "To satisfy § 260, APC bears the *'difficult'* burden of proving both subjective good faith and objective reasonableness. This difficult burden requires "plain and substantial evidence." – *Brock,*

---

[2] Even if APC were to prevail, all APC does is establish discretion for this Court to possibly deny or possibly reduce liquidated damages.

833 F.2d at 1326. [3] Where the employer fails to carry that burden, liquidated damages are mandatory."

*Alvarez,* 339 F.3d at 910 (citations omitted)

### Application Of The "Subjective/Objective" Good Faith and Reasonableness Standards.

Case law indicating that the "reasonableness" determination is for the court depends on there being *undisputed facts* to which the court can apply the law. *Bratt,* 912 F.2d at 1072 The key is "uncontested facts."  Where there is a genuine conflict of material fact the issue goes to the jury.

### Tangentially Relevant Evidence

In its Opposition to Gilbert's Motion For Partial Summary Judgment Re: Liquidated Damages at page 4, footnote 2, APC complains that Gilbert attached a motion filed in the companion Zuber case. Says APC, the motion is irrelevant because Zuber was a safety specialist and **"We are here focusing on the steps taken to classify the position of safety supervisor."** *Id.* (emphasis added)  Accepting APC's desire to limit consideration to steps taken to classify the safety supervisor position means that documents (and testimony) about some other position are not relevant to the issue whether the safety *supervisor* is exempt. Putting aside such evidence for analysis purposes, there is scant evidence about how the determination was made. .

If we ignore all tangential evidence, APC presents no evidence that actual inquiry was made into the Alaska law applicable to the safety supervisor. Failure to make inquiry into Alaska law is not consistent with a claim of good faith.  AS 23.10.110(g)

APC cannot have it both ways. At very least the documents presented must be relevant to the determination being made.

---

[3]  Gilbert has not found a specific definition of "plain and substantial". Gilbert suggests that the evidentiary standard is the same for both the state and federal law claims

On the other hand, if we accept evidence about another position as tangentially relevant, APC places itself in an even worse position. For example, the fact is that APC cannot show it complied with the direction by the Alaska DOL in WHOL 122, requiring that the materials supervisor be paid for all hours worked. (Exhibit 1) 2006 Boyle depo., pp. 73, lines 17 – 26, pp. 74, lines 1-7; (Exhibit 2) 2006 Nelson depo., pp. 27, lines 17 – 25, pp 28, pp. 29 and pp. 30, lines 1 – 4. See Plaintiff's Brief at Docket 52 at pages 15 and 16. This failure to follow the directions by DOL contained in WHOL 122 is conclusive proof of failure to ascertain and comply with the law, but unequivocally shows an intentional violation of the law which was ongoing for nine year, i.e., wilfullness.

### APC Did Not Make The Required 20% Analysis

Both the FLSA and the AWHA specifically require analysis and allocation of the amount of time attributable to exempt and non-exempt activities when determining if an employee is exempt from the overtime requirements.

The AWHA is interpreted in 8 AAC 15.910(a)(1)(F) [Administrative Exemption] and 8 AAC 15.910(a)(7)(E) [Executive Employee]. Each regulation contains the following language limiting the amount of non-exempt work such employees can do to twenty percent (20%) of his or her workweek.

> . . . who performs work along specialized or technical lines requiring special training, experience or knowledge and does not devote more than 20 percent, . . . to activities that are not described in this paragraph or (7) or (11) of this section; . . .

The FLSA regulations in effect from January 30, 2001, when Gilbert was hired as a safety specialist, through July 1, 2002, after Gilbert was designated a safety supervisor, each contain limits on the amount of non-exempt work permitted and require analysis of actual duties to derive the employee's "primary duty" for application to the exemptions.

. . . Who does not devote more than 20 percent, . . . to activities which are not directly and closely related to the performance of the work described in paragraphs (a) through (d) of this section:  . . .

29 CFR §541.1(e) [Executive] and §541.541.2(d) [Administrative].

29 CFR §541.206 incorporates the analysis of "primary duty" into the executive and administrative exemptions.  29 CFR §541.103 requires inquiry into the allocation of time spent on various tasks to determine the employee's primary duty.

In the ordinary case it may be taken as a good rule of thumb that primary duty means the major part, or over 50 percent, of the employee's time. Thus, an employee who spends over 50 percent of his time in management would have management as his primary duty. Time alone, however, is not the sole test, and in situations where the employee does not spend over 50 percent of his time in managerial duties, he might nevertheless have management as his primary duty if the other pertinent factors support such a conclusion.

29 CFR §541.103

APC was required to know about both the FLSA and AWHA requirements and the interpretations, and analysis in the CFRs. APC was required to have applied these requirements in its analysis. If APC is to make even a colorable claim to this Court's discretion to withhold or limit liquidated damages, APC must provide evidence to prove it knew and applied these requirements. Reasonableness is related to negligence. The 6th Circuit has said, ". . . an employer who acted negligently . . . in violating the FLSA would not be able to satisfy the objective standard of reasonableness required to demonstrate good faith.  *See e.g., Elwell v. Univ. Hosps. Home Care Servs.*, 276 F.3d 832, 842 (6th Cir. 2002)  Essentially, APC must prove it was not negligent and acted in good faith  to avoid liquidated damages

APC clearly knows about the Federal and State regulations about the 20% test.  Chris Boyle, APC's Human Resources Director told Mark Nelson and others in a December 1996 memorandum of the test.  Mr. Boyle attached the state administrative and executive exemption requirements, both of which discuss the 80/20 percent duties limitation.  (APC's Motion, exhibit B, attachment 4) Without

having done a 20% analysis, APC cannot support its claimed good faith analysis and claimed reasonable interpretation necessary to avoid liquidated damages. Nor can there be a claim to objective reasonableness when APC never did a required analysis.

Failure to show that APC performed this critical analysis is fatal. Subjective good faith requires proof that the employer had an honest intention to ascertain and follow the dictates of the FLSA. *Bratt*, 912 F.2d at 1072.  Nor can it be "objectively reasonable, in terms of [APC's] obligation to make a good faith effort to comply with the requirements of the FLSA and various state overtime laws," to ignore the time allocation requirements. ". . . [I]gnorance 'will not exonerate the employer under the objective reasonableness standard,' . . . and neither does negligence." *See e.g., In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.*, 336 F. Supp. 2d 1077, 1111 (D. Or. 2004)

### Consider The Evidence

APC really presents only the testimony of three persons and the documents they purport to have used to arrive at their decision about Gilbert's exempt status as a safety supervisor.  Lack of evidence to support a necessary element will also support Gilbert's position.[4]

### The Witnesses

### Chris Boyle:

Chris Boyle was APC's Human Resources Manager. In 1996 Mr. Boyle issued two memorandums about standards for exempt employees.  (Boyle Depo. at 59 – 60 and exhibits B-1 to B-4. APC's Liquidated Damages Motion at 5.)

---

[4] " . . . [T]he burden on the moving party may be discharged by 'showing' -- that is, pointing out to the district court -- that there is an absence of evidence to support the nonmoving party's case." *Celotex Corp. v. Catrett*, 477 U.S. 317 at 325, 106 S. Ct. 2548 at 2554, 91 L. Ed. 2d 265 at 275 (1986)

The December 26, 1996 letter requested information by January 15, 1997.   The attached information establishes notice of the requirements to APC's management.   The elements of the administrative and executive exemptions includes the requirement that no more than 20% of the employee's time be spent on non-exempt work.   (Boyle depo, Exhibit D-6 to APC's Liquidated Damages Motion)   No responses to this memorandum were produced.   There is no showing that the percentage analysis was addressed at all.

The April 4, 1997 letter addressed the day rate for exempt employees and recommended again examining "the foreman and similarly classified employees."   (Boyle depo, Exhibit D8 – 9 to APC's Liquidated Damages Motion.) This memorandum might address the safety supervisor's position.   APC makes no showing that this letter resulted in any action at all.

APC offers no evidence to support its unsupported claim, at its Opposition at 8, that Mr. Boyle consulted with other experts of the Department of Labor. In fact, no showing is made that Mr. Boyle actually did anything related to classifying the safety supervisor position at all.

**Mark Nelson:**

Mark Nelson was the manager of the Kuparak Oil Field.   According to APC, Mr. Nelson had numerous conversations with Mr. Carr of the Alaska DOL, requested a formal opinion about the material supervisor position, and then extrapolated from that opinion to classify the safety supervisor as exempt.   APC's Opposition at 12 – 13. This assertion is unsupported by evidence.[5]   Mr. Nelson is alleged to have asked another oil field company for information and received a table "summarizing the criteria for overtime exemption" and applied a Federal DOL checklist to safety *specialists.*  Opposition

---

[5]   "It is clear enough that unsworn statements of counsel in memoranda submitted to the court are even less effective in meeting the requirements of Rule 56(e) than are unsupported allegations in the pleadings." *See e.g., Schoch v. First Fidelity Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990)

at 14 – 15.  APC presents no similar evidence about Mr. Nelson's classification of Mr. Gilbert's safety supervisor position.  APC has the burden of production and fails.

Mr. Nelson testified that he spoke with Mr. Carr of the Alaska DOL "in relation to the supervisor position."  (Nelson Depo. at 9-12 to APC's Liquidated Damages Motion at 4.)  The result was a request for an opinion about a materials supervisor's position unrelated to safety supervisors. (Nelson Depo. at 13 and APC's Liquidated Damages Motion at 4.)

APC has never produced a job description for the "safety supervisor" that was in effect in 2002 and 2003. Counsel and this Court cannot compare the "safety supervisor" and "materials supervisor" positions. Also missing is an analysis of the distribution between exempt and non-exempt work, i.e., the 20% analysis.  Besides counsel's unsupported allegation that Mr. Nelson extrapolated from a letter about another employee designated as a supervisor, APC and Mr. Nelson provide little actual testimony or evidence at all, let alone "clear and convincing" or "plain and substantial" evidence of good faith and reasonable action.

## Doug Smith:

APC says that Doug Smith evaluated the safety specialist position. APC's Liquidated Damages Motion at 5.  In fact, Mr. Smith testified that this evaluation took place in 2003.  Smith depo at 9, lines 6 – 19.  Mr. Smith's conclusion was based upon his opinions, observations and the expectations of the job. Smith depo. at 14 –15. APC does not support its claim, at its Opposition at 8, that Mr. Smith consulted with other experts of the Department of Labor. This assertion must be ignored. (See footnote 6)

Mr. Smith further testified that Mr. Gilbert did not do more than 20% non-exempt work.  Smith depo. at pp. 51, lines 7 – 14.   Mr. Smith apparently arrived at this, and any other conclusions justifying assigning Mr. Gilbert to exempt status, without actually talking to Mr. Gilbert about his daily duties.

Q.  Okay.    Did you ever confer with Mr. Gilbert when you were considering reclassifying the safety supervisor job or eliminating it as the case may be, as to what he did on a day-to-day basis?

A  I don't think John and I sat down and went through any specific classification question and answer of his position.

Smith Depo. at pp.21, lines 12 to 18.

Mr. Smith's testimony does not support APC's claimed good faith and reasonable interpretation.  To the contrary, Mr. Smith's testimony speaks to a time near the end of Mr. Gilbert's employment and actually proves that a critical element in the overtime evaluation, the 20% analysis, was made without consulting with Gilbert about what he did at work, and was omitted from the determination.

### The Documents

APC propounds surprisingly few documents to support its claimed immunity from liquidated damages.[6]

**APC Letter To Director of Labor – 6/19/97:**  (Exhibit 3) This is a request for assistance to the department of labor concerning the materials supervisor position.  The attachments were not provided.  Besides being about a different position than Gilbert's, this letter supports notice to APC that classification problems can be dangerous, shows knowledge of the procedure that would provide a definitive answer, and supports Gilbert's contentions that APC did not act in good faith and reasonably.  That this procedure was not followed with Gilbert supports the conclusion that APC was, at least, negligent in making the safety supervisor determination.

**DOL letter to Mr. Nelson of APC – WHOL 122 – 6/26/97:** (Exhibit 4) This letter from Mr. Carr at Alaska DOL and is based upon the documents provided to the Alaska DOL describing the duties

---

[6] A number of the documents propounded by APC contain many irrelevant pages.  The whole document will be attached.

of the materials supervisor. Mr. Carr highlights the word **solely** for the purpose of assigning and directing others in 8 AAC 15.910(14). This regulation also incorporates the 20% non-exempt activity requirement discussed above. The WHOL 122 letter specifically addressed the exemption for materials supervisors. Mr. Carr goes on to advise that the any supervisory employee, even if determined to be exempt from overtime, must still be paid for all hours worked.

This letter shows that APC knew how to obtain the information it needed to attempt comply with applicable law and arguably shield itself from liquidated damages. APC failed to do so with the safety supervisor position. WHOL 122 demonstrates that APC ignored its obligation to allocate and evaluate the time spent on different tasks and that APC acted contrary to DOL's direction that it pay the supervisors, whether or not exempt, for all hours worked. APC was, at least, negligent in making the safety supervisor determination, and purposely ignored the DOL directive to pay for every hour worked.

**Nelson's December 7 Memo And The Forbes Article – 12/7/96:** (Exhibit 5) In this memorandum Nelson opines that some supervisors would be non-exempt and askes for legal advice. This is the article that Mr. Nelson says alerted him to the potential that some employees might be improperly classified as exempt. Mr. Nelson initially thought they were non-exempt, but for some reason later changed his mind. This article is evidence that APC knew that classification mistakes could result is substantial liability and that the classification of supervisors was questionable for Mr. Nelson.

**The Foreman Discrepancy Letter – 4/4/97:** (Exhibit 6) This memorandum does not appear to relate to supervisors, but it does demonstrate that APC was aware of discrepancies between how different companies treated compensation issues.

**Nelson to Boyle Re: Exempt Employee – Day Rate – 6/25/97:** (Exhibit 7) This letter appears to address "foreman and similarly classified employees." In the final paragraph of this letter, at page 3, Mr. Nelson says, "determining proper procedures under Federal and State Wage & Hours laws is very

complex. In speaking with the department, they are often unclear . . . It appears that case law rulings are often contradictory resulting in the uncertain application of the regulations. . . ." This letter underscores the inadequacy of informal discussions with DOL as support for exemption decisions and the need for formal opinions and legal advice. This letter also is evidence that APC knew both the AWHA and FLSA had to be considered.

**Letter From Nelson To Carr Requesting Formal Opinion – 12/26/97:** (Exhibit 8) This letter request formal advice concerning paying for all hours worked and mentioning exemption for supervisors. The letter demonstrates awareness of the issues and the procedure for obtaining advice.

**December 26 Letter from Boyle to Others Re: Wage & Hour Day Rates (With Alaska Classification Information Attached):** (Exhibit 9) This is the letter requesting information about classifications by January 15, 1997. APC produced no responses to this request. The attachment contains the classification criteria which specifically mention the 20% analysis. APC knew about, and ignored, the 20% analyisis.

**KnowledgePoint Publication:** (Exhibit 10 no used) (Exhibit 11) This is part of a commercial publication Mr. Nelson says he consulted in making his determinations. There are charts to assisting making decisions about exempt employees. This document contains a statement that this is one of the most complex areas of FLSA. The following language contained in this publication is evidence that Mr. Nelson should have sought objective legal assistance and was advised to do so in the very publication he contends shows his diligence.

"The tables . . . are not meant to provide legal advice. If you have questions *Descriptions Now!* Recommends **consulting an attorney or other individual with expertise** in compensation issues." (emphasis added)

Mr. Nelson's own resources directed him to counsel and he failed to heed the warning.  This is reckless and unreasonable conduct and vitiates good faith.

**Quinlan Bulletin:** (Exhibit 12)  This part of an eight page document that contains only one article relating to overtime pay.  At page 5 and 6 of the Bulletin the article discusses the proper court where an overtime claim suit should be filed when the defendant employer is the state wearing its "employer" hat.  This Bulletin, in the small print on page 1, says that the information in the bulletin is not intended to substitute for legal advice.  "If you have any questions about the application of the issues raised herein to your particular situation, seek the advice of a competent attorney or other professional." Bulletin at 1.  This document is evidence that APC knew a mistake could be very costly and that it should seek objective advice.

**Payroll Legal Alert:**  (Exhibit 13)  Gilbert is at a loss to determine how this eight page document is relevant to APC's claim to good faith and reasonableness.  The document does contain the following language in the box on page two:

> This bulletin . . . is not designed to render legal advice or legal opinions. Such advice can only be given by a licensed practicing attorney, and only when related to actual fact situations. The warning is particularly pertinent because of the nature of the topics covered herein, these cases are largely controlled by individual state law and such matters should always be checked with the company's corporate counsel.

Bulletin at 2.

This Bulletin again is evidence that APC knew that classification error was dangerous and that formal legal advice was necessary to interpret and apply the laws.

**The Alaska Employment Law Letter:** (Exhibit 14)  This eight page document contains a discussion of overtime pay for exempt employees at pages 1 and 2.  That article ends by saying that there are, "many common misunderstandings about the validity of certain pay practices for exempt employees  . . ." and warns that, "You should obtain good advice before establishing pay practices for

exempt employees that vary from standard payment of salary." Letter at 2 The Letter also contains the *caveat* that, "it is not intended to be and should not be used as a substitute for specific legal advice, since legal opinions may only be given in response to inquiries regarding specific factual situations. . ." Letter at 8.

This Letter is further evidence that APC knew that classification mistakes were common and that formal legal advice was necessary to interpret and apply the laws.

**APC Job Description:** (Exhibit 15) This description is for a safety specialist. It demonstrates that APC had job descriptions. APC's failure to produce the job description applicable to Gilbert can be considered as evidence that APC doesn't want us to see it.

**Tests For Exemption Checklist:** (Exhibit 16) This purports to be a checklist completed with reference to the safety specialist position. It skips the executive exception and focuses on administrative and professional. In evaluating the administrative exception the 20% rule box is left blank. Did the position meet the 20% rule? Under the professional exemption the 20% rule is checked with a note "Cannon." The checklist contains the following note: "The distinction between exempt and non-exempt can be very difficult to discern in certain cases. If you have any doubt consult the U.S. Department of Labor and your attorney." APC is again warned to obtain the advice of both the US DOL and their attorney. The administrative exemption does not seem to have applied to the safety supervisor.

### Evidence Discussion

These documents do not provide enhanced evidence that APC acted in good faith and reasonably when it classified the safety supervisor position as exempt from overtime. A fair reading of the documents, and the warnings contained in them, supports Gilbert's position that APC acted willfully. At minimum, APC recklessly ignored the possibility that the safety specialist and supervisor position are non-exempt. All the publications warn that objective assistance by from the department of labor and/or a

competent attorney a must.  APC ignored these warnings - and it did so at its peril. The consequences of the mistake must be born by APC.  Liquidated damages are the rule.  The 3 year statute of limitations applies.

## APPLICATION OF THE LAW TO THESE FACTS

### Discussion Of Subjective Good Faith

APC should have, and could have, obtained a written opinion from the Alaska DOL, and/or the US Dept. of Labor, after submitting documentation to these authroities and engaging in the 20% analysis of what the safety supervisor did. In the absence of such efforts there remains only self-serving testimony about what was said and done and very little of that.  APC even fails to produce a job description for the safety supervisor position that was applicable to Gilbert. No stretch of imagination will equate APC's evidence and presented testimony with to "attempt to comply with the law to "the best of its ability." APC Opposition at 7.

### APC's "Best Of Ability" Standard

APC repeatedly admits that is was required to attempt to comply with the law. "The main question is whether the employer . . . took the necessary steps to ensure it was in compliance *to the best of its ability.*" APC's Opposition at 7 (emphasis added) The individuals making the decisions ". . . did everything they were supposed to do . . ." APC's Opposition at 8 "It is only important . . . to put forth [the employer's] *best effort* to try to comply with the law. . ." APC's Opposition at 10 (emphasis added)

This determination involved a number of supervisors. The damages, if APC erred in classifying them as exempt, could total a million dollars. (Zuber affidavit in companion case) (Exhibit 17.) Alaska Slope World Services notes that according to Alaska Business Monthly magazine, its subsidiary, Alaska Slope Regional Corporation is the number one revenue producing Alaskan-owned company, with annual

revenues of $1 billion and more than 5,000 employees. ASRC's headquarters are in Barrow, Alaska.[7] ASRC was previously called APC. APC/ASRC could afford objective experts and lawyers. APC should have, and could have, obtained an objective opinion and/or legal opinion from a lawyer about the classification of the safety supervisor position as exempt.

APC does not support its good faith. If it intended to comply with the law it would have treated the safety supervisor position like the materials supervisor and obtained a formal opinion from one of the Departments of Labor concerned – but it didn't.  In fact, it completely ignored that part of WHOL 122 that required APC to pay the material supervisor for every hour worked.[8]

APC admittedly knew that the determination of exempt status was complex.  Mr. Carr, of the Alaska DOL who Mr. Nelson consulted, testified that it would be imprudent for an employer not to obtain a formal DOL opinion.  Carr depo., in Zuber, pp.55, lines 2-12 (Exhibit 18) Instead, APC kept the analysis "in-house."  Without having specifically sought a formal objective opinion or a formal legal analysis of the safety supervisor position, APC cannot meet its elevated burden to prove good faith.

In its opposition APC makes the unsupported assertion that "Rather than request a written opinion on every position within APC, . . . Mr. Nelson took the information from one similar position and used it to make an educated decision on exemptions for other positions with similar responsibilities. Opposition (Docket 74) at 13.  Putting aside the fact that there is no evidence that Mr. Nelson actually did this; APC did not do what Mr. Carr testified that APC had to do.

---

[7]  See ASWS website at http://www.arcticworld.com/home/company.asp (Very first paragraph)

[8] AS 23.10.140(d) requires an employer to pay a penalty if it fails to pay wages due within 90 days.  The *Zuber* decision conclusively entitled Gilbert to overtime.  A demand was sent and APC failed to pay the overtime and wages due as required by law.  This is additional evidence of a lack of  good faith and willful failure to comply with the wage and hour laws. (See Plaintiff's 90 Day Penalty Motion and Memoranda).

If APC failed to obtain objective advice, and its determination was ultimately wrong, then it must bear the consequences of its decision, *to wit,* liquidated damages and an extended statute of limitations.

The Ninth Circuit has said in a similar case:

> Even if we were to ignore our finding of willfulness, there are not sufficient facts to support a finding of good faith on the part of the Appellants. If, for example, the Appellants had secured some objective authority, or at the very least sought advice, on the legality of treating A-One and Alternative as separate employers for the purpose of calculating overtime, we would have a different case. *See, e.g., Elwell v. Univ. Hosps. Home Care Servs.,* 276 F.3d 832, 841 (6th Cir. 2002) ("Nor has [the defendant] suggested that it was relying on the expertise or opinion of any other person or entity with knowledge of the FLSA regulations, including its attorney or the Department of Labor."); *Samson v. Apollo Res., Inc.,* 242 F.3d 629, 641 (5th Cir. 2001) (approving a finding of good faith where the employer consulted with the Department of Labor) . . .

*Chao,* 346 F.3d at 920.

Without showing compelling evidence that APC made a good faith and objective decision in compliance with the law and the recommendations by a representative of the Alaska Department of Labor, or an independent attorney, APC's claim of good faith must fail.

### Discussion Of Objective Reasonableness

APC cannot demonstrate compelling evidence of its objective reasonableness because it knew it might possibly be in violation of the laws and because it was unreasonable not to obtained a written opinion from the Alaska DOL, and/or the US Dept. of Labor, or an objective legal opinion about its classification of the safety supervisor as exempt from overtime.

"The main question is whether the employer . . . took the necessary steps to ensure it was in compliance *to the best of its ability.*" APC's Opposition at 7 (emphasis added)  While finding that the employer acted willfully forecloses the possibility of finding that the employer acted in good faith, the reverse is not necessarily true. For example, mere negligence by the employer is not sufficient to permit a finding of willfulness. *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 135, 108 S. Ct. 1677, 1682,

100 L. Ed. 2d 115, 124 (1988). Nevertheless, an employer who acted negligently -- but not willfully -- in violating the FLSA would not be able to satisfy the objective standard of reasonableness. *Id.*

In a similar fact pattern the Sixth Circuit said that negligence is sufficient to defeat a reasonableness argument and said that failure to obtain a formal legal or formal DOL opinion was unreasonable.

> . . . failure to obtain a formal opinion of counsel or the DOL . . . is not objectively reasonable in terms of FIE's [Farmer's Insurance Exchange] obligation to make a good faith effort to comply with the requirements of the FLSA and various state overtime laws. . . . ignorance "will not exonerate the employer under the objective reasonableness standard . . . and neither does negligence.

*Elwell v. Univ. Hosps. Home Care Servs.,* 276 F.3d 832, 840, n.5 (6th Cir. 2002)

Similarly, a sister district court was troubled by in-house exemption determinations made without formal advice from counsel. "[O]ne troubling aspect of FIE's post Bell conduct is FIE's Director of Class Action Coordination's testimony that he alone determined that FIE CRs were exempt and that he did not seek counsel's formal advice on the issue." *In re Farmers Ins. Exch. Claims Representatives' Overtime Pay Litig.,* 336 F. Supp. 2d 1077, 1108-1109 (D. Or. 2004).

APC cannot claim it was reasonable when it failed to obtain objective assistance in classifying its employees. APC cannot meet the elevated burden to establish this element and its claim to this Court's desecration in awarding liquidated damages must fail.

## LIQUIDATED DAMAGES CONCLUSION

The presumptions and allocation of burdens of proof, and the enhancement of the quantum of proof required, all intended by Congress, present a situation where the employee can obtain summary judgment and the employer can do no better than go to trial.

APC cannot provide sufficient evidence that it acted in subjective good faith, and that its classification of Gilbert as an "overtime exempt" employee was objectively reasonable. APC's burden

is heavy, but the determination is simple. Failure to obtain any objective expert assistance in making a determination that APC admittedly knew was risky and complex, is so imprudent as to support only the conclusion that APC didn't want to know.  This is emphasized by APC's failure to follow that part of the advice it did receive from the DOL that was going to cost them money, i.e., paying a supervisor for all hours worked.  This is lack of good faith.  Failure to obtain objective legal advice shows a wilfull violation of the FLSA, and thus, by definition, not the act of the reasonable employer in APC's position.

Because APC cannot meet its elevated burden of proof on either of these issues, or if it fails to adequately support either one, the Court must deny APC's motion for partial summary judgment that it is entitled to seek this Court's discretion to withhold or reduce liquidated damages and grant Gilbert's motion to determine that liquidated damages will be due.

## WILFULLNESS

Where the employer's actions are willful a three year statute of limitations applies. 29 USC §255(a). Gilbert combined his motion for a determination that APC's acts were willful with his Liquidated Damages motion because the same facts and much the same analysis is required.  APC responded and this is Gilbert's reply.

### Introduction Re: Willfulness

APC has conceded that Gilbert is entitled to overtime. Safety specialists were held to be entitled to overtime in *Zuber v. APC Natchiq, Inc.,* A03-0052 CV; 144 Fed. Appx. 657; 2005 U.S. App. LEXIS 17550 (9th Cir. 2005). Should this Court agree with Gilbert's "willfulness" claim, then the liquidated damages claim follows. A finding of willfulness precludes a finding of good faith. *Chao v. A-One Med. Servs., Inc.*, 346 F.3d 908, 920 (9th Cir. 2003), cert. den. *A One Med. Servs. v. Chao*, 541 U.S. 1030, 124 S. Ct. 2095, 158 L. Ed. 2d 710 (2004).

Gilbert bears the burden to support his "willfulness" claim. *Chao*, 346 F.3d at 919, cited *Alvarez v. IBP, Inc.*, 339 F.3d 894, (9th Cir. 2003) for the proposition that willfulness exists "where an employer disregarded *the very possibility* that it was violating the [FLSA]" *Alvarez,* 339 F.3d at 908-909 (internal quotation marks omitted, emphasis added). The determination of willfulness is a mixed question of law and fact. *Alvarez*, 339 F.3d at 908. If APC can demonstrate a genuine dispute about Gilbert's facts supporting "willfulness" that issue must go to the jury. The "willfulness" issue should be determined for Gilbert, or tried.

"For § 255's extension to obtain, an employer need not knowingly have violated the FLSA; rather, the three-year term can apply where an employer disregarded the very "possibility" that it was violating the statute although we will not presume that conduct was willful in the absence of evidence." *Alvarez*, 339 F.3d 908-909. "To prove a particular FLSA violation willful under § 255, the Supreme Court has, in general, required evidence of an employer's "knowing or reckless disregard for the matter of whether its conduct was prohibited by the statute." *Id.*

In the consumer protection context the Ninth Circuit has said: "A company will not have acted in reckless disregard of a consumers' rights if it has diligently and in good faith attempted to fulfill its statutory obligations and to determine the correct legal meaning of the statute and has thereby come to a tenable, albeit erroneous, interpretation of the statute." *Reynolds v. Hartford Fin. Servs. Group, Inc.*, 435 F.3d 1081, 1099 (9th Cir. 2006)

### Lack Of Objective Advice

Erroneous classification could be a million dollar plus mistake. (Exhibit 17) Gilbert suggests that no reasonable business would make this decision without obtaining objective authoritative advice. Failure to obtain such objective advice shows APC's willfulness, lack of good faith and unreasonableness.

APC's own authority proves Gilbert's case.  APC kept the determination in-house. What it knew was that the issue was difficult and complex and that being wrong could result in substantial liability. Nonetheless, APC did not consult outside experts such as lawyers and did not follow Mr. Carr's advice to obtain a formal opinion.  When the DOL did issue an opinion, APC seized upon the language it desired, and ignored the additional language that obligated it to pay money for all hours worked.

> [T]he County relied on substantial legal authority when it decided not to compensate for standing time as well as consulting experts and the DOL in an attempt to comply with the law. *See Cross v. Arkansas Forestry Comm'n*, 938 F.2d 912, 918 (8th Cir. 1991) (reliance on experts is a badge of good faith); *Hultgren v. County of Lancaster*, 913 F.2d 498, 506-510 (8th Cir. 1990) (the uncertainty about the application of the FLSA and consultation with counsel shed light on whether the employer had an honest intention to comply).

SEIU, 60 F.3d at 1355-1356.

The three-year term shall apply where an employer disregarded the very "possibility" that it was violating the statute. *Alvarez*, 339 F.3d at 908-909.

## WILFULLNESS CONCLUSION

Applying the evidence of what APC did, and did not do, to determine if Gilbert's safety supervisor's position was exempt from overtime pay, the conclusion must be that it was at least reckless. APC admits it knew the analysis was difficult and that error could be costly. Even so, it did not seek objective or professional assistance, keeping the determination internal.  When APC did obtain a DOL letter determination about a different position, it chose to implement only that part that supported its desired result, ignoring the part it didn't like.

Gilbert maintains that no reasonable jury could find other than that APC disregarded the possibility that it was violating the statute and/or that it was reckless in not obtaining a formal opinion from counsel or the DOL.  Should this Court find a genuine disputed issue, then the willfulness issue must be reserved for the jury.

If this court finds that APC's evidence could convince a reasonable jury that APC did other than ignore a possibility that it had wrongly classified Gilbert, then this issue goes to the jury. Gilbert contends that he has met his burden to show that APC willfully, violated the AWHA and FLSA by failing to obtain an objective opinion from counsel or the DOL about the classification of Gilbert's safety supervisor position as exempt. The three year statute of limitation must apply.

For all of the foregoing reasons, this Court must deny APC's motion to avoid the mandatory application of liquidated damages and grant Gilbert's motion to determine that liquidated damages apply and that APC acted "willfully" when classifying the safety supervisor position as exempt, thus entitling Gilbert to the three year statute of limitations.

Respectfully submitted this 19th day of September 2006 at Fairbanks, Alaska.

LAW OFFICES OF KENNETH L. COVELL
Attorney for John Gilbert


s/Kenneth L. Covell

712 8th Ave.
Fairbanks, AK 99701
Phone: 907.452.4377
Fax: 907.451.7802
E-mail: kcovell@gci.net
Attorney Bar #: 8611103

**CERTIFICATE OF SERVICE**
This is to certify that a copy of the foregoing has been
Electronically sent to the following attorney(s):

**Patricia Zobel**
**DeLisio Moran Geraghty & Zobel**
**943 W. 6th Ave.**
**Anchorage, AK 99501**

Dated: 9/19/06
By: ___/s/ Emily S. Ervin_____
        Emily S. Ervin for Kenneth L. Covell

Reply to Opposition to Plaintiff's Motion Re: Liquidated Damages (Docket 52)
*Gilbert v. APC Natchiq, Inc.,* Case No. 03-CV-00174 RRB
Page 24 of 24