KNOWLEDGEPOINT

# Appendix E

## Fair Labor Standards Act: Exempt/Nonexempt Classifications

The federal Fair Labor Standards Act (FLSA) establishes standards concerning the minimum wage rate, overtime pay, equal pay, and child labor. Except for those who are specifically excluded from coverage, the law applies to all employees who are:

- engaged in interstate commerce;
- engaged in the production of goods for interstate commerce;
- employed by an enterprise engaged in interstate commerce or in the production of goods for interstate commerce.

Many states also have laws patterned after the FLSA that cover wage and hour issues. Where state and federal law conflict, the more restrictive law usually prevails.

One of the more complex areas of the FLSA is its classification of certain employees as "exempt" or excluded from coverage by the overtime requirements of the law. An employee is presumed to be "nonexempt" (covered by the law and entitled to receive overtime pay) unless the employer can show that the employee's job duties and pay meet certain criteria.

The following tables summarize criteria for some of the most commonly used overtime exemptions. The exemption criteria can be applied easily and correctly to many jobs. However, there are some cases where determining the proper classification can be complicated.

APC0163

EXHIBIT __H__
Page __1__ of __3__

### APPENDIX E - EXEMPT/NONEXEMPT CLASSIFICATIONS

A number of terms contained in the exemption definitions (for example, "salary," "primary duty," "closely and directly related work") have specific meanings when used in the FLSA. These terms are defined in the law and in decisions issued by the Department of Labor. It is important to correctly interpret and apply these terms when determining whether employees should receive overtime pay.

The tables in this appendix provide information to help *Descriptions Now!* users better understand some overtime provisions of the FLSA. They are not meant to provide legal advice. If you have questions on the correct application of the FLSA exemption criteria in your organization, *Descriptions Now!* recommends consulting an attorney or other individual with expertise in compensation issues.



*Descriptions Now!* Program and User Manual
Copyright (c) 1995 by KnowledgePoint
All Rights Reserved    Printed in U.S.A.    Part No. 201-2001

The product is licensed to the original purchaser of the product for use only on the terms set forth in the KnowledgePoint Software License Agreement. Copying, selling, or using the product contrary to the terms of the KnowledgePoint Software License Agreement may be a violation of the law. All parts of the *Descriptions Now!* documentation are copyrighted and all rights reserved. This documentation may not be copied, photocopied, or reproduced in whole or in part without prior consent, in writing, from KnowledgePoint.

KnowledgePoint makes no representations or warranties with respect to the merchantability or fitness of this program or documentation for any particular purpose. All disclaimers and limitations in the KnowledgePoint Software License Agreement apply.

This product is designed to provide accurate and authoritative information regarding its subject matter. It is sold with the understanding that the publisher is not engaged in rendering legal or other professional service. If legal advice or other expert assistance is required, the services of a competent professional person should be sought.

Microsoft and Windows are registered trademarks of Microsoft Corporation.

**Money-back guarantee:** If for any reason you are not satisfied with this KnowledgePoint product, you may receive a refund of the purchase price (not including shipping and handling). Simply return the product postage pre-paid within 60 days from the date of original purchase with proof of purchase to the place you purchased it. The product must be in good condition with the original packaging.

### ACKNOWLEDGMENTS

| | |
|---|---|
| *Program design* | Jerry Howard, Diane Pratt, Michael Troy |
| *Programming* | Jim Sillars, Larry Weber, Paul Taggart & Jerry Howard |
| *Human resources advice* | Diane Pratt, Richard Franklin |
| *Product management* | Jeannine Cook |
| *User manual & program help* | Rudy Lacoe |
| *User manual composition* | Illumination Graphics |
| *Tutorial* | Promotional Technologies Group |
| *Cover design* | Artworks Advertising & Design |
| *Legal review* | Michael J. Lotho & Jamerson C. Allen, Attorneys-at-Law<br>*Jackson, Lewis, Schnitzler & Krupman*<br>offices located throughout the United States |

We welcome your ideas, suggestions, and comments.
**KnowledgePoint**   1129 Industrial Ave., Petaluma, CA 94952-1141
(707) -67

APC0170

EXHIBIT ((
Page 3 of 3

SAMPLE ISSUE

# Quinlan Bulletin on Wages and Salary Compliance

Vol. 2, No. 4    April 10, 1997

## IN THIS ISSUE:

- **Equal Pay** .................................................................... page 2
  — Employer 'accidentally' bumps male worker's position to higher level

- **Severance Pay** ............................................................. page 3
  — Employer claims early-retirement payments count as 'wages'

- **Vacation Pay** ............................................................... page 4
  — Employee says vacation pay should count for current year's average weekly wage

- **Commissions** ............................................................... page 4
  — Real estate broker finds tenant for an insolvent partnership

- **Overtime Exemptions — State Employees** ................ page 5
  — Federal court refuses to hear state employees' FLSA claim

- **Salary Schedules** ......................................................... page 6
  — Officers claim city misrepresented starting salary

- **Premium Pay** ................................................................ page 7
  — City claims union 'disguised' proposals as mandatory bargaining subjects

## IN FUTURE ISSUES:

- **EQUAL PAY** — Woman says three male managers were paid more than she.



EXHIBIT 12
Page 1 of 4

APC0192

*Equal Pay*

# Employer 'accidentally' bumps male worker's position to higher level

*Citation: Timmer v. Michigan Department of Commerce, Sixth Circuit U.S. Court of Appeals, Docket No. 95-1706 (Michigan) 1997*

Timmer worked for the Michigan Department of Commerce as a "Department Specialist VII." Her job, as a liquor-liability analyst, was to review and approve forms and rates submitted by insurance companies.

Esser also worked as a Department Specialist VII. He reviewed life insurance and credit-card rates. In 1989, the department decided life insurance policies were more complex than other policies (like the ones Timmer reviewed) and reclassified Esser's position as Department Specialist VIII, one step higher than Timmer's. Esser got a raise.

Timmer applied to have her position reclassified as an VIII, too. After reviewing her's and Esser's jobs, the department decided it had made a mistake in changing Esser's position; it had been "overly optimistic" and should never have made it an VIII at all. The department notified the Department of Civil Service.

The civil service agreed Esser's position was over-classified, and "restricted" it under its restriction policy. The department would continue to pay Esser at the higher level and give him raises accordingly, but the next person to move into the position would be a level VII.

Under the Equal Pay Act, an employer was not allowed to reduce the pay of any employee for purposes of complying with the Act.

Timmer sued the department under the federal Equal Pay Act. She said that despite the fact her's and Esser's positions were substantially the same, the department paid Esser, a man, more. She also claimed the department continued to violate the Act through its restriction policy, even though it knew about the misclassification. She asked for judgment without a trial.

The Act prohibited employers from paying differently men and women who had substantially the same jobs. However, employers did not violate the Act if they proved the pay disparity resulted from a

**Action plan:**
- If you realize you may be violating the Equal Pay Act by paying different salaries for the same job, be careful how you fix the situation. The Act prohibits lowering the salary of the higher-paid employee as a remedy for an equal-pay violation. Raise the other worker's salary — the costs will be far less than any legal fees you may have to spend later on.

seniority system, a merit system, a system that measured earnings by production quantity or quality, or any other factor other than gender.

The department asked for judgment without a trial. It admitted Esser's and Timmer's jobs were substantially the same, and that Esser was paid more. However, it said, the pay disparity resulted from an inadvertent

(see *Accidental Promotion*, next page)

Publisher: E. Michael Quinlan, Esq.   Managing Editor: Stephanie Federico
Legal Editors: Carol Johnson Perkins, Esq., Michael R. Jung, Esq., Joanne Belasco, Esq.
Editors: Elin Dugan, Jennifer Kavanaugh   Editorial Assistants: Heather Murray, Anil Adyanthaya, Esq., Konstantine Kyros, Esq.
Contributors: W.B. McDiarmid, Esq., David Braithwaite, Esq., Ann Marie Stoica, Michael C. Hagerman

The entire content of this newsletter is copyrighted by the publisher and may not be copied without prior permission. Contact Copyright Clearance Center (508) 750-8400 for permission to photo-copy for internal use. Contact publisher for other reprint requests. The publisher is not engaged in rendering legal or other professional advice, and assumes no responsibility for the statements and opinions advanced by any of its writers or contributing editors. Case law and statutes change without notice from time to time and are often specific to one jurisdiction only. The information herein is not intended to be, nor should it be considered, a substitute for legal or other professional service rendered by a competent attorney or other professional. If you have any questions about the application of issues raised herein to your particular situation, seek the advice of a competent attorney or other professional.

This bulletin is available on microfilm from University Microfilms International, Ann Arbor, MI

ISSN 1086-6817   Copyright © 1997

NORTHEAST Publishing Group   Marine Industrial Park, P.O. Box 1659 Boston, MA 02205-1659
(617) 542-0048  Fax: (617) 345-9646  e-mail: quin

## Broker

(continued from page 4)

Schenck was a real estate broker and found possible tenants for HJI's property. The tenants said they would lease the property if they first got financing and municipal approval to build.

Schenck wanted to collect a commission on the lease. HJI claimed it could not pay until it received rent from the tenant. Schenck and HJI signed an agreement that made commission conditional on HJI getting continued financing. The agreement also made the commission payable according to a schedule that coincided with the expected lease payments. And if HJI became insolvent, the agreement stated the entire commission became immediately payable. When the agreement was signed, both HJI and Schenck knew HJI was already insolvent.

The tenants never got the proper financing and municipal approval. The bank foreclosed and Schenck was not paid.

Schenck sued HJI. He argued his commission was immediately payable under the agreement because HJI was insolvent. An arbitrator dismissed Schenck's claim, and the court agreed.

Both the court and the arbitrator found HJI owed no commission because the possible tenants never got the financing, and a building was never erected. Also, because no rents had been collected, the payment schedule could not be met. Both HJI and Schenck had signed the agreement, they knew its terms and intended to be bound by it.

Schenck appealed, arguing that despite their intentions, the agreement stated the entire payment was due if HJI became insolvent. He argued HJI was insolvent, so the commission was payable.

**DECISION:** Affirmed.

Schenck and HJI showed their joint intent, by signing the agreement, that no commission would be paid unless the construction moved forward and rents were paid. Although Schenck focused on one part of the agreement about commissions, the entire spirit and language of the agreement as a whole showed what the parties intended. He could not claim that one clause in the agreement was more important than the contract as a whole.

Schenck knew by the terms of the agreement that he would not be paid unless the tenants received financing. Therefore, the conditions of the agreement were not met, and Schenck was not entitled to the commission.

see also: *Temple v. Clinton Trust Co.*, 62 A.2d 690. (1948).

see also: *Marchak v. Claridge Commons Inc.*, 633 A.2d 531 (1993).

### Action plan:

- If a commission is conditioned on several different factors, all those factors must be met before the commission agreement will be enforced. If you feel one factor carries more weight than others, make that clear from the outset in the commission agreement.

---

*Overtime Exemptions — State Employees*

## Federal court refuses to hear state employees' FLSA claim

*Citation: Rehberg v. Department of Public Safety, 946 F.Supp. 741 (Iowa) 1996*

Several employees of the Iowa Department of Public Safety worked overtime. They complained they did not get paid for their overtime work.

The employees sued the department in federal court. They claimed the department's refusal to pay overtime wages violated the Fair Labor Standards Act (FLSA).

The employees asked for overtime compensation plus interest.

The department claimed federal court was not the proper place for the employees to file suit. It argued the 11th Amendment of the federal Constitution prevented individuals from suing a state that had not agreed to be sued in federal court. T?

asked the court to dismiss the employees' claims because the federal court did not have the authority to hear the case.

The employees argued their case should not be dismissed. They claimed the 11th Amendment prevented the federal court only

(Claim, next page)

APC0196

EXHIBIT 12
Page 3 of 4

# FLSA Claim

(continued from page 5)

from hearing citizens' claims against *other* states, and thus did not prevent the court from hearing claims against their own state. They also argued the FLSA rule preventing state employees from suing their state employers in federal court violated the 14th Amendment's Equal Protection Clause. They claimed the FLSA treated state employees differently than private employees by allowing private workers to sue in either state or federal court.

**DECISION:** Case dismissed.

The federal court did not have the authority to hear the employees' claims against their state.

The employees' argument that the 11th Amendment did not prevent the federal court from hearing their case was incorrect based on a prior Supreme Court decision. The Court had previously interpreted the 11th Amendment to prevent state citizens from suing even their own state in federal court without their state's consent, though this was not expressly written in the amendment itself.

The FLSA rule stating state employees could not sue under its provisions in federal court did not violate the Equal Protection Clause. To succeed on this claim, the employees had to show Congress passed the FLSA under the 14th Amendment. Federal laws passed under this amendment related to only race or gender discrimination. The FLSA was not one of these laws because Congress passed it under the Interstate Commerce Clause. As a result, the federal court could not hear the case without the state's consent.

The employees' claims were dismissed from federal court, but the employees could bring their FLSA claim to state court. Though the employees had to bring this federal claim to their own state court, that court still had to enforce the FLSA because of the U.S. Constitution's Supremacy Clause.

**Action plan:**
- Before spending a fortune on legal fees trying to defend against employees' claims, determine whether you'll need to defend yourself at all. If the employees' lawyers haven't filed their claims in the correct court, you may be (temporarily) off the hook.

see also: *Seminole Tribe of Florida v. Florida*, ___ U.S. ___, 116 S.Ct. 1114, 134 L.Ed.2d 252 (1996).

see also: *Wilson-Jones v. Caviness*, 99 F.3d 203 (1996).

## Salary Schedules
# Officers claim city misrepresented starting salary

Citation: *Williams v. City of Midland*, 932 S.W.2d 679 (Texas) 1996

The city of Midland, Texas, recruited Miller and Williams (officers) to work as police officers. The city sent them brochures outlining, among other things, job qualifications and a step scale. The brochure stated recruits would start at $1,743 per month and, upon completed training and promotion to police officers, would be paid $2,578 per month.

The officers were hired and began the training. About halfway through the course, Sergeant Nicks informed the recruits the salary information in the brochure was wrong, and that it would take recruits 10 to 12 years to reach a salary of $2,578. Nicks noted part of the brochure was "sort of misleading."

After the department sent out 1,000 brochures to recruit applicants, Nicks decided there was a "significant chance" applicants would misinterpret the salary provisions. Chief of Police Czech told Nicks to send out the erroneous brochures anywa

**Action plan:**
- Potential employees will pay particular attention to any information you give about starting salaries and pay schedules, so be careful what you promise. Unless you're certain before hiring someone that you can follow through on a specified amount, don't set one at all.

next page)

EXHIBIT 12
Page 4 of 4

APC0197