JOHN GILBERT vs. APC NATCHIQ, INC.  
CASE NO. 3:03-CV-00174-RRB

DEPOSITION OF JOHN D. GILBERT  
MAY 31, 2006

Page 81

```
 1              we'd all call who we knew and they would send a resume
 2              or some other form of information and we'd all kind of
 3              just look through them and then a final decision would
 4              be made as to -- if they're going to hire them or not.
 5     Q        Who would make the final decision?
 6     A        Doug in this particular instance.
 7     Q        Okay.  And would Doug be looking to you to give him
 8              your input as to who would be hired?
 9     A        Myself and others, yes.
10     Q        Who would the others be?
11     A        All the safety specialists.
12     Q        Okay.  There's another bullet point down here about
13              mid-way through about a Mr. Ken Quinlan who contacted
14              me.  He's an IH who is currently working in Arizona.
15              He's looking for work.
16     A        Uh-huh (affirmative).
17     Q        And then you told him to send the resume to a certain
18              e-mail.  Who's e-mail is that?
19     A        It might have been mine.  It might have been Doug's, I
20              don't know.
21     Q        Does that look like yours?
22     A        I don't recall.
23     Q        All right.  Then back up on this page, on 299 it says
24              blank approached me about a problem she's having with
                her alternate and is unhappy with the amount of work
```

Exhibit 2  Page 1 of 30

Case 3:03-cv-00174-RRB   Document 86-4   Filed 10/02/2006   Page 2 of 7

JOHN GILBERT vs. APC NATCHIQ, INC.                    DEPOSITION OF JOHN D. GILBERT
CASE NO. 3:03-CV-00174-RRB                                         MAY 31, 2006

Page 82

```
 1        that's being completed during her hitch.  Did you have
 2        responsibilities to deal with unhappy employees within
 3        the department?
 4   A    No, I -- Doug handled all that.
 5   Q    Well if Doug wasn't there did you just blow them off
 6        and say wait until Doug's there or what did you do?
 7   A    Pretty much.
 8   Q    Oh.  Did you ever problem solve with people who were
 9        unhappy?
10   A    Yes, sure.
11   Q    All right.  It says I've not talked with blank and
12        there's always two sides to the story, would you do the
13        two sides to the story?  Would you investigate?
14   A    I know what this is all about here.  This is Kim and
15        Amanda were not -- they were butting heads and, you
16        know, I just deferred all this to Doug.
17   Q    Is that because it wasn't your responsibility or
18        because you just didn't want to deal with the personnel
19        issues in the admin office?
20   A    I don't think it was my responsibility so --
21   Q    Okay.  What about if there was some lack of
22        attentiveness or work ethic or whatever on the part of
23        the safety specialist?  Would it be your responsibility
24        to call that to their attention and tell them they
          needed to get it straight?
```

Exhibit 2 Page 2 of 30

Case 3:03-cv-00174-RRB   Document 86-4   Filed 10/02/2006   Page 3 of 7

JOHN GILBERT vs. APC NATCHIQ, INC.                    DEPOSITION OF JOHN D. GILBERT
CASE NO. 3:03-CV-00174-RRB                                         MAY 31, 2006

Page 83

```
 1   A     I can't ever recall that happening, so I don't know how
 2         to answer that.  No.
 3   Q     You never had anybody from any of the different places
 4         where these people were embedded -- the supervisors
 5         calling you and saying we're having trouble with so and
 6         so?
 7   A     Oh, I think there was a lot of that particular type of
 8         stuff going on all the time.  You know, I mean the
 9         safety department is not -- how shall I put this --
10         well liked by either management or employee.
11   Q     Why is that?
12   A     You're the bad guy.  You know, you're always -- you
13         have nothing good to tell management and you're always
14         on the employee's back to make them work safe so nobody
15         likes you.  Yes, you could get a call several times a
16         day complaining about the safety guy.
17   Q     And you're the guy that they would bring those
18         complaints you?
19   A     Yes, myself or Doug or Ron Kirk or.....
20   Q     As your alternate?
21   A     Gary Buchanan or.....
22   Q     Gary over -- what was his position -- over Doug?
23   A     Yes, he's the -- let's see if I can get this right.
24   Q     You don't have to worry about what his.....
     A     I don't know, I can't remember his title.
```

Exhibit 2 Page 18 of 30

Case 3:03-cv-00174-RRB   Document 86-4   Filed 10/02/2006   Page 4 of 7

JOHN GILBERT vs. APC NATCHIQ, INC.                              DEPOSITION OF JOHN D. GILBERT
CASE NO. 3:03-CV-00174-RRB                                                    MAY 31, 2006

Page 84

| | | |
|---|---|---|
| 1 | Q | Okay. |
| 2 | A | It would be a guess. |
| 3 | Q | Then safety staff meetings: when you hold a safety |
| 4 | | staff meeting, would you conduct those meetings? |
| 5 | A | (No audible answer) |
| 6 | Q | It says I basically went over what so and so presented |
| 7 | | to the rest of the group the previous Saturday. Also |
| 8 | | discussed the modification to the APC PP and G manual. |
| 9 | | We're right here. |
| 10 | A | Two 99, right here. It looks like I did conduct that |
| 11 | | one, yes. |
| 12 | Q | Okay. Is that some of what you regularly did? |
| 13 | A | Well we weren't very good at having regular meetings. |
| 14 | Q | When you held meetings, who conducted them? |
| 15 | A | It's -- it's possible that I conducted them. It's also |
| 16 | | possible Doug conducted them or one of the safety |
| 17 | | specialists if he had something in particular he wanted |
| 18 | | to talk about he would conduct them. It was pretty |
| 19 | | informal. |
| 20 | Q | Okay. He'd be on the agenda, but somebody else would |
| 21 | | set the agenda? |
| 22 | A | I don't even know if you could go as far as saying |
| 23 | | there was an agenda. |
| 24 | Q | Oh, I've got some agendas. |
| 2 | A | Okay. Good. |

Exhibit 2 Page 15 of 30

Case 3:03-cv-00174-RRB   Document 86-4   Filed 10/02/2006   Page 5 of 7

JOHN GILBERT vs. APC NATCHIQ, INC.                    DEPOSITION OF JOHN D. GILBERT
CASE NO. 3:03-CV-00174-RRB                                          MAY 31, 2006

Page 86

1       Slope.
2    Q  Okay. Was it your job to be sure that the people that
3       were below you on the org chart had that information as
4       to changes that needed to be complied with?
5    A  No. No, it was general knowledge. You just -- I mean,
6       you could get one of those manuals anywhere.
7    Q  So it was just hit or miss, you didn't have discussions
8       about them?
9    A  Oh, we were all in -- we helped to review this thing
10      months in advance. So everybody was in the know as to
11      what it was. So it looks to me like somebody in --
12      e-mailed to me and I just passed it on to everybody
13      else.
14   Q  Okay. Within the safety department, if somebody in the
15      field needed a piece of equipment did you have
16      authority to purchase that of to authorize purchase of
17      it?
18   A  It may have had authority to opera- -- to authorize the
19      purchase or -- or get it.
20   Q  Okay. And within the budget for the department itself,
21      did you come up with a wish list, so to speak, or
22      contribute to what kinds of equipment needed to be
23      purchased for the department?
24   A  Yes, I think you see that here in this next bullet. We
        put together a list, and I just went through and asked

Exhibit 2, Page 20 of 30

Case 3:03-cv-00174-RRB   Document 86-4   Filed 10/02/2006   Page 6 of 7

JOHN GILBERT vs. APC NATCHIQ, INC.  
CASE NO. 3:03-CV-00174-RRB

DEPOSITION OF JOHN D. GILBERT  
MAY 31, 2006

Page 87

| | | |
|---|---|---|
| 1 | | everybody what we -- what they thought we needed and we |
| 2 | | put together a list and I put them together here. |
| 3 | Q | Okay. |
| 4 | A | It just..... |
| 5 | Q | Well have -- here's something called an instrument |
| 6 | | replacement analysis. |
| 7 | A | Uh-huh (affirmative). |
| 8 | | MS. ZOBEL: And madame court reporter would you |
| 9 | | pass them a sticker please? |
| 10 | | MR. COVELL: I've got the stickers. |
| 11 | | MS. ZOBEL: Oh, all right. |
| 12 | | MR. COVELL: So we'll mark this G-8 for the |
| 13 | | record. |
| 14 | | (Deposition Exhibit G-8 marked) |
| 15 | | MS. ZOBEL: That's fine. |
| 16 | Q | (By Ms. Zobel) Do you recognize this? It has your |
| 17 | | name in the right-hand corner. |
| 18 | A | Oh, yes, this is a spreadsheet I built. Okay. |
| 19 | Q | What is it you did? |
| 20 | A | Let's see here. |
| 21 | Q | I don't know if this is all of it, but tell me what |
| 22 | | this page represents. |
| 23 | A | Well give me a second. I'll get up to speed here. It |
| 24 | | looks like I was trying to come up with a cost analysis |
| | | of -- we had some old equipment on there. Some old |

JOHN GILBERT vs. APC NATCHIQ, INC.
CASE NO. 3:03-CV-00174-RRB

DEPOSITION OF JOHN D. GILBERT
MAY 31, 2006

Page 97

```
 1              discovered?
 2      A       Put our heads together and come up with a way to
 3              mitigate them.
 4      Q       Okay. And you were one of the people that was
 5              designated to do this with the client?
 6      A       You could say that as well as all the guys in the
 7              department, every safety specialist, the manager, the
 8              -- everybody was designated to do that to work with the
 9              client and provide them with what they needed.
10      Q       Okay. Let's talk a little bit about the department and
11              you were there when there were changes made within the
12              department were you not?
13      A       Yes.
14      Q       Okay. When you first went to work, did the position
15              that you held when you left exist?
16      A       Yes.
17      Q       It did. Who held it?
18      A       The position?
19      Q       Of safety supervisor?
20      A       That I can't answer. I don't know.
21      Q       Okay. Within your position as a safety supervisor, did
22              you have responsibilities that were different from the
23              safety specialists?
24      A       Not different, but probably in addition.
        Q       Okay. Tell me what they were in addition.
```

Exhibit 2 Page 22 of 30