Kenneth L. Covell
LAW OFFICE OF KENNETH L. COVELL
712 Eighth Avenue
Fairbanks, Alaska 99701
(907) 452-4377 telephone
(907) 451-7802 fax
e-mail: kcovell@gci.net

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOHN GILBERT, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) |
| APC NATCHIQ, INC. | ) ) |
| Defendant. | ) ) ) Case No. 3:03-CV-00174 RRB |

**Declaration of John Gilbert – October 2, 2006**

1) I am the Plaintiff in the above-captioned case.

2) I never had the authority to authorize a purchase of equipment. I would send the request or suggestion up to Doug Smith, the manager, who would likely send it on to Gary Buchanan, the project manager, at an even higher level.

3) When involved with the schedule, I actually just plugged peoples names into an Excel spreadsheet which became the schedule. There were only 12

people in the team. Doug Smith decided who worked with whom and when. There was little change because each employee was scheduled for "two weeks on / two weeks off" or "three weeks on / three weeks off" schedules. I estimate that I spent less than one hour a week on this task.

4) I did collect and review the time cards for gross errors before giving them to the accountants. I estimate that this entailed about 5 to 10 minutes a week.

5) The few duties not identical to those of the specialists, i.e., collecting time cards, attending a few meetings each week, and plugging information into the schedule, took less than 20% of my time each week. Much of my spare time was spent on work that was clerical in nature and was done by everyone, including the secretaries.

6) The PP&G Manual was a project where everyone was involved. We each did sections and then passed the drafts around to each other before deciding on a final draft. I would take that final draft and input it into the manual in both electronic and paper form. The PP&G was a huge project involving us all. The only difference between my involvement and that of all the other specialists is that I was where the manual and computer was. Consequently, I became the person to collect up the paper and put it "in the book." The final manual was to be approved at the corporate level.

7) APC has my daily logs. I have gone back over these logs to estimate the amount and ratio of time I spent doing the work a specialist could, and often did, perform. Based upon this careful review, I declare that I spent about 80% of my weekly time doing the work a safety specialist did.

8) In the course of reviewing my daily logs I found an entry I had forgotten. It appears that my job title was changed from "Safety Supervisor" to "Safety and Industrial Hygiene" on August 15, 2002. I was given no explanation regarding the title change and nothing in my job was different from before the title change.

9) I spent the majority of my day doing, on the telephone and in the field, the same thing that those designated as "Safety Specialists" did.

10) I covered for Doug Smith when Doug was not there. This task usually entailed no more than attendance at a few meetings. This took only a few hours a week.

11) My formal education was not specific to oilfield safety. The education I have had for the safety job was mostly on-the-job.

**Further Your Declarant Sayeth Naught**

/

/

John Gilbert's October 2, 2006 Declaration
*Gilbert v. APC Natchiq, Inc.*, Case No. 03-CV-00174 RRB
Page 3 of 4

## Declaration

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed on October 2, 2006.

_____
John Gilbert

John Gilbert's October 2, 2006 Declaration
*Gilbert v. APC Natchiq, Inc.*, Case No. 03-CV-00174 RRB
Page 4 of 4