JOHN GILBERT vs. APC NATCHIQ, INC.
CASE NO. 3:03-CV-00174-RRB

DEPOSITION OF JOHN D. GILBERT
MAY 31, 2006

Page 86

1 Slope.
2 Q  Okay. Was it your job to be sure that the people that
3    were below you on the org chart had that information as
4    to changes that needed to be complied with?
5 A  No. No, it was general knowledge. You just -- I mean,
6    you could get one of those manuals anywhere.
7 Q  So it was just hit or miss, you didn't have discussions
8    about them?
9 A  Oh, we were all in -- we helped to review this thing
10    months in advance. So everybody was in the know as to
11    what it was. So it looks to me like somebody in --
12    e-mailed to me and I just passed it on to everybody
13    else.
14 Q  Okay. Within the safety department, if somebody in the
15    field needed a piece of equipment did you have
16    authority to purchase that of to authorize purchase of
17    it?
18 A  It may have had authority to opera- -- to authorize the
19    purchase or -- or get it.
20 Q  Okay. And within the budget for the department itself,
21    did you come up with a wish list, so to speak, or
22    contribute to what kinds of equipment needed to be
23    purchased for the department?
24 A  Yes, I think you see that here in this next bullet. We
    put together a list, and I just went through and asked

Exhibit 2 Page 1 of 2

Case 3:03-cv-00174-RRB    Document 92-4    Filed 10/13/2006    Page 2 of 11

JOHN GILBERT vs. APC NATCHIQ, INC.                    DEPOSITION OF JOHN D. GILBERT
CASE NO. 3:03-CV-00174-RRB                                              MAY 31, 2006

Page 87

```
 1              everybody what we -- what they thought we needed and we
 2              put together a list and I put them together here.
 3     Q        Okay.
 4     A        It just.....
 5     Q        Well have -- here's something called an instrument
 6              replacement analysis.
 7     A        Uh-huh (affirmative).
 8                    MS. ZOBEL:  And madame court reporter would you
 9     pass them a sticker please?
10                    MR. COVELL:  I've got the stickers.
11                    MS. ZOBEL:  Oh, all right.
12                    MR. COVELL:  So we'll mark this G-8 for the
13     record.
14                    (Deposition Exhibit G-8 marked)
15                    MS. ZOBEL:  That's fine.
16     Q        (By Ms. Zobel) Do you recognize this?  It has your
17              name in the right-hand corner.
18     A        Oh, yes, this is a spreadsheet I built.  Okay.
19     Q        What is it you did?
20     A        Let's see here.
21     Q        I don't know if this is all of it, but tell me what
22              this page represents.
23     A        Well give me a second.  I'll get up to speed here.  It
24              looks like I was trying to come up with a cost analysis
                of -- we had some old equipment on there.  Some old
```

Exhibit 2 Page 1 of 2

Case 3:03-cv-00174-RRB   Document 92-4   Filed 10/13/2006   Page 3 of 11

JOHN GILBERT vs. APC NATCHIQ, INC.                    DEPOSITION OF JOHN D. GILBERT
CASE NO. 3:03-CV-00174-RRB                                              MAY 31, 2006

Page 95

1      down. You can't work any more. You know, taking the
2      hard line. And then the other side would be, you know,
3      you guys, you know, you might want to reconsider what
4      you're doing and try a different approach.
5  Q   Okay. So if the pendulum was on the side of the cop
6      mentality, if the perception of corporate was -- or
7      Gary Buchanan was -- that we weren't following through
8      on that, what would role be then? To communicate that
9      to the troops or what?
10  A   Yes.
11  Q   Okay. If there had bene a violation of safety that
12      came to your attention, did you ever suggest that there
13      be new training implemented?
14  A   Could have, yes.
15  Q   And would you recommend ever that there be transfers or
16      anything like that of individuals?
17  A   I don't think I would have ever made a recommendation
18      that somebody get transferred. I might have gotten mad
19      at somebody and said take a day off, but there's really
20      nothing formal there at all so --
21  Q   Okay.
22  A   It's -- you know, it's difficult being the safety guy
23      out there because the last thing you want is somebody
24      to get hurt while you're trying to keep them safe so --
25  Q   Yes. In addition to having federal and state

Exhibit 2 Page 13 of 21

Case 3:03-cv-00174-RRB   Document 92-4   Filed 10/13/2006   Page 4 of 11

JOHN GILBERT vs. APC NATCHIQ, INC.                    DEPOSITION OF JOHN D. GILBERT
CASE NO. 3:03-CV-00174-RRB                                              MAY 31, 2006

Page 96

| | | |
|---|---|---|
| 1 | | regulations that you had to follow in safety -- and |
| 2 | | that's a given, you did have to follow state and |
| 3 | | federal regulations, correct? |
| 4 | A | Correct. |
| 5 | Q | Were there compliance requirements from clients as well |
| 6 | | -- from the client? |
| 7 | A | Yes. |
| 8 | Q | Okay. So did your responsibilities include working |
| 9 | | with the client in any manner in developing those |
| 10 | | requirements? |
| 11 | A | Not in developing the clients' requirements. I worked |
| 12 | | with the client. |
| 13 | | MR. COVELL: And just to be clear, these are |
| 14 | | client safety requirements, right? |
| 15 | | MS. ZOBEL: Yes, yes. Safety -- within his |
| 16 | | field, right. |
| 17 | | MR. COVELL: Okay. |
| 18 | Q | (By Ms. Zobel) And how would you work with the client? |
| 19 | | Explain that to me. What were your interfaces? |
| 20 | A | I might go to a drill pad and meet with one of the |
| 21 | | client's safety specialists or their super- -- |
| 22 | | supervisory personnel and walk down a job. |
| 23 | Q | Meaning walk down a job -- what's that mean? |
| 24 | A | Just walking down for safety issues -- safety problems. |
| | Q | And what would happen if there were safety issues |

Exhibit 2  Page 4 of 2(

JOHN GILBERT vs. APC NATCHIQ, INC.  
CASE NO. 3:03-CV-00174-RRB

DEPOSITION OF JOHN D. GILBERT  
MAY 31, 2006

Page 100

```
 1   Q    Okay.  Are you doing that as a back-up to these people
 2        or as a substitute when somebody else isn't available
 3        or --
 4   A    Both.
 5   Q    Both.  Okay.  All right.  And this -- the amount of
 6        time that you did these kinds of activities was what?
 7   A    I don't know.  At random, it could be on a daily basis
 8        some shifts on the Slope or it could be a weekly basis.
 9        Some weeks maybe not at all.
10   Q    Intermittent?
11   A    All over the board.
12   Q    But is that accurate that it would be intermittent or
13        on an as-needed basis as opposed to that being your
14        first responsibility?
15   A    Oh, I think that was a primary responsibility was not
16        office work, but a primary responsibility would be to
17        make sure that everybody in the field is taken care of
18        before the paperwork is taken care of in the office.
19        So, if you wanted to assign priorities, the field work
20        would come first and then everything else would be
21        secondary.
22   Q    Okay.  Within the assigned activities that you were
23        doing though, how often would you have to exercise this
24        as compared with the office work that you also had to
          do?
```

Exhibit 2 Page 15 of 20

Case 3:03-cv-00174-RRB   Document 92-4   Filed 10/13/2006   Page 6 of 11

JOHN GILBERT vs. APC NATCHIQ, INC.                      DEPOSITION OF JOHN D. GILBERT
CASE NO. 3:03-CV-00174-RRB                                              MAY 31, 2006

Page 105

```
 1         correct me if I'm wrong, the client came to you and
 2         said, we're going to start doing this NORM testing?
 3         You then got the resources, you found the information
 4         that was needed to comply with what they wanted, you
 5         put it in a procedure that went into the manual, and
 6         was disseminated to the employees, is that correct?
 7   A     Yes.
 8   Q     Okay.  Would this have been a similar process in doing
 9         a -- this is a suspended personnel platform lifting
10         procedure form, did you develop this?
11   A     No.
12   Q     Who did?
13   A     It was Don Chenault did this one.
14   Q     Okay.  It's out of your folder, it looks like.
15   A     Yes, because I was taking everybody's items and
16         assimilating them into one location.
17   Q     Okay.
18                COURT REPORTER:  G-14 marked.
19                MR. COVELL:  Yes, ma'am.
20                     (Deposition Exhibit G-14 marked)
21   Q     (By Ms. Zobel)  When you got a section like this from
22         somebody else, did you read them over, and check them
23         over for accuracy?
24   A     Yes, we all swapped back and forth.  I mean, there was
           -- I don't know -- recall right offhand how many
```

Exhibit 2 Page 16 of 21

Case 3:03-cv-00174-RRB   Document 92-4   Filed 10/13/2006   Page 7 of 11

JOHN GILBERT vs. APC NATCHIQ, INC.                          DEPOSITION OF JOHN D. GILBERT
CASE NO. 3:03-CV-00174-RRB                                                    MAY 31, 2006

Page 106

```
 1              different sections there are of this thing.  It's a
 2              huge document.  So every time somebody would develop
 3              more, we'd all take turns redlining it for each other.
 4     Q        I saw a -- I don't know where it is now.  I saw a memo
 5              that you sent out to people about the procedure of
 6              putting together this manual, and you noted in that
 7              manual -- in that thing, that this was going to be a
 8              quote daunting task, is that an accurate description of
 9              what you believe this task was?
10     A        Yes.  It was a huge task, absolutely.
11     Q        What was the goal, what were you doing?
12     A        This.....
13                      MR. COVELL:  Object.  Just as to where and when
14     -- what his goal was, okay?
15                      MS. ZOBEL:  Putting together this manual --
16     what was his role in putting together this manual?
17                      MR. COVELL:  I'm sorry, you said role?
18                      MS. ZOBEL:  Yes.
19                      MR. COVELL:  I thought you said goal, so --
20                      MS. ZOBEL:  No.
21                      MR. COVELL:  I have hearing loss, sorry.
22                      MS. ZOBEL:  That's fine.
23                      MR. COVELL:  Okay.  Go ahead.
24     A        My role is simply to get an updated policies and
                procedures manual for the company.
```

Exhibit 2 Page 13 of 21

JOHN GILBERT vs. APC NATCHIQ, INC.
CASE NO. 3:03-CV-00174-RRB

DEPOSITION OF JOHN D. GILBERT
MAY 31, 2006

Page 107

1  Q   As it applied to safety?

2  A   Yes, it's just strictly safety -- it's, again, it's a
3      regurgitation of the federal and state and applicable
4      Slope work procedures as they apply to OSHA
5      regulations. And it's been done before. This was just
6      updating a previous version that hadn't been done for
7      years.

8  Q   And this would be because of changes in regulations and
9      procedures that were followed except for.....

10 A   Sure.

11 Q   Okay. And what percentage of your time do you think
12     you dedicated to doing this?

13 A   A lot at the end. I mean, we were all working
14     feverishly to get this thing together. I spent a
15     significant amount of time before I was let go, working
16     on this document, you know, as we all did so --

17 Q   Comparing your work with the people who were the safety
18     specialists, were you spending a larger amount of your
19     time doing this than they were?

20 A   Not necessarily, no.

21 Q   So, they -- we had safety specialists and you spending
22     as you described it a huge amount of your time doing
23     just this?

24 A   Correct.

25 Q   Okay. And your job what -- within the grand scheme of

Exhibit 2 Page 18 of 21

JOHN GILBERT vs. APC NATCHIQ, INC.  
CASE NO. 3:03-CV-00174-RRB

DEPOSITION OF JOHN D. GILBERT  
MAY 31, 2006

Page 108

```
 1        things was to coordinate it all?
 2   A    Yes.  I was the point of contact to take it all and get
 3        it electronically into one spot and then, you know, I
 4        just had 3-ring binders, so I'd grab them and throw
 5        them in there and assemble everything -- get it in one
 6        spot.
 7   Q    Did you assign particular areas to different people to
 8        develop?
 9   A    I don't think I assigned them, I think we all just kind
10        of said hey, I'll do this, I'll do that, we all just
11        kind of went our merry way.  I don't think there was
12        any -- there was no master list that said you were
13        going to do this, and you're going to do that so --
14   Q    I'm looking at the exhibits that we marked as -- your
15        change out notes.
16   A    Okay.
17             MR. COVELL:  It might be 8 -- 7, I believe is
18   what you're referring to, 12001 is really --
19   A    G-7.
20             MR. COVELL:  Yes, G-7.
21   A    G-7.
22   Q    (By Ms. Zobel)  Yes.
23   A    Okay.  G-7.
24   Q    On Job 624 on page 4 of 5.  It refers to you -- the
          second line, that you finalized the manbasket lifting
```

Exhibit 2 Page 19 of 21

Case 3:03-cv-00174-RRB   Document 92-4   Filed 10/13/2006   Page 10 of 11

JOHN GILBERT vs. APC NATCHIQ, INC.                    DEPOSITION OF JOHN D. GILBERT
CASE NO. 3:03-CV-00174-RRB                                              MAY 31, 2006

Page 115

```
 1            JVA?
 2                    MS. ZOBEL:  A job vacancy announcement.
 3                    MR. COVELL:  Okay.  There we go.  Thank you.
 4                    MS. ZOBEL:  You've got to know the lingo.
 5                    MR. COVELL:  MBA I know.
 6    Q     (By Ms. Zobel)  Among the meetings that you attended, I
 7           showed you the one that was a staff meeting.
 8    A     Uh-huh (affirmative).
 9    Q     And then we talked about safety meetings that were
10           within the department, were there other meetings that
11           you would attend, such as a supervisor meeting?
12    A     There was a Phillips meeting, I think they called it
              the supervisors' meeting.
14    Q     Okay.  And who would be asked to attend those?
15    A     Oh man, the list could be long there.  It could be
16           everybody from Phillips.
17                          (Deposition Exhibit G-18 marked)
18    Q     Okay.  This says distribution:  all superintendents,
19           supervisors, and construction managers.
20    A     Okay.
21    Q     Okay.  So that would be the people who would be
22           expected to attend?
23    A     Yes, and amongst others, you know, so --
24    Q     Okay.  You wouldn't have attended these as a safety
25           specialist, would you?
```

Exhibit 2 Page 21 of 21

Case 3:03-cv-00174-RRB   Document 92-4   Filed 10/13/2006   Page 11 of 11

JOHN GILBERT vs. APC NATCHIQ, INC.          DEPOSITION OF JOHN D. GILBERT
CASE NO. 3:03-CV-00174-RRB                                    MAY 31, 2006

Page 116

| | | |
|---|---|---|
| 1 | A | It's -- it's possible you could have attended as a safety specialist, yes. |
| 3 | Q | It wasn't the expectation though? You were -- it was a..... |
| 5 | A | Correct. |
| 6 | Q | .....supervisor's meeting? |
| 7 | A | Correct. But there again, if there was a need for somebody to be in there to go over a safety item, then there would be a specialist there so -- |
| 10 | Q | Okay. No, I'm talking about as a regular participant in the meetings and not on any..... |
| 12 | A | Correct. |
| 13 | Q | .....specific need? Okay. And the action item list and the sidebars to action item list, these are things that would be discussed, examples? |
| 16 | A | Uh-huh (affirmative). Yes. |
| 17 | Q | Okay. |
| 18 | | MS. ZOBEL: What exhibit number was this? |
| 19 | | COURT REPORTER: G-18. |
| 20 | | MS. ZOBEL: Thank you. This is going to be G-19. Oh, you're having to get creative. |
| 22 | | (Deposition Exhibit G-19 marked) |
| 23 | | MR. COVELL: Yes, this one's going vertical. |
| 24 | Q | (By Ms. Zobel) Okay. Tell me what this is? |
| 25 | A | Let's see. I honestly don't remember what this is. |

Exhibit 2 Page 2 of 2