Kenneth L. Covell
LAW OFFICE OF KENNETH L. COVELL
712 Eighth Avenue
Fairbanks, Alaska 99701
(907) 452-4377 telephone
(907) 451-7802 fax
e-mail: kcovell@gci.net

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| JOHN GILBERT,                )<br>                              )<br>        Plaintiff,          )<br>                              )<br>vs.                           )<br>                              )<br>APC NATCHIQ, INC.             )<br>                              )<br>        Defendant.         )<br>_____) | Case No. 3:03-CV-00174 RRB |

**Declaration of John Gilbert – October 12, 2006**

1) I am an adult resident of the state of Idaho, fully competent to testify and I declare the following facts upon my personal knowledge.

2) I am the Plaintiff in the above-captioned case.

3) I was hired as a Safety Specialist by APC on January 30, 2001 and remained in that position until January 3, 2005 when I was designated as the "safety supervisor." I kept that position name until about August 15, 2002 when I was informed that my new job title was "Safety and Industrial Hygiene."

John Gilbert's October 12, 2006 Declaration
*Gilbert v. APC Natchiq, Inc.*, Case No. 03-CV-00174 RRB
Page 1 of 4

4) I spent the majority of my day doing, on the telephone and in the field, the same thing that those designated as "safety specialists" did.

5) I kept contemporaneous daily logs. I have gone back over these logs to estimate the amount of time I spent doing the work a specialist could, and often did, perform. Based upon this careful review, I have determined that I spent about 80% of this weekly time doing the work a safety specialist did.

6) While reviewing my daily logs I found an entry that I had forgotten. It appears that my job title was changed from "safety supervisor" to "Safety and Industrial Hygiene" on August 15, 2002. I was given no explanation for the change and nothing in my job was different than before the change.

7) APC talks about the department "Policy, Procedure and Guidelines Manual" (PP&G). This was a compilation of procedures in written form for use on the Slope. It wasn't my sole responsibility to modify the manual; rather it was the responsibility of the department as a whole. However, I jumped in to update it with what was already there.

8) My involvement with scheduling employees was actually just plugging people's names into an Excel spreadsheet which became the schedule. There were only 12 persons in the team. Mr. Smith decided who worked with whom and when. There was little change because the hands were scheduled for two weeks on / two weeks off or three weeks on / three weeks off schedules. I estimate that I spent less than an hour a week on the task.

9) I did collect and review the time cards for gross errors before giving them to the accountants. I estimate that this entailed about 5 to 10 minutes a week.

10) I never had authority to authorize a purchase of equipment. I would send the request or suggestion up to Doug Smith, the manager, who would likely send it on to Gary Buchanan, the project manager, at an even higher level.

11) The lead paint testing simply involved sending the sample to the lab and comparing the result with reference standards established by the client, OSHA (Occupational Safety and Health Administration) and ACGIH (American Conference of Industrial Hygienists). For any given result, the required action was also prescribed by the client with reference to OSHA and ACGIH. The procedures and standards were supplied by the client with reference to OSHA and ACGIH and no discretion was involved.

12) I did attend some meetings when Doug Smith was off the slope. These meetings occupied about 3 hours of my time each week, when I had to attend them at all.

13) Based upon my independent recollection and my review of my daily logs I declare that I spent about 80% of my weekly time doing the work a safety specialist did.

14) APC says that I covered for Doug Smith when Smith was not on the slope. This was not my primary duty and took little time. This task normally required no more than attendance at a few meetings. This task, including the meetings when I had to attend, took only a few hours a week.

John Gilbert's October 12, 2006 Declaration
*Gilbert v. APC Natchiq, Inc.*, Case No. 03-CV-00174 RRB
Page 3 of 4

15) My formal education was not specific to oilfield safety. The education I had for the safety job was mostly gained on-the-job.

### Further Your Declarant Sayeth Naught

### Declaration

I declare under penalty of perjury, under the laws of the United States of America, that the foregoing is true and correct.

Executed on October 12, 2006.

*John Gilbert* (signature)
John Gilbert