IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JOHN GILBERT,            )
                         )
         Plaintiff,      )
                         )
v.                       )
                         )
APC NATCHIQ, INC.,       )
                         )
         Defendant.      ) Case No.: 3:03-CV-00174-RRB
_____)

**DEFENDANT'S REPLY TO PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT TO DISMISS PLAINTIFF'S OVERTIME CLAIMS UNDER THE ADMINISTRATIVE EXEMPTION AT DOCKET NO. 38**

I.  INTRODUCTION AND RELIEF REQUESTED.

A review of the material admissible evidence in this case demonstrates the following. Gilbert was a well-compensated supervisor who earned $475 per day. This was a higher rate than that earned by Safety Specialists. He was promoted from a Safety Specialist to a Supervisor, and APC's organizational chart shows that, as Safety Supervisor, he occupied a level separate and above Safety Specialists. His work was different from Safety Specialists in that he held a "white collar" office job. He wrote and rewrote significant policies for the HSE Department. He made recommendations and advocated for changes within the Department. He facilitated meetings. He directed

DeLisio Moran
Geraghty & Zobel, P.C.

943 West 6th Avenue
Anchorage, Alaska
99501-2033

(907) 279-9574

106263 - Defendant's Reply to Plaintiff's Response in Opposition to
Motion For Summary Judgment re: Dismissal of Overtime Claims
*Gilbert v. APC Natchiq*, Case No.: 3:03-cv-00174 RRB; Page 1 of 11

Specialists. He held an engineering degree and underwent training specific to Health and Safety issues. He regularly stood in the place of the HSE Manager. These tasks, as well as others performed by Gilbert, fit squarely within the administrative exemption. The job duties discussed herein were primary, not ancillary duties as Gilbert summarily concludes.

Gilbert submits yet another Declaration drafted after his sworn testimony was taken by deposition in order to defeat summary judgment.[1] The self-serving statements contained in Gilbert's Declaration and Affidavit are not admissible evidence.

Considerable briefing has been done by both parties on the issue of the AWHA and FLSA's administrative exemption. APC incorporates herein its briefing in response to plaintiff's motion for summary judgment on the issue of the administrative exemption.[2] In the interest of thoroughly and completely responding to Gilbert's arguments, APC submits the following reply in order to show an absence of disputed fact.

---

[1] Gilbert submitted an Affidavit which was drafted after his deposition in support of his Motion for Partial Summary Judgment at Docket No. 61.

[2] The pleadings on the issue of exemption are at Docket Nos. 38, 42, 61, 86, 87 and 92.

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

106263 - Defendant's Reply to Plaintiff's Response in Opposition to
Motion For Summary Judgment re: Dismissal of Overtime Claims
*Gilbert v. APC Natchiq*, Case No.: 3:03-cv-00174 RRB; Page 2 of 11

## II.   POINTS AND AUTHORITIES.

A.   **Gilbert's primary duties consisted of work directly related to management policies or supervising the general business operations of the employer.**

Gilbert erroneously argues, without citation to authority, that "Alaska's primary duty" analysis creates greater employee protection than the federal requirements. See Docket 92, p. 45. The phrase "directly related to management policies or general business operations" is not defined in the AWHA or in the state regulations. This Court must, therefore, look to the federal regulations. See AS 23.10.145. Gilbert argues that he "had only a small and insubstantial part in the management or operation of the APC's, or its customer's, business itself [sic]." See Docket 92, p. 38. The evidence shows otherwise.

The federal regulation defining the phrase "directly related to management policies or general business operations" provides that the phrase describes "activities relating to the administrative operations of a business . . .." See 29 CFR §541.205(a). While the work must be of "substantial importance," it is not limited to persons who "participate in the formulation of management policies." See 29 CFR §541.205(b). It is sufficient if the employee's work "affects policy or those who execute or carry it out." Id. The

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

106263 - Defendant's Reply to Plaintiff's Response in Opposition to
Motion For Summary Judgment re: Dismissal of Overtime Claims
*Gilbert v. APC Natchiq*, Case No.: 3:03-cv-00174 RRB; Page 3 of 11

regulations further explain that the phrase "includes a wide variety of persons who either carry out major assignments in conducting the operations of the business, or whose work affects business operations to a substantial degree, even though their assignments are tasks related to the operation of a particular segment of the business." Id.

Gilbert argues that the recently adopted regulations providing that "safety inspectors" are not administrative employees is somehow dispositive in this case. See Docket 92, p. 34. Gilbert, however, was not employed as a safety inspector. More importantly, the relevant regulations specify that the test of "directly related to management policies or general business operations" is met by persons employed as "safety directors."

Gilbert supervised and directed six (6) Safety Specialists. See Docket No. 38 (Exhibit A, pp. 17, 33-34). Despite his contention that he did not supervise specialists, his sworn testimony shows otherwise. Id. The Safety Supervisor position appears to be more in line with that of a Safety Director than Safety Inspector. See Docket No. 38 (Exhibit A, p. 33).

APC also draws the Court's attention to the fact that Gilbert does not address the case Copas v. East Bay Municipal Utility Dist., 61 F.Supp.2d 1017 (N.D.Cal. 1999). This case is

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

106263 - Defendant's Reply to Plaintiff's Response in Opposition to
Motion For Summary Judgment re: Dismissal of Overtime Claims
Gilbert v. APC Natchiq, Case No.: 3:03-cv-00174 RRB; Page 4 of 11

instructive because the employee's duties were nearly identical to Gilbert's duties. The <u>Copas</u> court held that the employee's duties fell under the administrative exemption. The <u>Copas</u> decision also demonstrates that summary judgment is proper where there are no issues of fact concerning the application of the administrative exemption.

B. **Gilbert customarily and regularly exercised discretion and independent judgment.**

The second prong of the AWHA test for an administrative employee instructs that such an employee "customarily and regularly exercises discretion and independent judgment." 8 AAC 15.910(a)(1). Gilbert claims that he had no discretion to "deviate from carefully proscribed parameters . . . ." <u>See</u> Docket 92, p. 39. Gilbert points to the new inapplicable DOL regulations, but ignores the applicable standard for "discretion and independent judgment."

The federal regulations explain that decisions made as a result of the exercise of discretion and independent judgment may consist of "recommendations for action rather than the actual taking of action." 29 CFR 541.207(e). Gilbert testified, under oath, that he investigated accidents and created <u>recommendations</u> for accident prevention in the future. <u>See</u> Docket 38 (Exhibit A at 68-81)(emphasis added). Gilbert also testified that he <u>advocated</u> for an improvement in the

DeLisio Moran
Geraghty & Zobel, P.C.

943 West 6th Avenue
Anchorage, Alaska
99501-2033

(907) 279-9574

106263 - Defendant's Reply to Plaintiff's Response in Opposition to
Motion For Summary Judgment re: Dismissal of Overtime Claims
*Gilbert v. APC Natchiq*, Case No.: 3:03-cv-00174 RRB; Page 5 of 11

"rescue response available to personnel working at the wash bay," where he felt there was not adequate safety measures in place. Id. at 110 (emphasis added).

Gilbert drafted the Naturally Occurring Radioactive Material ("NORM") reporting policy. See Id. (Exhibit A at 101-103; Exhibits G-12 & G-13 to Gilbert deposition). This required Gilbert to interpret the Ludlum meter instructions, establish the procedures for testing, and implement the policy in the field. See Id. at 104-105. Gilbert summarily dismisses this testimony by claiming that he merely applied the Ludlum meter levels. See Docket 38 (Exhibit A, pp. 15-16). When questioned further on this point, however, he agreed that he went to the Ludlum meter instructions, found the correct section, set up the NORM procedure, and put it together as a procedure for others to use. See Docket 38 (Exhibit A, p. 104). He also admitted that his work required interpretation of the CFR's. See Id. (Exhibit A, pp. 29-30). Gilbert's self-serving conclusory testimony does not raise an issue of fact where exploration of that testimony reveals that he actually interpreted and applied safety standards and regulations.

Gilbert's testimony concerning the Policy, Procedure and Guidelines Manual (PP&G) for the HSE Department further demonstrates the self-serving conclusory nature of his

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

106263 - Defendant's Reply to Plaintiff's Response in Opposition to
Motion For Summary Judgment re: Dismissal of Overtime Claims
*Gilbert v. APC Natchiq*, Case No.: 3:03-cv-00174 RRB; Page 6 of 11

testimony. Gilbert would have the Court believe that he was responsible for simply compiling the pieces of paper that comprised the PP&G Manual. See Docket No. 92, p. 14. The details concerning what he did shows otherwise.

Gilbert testified that he "either wrote or rewrote some of the procedures." Id., p. 14; see also Docket No. 38 (Exhibit A, p. 100). A review of the NORM reporting procedures shows that is more than just a "regurgitation" of the applicable regulations. Broad generalizations and unsupported conclusory allegations are not statements of fact sufficient to prevent a grant of summary judgment. Petranovich v. Matanuska Elec. Ass'n, 22 P.3d 451 (Alaska 2001). Likewise, testimony should be rejected without trial if no reasonable person would believe it. Seshadri v. Kasrian, 130 F.3d 798, 802 (7th Cir. 1997). Here, Gilbert's self-serving testimony is not credible and, therefore, does not raise an issue of fact.

C.  **Gilbert did not spend more than 20% of his time on non-administrative work.**

Gilbert argues that Doug Smith did not discuss with Gilbert his job duties. See Docket No. 92, pp.32-33. He apparently makes this claim for the purpose of arguing that Smith could not have known whether or not Gilbert spent more than 20% of his time on non-administrative work. This argument is irrelevant and incorrect.

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

106263 - Defendant's Reply to Plaintiff's Response in Opposition to
Motion For Summary Judgment re: Dismissal of Overtime Claims
*Gilbert v. APC Natchiq*, Case No.: 3:03-cv-00174 RRB; Page 7 of 11

Smith was Gilbert's direct supervisor. See Docket No. 38 (Exhibit A, p. 163). Smith testified that he analyzed the Safety Supervisor's job duties and considered the 80%/20% test for exempt status. Smith stated:

> A. So my interpretation and looking at the positions, the differential is the supervisor position in Kaparuk was in the chain of command over a department, and it provided administrative oversight and was a step up for the manager position and a member of the senior management team in my absence, so they were very different in nature from my opinion.
>
> Q. And so because of that then, they wouldn't be entitled to be paid for every hour worked without the overtime premium?
>
> A. More based on my interpretation of the -- kind of the 80/20 rule of how much percentage of time that position would routinely perform duties that would fall into a non-exempt category.
>
> Q. Okay. So the reason why the safety supervisor wouldn't get paid for every hour worked was because in your opinion they weren't spending 20 percent of their time doing non-exempt work?
>
> A. That's the largest component with the additional component being that I viewed them to be more supervisory in nature because of the department configuration of the organization.

Docket No. 38 (Exhibit B, pp. 50-51). This testimony shows that Smith analyzed whether or not the job duties of the Safety Supervisor position satisfied the requirement that they perform no more than 20% of their time on non-administrative functions. There is no requirement or authority which suggests that Gilbert

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

106263 - Defendant's Reply to Plaintiff's Response in Opposition to
Motion For Summary Judgment re: Dismissal of Overtime Claims
*Gilbert v. APC Natchiq*, Case No.: 3:03-cv-00174 RRB; Page 8 of 11

and an APC representative must have sat down together and calculated the breakdown of job duties. Smith supervised the Safety Supervisor position. This, and Smith's testimony concerning the day-to-day duties of the Safety Supervisor, shows that he was well-informed of the requirements of the position and more than capable of determining whether or not the position spent more than 20% on non-administrative functions.

D. **Gilbert was a salaried employee, assisted an exempt employee, and his position required specialized training.**

Gilbert and APC agree that he was a salaried employee; thus, there is no issue of fact in regard to this prong.

In regard to the administrative exemption test requiring that the employee regularly and directly assist an exempt employee, Gilbert states in his declaration (prepared after Gilbert's deposition) that he did not regularly assist Doug Smith. Again, his testimony shows otherwise.

Gilbert's supervisor was Doug Smith, an exempt employee. See Docket No. 38 (Exhibit A, p. 163). Smith's work schedule was such that he worked four days on, followed by three days off. See Id. (Exhibit B, pp. 14-15). Consequently, Gilbert's two week on/two week off rotation resulted in at least six (6) days during a rotation in which Smith was absent. Gilbert testified that when Smith was off rotation, he stood in Smith's place and assisted him:

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

106263 - Defendant's Reply to Plaintiff's Response in Opposition to
Motion For Summary Judgment re: Dismissal of Overtime Claims
*Gilbert v. APC Natchiq*, Case No.: 3:03-cv-00174 RRB; Page 9 of 11

> Q. And did <u>Doug rely on you as his assistant</u> to do these sorts of things?
>
> A. Myself, amongst others sure.
>
> Q. Okay. Did you were second below Doug and you would step up when he was gone, is that correct?
>
> A. Well I'm not sure I understand the word step-up but when Doug was gone it would be myself or one of the other safety specialists that would be so-called in charge when they -- when he left.
>
> * * *
>
> Q. . . . But under the chain of command when Doug was gone it was your responsibility to take over his position, is that correct?
>
> A. That's correct.

See Id. (Exhibit A, pp. 151-152). Smith also testified that in his absence Gilbert was "stepped up" to the position of HSE Manager. See Id. (Exhibit B, p. 15). These undisputed facts show that Gilbert's self-serving affidavit does not undermine his sworn testimony that he regularly assisted an exempt employee. This prong of the administrative exemption test is satisfied.

Lastly, it appears from Gilbert's Response that he denies that he had specialized skill and training. Gilbert himself testified that the Safety Supervisor position required specialized training and knowledge. Id. (Exhibit B, pp. 26-27). Thus, there is no question of fact that Gilbert meets the

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

106263 - Defendant's Reply to Plaintiff's Response in Opposition to
Motion For Summary Judgment re: Dismissal of Overtime Claims
*Gilbert v. APC Natchiq*, Case No.: 3:03-cv-00174 RRB; Page 10 of 11

prong of the administrative employee exemption requiring work along specialized or technical lines.

### III. CONCLUSION.

Gilbert's testimony and the testimony of Doug Smith show that Gilbert was properly classified as exempt from overtime. APC, therefore, requests that this Court grant summary judgment dismissing his overtime claims under the AWHA and FLSA.

DATED this 23rd day of October, 2006, at Anchorage, Alaska.

```
                              DeLISIO MORAN GERAGHTY & ZOBEL, P.C.
                              Attorneys for APC Natchiq, Inc.

                                     /s/ Patricia L. Zobel
                              By:_____
                                  Patricia L. Zobel
                                  Bar No. 7906067
                                  E-Mail: pzobel@dmgz.com
                                  Danielle M. Ryman
                                  Bar No. 9911071
                                  E-Mail: dryman@dmgz.com
                                  943 West Sixth Avenue
                                  Anchorage, Alaska 99501
                                  Telephone: (907) 279-9574
                                  Facsimile: (907) 276-4231
```

This is to certify that a true copy of the foregoing was served via electronic service or U.S. Mail this 23rd day of October, 2006, to the following:

Kenneth L. Covell
712 8th Avenue
Fairbanks, AK 99701

```
        /s/ Jean K. Adams
By:_____
    Jean K. Adams
```

DeLisio Moran Geraghty & Zobel, P.C.
943 West 6th Avenue
Anchorage, Alaska
99501-2033

(907) 279-9574

106263 - Defendant's Reply to Plaintiff's Response in Opposition to Motion For Summary Judgment re: Dismissal of Overtime Claims
*Gilbert v. APC Natchiq*, Case No.: 3:03-cv-00174 RRB; Page 11 of 11