IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

JOHN GILBERT,
Plaintiff,
v.
APC NATCHIQ, INC.,
Defendant.

Case No. 3:03-CV-00174-RRB

**RESPONSE TO PLAINTIFF'S DEMAND FOR PAYMENT FILED AT DOCKET 98**

## I. INTRODUCTION

Defendant, APC Natchiq, Inc., by and through its attorneys Delisio, Moran, Geraghty & Zobel, PC, hereby responds to Plaintiff's demand for additional payment of overtime wages. The court recently issued an order that 8 AAC 15.100 applies to this case, rather than the FLSA's calculation for a day rate.[1] APC acknowledges that, per the court's order, Gilbert is entitled to overtime calculated pursuant to 8 AAC 15.100.[2]

---

1 See Docket 90.

2 In a companion case to this one, the Ninth Circuit Court of Appeals held that the Safety Specialist position was a non-exempt position and, thus, subject to overtime. See Zuber v. APC Natchiq, Inc., 144 Fed. Appx. 657 (9th Cir. 2005). As previously briefed, it is defendant's position that Gilbert he is entitled to such compensation only for those claims not barred by the two-year statute of

DELISIO MORAN GERAGHTY & ZOBEL, P.C.
943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033
(907) 279-9574

The question that remains, however, is the methodology by which to calculate Gilbert's regular rate of pay and overtime. The controlling authority on this issue, Piquniq Mgmt. Corp v. Reeves, 965 P.2d 732 (Alaska 1998), instructs how to apply 8 AAC 15.100. Gilbert's position, however, is that a calculation contrary to Piquniq applies.

APC does not oppose Gilbert's request for overtime for the period June 20, 2001 to December 31, 2001 while he was employed as a Safety Specialist. APC, however, disagrees with Gilbert's calculation of overtime based on his interpretation of 8 AAC 15.100 and his failure to apply Piquniq.

In this case, Mr. Gilbert worked a two week on, two week off rotation, and was paid a daily rate only for those dates that he worked. In light of this, the reasoning set out in Piquniq would appear to apply. Because there is a difference of opinion between the parties as to how to calculate any overtime owed, it is necessary for the court to clarify its order on the application of 8 AAC 15.100 and instruct the parties as to the proper calculation under the circumstances of this case.

---

limitations under the FLSA and AWHA. The undisputed period of time in

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

## II. POINTS AND AUTHORITIES

**A. Applying Alaska Administrative Code Section 15.100 to this Case Requires a Calculation of the Regular Rate of Pay and Overtime Consistent with Piquniq Mgmt. Corp v. Reeves.**

This court concluded that "[Plaintiff's] regular rates should be calculated pursuant to 8 AAC 15.100 . . ." See Docket 90 p. 3. 8 AAC 15.100 alone however, does not instruct how to calculate the regular rate of pay for an employee paid a day rate on a two week on/two week off rotation. The decisive authority on this issue is Piquniq Mgmt. Corp v. Reeves, 965 P.2d 732 (Alaska 1998). It is APC's position that the court's order at docket 90 implies application of Piquniq. Such application would not require any additional compensation to be paid. To the extent that the parties disagree on this point, further clarification of the court's order is necessary.

APC earlier briefed the regular rate of pay computation under Piquniq at docket 75. See pps. 12-20 In the interest of providing comprehensive briefing, APC summarizes those arguments here. 8 AAC 15.100 provides in pertinent part:

> a) An employee's regular rate is the basis for computing overtime. The regular rate is an hourly rate figured on a weekly basis. An employee need not actually be hired at an hourly rate. The employee may be paid by piece-rate, salary, commission, or any

---

question is June 20, 2001 to December 31, 2001.

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

> other basis agreeable to the employer and employee. However, the applicable compensation basis must be converted to an hourly rate when determining the regular rate for computing overtime compensation. The following provisions apply for an employee paid on a salary basis:
>
> (1) The employment contract must set out the specific number of straight time and overtime hours the employee is expected to work each day and each week. The contract must establish a regular straight time hourly rate of pay and the appropriate overtime rate with respect to the salary to be paid and the number of hours to be worked. Changes to the pay schedule of a salaried employee must conform to the provisions of AS 23.05.160 .
>
> (2) If a contract fails to establish a fixed number of daily and weekly hours that the salary is intended to compensate, or if the actual hours of work deviate from the hours specified in the contract, the salary will be considered to be compensation for an eight-hour work day and 40-hour workweek, and overtime will be computed on that basis.

In its opening sentences, 8 AAC 15.100(a) defines regular rate of pay as "an hourly rate figured on a weekly basis" and provides that salary "must be converted to an hourly rate when determining the regular rate[.]" Piquniq Mgmt. Corp. v. Reeves, 965 P.2d 732, 736 (Alaska 1998). The Alaska Supreme Court, in interpreting 8 AAC 15.100(a)(2), held that it is not a "freestanding provision" and "must be read in context of 8 AAC 15.100(a) as a whole." Piquniq at 736. Reading 8 AAC 15.100(a) supports APC's computation of Gilbert's regular rate of pay.

DELISIO MORAN GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

In Piquniq Mgmt. Corp v. Reeves, supra, a waste disposal employee challenged the trial court's award of overtime damages under the AWHA and its regulation 8 AAC 15.100. The Piquniq court discussed how to apply 8 AAC 15.100 to calculate the regular rate of pay and overtime for salaried employees, particularly where they work on a compressed weekly basis, such as two weeks on, two weeks off. That is exactly the calculation the Court in this case must make.

In Piquniq, the court arrived at the weekly salary by dividing the annual salary by fifty-two weeks, rather than by the employee's actual twenty-six weeks worked per year. See id. at 736 n.11. As is the case here, the employee in Piquniq worked a two week on/two week off schedule. The court held that fifty-two, rather than twenty-six workweeks, was the proper divisor for arriving at the individual's regular rate of pay. The converse calculation using twenty-six weeks would have resulted in an unfairly inflated regular rate. Therefore, to calculate the weekly salary, this Court should divide Gilbert's annual wages by fifty-two weeks.

The Piquniq court laid out the following steps to determine the regular rate of pay for an employee paid a salary.

DeLisio Moran
Geraghty & Zobel, P.C.

943 West 6th Avenue
Anchorage, Alaska
99501-2033

(907) 279-9574

> PMC paid Reeves an annual salary of $ 57,876. To convert this annual salary to a regular rate of pay, the court was first required to "figure[]" this annual salary "on a weekly basis." Reeves's annual salary translated to a weekly salary of $ 1113. [$57,876 divided by 52] Next, since Reeves's regular rate of pay was not set by an employment contract, the court converted his salary to a regular hourly rate by the method specified in 8 AAC 15.100(a)(2); treating Reeves's $ 1113 weekly salary as straight-time compensation for eight-hour workdays totaling forty hours of work per week, the court determined his regular hourly wage to be $ 27.83, and his overtime rate to be $ 41.74.

Piquniq Mgmt. Corp. at 735-36. This calculation dictates how to apply 8 AAC 15.100 here.

Gilbert urges this Court to calculate the regular rate of pay by simply dividing his day rate by 8 hours. See Docket 76, p. 3; see also Exhibit A (Plaintiff's Expert Report). This calculation would result in the exact type of calculation that was described in Piquniq as an inflated regular rate of pay, and conflicts with the instruction that "all salary must be converted to an hourly rate figured on a weekly basis." Piquniq at 734 (citing 8 AAC 15.100(a))(emphasis added). That is, the employee would receive a windfall of "twice the regular hourly rate contemplated under 8 AAC 15.100(a)(2)." Id. This is precisely the end result Gilbert seeks in the calculation he proposes. Gilbert suggests that the Court do one of two things:

DeLisio Moran
Geraghty & Zobel, P.C.

943 West 6th Avenue
Anchorage, Alaska
99501-2033

(907) 279-9574

take the daily rate and divide it by 8 hours or take the daily rate, multiply it by 5 days and divide it by 40 hours. The results are the same. However, this rigid application is exactly what the court in Piquniq rejected as it ignored the fact that the employee only worked 26 weeks in exchange for his wages, or a compressed work week which required more than 8 hours a day. It is also argued that an even higher daily rate would be achieved by taking his day rate and multiplying it by 7 days and then dividing it by 40 hours. But the plaintiff notes that this calculation would not be allowed by Piquniq. However, for the same reason that this calculation would be rejected, the court would also reject the use of the full day rate divided by 8 hours. Looking only at Gilbert's day rate fails to consider all salary. Furthermore, it calculates salary on a daily, rather than weekly basis. This method was also expressly rejected in Piquniq.

The explicit understanding in Piquniq was that the employee's compensation was essentially condensed into two weeks. The employee in Piquniq argued that all previously paid salary should be treated as straight time pay. The court rejected this argument stating:

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

> . . . the trial court determined Reeves's regular rate of pay on the premise that each week of his annual salary would pay for a week of actual straight-time work. Yet because of his alternating work schedule, Reeves actually worked only half of the weeks for which he received annual salary. In sixty weeks of salaried employment, he earned only thirty weeks of straight-time pay.
>
> Under these peculiar circumstances, treating all of Reeves's salary as straight-time pay and all of his earned overtime as damages would yield an anomalous result: the salary PMC paid Reeves would amount to straight-time pay of $ 55.65 per hour, or twice the regular hourly rate of pay contemplated under 8 AAC 15.100(a)(2).
>
> Because this hourly rate doubles the regular rate imputed to Reeves under the regulation, it has no basis in law. And because no evidence in the record suggests that Reeves's sixty weeks of salary were actually intended to pay only forty hours per week of straight-time wages for thirty workweeks, this rate of pay has no basis in reality, either.

Id. at 737-38 (internal citations omitted). The above rationale applies equally here.

If this Court were to determine Gilbert's regular rate by dividing his day rate by 8 hours, it would require a finding that his day rate was intended to compensate him for 8 hours a day only. Gilbert testified, however, that it was his understanding and expectation that his $475 per day rate was compensation for at least 12 hours of work. Exhibit B

DELISIO MORAN GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

(Deposition of John Gilbert, pp. 51-52) attached hereto. Thus just as in Piquniq

> . . . no evidence in the record suggests that Reeves's sixty weeks of salary were actually intended to pay only forty hours per week of straight-time wages for thirty workweeks, this rate of pay has no basis in reality . . .

Id. Thus, the intent of the parties regarding their expectations as to the hours the compensation covered is relevant. Gilbert himself understood his day rate to cover 10-14 hours of work per day. Exhibit B To treat his day rate as compensation for eight hours only yields an anomalous result. Gilbert advocates that the Court divide his $425 day rate by eight hours resulting in a regular rate of $53.13. This calculation is an inflated hourly rate and does not reflect the understanding of the parties. It also is a misapplication of 8 AAC 15.100(a)(2).

Thus, for purposes of calculating overtime, the day rate compensation must be converted to an annual wage and then broken down to a weekly wage. To find otherwise, would have a chilling effect. Employers would be forced to abandon the two week on/two week off rotation, a schedule more favorable to employees, and require employees to work full time on the slope. This would certainly conflict with the express goal of the AWHA

DELISIO MORAN
GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

to "maintain the health, efficiency and general well-being of workers." Webster v. Bechtel, Inc., 621 P.2d 890, 895 (Alaska 1980).

The next step in calculating overtime, once the regular rate of pay is determined, is to determine overtime hours. In Piquniq, the court approved of the trial court's averaging of workday hours. Id. at 733 ("Reeves had worked thirty weeks, with each workweek consisting of seven work days, each workday averaging fourteen hours.") This assumption, however, does not work in this case, because, at times, Gilbert worked less than eight hours in a day. Exhibit C at Docket 27 (see 7/18/01; 8/29/01; 10/10/01; 10/31/01; 11/21/01) His records show that his daily hours fluctuated greatly.

The final step is to calculate overtime damages. The Piquniq court provided further instruction on this step:

> Accordingly, 8 AAC 15.100(a) and (a)(2) require a salaried worker's award for unpaid overtime compensation to be computed by: (1) "figuring" the worker's salary on a weekly basis; (2) assuming that the week of salary represents pay for a week of straight-time work; (3) using the "regular rate" of hourly pay derived from this assumption as the basis for determining the worker's total compensation for all hours actually worked; and (4) deducting from this amount all amounts of salary actually paid.

DELISIO MORAN GERAGHTY & ZOBEL, P.C.

943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033

(907) 279-9574

This final calculation is the crux of the Piquniq decision. The court stated

> [w]e thus conclude that the trial court erred in treating Reeve's entire salary as straight-time pay. We hold that a court converting annual salary to a regular rate of hourly pay under 8 AAC 15.100(a)(2) must use the regular rate as a basis for computing total earnings for all hours actually worked. All salary actually paid must be deducted from these total earnings. The difference will reflect the award necessary to ensure that straight-time, overtime and total compensation are all based on the applicable rate of pay. This is the proper measure of Reeves' overtime damages.

Id. at 738.

The Piquniq instructions outlined above are summarized as follows:

Step #1: Determine the employee's annual income

Step #2: Annual income ÷ 52 weeks = weekly salary

Step #3: Weekly salary ÷ 40 = regular rate of pay

Step #4: Regular rate of pay x 1.5 = overtime rate

Step #5: Determine straight time and overtime hours

Step #6: Overtime rate x overtime hours = overtime pay

Step #7: Regular rate of pay x straight time hours = straight time pay

Step #8: Overtime pay + straight time pay = compensation actually earned

Step #9: Compensation actually earned – compensation employer paid = overtime damages

DELISIO MORAN GERAGHTY & ZOBEL, P.C.
943 WEST 6TH AVENUE
ANCHORAGE, ALASKA
99501-2033
(907) 279-9574

This calculation and the Piquniq court's reasoning supports the conclusion that the application of 8 AAC 15.100(a) urged by Gilbert is improper.

**B. Applying Piquniq Mgmt. Corp. v. Reeves and 8 AAC 15.100 to this Case Does Not Require the Payment of Any Additional Overtime Compensation.**

The relevant period of time at issue for purposes of Gilbert's demand for additional overtime is June 20, 2001 to December 31, 2001. To calculate Gilbert's overtime, we must first determine his annual income for 2001.[3] Mr. Gilbert worked a full year in 2001. Based upon his payroll records, Gilbert earned $69,775 in all of 2001.[4] Dividing this amount by 52 weeks results in a weekly salary in the amount of $1,341.83. The regular rate of pay is then calculated by dividing the weekly salary by 40, which results in a regular rate of pay in the amount of $33.55. Gilbert's overtime rate is then calculated at 1.5 the regular rate, which equals $50.33.

Gilbert's total straight time from June 20, 2001 to December 31, 2001 was 612 hours. His total overtime during this

[3] Gilbert's demand for additional compensation does not delineate how he arrives at his bottom line dollar amount. APC has looked to Gilbert's expert report from Monte L. Jordan to determine overtime hours allegedly worked, and total days worked. See Exhibit A.

DeLisio Moran Geraghty & Zobel, P.C.
943 West 6th Avenue
Anchorage, Alaska
99501-2033
(907) 279-9574

same period was 554.25 hours. Gilbert's total straight time compensation should have been, therefore, $20,532.60, ($33.55 X 612). His total overtime compensation is $27,895.40 ($50.33 X 554.25). Gilbert's compensation actually earned was $48,428 during the relevant period.

Gilbert was paid $39,525.00 for that same time period (93 days X $425 per day). Under the Piquiniq formula, one takes the actual amount paid and subtracts it from the amount that should have been paid in straight time and overtime. $48,428 - $39,525 = $8903. This would be the amount that Mr. Gilbert would be owed in additional payment for his overtime. On August 8, 2006, APC sent a check to Mr. Gilbert in the amount of $8988.85, that amount being the calculation that APC had done as to the amount of overtime owed under the FLSA. Exhibit C attached hereto. Therefore, APC has already paid Mr. Gilbert all overtime owed for the period he was a safety specialist. In fact, APC has over paid Mr. Gilbert $85.85.

Conclusion

APC respectfully requests that the court clarify its prior order and make a ruling that Piquiniq applies in this case.

---

[4] According to Mr. Jordan's report, in 2001 Gilbert worked 50 days at the rate of $350 per day; 34 days at the rate of $375 per day; and 93 days at the rate of $425 per day.

DeLisio Moran Geraghty & Zobel, P.C.
943 West 6th Avenue
Anchorage, Alaska
99501-2033
(907) 279-9574

DATED this 15th day of November, 2006, at Anchorage, Alaska.

DeLISIO MORAN GERAGHTY & ZOBEL
Attorneys for Defendant,
APC Natchiq, Inc.

/s/ Patricia L. Zobel

By: ______________________
Patricia L. Zobel
Bar No. 7906067
E-Mail: pzobel@dmgz.com
943 W. Sixth Avenue
Anchorage, AK 99501
Telephone: 907-279-9574
Facsimile: 907-276-4231

This is to certify that a true copy of the foregoing was served via electronic service or U.S. mail this 15th day of November, 2006, to the following:

Kenneth L. Covell, Esq.
712 Eighth Avenue
Fairbanks, AK 99701

/s/ Leah Prince

By:______________________
Leah Prince