his employer's attorney's fees under Rule 82.

In contrast, the AWHA provides employees both actual damages and an equal amount in liquidated damages, along with interest. AS 23.30.110(a), (d). This award is further increased by a prevailing employee's entitlement to full attorney's fees under the Act rather than partial fees under Rule 82. AS 23.30.110(c), (e). In addition, under AWHA while the employee may potentially be *awarded* greater fees, he will only be *liable* for his employer's fees where the employer can show that his claim was brought in bad faith without an adequate basis in fact.[2] AS 23.30.110(f). However, in consideration of the burden on employers created by these greater protections, the employee is allowed only a two year limitations period in which to make a claim. AS 23.10.130.

The Court thus finds that an employee may maintain an action for contract damages simultaneously with an action for damages under the AWHA. Because the remedies and protections are sufficiently different under the two actions, there is no inconsistency with the statute of limitations applicable to AWHA claims.

### The Contract Between Throop And AirLog Promised Payments Of Overtime Compensation In Compliance With The AWHA.

The Court now turns to the factual issue of whether, under the employment contract, Throop was entitled to overtime compensation as defined by the AWHA, or whether instead the parties could and did contract around the AWHA in using and defining that term. The

---

[2] When the AWHA was enacted there was no provision for an employer to recover attorney's fees. Section 110 was added in 1995 to permit such recovery. Thus, when it was enacted, the AWHA offered employees even greater protections than it does today.

Throop v. Air Logistics
4FA-03-0835 Civil
Page 9

parties agree that the heart of their dispute lies in the definition of the term "overtime," for if that term is defined throughout the contract by AWHA requirements, then AirLog is in breach, whereas if AirLog's own definition governs, it may not be in breach.

Although he does not really distinguish them, Throop's contract cause of action actually consists of two claims: a claim for unpaid overtime wages under the contract; and a request for an order allowing him to make additional contributions to his 401(k) plan and ordering AirLog to make the appropriate matching contributions.[3] Thus, the Court will address principles of contract interpretation generally, and then will turn to a consideration of Throop's claims individually.

In general, the meaning of contract terms is a question of law to be decided by the court. Day v. A&G Constr., 528 P.2d 440, 443 (Alaska 1974). This is true except where the circumstances surrounding formation give rise to competing interpretations based on those facts. Id.

When interpreting a contract, a court should look to the reasonable expectations of the parties at the time of contract formation, Stepanov v. Homer Elec. Assn., Inc., 814 P.2d 731, 734 (Alaska 1991), the common, everyday meaning of contract terms except where the contract supplies particular definitions, Norville v. Carr-Gottstein Foods Co., 84 P.3d 996, 1001 n.3 (Alaska 2004), and the effect of laws applicable to the contract which were in existence at the time of its formation and about which the parties are presumed to be aware. Ellingstad, 979 P.2d at 1008. While the principle that ambiguous terms should be construed against the drafter should

---

[3] AirLog objects to Throop's use of the 401(k) documents in his cross-motion as he did not attach them to that pleading. Throop counters that he did not include them there because they had been included with his April 27, 2004, pleading. He attaches them to his reply as well.

Throop v. Air Logistics
4FA-03-0835 Civil
Page 10

not be employed where other means of interpretation are available, Consolidated Pac. Engr., Inc. v. Greater Anchorage Area Boro., 563 P.2d 252, 256 (Alaska 1977), nonetheless the court should consider how the party using the term should have expected it to be understood by the other party to the contract. Arctic Contractors, Inc. v. State, 564 P.2d 30, 50 (Alaska 1977); Day, 528 P.2d at 444-45.

A court should keep foremost in its analysis of a contract the intent and expectations of the parties, looking to "the parties' conduct, goals sought to be accomplished, and surrounding circumstances at the time the contract was negotiated." Neal & Co. v. Assn. of Village Council Pres. Reg. Hous. Auth., 895 P.2d 497, 502 (Alaska 1995). In particular, a court should take care not to "'impose on a party any performance to which he [or she] did not and probably would not have agreed.'" Magill v. Nelbro Packing Co., 43 P.3d 140, 142 (Alaska 2001) (quoting Rego v. Decker, 482 P.2d 834, 837 (Alaska 1971)) (alteration in original).

### AirLog Owes Throop Overtime Compensation Based On Its Contract With Him.

Having established, based on the distinct remedies and protections offered by the AWHA and contract law respectively, that a contract action is sufficiently distinct from an AWHA claim to be maintained along side it, the Court must now turn to the terms of the contract itself. The dispute between the parties focuses, as stated, upon the meaning of the term "overtime" within the contract. This question involves not only the intent of the parties and their expectations, but also the public policy behind the AWHA.

AirLog's position is that it could and did contract around the AWHA definition of overtime in its employment contracts. Thus, while it adopted an illegal definition of "over-

Throop v. Air Logistics
4FA-03-0835 Civil
Page 11

559

time,"[4] the parties did agree to that contractual term. Therefore, it argues, outside the two year AWHA statute of limitation, it cannot be held liable since it fulfilled the terms of its contract with Throop.

Throop maintains that, since the AWHA is by law incorporated into every employment contract, the definition set out by AirLog was flawed at its inception. Instead, he argues, the term must be interpreted in light of the definition imposed by the AWHA.

The AirLog Company Policy Manual states that "For hours worked in excess of 8 hours per day or 40 hours straight time per week, overtime will be paid at 1 1/2 times the regular hourly rate." (Pl.'s Opp. & Cross-Mtn., Ex. 2 at 16.) This language tracks almost exactly the requirements set forth in AS 23.10.060(b). AirLog's Employee Savings & Retirement Plan brochure further specifies that "Base compensation means your regular wages, including overtime, shift differentials and workover pay, but excludes bonuses, living and other allowances, and reimbursement for expenses." (Pl.'s Reply, Opp. & Memo., Ex. 6 at 3.) This latter statement, AirLog claims, provides the contractual definition of the term "overtime," i.e., time and one-half pay for hours over eight per day or forty per week, but without regard to bonuses, allowances, and reimbursements.

Looking not only to the explicit statutory incorporation of the terms of the AWHA into every employment contract, AS 23.10.060(c), but also to the need to interpret contracts in keeping with the parties' reasonable expectations at the time of contracting, the Court finds that the AWHA definition governs with respect to overtime wages. The parties must be

---

[4] AirLog does not concede this point; notwithstanding this argument, under prior decisions of this Court, the definitions of base pay and overtime proposed by AirLog are illegal.

Throop v. Air Logistics
4FA-03-0835 Civil
Page 12

presumed to have been aware of the AWHA even if they did not fully or accurately understand its implications. They contracted in the shadow of wage and hour law, aware that its provisions set the scope of the permissible terms for their contract. They could have, and should have, reasonably expected their contract to be interpreted in light of those provisions. Any other outcome would fly in the face of the AWHA's employee-protective intent. Whitesides v. U-Haul Co. of Alaska, 16 P.3d 729, 732 (Alaska 2001) (the AWHA is a remedial statute; thus, exceptions to its protections should be "narrowly construed and limited to those 'plainly and unmistakably within their terms and spirit.'" (citation omitted)). Likewise, failing to read the contract in light of the AWHA's definitions would undermine the mandate that its provisions are to be incorporated into every contract of employment. AS 23.10.060(c).

### AirLog Need Not Permit Throop To Make Additional 401(k) Contributions Based On The Overtime Owed, Nor Must It Make Matching Contributions.

Throop's 401(k) claim rests on the theory that, since AirLog failed to pay the overtime compensation due on the add-ons as required by the AWHA, Throop was consequently prevented from making contributions on those unpaid wages. To support his claim, Throop refers the Court to AirLog's Conditions of Hire Statements and to letters explaining AirLog's 401(k) plan and the employee's participation. The Conditions of Hire Statements, under "CURRENT FRINGE BENEFITS," list "401K RETIREMENT PLAN: Up to the maximum matching employer contribution when eligible, if elected." (Pl.'s Reply & Opp., Ex. 1 at ALA 003208, ALA 003210, ALA 003225.) The letters state in relevant part:

> You are eligible to enroll in the Air Logistics of Alaska, Inc., sponsored 401K Retirement Plan on the next quarterly enrollment date of [dates vary].

Throop v. Air Logistics
4FA-03-0835 Civil
Page 13

561

Exhibit A page 13 of 16

> Should you elect to participate in the 401K Plan, the amount you contribute is tax deferred until you withdraw it. You may contribute from 2% to 15%, not to exceed [amounts vary] in the calendar year [years vary]. This amount is adjusted annually by the IRS for inflation.
>
> At this time, Air Logistics makes a matching contribution of up to 3%; if you contribute less than 3% the company will match what you contribute. An additional 3% is contributed on your behalf if you are actively at work on calendar year end December 31. You are 100% vested in the company matching portion after one year of contributing to the Plan.

(Id., Ex. 2 at ALA 003207, ALA 003211, ALA 003223 (emphasis in original).)

The Conditions of Hire Statements, setting forth as they do basic terms and conditions of employment, are one of the documents which compose the contracts between AirLog and its employees. Similarly, the letters explaining the 401(k) plan serve as an elaboration of that term of those contracts. Thus these two documents do indeed appear to be part of the contracts between AirLog and its employees.

One issue, however, does remain: the Employee Savings' & Retirement Plan booklet states that the employee may contribute, and the employer will match, a given percentage of the employee's "base pay." The parties, however, dispute the meaning of this term. AirLog claims that the "base pay" was the amount set forth in the employment letters *excluding* the add-ons, and the retirement plan booklet itself explicitly excludes add-ons from base compensation. It states: "Base compensation means your regular wages, including overtime, shift differentials and workover pay, but excludes bonuses, living and other allowances, and reimbursement for expenses." (Def.'s Reply, Opp. & Memo., Ex. G at 3.) Throop argues that the add-ons are included because the employment contract incorporates the AWHA, and, under this

Throop v. Air Logistics
4FA-03-0835 Civil
Page 14

Court's decisions, the AWHA includes the add-ons as pay which is subject to overtime provisions.

In general, parties are free to form contracts with any terms and regarding any subject matter that is not illegal. See Sheely v. Martin, 10 Alaska 331, 341-42 (D. Alaska Terr. 1942). However, this latitude is not without bounds:

> We recognize that "freedom of contract" is a qualified and not an absolute right, and cannot be applied on a strict doctrinal basis. An established principle is that a court will not permit itself to be used as an instrument of inequity and injustice. As Justice Frankfurter stated in his dissenting opinion in United States v. Bethlehem Steel Corp., "The fundamental principle of law that the courts will not enforce a bargain where one party has unconscionably taken advantage of the necessities and distress of the other has found expression in an almost infinite variety of cases." In determining whether certain contractual provisions should be enforced, the court must look realistically at the relative bargaining positions of the parties in the framework of contemporary business practices and commercial life. If we find those positions are such that one party has unscrupulously taken advantage of the economic necessities of the other, then in the interest of justice – as a matter of public policy – we would refuse to enforce the transaction. But the grounds for judicial interference must be clear. Whether the court should refuse to recognize and uphold that which the parties have agreed upon is a question of fact upon which evidence is required.

Inman v. Clyde Hall Drilling Co., 369 P.2d 498, 500 (Alaska 1962) (citations omitted).

Here the contract term complained of – the exclusion of add-ons from 401(k) calculations – does not reach this level. Unlike the payment of overtime wages in general, the 401(k) plan does not contravene the AWHA, which does not speak to retirement contributions. Likewise, AirLog carefully and explicitly defined in its 401(k) plan brochure, a document separate from the other employment contract documents, the pay items that would be included in the 401(k) calculation. In contrast to Throop's claim for unpaid overtime wages, he may not here

Throop v. Air Logistics
4FA-03-0835 Civil
Page 15

rely on the protections of the AWHA to define his entitlement to make retirement plan contributions.

The 401(k) plan was, in essence, a separate contract between the parties, who were free to set its terms. Allowing AirLog to limit its employees' contributions and its own matching contributions conflicts neither with the AWHA's letter nor its spirit. Thus, since the parties' contract regarding the 401(k) is neither illegal nor in contravention of public policy, the Court will not interfere, for as our Supreme Court has commented, "In the absence of a constitutional provision or statute which makes certain contracts illegal or unenforceable, we believe it is the function of the judiciary to allow [parties] to manage their own affairs in their own way." Id.

Conclusion

AirLog's Motion for Partial Summary Judgment is DENIED as to overtime compensation and GRANTED as to the 401(k) plan. Throop's Cross-Motion for Partial Summary Judgment is GRANTED as to overtime compensation and DENIED as to the 401(k) plan. AirLog's Motion to Strike is DENIED.

Dated at Fairbanks, Alaska, this 30 day of November, 2004.

RICHARD D. SAVELL
Superior Court Judge

Throop v. Air Logistics
4FA-03-0835 Civil
Page 16

