constitutionally sufficient. In the classic justification for coercive imprisonment, contemnors "carry the keys of their prison in their own pockets." *In re Nevitt*, 117 F. at 461 (quoted in *Johansen*, 491 P.2d at 765). CSED believes that obligors like Beans carry the keys to their cars in their own pockets. Since we are only concerned with the keys to a car, not to a prison cell, it is enough that obligors can have a judge review their claims that they do not in fact possess those keys.

## VI. CONCLUSION

We AFFIRM only to the extent that we find AS 25.27.246(i) to be ineffective to prevent a litigant from seeking judicial relief based on inability to pay. Otherwise, we REVERSE and REMAND for further proceedings consistent with this opinion.



**PIQUNIQ MANAGEMENT CORPORATION,**
Appellant,

v.

Jesse A. REEVES, Appellee.

No. S–8016.

Supreme Court of Alaska.

Nov. 6, 1998.

Employee brought action against employer for overtime wages. The Superior Court, Third Judicial District, Anchorage, Peter A. Michalski, J., awarded damages. Employer appealed. The Supreme Court, Bryner, J., held that in calculating proper measure of employee's overtime damages, trial court erred in treating employee's entire 60-week salary as straighttime pay.

Reversed.

**1. Labor Relations** ⚖1541

To determine extent of a worker's overtime damages in a case involving an Alaska Wage and Hour Act (AWHA) overtime claim, court must answer two distinct questions: how much pay worker has earned, and how much employer still owes. AS 23.10.060 et seq.

**2. Labor Relations** ⚖1541

In calculating proper measure of employee's overtime damages, trial court erred in treating employee's entire 60-week salary as straighttime pay, since, due to his alternating work schedule, employee worked only half of weeks for which he received annual salary, and counting employee's entire 60 weeks of salary as pay for only 30 weeks of actual straighttime work would violate overtime compensation regulation's mandate to consider each week of his salary as week of straighttime pay. Alaska Admin. Code title 8, § 15.100(a)(2).

**3. Labor Relations** ⚖1271

Overtime regulations require salaried worker's award for unpaid overtime compensation to be computed by: (1) figuring worker's salary on weekly basis; (2) assuming that week of salary represents pay for week of straighttime work; (3) using regular rate of hourly pay derived from this assumption as basis for determining worker's total compensation for all hours actually worked; and (4) deducting from this amount all amounts of salary actually paid. Alaska Admin. Code title 8, § 15.100(a), (a)(2).

**4. Labor Relations** ⚖1271

A court converting annual salary to regular rate of hourly pay under overtime regulation must use regular rate as basis for computing total earnings for all hours actually worked, and all salary actually paid must be deducted from these total earnings; difference will reflect award necessary to ensure that straighttime, overtime, and total compensation are all based on applicable regular rate of pay. Alaska Admin. Code title 8, § 15.100(a), (a)(2).

---

Kenneth P. Eggers, Todd J. Timmermann, Groh Eggers, LLC, for Appellant.

Richard W. Maki, David H[...] now Tindall Bennett & Shoup[...] pellee.

Opinion No. 5088, issued o[...] was withdrawn. Opinion No[...] ued in its place on November [...]

Before MATTHEWS, C.J., [...] COMPTON, EASTAUGH, F[...] BRYNER, JJ.

## OPINION

BRYNER, Justice.

Jesse A. Reeves worked [...] Piquniq Management Comp[...] salary of $57,876. He works [...] on/two-weeks-off schedule [...] ninety-eight-hour weeks while [...] received no overtime pay. [...] PMC for overtime wages a[...] termine Reeves's damages. [...] converted his salary to a regu[...] used this rate as a basis fo[...] overtime earnings. Without [...] straighttime or total wages [...] sis, the court awarded Re[...] amount of his overtime earni[...] Because this award pays R[...] regular hourly rate for his [...] time work, we reverse.

### I. FACTS AND PROCEED[...]

PMC operates a waste di[...] the North Slope Borough. [...] there as a PMC employee [...] years, regularly spending t[...] job and two weeks off; wh[...] worked seven days a we[...] twelve hours a day.

PMC initially placed Ree[...] empt position and paid him [...] per hour for straighttime w[...] seven dollars per hour for [...] After several months, PMC [...] to the newly created positi[...] supervisor, which it conside[...] from overtime compensati[...] cepted the job at an annual [...]

---

1. Under AS 23.10.060(b), w[...] overtime wages at one and [...] regular rate of pay for all hou[...] day or 40 per week; hours [...] day or 40 per week are stri[...] Reeves's straighttime tot[...] and total work hours are c[...]

Richard W. Maki, David H. Shoup, Partnow Tindall Bennett & Shoup, P.C., for Appellee.

Opinion No. 5038, issued on Oct. 9, 1998, was withdrawn. Opinion No. 5044 was issued in its place on November 6, 1998.

Before MATTHEWS, C.J., and COMPTON, EASTAUGH, FABE and BRYNER, JJ.

## OPINION

BRYNER, Justice.

Jesse A. Reeves worked sixty weeks for Piquniq Management Company at an annual salary of $57,876. He worked a two-weeks-on-two-weeks-off schedule and averaged ninety-eight-hour weeks while on the job, but received no overtime pay. Reeves sued PMC for overtime wages and won. To determine Reeves's damages, the trial court converted his salary to a regular hourly rate. It used this rate as a basis for computing his overtime earnings. Without computing his straighttime or total wages on the same basis, the court awarded Reeves the entire amount of his overtime earnings as damages. Because this award pays Reeves twice his regular hourly rate for his actual straighttime work, we reverse.

### FACTS AND PROCEEDINGS

PMC operates a waste disposal facility for the North Slope Borough. Reeves worked there as a PMC employee for about two years, regularly spending two weeks on the job and two weeks off; when on the job, he worked seven days a week and at least twelve hours a day.

PMC initially placed Reeves in a non-exempt position and paid him eighteen dollars per hour for straighttime work and twenty-seven dollars per hour for overtime work. After several months, PMC promoted Reeves to the newly created position of operations supervisor, which it considered to be exempt from overtime compensation. Reeves accepted the job at an annual salary of $57,876. PMC gave Reeves no written employment contract, but he understood that he would continue to work seven-day workweeks on a schedule of two weeks on and two weeks off and that his normal workday would remain approximately twelve hours.

Reeves stayed in the operations supervisor position for sixty weeks. Because of his alternating work schedule, he actually worked thirty of those weeks. During this sixty-week period, his annual salary of $57,876 yielded him total pay of $66,780. After sixty weeks, PMC moved Reeves to another position. Less than four months later, it laid him off.

Reeves sued PMC, claiming that the company had improperly classified him as an exempt employee during his stint as operations supervisor and that he was entitled to overtime pay for his sixty weeks in that position.

At a bench trial before Superior Court Judge Peter A. Michalski, the parties litigated whether Reeves was properly classified as an exempt employee while he was PMC's operations supervisor, how many hours per week he worked, and how much overtime compensation PMC owed him. The court found that PMC had improperly classified Reeves as exempt. It also found that, in his sixty weeks as operations supervisor, Reeves had worked thirty weeks, with each workweek consisting of seven working days, each workday averaging fourteen hours.

The court next calculated Reeves's unpaid overtime wages. Deducting forty hours of straighttime work from Reeves's average ninety-eight-hour workweek, the court found that Reeves had worked fifty-eight hours of overtime each workweek. This gave Reeves 2940 total hours, with 1200 at straighttime pay and 1740 at overtime pay.[1]

Reeves was entitled to his "regular rate of pay" for his straighttime hours and to one and one-half times his regular rate for his

---

[1] 30 workweeks × 40 straighttime hours per week = 1200 straighttime hours; 30 workweeks × 58 overtime hours per week = 1740 overtime hours. 1200 straighttime hours + 1740 overtime hours = 2940 total hours.

overtime hours.[3] To compute Reeves's regular rate of pay, the trial court treated his $57,876 annual salary as straighttime wages for fifty-two weeks of forty hours per week. This resulted in a regular rate of $27.83 per hour; multiplied by one and one-half, the regular rate resulted in an overtime rate of $41.74 per hour.[3] Multiplying this hourly overtime rate by the 1740 overtime hours Reeves worked during his sixty weeks as operations supervisor, the court calculated his overtime earnings to be $72,627.60.

The court considered this full amount of overtime earnings to be unpaid overtime wages, awarding them to Reeves as his overtime damages; adding an equivalent amount for liquidated damages,[4] the court calculated Reeves's total damages (excluding prejudgment interest, costs, and attorney's fees) to be $145,255.20. PMC appeals.

II. THE TRIAL COURT ERRED IN CONCLUDING THAT PMC OWED REEVES THE FULL AMOUNT OF HIS OVERTIME EARNINGS.

A. The Applicable Legal Framework

[1] To determine the extent of a worker's overtime damages in a case involving an Alaska Wage and Hour Act (AWHA) overtime claim, the court must answer two distinct questions: how much pay the worker has earned, and how much the employer still owes. At issue in this case is how these questions should be answered when the claimant has been paid an annual salary rather than an hourly wage.[5] The AWHA requires that they be answered by using the worker's regular rate of pay: "If an employer finds it necessary to employ an employee in excess of 40 hours a week or eight hours a day, compensation for the overtime at the rate of one and one-half times the regular rate of pay shall be paid."[6]

But the AWHA does not itself define what "regular rate of pay" means for a worker who, like Reeves, receives an annual salary instead of an hourly wage. Title 8, section 15.100(a) of the Alaska Administrative Code (AAC) addresses this issue. It provides that, for purposes of computing overtime compensation, all salary must be converted to an hourly rate figured on a weekly basis:

(a) An employee's regular rate is the basis for computing overtime. The regular rate is an hourly rate figured on a weekly basis. An employee need not actually be hired at an hourly rate.... However, the applicable compensation basis must be converted to an hourly rate when determining the regular rate for computing overtime compensation.[7]

Two subparagraphs of this regulation further define the methods for converting salary to regular rate of pay. The first allows a salaried employee's regular rate of pay to be set by employment contract, but only if the contract clearly spells out the expectations of the employer and worker, and only if actual practice conforms to those expectations:

---

2. See supra note 1.

3. $57,876 annual salary ÷ 52 weeks = $1113 weekly salary. $1113 weekly salary ÷ 40 straighttime weekly hours = $27.83 per hour regular rate of pay. $27.83 per hour regular rate × 1.5 = $41.74 per hour overtime rate of pay.

4. Under the version of AS 23.10.110(a) that applied when Reeves worked for PMC, an employer who failed to pay overtime automatically became liable for liquidated damages in an amount equal to the unpaid overtime compensation. The statute has recently been amended to allow an exemption from liquidated damages for employers who establish that they acted in good faith. See ch. 37, §§ 1, 3, SLA 1995.

5. This issue involves the interpretation of 8 Alaska Administrative Code (AAC) 15.100. We have held this particular regulation to be "quasi-legislative." Dresser Indus., Inc. v. Alaska Dep't of Labor, 633 P.2d 998, 1004 (Alaska 1981), and have further held that "administrative regulations which are legislative in character are interpreted using the same principles applicable to statutes." State, Dep't of Highways v. Green, 586 P.2d 595, 603 n. 24 (Alaska 1978). We interpret statutes de novo. See Tipton v. ARCO Alaska, Inc., 922 P.2d 910, 912 n. 1 (Alaska 1996); Luedtke v. Otis Eng'g Corp., 757 P.2d 50, 53 n. 2 (Alaska 1988). In interpreting a statute or regulation, we will adopt the most persuasive rule of law in light of precedent, reason, and policy. See Boyne v. Gipson, 920 P.2d 746, 748 (Alaska 1996).

6. AS 23.10.060(b). This provision applies to all employment contracts. See AS 23.10.060(c).

7. 8 AAC 15.100(a).